## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **WENDY'S NETHERLANDS B.V.,** | : | |
| | : | Case No. 2:24-cv-03077 |
| **Plaintiff,** | : | |
| | : | Judge Michael H. Watson |
| v. | : | |
| | : | Magistrate Judge Kimberly Jolson |
| **ANDREW LEVY,** | : | |
| | : | |
| **Defendant.** | : | |

**PLAINTIFF WENDY'S NETHERLANDS B.V.'S REPLY IN SUPPORT OF ITS MOTION TO QUASH DEFENDANT'S SUBPOENAS TO ITS CURRENT AND FORMER EMPLOYEES, INCLUDING ITS IN-HOUSE COUNSEL**

I. **INTRODUCTION**

Plaintiff Wendy's Netherlands B.V. ("Wendy's") sought the Court's intervention arising out of attempts by Defendant Andrew Levy ("Defendant") to serve up to eleven subpoenas within days of the March 19, 2025 Hearing. Defendant did, however, manage to serve three subpoenas for the March 19, 2025 Hearing; two of them on Wendy's in-house counsel and one of them on a former administrative employee who had nothing to do with the underlying issues associated with Defendant's motion before the Court. Wendy's asked the Court to quash the three served subpoenas because they (1) failed to allow a reasonable time to comply; (2) required the disclosure of attorney-client privileged communications; and (3) subjected the recipients to undue burden with very little, if any, corresponding gain. Wendy's also asked the Court for an award of sanctions because Defendant's conduct smacked of harassment, causing Wendy's to incur unnecessary legal expenses in responding to Defendant's last-minute gamesmanship.

Defendant's Response in Opposition to Wendy's Motion ("Opposition Brief") failed to successfully rebut any of the points raised in Wendy's Motion to Quash (the "Motion"). In his

response, Defendant did not attempt to justify the untimeliness of the subpoenas. Nor did Defendant attempt to explain why it is necessary to subpoena Wendy's in-house counsel and a seemingly irrelevant former administrative employee. Wendy's agreed to make Kris Kaffenbarger, Vice President, Global System Optimization, Franchise and Portfolio Management, available for the Hearing (even though Defendant never properly served Mr. Kaffenbarger). Mr. Kaffenbarger was the individual who largely dealt with Defendant on the issues related to Defendant's Motion to Vacate the Cognovit Judgment. Defendant's contention that Wendy's in-house counsel can be subpoenaed because they did not serve as "litigation counsel" is simply wrong as a matter of law. Finally, while Defendant has tried to gloss over his prior transgressions, Defendant's wrongful conduct has not been "cured" by the Court's decision to vacate the March 19, 2025 hearing date. It appears that Defendant has issued at least one subpoena to Wendy's in-house counsel, Kerry Green, and will likely continue to serve other Wendy's current and former employees for the new hearing date of April 18, 2025. An award of sanctions is appropriate.

## II. ARGUMENT

### A. Wendy's In-House Counsel Cannot be Subpoenaed to Testify.

Kirk Vidra and Kerry Green (hereinafter collectively, "Wendy's In-House Counsel") consistently have acted as legal counsel to Wendy's at all relevant times. Any testimony from Wendy's In-House Counsel would undoubtably implicate the attorney-client privilege. In addition, under well-established legal precedent, Defendant is unable to establish the need for any testimony by Wendy's In-House Counsel. There are other available sources for this information, including Mr. Kaffenbarger.

#### 1. Testimonial Immunity for Attorneys Applies to In-House Counsel.

In his Opposition Brief, Defendant makes the outlandish claim that "testimonial immunity applies only to litigation counsel in the case at issue, not to in-house counsel." [*See* ECF No. 36,

at PageID # 1295]. That statement is simply wrong as a matter of law. It is well-settled that in order to obtain testimony from an opposing attorney, the requesting party must satisfy all three of the *Shelton* factors: "(1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002). On several occasions, this Court has applied these factors to quash subpoenas seeking testimony from in-house counsel. *See for example Harrison v. Proctor & Gamble Distrib., LLC*, No. 1:15-CV-514, 2016 WL 11642223, at *3 (S.D. Ohio Nov. 10, 2016) (quashing a subpoena to depose in-house counsel of a party to the case); *A.W. v. Red Roof Inns, Inc*., No. 2:21-CV-4934, 2024 WL 5041027, at *2 (S.D. Ohio Dec. 9, 2024). In fact, in *Shelton v. Am. Motors Corp.*, the Court granted a motion to quash a subpoena directed at in-house counsel. *See* 805 F.2d 1323, 1328 (8th Cir. 1986).

