UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Wendy's Netherlands B.V.,

      Plaintiff,

      v.

Andrew Levy,

      Defendant.

Case No. 2:24-cv-3077

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

This matter is before the Court on the Motion to Quash, ECF No. 34, filed by Wendy's Netherlands B.V. ("Plaintiff"). For the reasons below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.     BACKGROUND

The Court summarized the alleged facts in its January 2025 Opinion and Order, ECF No. 23, but those facts relevant for purposes of the instant motion are repeated and supplemented below.

Plaintiff is an international fast-food restaurant with its American headquarters in Dublin, Ohio. Compl. ¶¶ 1, 4, ECF No. 5. Plaintiff agreed to lend money to a borrower to support the development of Wendy's restaurants in Brazil. *Id.* ¶¶ 6–8. To guarantee the borrower's performance and repayment, Plaintiff executed a corresponding Guarantee Agreement ("Guarantee") with Andrew Levy ("Defendant") and his company, Starboard International Holdings, B.V. ("Starboard"), who own and invest in several Wendy's franchises. *Id.* ¶¶ 5,

8–9, ECF No. 5; ECF No. 11-3 at PAGEID # 950–52, 55; Guarantee at PAGEID # 373, ECF No. 5.

In December 2019, the Brazil restaurants were wound down, and the outstanding amounts under the Guarantee became due. ECF No. 11-2 at PAGEID # 948; Guarantee at PAGEID # 373, ECF No. 5. After several weeks of negotiations, Plaintiff and Defendant entered into a Cognovit Promissory Note ("Cognovit Note") on February 23, 2020. Compl. ¶¶ 10–15, ECF No. 5; Cognovit Note at PAGEID # 362, 367, ECF No. 5. Therein, Defendant agreed to pay quarterly installments of the principal and interest to Plaintiff beginning on March 15, 2020. *Id*.

However, in both January and April 2024, Defendant failed to make his payments. Compl. ¶¶ 18–19, ECF No. 5. Each failure constituted an event of default, such that Plaintiff elected to declare all principal and interest to be immediately due and payable. *Id*. ¶¶ 26–27. In May 2024, the Franklin County Court of Common Pleas entered a Cognovit Judgment against Defendant. ECF No. 1-4 at PAGEID # 59.

Defendant removed the case to this Court under diversity jurisdiction, seeking to vacate the Cognovit Judgment. ECF No. 1. Because the Court could not determine the existence of a meritorious defense to the Cognovit Judgment from the materials that Defendant provided, the Court scheduled an evidentiary hearing. ECF No. 23.

Plaintiff represents that, eight days before the hearing, Defendant "dropped off" subpoenas at its corporate office, purportedly demanding testimony from eleven current and former employees.[1]  ECF No. 34 at PAGEID # 1265.  After Plaintiff sought a conference with the Court, Defendant's agent retrieved the subpoenas the next day.  *Id.* at PAGEID # 1266; ECF No. 34-1 at PAGEID # 1280–81.  The parties conferred on the issue, and Plaintiff offered to make Kris Kaffenbarger (Vice President, Global Systems Optimization, Franchise and Portfolio Management) available to testify.  ECF No. 34-2 at PAGEID # 1289.  Defendant's counsel responded that he was "happy to have Mr. Kaffenbarger attend the hearing but [ ] would also appreciate at least one other witness attend."  *Id.* at PAGEID # 1287.  Defendant sought to call Kerry Green or Kirk Vidra, who serve as Wendy's in-house counsel.  *Id.* at PAGEID # 1285.  Believing that it is "not proper to have a lawyer testify about emails sent on behalf of a client," Plaintiff refused.  *Id.*

Consequently, Defendant served Vidra with a subpoena on March 14, Green with a subpoena on March 15, and Laura Stratton, a retired former Wendy's employee, on March 16.  ECF No. 34 at PAGEID # 1267.  Plaintiff now moves to quash those subpoenas under Rule 45 and for sanctions against Defendant for serving them.  ECF No. 34.