Despite this precedent, Defendant argued that the *Shelton* factors do not apply to in-house counsel but only trial or litigation counsel, relying on *Williams v. Wellston City Sch. Dist*., No. 2:09-CV-566, 2010 WL 4513818, at *5 (S.D. Ohio Nov. 2, 2010). Defendant's reliance on that case is misplaced. In *Williams,* the Court did not evaluate whether it had authority to subpoena in-house counsel. *See id.* Instead, the Court considered a subpoena directed at a former outside attorney for a school board, whose representation mainly consisted of analyzing and summarizing data for a report that later became public, rather than providing confidential legal advice. *See id.* at *1-2. The Court did not apply the *Shelton* factors in *Williams* because the subpoenaed attorney did not have an ongoing attorney-client relationship with any party to the case and the testimony sought to be elicited did not implicate his role as an attorney for any of the parties in the litigation. *Id.* at *5. According to the Court in *Williams*, "[t]here is similarly no evidence that he has a current

3

attorney-client relationship with any of the defendants. He is not and never has been their in-house counsel." *Id.*

Contrary to Defendant's arguments, this Court has consistently applied the *Shelton* factors to prevent the testimony of in-house counsel in situations similar to this one. For example, in *Alomari v. Ohio Dep't of Pub. Safety*, the Court applied the *Shelton* factors to quash a subpoena directed at in-house counsel because such counsel was "intimately involved in [the] dispute before it blossomed into a lawsuit." See No. 2:11-CV-00613, 2013 WL 5180811, at *5–6 (S.D. Ohio Sept. 13, 2013), objections overruled, No. 2:11-CV-00613, 2014 WL 12651191 (S.D. Ohio June 19, 2014). In *Alomari*, the Court determined the requested testimony of the in-house attorneys involved events that lead to the alleged improper action and was directly related to the case. *Id.* As a result, the Court ruled that deposing the attorneys "would pose the exact risk that *Shelton* is meant to prevent." *Id.*; *see also Harrison*, at *2; *A.W.,* at *2.

In this case, Defendant's subpoenas were clearly sent to Wendy's In-House Counsel with existing attorney-client relationships with Wendy's. These attorneys represented Wendy's during the negotiation of the cognovit note, Defendant's default on the note, and the filing of the legal proceedings to enforce the note. Any actions Wendy's In-House Counsel would have taken would have been in consultation with the client. The testimony Defendant is seeking thus bears the risk of exposing privileged information, even if Defendant claims that he will limit his questions to communications with Defendant and Defendant's counsel. In this regard, the only relevant testimony that Defendant can conceivably seek from Wendy's In-House Counsel as to those communications would be (1) the purpose of sending the communications and (2) the reasoning behind edits made to the cognovit note during the negotiations. In any event, any testimony from

4

Wendy's In-House Counsel would be protected by attorney-client privilege and not subject to disclosure.

### 2. The Testimony Sought from Wendy's In-House Counsel Can Be Obtained Through Other Means.

Defendant also failed to demonstrate that "no other means exist to obtain the information" or "the information is crucial" to the case. As part of his Motion to Vacate the Cognovit Judgment, Defendant attached certain email communications to which Wendy's In-House Counsel was a party. Defendant has possession of the email communications, and the Court has reviewed them. [*See* ECF No. 11-3]. Wendy's offered to stipulate to the authenticity of these communications if Defendant thought that to be an issue. Defendant declined to respond to this offer.