---

[1] These employees include Kirk Vidra, Kerry Green, Kris Kaffenbarger, Abigail Pringle, Nancy Lee-Yorke, Carlos Ribas, Carlos Alves, Zack Kollias, Cheri Roell, Laura Stratton, and Peter Koumas.  ECF No. 34 at PAGEID # 1265–66.  Plaintiff states that four of these individuals no longer work at Wendy's and five are not Ohio residents.  *Id.*

## II. STANDARD OF REVIEW

The scope of discovery is "traditionally quite broad." *Lewis v. ACB Bus.*

*Servs, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (citation omitted); Fed. R. Civ. P.

26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the

case[.]").  This broad discovery "is not without limits," however, and courts are

given "wide discretion in balancing the needs and rights of both plaintiff and

defendant." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991).

A party may seek discovery through a subpoena to a non-party

under Federal Rule of Civil Procedure 45(c).  "[T]he scope of discovery under a

subpoena is the same as the scope of discovery under Rule 26."  *Hendricks v.*

*Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (citation

omitted); *see also* Fed. R. Civ. P. 45, advisory committee's note to 1970

amendment ("[T]he scope of discovery through a subpoena is the same as that

applicable to Rule 34 and the other discovery rules.").

Rule 45 allows a recipient to move to quash or modify a subpoena.  A

court *must* quash or modify a subpoena that (1) fails to allow a reasonable time

to comply; (2) requires a person to comply beyond the geographical limits

specified in Rule 45(c); (3) requires disclosure of privileged or other protected

matter, if no exception or waiver applies; or (4) subjects a person to undue

burden.  Fed. R. Civ. P. 45(d)(3)(A).  A court *may* quash or modify a subpoena to

protect a person subject to or affected by it if the subpoena (1) discloses a trade

secret or other confidential research, development, or commercial information; or

(2) discloses an unretained expert's opinion or information that does not describe

specific occurrences in dispute and results from the expert's study that was not

requested by a party. Fed. R. Civ. P. 45(d)(3)(B).

Motions to quash are entrusted to the sound discretion of district courts.

*Ellora's Cave Pub., Inc. v. Dear Author Media Network, LLC*, 308 F.R.D. 160,

161 (N.D. Ohio 2015). "The party seeking to quash a subpoena bears the

ultimate burden of proof." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D.

251, 253 (S.D. Ohio 2011).

## III.    ANALYSIS

In this case, Plaintiff argues that the subpoenas must be quashed for three

reasons: (1) Defendant failed to provide the subpoenaed individuals with

reasonable time to comply; (2) Green and Vidra's testimony is protected by

attorney-client privilege and can be obtained through other means; and (3) the

subpoenaed individuals will suffer undue burden in the event they are forced to

comply. ECF No. 34 at PAGEID # 1268. Defendant disputes these points and

also questions Plaintiff's standing to challenge one of the subpoenas. ECF No.

36 at PAGEID # 1291–92.

## A.    Standing

The issue of standing "is a threshold issue which the Court must consider

before addressing the merits" of any challenges to the subpoenas. *Waite,*

*Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, No. 1:11-CV-0851, 2013 WL

146362, at *5 (S.D. Ohio Jan. 14, 2013). Although Defendant has no qualms with Plaintiff's ability to object to the subpoenas to Vidra and Green, he argues that it lacks standing to quash the subpoena to Stratton because she is a former employee. ECF No. 36 at PAGEID # 1299. The Court disagrees.

In general, "[t]he party to whom the subpoena is directed is the only party with standing to oppose it." *Donahoo v. Ohio Dept. of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002). But where a party successfully asserts "some personal right or privilege" with regard to the discovery sought, that party nevertheless has standing. *Mann v. Univ. of Cincinnati*, Nos. 95-3195 and 953292, 1997 WL 280188, at *4 (6th Cir. May 27, 1997); *see also Elvis Presley Enters., Inc. v. City of Memphis, Tenn.*, No. 218CV02718SHMDKV, 2020 WL 4283279, at *3 (W.D. Tenn. Apr. 6, 2020), *aff'd,* 2020 WL 4015476 (W.D. Tenn. July 16, 2020) (citing cases).