Moreover, neither of Wendy's In-House Counsel has any unique, non-privileged testimony regarding the cognovit note negotiations. As Defendant stated in his Opposition Brief, there were other parties copied on the emails who participated in the negotiations, including Defendant, ***Defendant's own counsel***, and Mr. Kaffenbarger. [*See id.*]. Wendy's expects Defendant will be present at the Hearing, and Mr. Kaffenbarger certainly will. Further, Defendant conceded that the testimony he was seeking could be covered by any number of Wendy's employees as he requested that Wendy's pick a witness to appear from a list of four names. Thus, any relevant testimony about the negotiations can be obtained through other testimony and documents. *See Alomari*, No. 2:11-CV-00613, 2013 WL 5180811, at *6 (quashing subpoenas directed toward in house-counsel where other witnesses could testify to the same requested topics).

### B. Defendant's Subpoenas Imposed an Undue Burden.

As explained in Wendy's Motion, there is simply no need for the testimony of either Wendy's In-House Counsel, Laura Stratton, or any other current or former Wendy's employees that Defendant may now seek to subpoena. Absent any need for the subpoenaed testimony,

5

Defendant cannot establish that the burden is outweighed by the relevance or necessity of the testimony.

First, Defendant attempted to argue that Wendy's does not have standing to quash the subpoena issued to Ms. Stratton. This argument is erroneous as Wendy's counsel represents Ms. Stratton in her capacity as a former Wendy's employee, and Ms. Stratton has agreed to this representation.[1] Next, Defendant attempted to justify the subpoenas by generally asserting that their testimony was relevant. Defendant failed, however, to explain precisely how such testimony by each subpoenaed individual could be relevant. Defendant's conclusory statements are not enough.

A subpoena may be properly quashed on the grounds of relevance and burden. *See Duncan v. Husted*, No. 2:13-CV-1157, 2014 WL 4659863, at *5 (S.D. Ohio Sept. 17, 2014), on reconsideration in part, No. 2:13-CV-1157, 2015 WL 631103 (S.D. Ohio Feb. 12, 2015). Wendy's has explained to Defendant, and this Court, that Ms. Stratton does not have any personal knowledge regarding this matter. [*See* ECF No. 36, PageID # 1298]. Ms. Stratton was an administrative employee, and she did not perform any duties involving the negotiation of the cognovit note, the default of the note by Defendant, or Wendy's attempts to enforce the note. While Defendant claims that he carefully reviewed the list of subpoenaed witnesses, it is difficult to envision what diligence, if any, he actually performed regarding Ms. Stratton's role in this

---

[1] Even so, where a party has "some personal right or privilege" with regards to the discovery sought, that party has standing. *See Hi-Vac Corp. v. Coley*, No. 2:23-CV-4184, 2025 WL 286490, at *4 (S.D. Ohio Jan. 24, 2025); *Hendricks v. Total Quality Logistics*, LLC, 275 F.R.D. 251, 253 (S.D. Ohio 2011); *Stokes v. Xerox Corp.,* No. 05-CV-71683-DT, 2006 WL 6686584, at *2 (E.D. Mich. Oct. 5, 2006) (standing to move to quash subpoena of documents from a non-party employee of the defendant where the non-party employee was "acting as a representative" for the defendant with respect to the documents requested). The testimony sought from Ms. Stratton, and any current or former employee, relates solely and directly to information regarding their employment at Wendy's, and thus, Wendy's has a direct, personal interest in the discovery sought.

dispute. To be clear, her name is not on any of the documents that Defendant purports to rely on nor is she listed on the four-person list Defendant proposed to Wendy's. Further, as to Wendy's In-House Counsel, there is also a lack of any meaningful testimony to be given. As noted above, neither of Wendy's In-House Counsel has unique, non-privileged testimony regarding the cognovit note.

### C. Wendy's Should be Awarded Sanctions Against Defendant for his Failure to Take Reasonable Steps to Avoid an Undue Burden on Wendy's, and its Current and Former Employees.

Finally, an award of sanctions is absolutely appropriate in these circumstances. Defendant's conduct was not only frivolous, but inappropriate. Defendant forced Wendy's to expend time and money defending against his improper subpoenas on the eve of the Hearing. Defendant's harassment continues. He recently served a subpoena to Ms. Green, and he will likely serve additional subpoenas that Wendy's will need to quash.