"Personal rights or interests sufficient to confer standing to quash or object to a subpoena can arise in a variety of contexts." *Boodram v. Coomes*, 2016 WL 11333789, at *2 (W.D. Ky. Jan. 28, 2016). Courts have found party-employer standing to quash a subpoena served on a non-party employee seeking documents belonging to the employer. *See, e.g., Prado v. Mazeika*, 2019 WL 1039896, at *3 (S.D. Ohio Mar. 5, 2019) (standing to quash subpoena of documents from non-party employee of defendant when defendant had custody and control of documents sought); *Stokes v. Xerox Corp.*, 2006 WL 6686584, at

*2 (E.D. Mich. Oct. 5, 2006) (same where non-party employee was "acting as a representative" for defendant with respect to documents requested).

The parties did not file copies of Defendant's subpoena to Stratton for review. The Court can infer, however, that Defendant seeks Stratton's testimony surrounding the period that the Cognovit Note was negotiated and executed. Defendant thus asks for testimony about an event that occurred during Stratton's employment at Wendy's, and Stratton would not have information except by virtue of her employment. Her testimony relates solely to her role as Plaintiff's employee.[2] *See, e.g.*, *Fusion Elite All Stars v. Varsity Brands, LLC*, 340 F.R.D. 255, 261 (W.D. Tenn. 2022); *Elvis Presley Enters.*, 2020 WL 4283279, at *4. Plaintiff has standing to challenge Stratton's subpoena.

## B. Time for Compliance

Plaintiff's first argument is that Defendant did not give Vidra, Green, and Stratton reasonable time to comply with the subpoenas. ECF No. 34 at PAGEID # 1269. Rule 45 requires courts to quash or modify a subpoena that fails to allow a "reasonable time" for compliance. Fed. R. Civ. P. 45(d)(3)(A)(i); *Friedberg v. Madison Realty Invs., Inc.,* No. 1:16-MC-0003, 2016 WL 1562948, at *2 (S.D. Ohio Apr. 18, 2016). Although the Rule does not define a "reasonable" time, courts, including this one, have found that fourteen days' notice to comply or

---

[2] Even if this were not the case, Plaintiff further avers that "Wendy's counsel represents Ms. Stratton in her capacity as a former Wendy's employee, and Ms. Stratton has agreed to this representation." ECF No. 37 at PAGEID # 1308.

respond is presumptively reasonable. *See, e.g., Donahoo*, 211 F.R.D. at 306;

*McClendon v. TelOhio Credit Union, Inc.*, No. 2:05-CV-1160, 2006 WL 2380601,

at *2 (S.D. Ohio Aug. 14, 2006).

After the parties provided their availability, the evidentiary hearing in this

matter was scheduled for March 19, 2025.[3]  ECF No. 29.  On March 12,

Defendant served the original eleven subpoenas at Plaintiff's corporate

headquarters.  ECF No. 34-1 at PAGEID # 1280–01.  These eleven

subpoenas—served only eight days before the hearing—did not allow a

reasonable time for compliance, let alone the three subpoenas Defendant served

the weekend before the hearing.  Indeed, Defendant served Stratton's subpoena

on March 16, a mere three days in advance.  ECF No. 34 at PAGEID # 1267.

These short timeframes are not reasonable.

But Plaintiff's argument that the subpoenas do not allow reasonable

compliance time has become moot by virtue of the resetting of the evidentiary

hearing from March 19, 2025, to April 18, 2025 (based on the instant subpoena

dispute).  ECF No. 35.  The Court thus declines to quash the subpoenas on this

basis.  *See, e.g., McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-CV-00033, 2019

WL 5958332, at *3 n.2 (M.D. Tenn. Jan. 7, 2019).

---

[3] The Court set the hearing in an Order entered on February 25, 2025.  ECF No. 29.

## C. In-House Counsel Testimony

Of the three individuals Defendant subpoenaed, two (Vidra and Green) served as Plaintiff's in-house counsel during the negotiation of the Cognovit Note. ECF No. 34 at PAGEID # 1272. Plaintiff wants their subpoenas quashed, primarily because their testimony will require disclosure of attorney-client privileged information, it argues. *Id.* at PAGEID # 1270. Defendant responds that testimonial immunity applies only to litigation counsel (not in-house counsel) and that Plaintiff has not shown the information Vidra and Green would provide is privileged. ECF No. 36 at PAGEID # 1295.