There are "aggravating factors" present to warrant sanctions against Defendant. Defendant intentionally served the subpoenas over the weekend with less than three business days before the Hearing. As Defendant and his counsel should have known, such service was patently unreasonable. *See McClendon v. TelOhio Credit Union, Inc.*, No. 2:05-CV-1160, 2006 WL 2380601, at *2 (S.D. Ohio Aug. 14, 2006); *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002) ("Fed. R. Civ. P. 45(c)(2)(B) sets a reasonable time as fourteen days after service of the subpoena."). At such a late date, the subpoenas should have never been served. Nevertheless, Wendy's was forced to spend resources filing a motion to quash the untimely subpoenas. *See CareToLive v. von Eschenbach*, No. 2:07-CV-729, 2008 WL 552431, at *3 (S.D. Ohio Feb. 26, 2008) ("When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c)(1).");

7

*Duong v. Groundhog Enterprises, Inc.*, No. 2:19-CV-01333-DMG-MAA, 2020 WL 2041939, at *13 (C.D. Cal. Feb. 28, 2020) (imposing sanctions despite the withdrawal of a subpoena).

In addition to the financial burden, Wendy's and its counsel, were forced to divert attention away from the upcoming Hearing to move to quash the subpoenas.  Also, Defendant's subpoena harassment was a moving target.  While only three subpoenas were served, Wendy's was aware that other employees were being targeted with subpoenas all the way up to the previously scheduled Hearing.  Defendant's subpoena threat clearly impacted Wendy's hearing preparations and compounded the need for Wendy's to act against Defendant's subpoenas.

Furthermore, Defendant did not "attempt to accommodate" Wendy's objections so as to avoid undue burden.  After Wendy's received notice of Defendant's apparent intent to subpoena eleven current and former employees, including senior leadership and in-house counsel, on the eve of the Hearing, it was Wendy's who contacted Defendant in an attempt to settle this matter.  [*See* ECF No. 34-2].  Wendy's offered to Defendant the availability of the primary Wendy's witness, Mr. Kaffenbarger.  Defendant did not agree and proposed a "four-person list," which included Wendy's In-House Counsel and two other individuals who were outside a 100-mile radius from the Court, in violation of Federal Rule of Civil Procedure 45(c)(1)(A).  It is interesting to note that Ms. Stratton was not even a name on Defendant's proposed four-person list. [*See id.*].  Even though Wendy's pointed out that these witnesses were not appropriate, Defendant forged ahead and served the subpoenas over the weekend, not only on the "four-person list", but also on Ms. Stratton.  Defendant's actions therefore cannot be considered as taking reasonable steps "to avoid imposing undue burden or expense on a person subject to the subpoena."  *See* Fed. R. Civ. P. 45(d)(1).  The violation of this duty alone is enough to award sanctions.  *See Georgia-Pac. LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187, 190 (S.D. Ohio 2010).  Thus, Wendy's is

entitled to sanctions against Defendant for his egregious, calculated actions that caused an undue burden on Wendy's, and its current and former employees.

### III. CONCLUSION

For all of the foregoing reasons, along with the reasons set forth in the Motion, Wendy's respectfully request that (1) Wendy' In-House Counsel not be subpoenaed to testify in the Hearing; (2) Ms. Stratton not be subpoenaed to testify in the Hearing; and (3) Wendy's be awarded reasonable attorney fees as a sanction for Defendant's frivolous conduct. In addition, Wendy's requests that this Court issue an order prohibiting Defendant from re-issuing or serving any additional subpoenas to its current or former employees.

Respectfully submitted,

*/s/ Keith Shumate*
Keith Shumate (0056190)
Brittany Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2834
Fax: +1 614 365 2499
keith.shumate@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff Wendy's Netherlands B.V.*

## **CERTIFICATE OF SERVICE**

On April 2, 2025, this document was filed electronically with the Clerk of the United States Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties.

*/s/ Keith Shumate*
Keith Shumate

*An Attorney for Plaintiff Wendy's Netherlands B.V.*