Efforts to obtain discovery from an opponent's counsel, including in-house counsel, are generally disfavored. *A.W. v. Red Roof Inns, Inc.*, No. 2:21-CV-4934, 2024 WL 5041027, at *2 (S.D. Ohio Dec. 9, 2024). As such, discovery from opposing counsel is "limited" and permitted only where the party seeking the discovery has shown that (1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (citation omitted); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (applying *Shelton* test).

Defendant argues, however, that the *Shelton* test is inapplicable here because Vidra and Green are not trial or litigation counsel—rather, they served as in-house transactional attorneys whose role extended only to the Cognovit Note negotiations. ECF No. 36 at PAGEID # 1295. Citing *Williams v. Wellston*

*City Sch. Dist.*, No. 2:09-CV-566, 2010 WL 4513818, at *3 (S.D. Ohio Nov. 2, 2010), Defendant contends that *Shelton* does not govern when there is no evidence that the attorneys consulted the client about the strategy in the present litigation. *Id.*

In *Williams*, the court considered a deposition subpoena directed at a former outside attorney for a school board. *Williams*, 2010 WL 4513818, at *1. The outside attorney was not counsel for a party in the litigation, had not consulted with any party about the litigation strategy or defenses, and was not a party's in-house counsel or otherwise in an attorney-client relationship with any party. *Id.* at *5. Presented with this situation, the *Williams* court observed that

> [w]hen the attorney whose deposition is requested is not litigation counsel, is not in-house counsel who is involved to some extent in directing litigation, or is not an attorney who has advised the client concerning the same or similar litigation or has helped develop its defense strategy, the reasons for applying *Shelton* are much less compelling because there is little or no risk that the attorney's testimony might reveal any litigation strategy, or that the purpose of the deposition is to drive a wedge between the opposing party and its current counsel.

*Id.* Accordingly, the court found that the *Shelton* test did not apply, such that the outside attorney would "be treated as any other witness for purposes of determining if it is appropriate to depose him." *Id.* at *6; *see also Vita–Mix Corp. v. Basic Holdings, Inc.,* No. 5:08CV0799, 2007 WL 2344750 (N.D. Ohio August 15, 2007) (finding that *Shelton* test "is appropriately limited to instances in which a party seeks to depose opposing trial counsel").

Other courts disagree and apply the *Shelton* test to discovery requests involving non-trial attorneys, including in-house counsel. *See, e.g.*, *Harrison v. Proctor & Gamble Distrib., LLC*, No. 1:15-CV-514, 2016 WL 11642223, at *3 (S.D. Ohio Nov. 10, 2016); *Alomari v. Ohio Dep't of Pub. Safety*, No. 2:11-CV-00613, 2013 WL 5180811, at *6 (S.D. Ohio Sept. 13, 2013), *objs. overruled*, 2014 WL 12651191 (S.D. Ohio June 19, 2014); *Massillon Mgmt., LLC v. Americold Realty Tr.*, No. 5:08CV0799, 2009 WL 614831, at *4 (N.D. Ohio Jan. 21, 2009) ("The Sixth Circuit undoubtedly was aware of this when it adopted the *Shelton* analysis . . . and never once has it so much as hinted that the test applies exclusively to trial counsel."). These cases suggest that the extent of the dispute, not the litigation itself, is what dictates application of the *Shelton* factors. *See Massillon Mgmt.*, 2009 WL 614831, *5 (holding that *Shelton* applies where a party seeks to depose an in-house attorney who had been "intimately involved in [the] dispute since well before it blossomed into a lawsuit" and who had "played an integral role in developing . . . litigation strategy").

In this case, Vidra and Green have an attorney-client relationship with Plaintiff as its in-house counsel. They were involved with this dispute well before it became a lawsuit—they represented Plaintiff in the Cognovit Note negotiations and in the legal proceedings to enforce the Note. ECF No. 37 at PAGEID # 1306; ECF Nos. 11-2, 11-3 (email exchanges involving Levy, Green, Vidra, and others). On the other hand, Plaintiff says nothing about the extent of Vidra and Green's participation in or direction of the strategy for the instant case. *Cf.*

*Pamida, Inc. v. E.S. Originals*, 281 F.3d 726, 730–31 (8th Cir. 2002) ("The *Shelton* test was intend[ed] to protect against . . . the disclosure of the attorney's litigation strategy.").

The Court need not determine which approach applies, however, because the same outcome results from either test—Defendant has not shown the need for these attorneys' testimony. The analysis of Vidra and Green as "any other" witnesses is detailed below in Section III.D. Applying the *Shelton* test, even taking Defendant at his word that Vidra and Green's testimony would only concern the emails sent to Defendant, such that "[n]othing that would tend to touch any attorney client privilege or work product," ECF No. 34-2 at PAGEID # 1285, Defendant fails to establish the other two *Shelton* factors. Defendant has not shown that there is no other way to obtain the information. In response to Plaintiff's offer of Kaffenbarger's testimony, Defendant asked for "at least one other witness" and gave Plaintiff four options, including Vidra, Green, and two others who do not appear to be lawyers. ECF No. 34-2 at PAGEID # 1286. This undermines any notion that Defendant somehow requires Vidra and/or Green's testimony or that he differentiated between the four choices in any significant way. Moreover, Kaffenbarger, who will be testifying at the hearing, was copied on most (if not all) the email exchanges between Plaintiff and Defendant that also include Vidra or Green. *See* ECF No. 11-3. Defendant has not established that the information he seeks from Vidra or Green is exclusive to them and cannot be

obtained elsewhere.  Nor has Defendant articulated why Vidra's or Green's testimony is "crucial" to the case.

Because the *Shelton* factors are not met, subpoenas to Vidra and Green are unwarranted.

## D.    Undue Burden

The party seeking to quash a subpoena bears the burden of showing that the discovery sought therein would be burdensome.  *Hendricks*, 275 F.R.D. at 253.  "Whether a subpoena imposes an undue burden upon a witness is a case specific inquiry that turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."  *In re CareSource Mgmt. Grp.*, 289 F.R.D. at 253 (internal quotations and citation omitted).  "[T]he status of a person as a non-party is a factor that weighs against disclosure.  *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999).  In response to a showing that the discovery would be burdensome, the party who issued the subpoena has the burden of "establish[ing] a need for the breadth of the information sought."  *In re CareSource Mgmt. Grp. Co.,* 289 F.R.D. at 253.

As to Vidra and Green, if the Court treats them as "any other witness" and applies an undue burden analysis as opposed to the *Shelton* test, the analysis still weighs in favor of quashing the subpoenas.  Plaintiff asserts that neither Vidra nor Green, who are non-parties, have any unique or relevant testimony

regarding the Cognovit Note.  ECF No. 34 at PAGEID # 1272.  Defendant does not meaningfully rebut this proposition—simply because Vidra and Green "know about" the Cognovit Note and their emails with Defendant does not make their testimony relevant.  ECF No. 36 at PAGEID # 1298; *see also Blankenship v. Superior Controls, Inc.*, No. 13-12386, 2014 WL 12661189, at *3 (E.D. Mich. Apr. 28, 2014) ("[T]he mere fact that the lawyer drafted an agreement and participated in negotiations does not make the lawyer a necessary witness regarding that agreement.").  And, as explained above, Defendant has not shown that Vidra and Green's testimony could not be obtained elsewhere, like through Kaffenbarger.

As to Stratton, Plaintiff asserts that she will "face certain and substantial undue burden" if compelled to testify.  ECF No. 34 at PAGEID # 1272 (arguing that Stratton "will need to make last-minute adjustments to [her] schedule[ ] to make [herself] available" and referencing Stratton's "responsibilities outside of Wendy's" in her current position).  Standing alone, these points do not support a finding of "substantial" undue burden.  The Court is mindful, however, that Stratton is a non-party.  Plaintiff also contends that Stratton lacks "any first-hand knowledge of the operative facts that may support Defendant's alleged duress." *Id.* at PAGEID # 1271; *see also* ECF No. 37 at PAGEID # 1308 ("Ms. Stratton was an administrative employee, and she did not perform any duties involving the negotiation of the cognovit note, the default of the note by Defendant, or Wendy's attempts to enforce the note.").  Defendant cursorily responds that "[t]he subpoenas seek testimony that is relevant" because the testimony concerns the

relevant time period, "bears on the question of duress," and "is narrowly tailored to the specific facts." ECF No. 36 at PAGEID # 1298. But the Court observes that Stratton appears nowhere in any of the email correspondence or other materials presented in the parties' briefing, except that her name is included in a list of copied recipients on Plaintiff's draft notice of noncompliance to Defendant, ECF No. 11-3 at PAGEID # 957.

"Demonstrating relevance is the burden of the party seeking discovery." *Am. Elec. Power Co.*, 191 F.R.D. at 136. Defendant has not carried his burden to convince the Court that Stratton's (or Vidra's, or Green's) testimony would be relevant. In considering the scope of discovery, the Court must balance Defendant's "right to discovery with the need to prevent fishing expeditions." *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009). Defendant's subpoenas smack of a fishing expedition, and Plaintiff's motion is **GRANTED** as to the subpoenas to Stratton, Vidra, and Green.

## IV. SANCTIONS

Under Rule 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Courts "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney fees—on a party or attorney who fails to comply." *Id.* In this case, Plaintiff argues that the Court should award it reasonable attorneys' fees as

a sanction for Defendant's "frivolous" conduct concerning the subpoenas. ECF No. 37 at PAGEID # 1311.

Initially, without notifying Plaintiff and seemingly without conducting any research as to the subpoenaed individuals' employment status, Defendant "served" eleven subpoenas at Plaintiff's corporate headquarters eight days before the then-scheduled evidentiary hearing. ECF No. 34-1 at PAGEID # 1278–81. Putting aside the inappropriately limited amount of time to comply, it appears that Defendant's counsel made little effort to tailor the group of people subpoenaed. *Id.* at PAGEID # 1278 ("Levy does not know how many of the people who were involved with creating the duress remain employed at Wendy's. Thus, Levy has subpoenaed them all but should only need to call a few witnesses to show that there exist facts to support the defense he has asserted."). Only when Plaintiff reached out to the Court with concerns did Defendant take back the eleven subpoenas. And it was Plaintiff's counsel, not Defendant's counsel, who first reached out in an attempt to find a compromise. ECF No. 34-2 at PAGEID # 1288. When one could not be had, Defendant then served the three at-issue subpoenas, over the weekend before the hearing.

"[W]hen an issuing party engages in good faith negotiations to resolve conflicts over subpoenas and to avoid imposing undue burden, courts have declined to impose Rule 45 sanctions in the absence of other aggravating factors." *Ohio Fresh Eggs, LLC v. Smith & Kramer, PC*, No. 2:20-CV-5267, 2022 WL 4007613, at *6 (S.D. Ohio Sept. 2, 2022). Because the parties engaged in

efforts to negotiate reasonable parameters on the subpoenas, and because nothing affirmatively indicates that Defendant's negotiations were in bad faith, the Court declines to sanction Defendant at this time. But the Court acknowledges the nature of Defendant's discovery conduct and cautions Defendant and his counsel that, going forward, such untimely and obvious fishing expeditions will not be tolerated.

Additionally, the Court declines at this time to prohibit Defendant from re-issuing or serving any additional subpoenas to Plaintiff's current or former employees. The Court is wary, however, of the need for additional witnesses and observes that the hearing is a week away, so time for compliance may be problematic if Defendant were to serve more subpoenas.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's motion is **GRANTED** in that the subpoenas issued to Stratton, Vidra, and Green are **QUASHED**. Plaintiff's motion is **DENIED** as to its request for sanctions.

The Clerk shall terminate ECF No. 34 as a pending motion.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**