IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WENDY'S NETHERLANDS B.V., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW LEVY, <br><br> Defendant. | Civil Action No. 2:24-cv-03077 |

**DEFENDANT ANDREW LEVY'S BRIEF IN SUPPORT OF MOTION TO VACATE**

The defendant, Andrew Levy ("Levy"), complying with the Court's April 22, 2025, order (ECF No. 40) files this brief in support of his motion to vacate the cognovit judgment.

**I.    The Rooker-Feldman Doctrine Does Not Apply, and the Court has Subject Matter Jurisdiction Over This Matter.**

This Court holds subject matter jurisdiction because the *Rooker-Feldman* doctrine does not reach removal cases. *Westlake Legal Grp. v. Yelp, Inc.*, 599 F. App'x 481, 483 (4th Cir. 2015); *see also Leavitt v. Sky Warrior Bahamas Ltd.*, No. CV 24-886 (RMB) (SAK), 2024 WL 4275052, at *4 (D.N.J. Sept. 24, 2024) (collecting district court cases); *accord Int'l Med. Educ. Grp., LLC v. Furst*, No. 1:19-CC-02694, 2020 WL 364225, at *1 (N.D. Ohio Jan. 22, 2020); *Munsey v. Testworth Laboratories*, 227 F.2d 902, 903 (6th Cir. 1955).

In *Westlake*, the plaintiffs secured a default judgment in state court. *Westlake Legal Grp.*, 599 F. App'x 481. After the court entered the judgment, the defendant removed the case to federal court and sought to vacate the judgment. *Id.* 481-2. The plaintiffs moved to remand, invoking *Rooker-Feldman* and challenging subject matter jurisdiction. *Id.* The court rejected that view. *Rooker-Feldman* applies only when a state-court loser initiates a new federal action to redress

harm caused by a state-court judgment. *Westlake Legal Grp.*, 599 F. App'x 483. The *Westlake* defendant did not file a new federal case—it removed an existing one. *Id.* Removal is not a new action; it is a continuation. *Id. Rooker-Feldman* has no role in that context.

*Munsey* reached the same conclusion without naming the doctrine. *Munsey*, 227 F.2d at 903. There, too, the defendant removed a case shortly after the state court entered a default judgment and then moved to vacate. *Id.* at 902. The plaintiff argued that the district court lacked jurisdiction because the state court already issued the judgment. *Id.* The Sixth Circuit disagreed. Because the time to seek relief from judgment had not yet expired, federal jurisdiction remained intact. *Id.* at 903. The court emphasized parity between the state and federal courts in administering post-judgment relief. *Id.*

*Furst* followed the same logic. There, the plaintiff argued that no civil action remained pending for removal once the state court entered judgment. *Int'l Med. Educ. Grp., LLC v. Furst*, 2020 WL 364225, at *1-2. The district court rejected that premise. *Id.* So long as the judgment remained subject to timely post-judgment motion or appeal, removal remained proper. *Id.*

The holdings in *Westlake*, *Munsey*, and *Furst* resolve this case. Levy did not initiate a new suit to attack the judgment; he followed established procedures to vacate it. He removed the case within thirty days of judgment. At that point, both the time to appeal and the window to move for relief under the rules had not closed. *Rooker-Feldman* therefore poses no bar, and this Court retains subject matter jurisdiction.

II.     **Levy is Entitled to an Order Vacating the Cognovit Judgment.**

Levy seeks relief from a judgment under Federal Rule of Civil Procedure 60(b), which permits a party to challenge a final judgment. But the Rule does not set the standard to vacate a cognovit judgment, and federal common law offers no guidance. *Jacobs v. Acacia Chattanooga*

*Vehicle Auction, Inc.*, No. 2:10-CV-912, 2011 WL 6415519, at *2 (S.D. Ohio Dec. 21, 2011). Ohio law fills that gap, and under the Erie doctrine, governs here. *Id.*

> **A.     Ohio's Relaxed Standard Applies to Vacating the Cognovit Judgment.**

Ohio Rule of Civil Procedure 60(B) requires a movant to show (1) a meritorious defense, (2) entitlement to relief under one of the rule's grounds, and (3) that the motion was filed within a reasonable time. *Jacobs*, 2011 WL 6415519, at *2. In cognovit cases—where the defendant receives no notice and no opportunity to be heard—Ohio courts ease that burden. The movant needs only allege a meritorious defense and act in a timely manner. *Id.*

A party seeking to vacate a cognovit judgment does not need to prove that it will prevail on the defense. *Jacobs v. Acacia Chattanooga Vehicle Auction, Inc.*, No. 2:10-CV-912, 2011 WL 6415519, at *2 (S.D. Ohio Dec. 21, 2011). That party needs only to allege operative facts which, if accepted as true, would constitute a meritorious defense. *Id.* The court at this stage must not weigh credibility or resolve factual disputes. *Goodyear v. Stone*, 169 Ohio St. 124, 125, 158 N.E.2d 376, 378 (1959). Rather, courts should determine whether the movant has presented sufficient facts to support the defense alleged. *Citizens Bank & Tr. Co. v. Nussbaum*, No. 1371, 1974 WL 183985, at *3 (Ohio Ct. App. Oct. 30, 1974).

> **B.     Levy Presented Sufficient Facts to Support the Defense that He Signed the Cognovit Note Under Duress.**

Ohio law defines economic duress as a condition in which one party must accept terms not by free choice, but by pressure so overwhelming that it overcomes volition itself. *Local 17 Intern. Ass'n of Bridge, Structural & Ornamental Iron Workers Pension Fund v. Mooney Welding, Inc.*, 993 F. Supp. 615, 618 (N.D. Ohio 1997). The essential elements are three: first, the involuntary acceptance of the terms proposed; second, the absence of a reasonable alternative; and third, conduct by the other party that creates or exploits this situation of duress. *DiFranco v. Razakis*,

3

2011-Ohio-1677, ¶ 10 (8th Dist.) (citing *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 551 N.E.2d 1249 (1990)). That the aggrieved party may have had counsel present does not, alone, insulate the transaction from scrutiny. Where the pressure exerted is such that the will of the party is overborne, duress exists. *Young v. Young*, 455 N.E.2d 1360, 1362 (Ohio Ct. App. 1982).

Levy has more than satisfied this standard. His defense is not offered as a matter of speculation or assertion alone. It is grounded in sworn testimony, corroborating documentary evidence, and admissions elicited from Plaintiff's own representatives during an evidentiary hearing. The record shows Levy did not approach signing the cognovit note as a voluntary actor negotiating at arm's length. Rather, he did so under the shadow of an ultimatum issued by a powerful franchisor, threatening the very existence of his business.

The testimony by Kris Kaffenbarger, a Vice President of Plaintiff's organization, confirms that, at the relevant time, Levy operated 178 Wendy's restaurants in the United States. It is equally true that Plaintiff was aware Levy was undergoing cancer treatment at the time. (ECF No. 41 at 16:15–20; 17:5–7.) These were not distant or abstract facts; they were known to Plaintiff when it demanded Levy's signature. Kaffenbarger further testified that Plaintiff tied the future of Levy's U.S. franchise operations—entirely distinct from the subject of the Brazilian note—to him signing that note. (ECF No. 41 at 28:3–16; Plaintiff's Exhibit 3.)

This linkage was not incidental. It was the mechanism of coercion. Documents admitted into evidence establish that Plaintiff used Levy's domestic restaurant business as leverage to compel him to sign the Brazilian note and an accompanying general release. (Defendant's Exhibit 9; Plaintiff's Exhibit 4.) Yet the business loan underlying the note pertained solely to a Brazilian joint venture—one with no operational or financial relationship to Levy's U.S. franchises. (ECF No. 11 at 1–2; ECF No. 41 at 44:3–11.)

Still, Plaintiff insisted that unless Levy agreed to new obligations—including a mortgage on his personal residence and a sweeping general release—his entire domestic business would be placed in jeopardy. Levy testified that he expressed to Kaffenbarger on multiple occasions that he was unwilling to sign the note. (ECF No. 41 at 42:16–24.) Even so, Plaintiff escalated the pressure. Kaffenbarger admitted that the revised note replaced Levy's earlier guaranty under the Brazilian venture and included a general release eliminating Levy's potential claims against Plaintiff. (ECF No. 41 at 10:21–25; 11:20–22.) The company's internal communications further reveal an acute awareness of Levy's reluctance and a growing anxiety on Plaintiff's part as he delayed signing. (ECF No. 41 at 13:22–25; 14:13–22; Plaintiff's Exhibit 5.)

The threats made to Levy were neither subtle nor implied. They were stark and unambiguous. According to Levy's testimony, Kaffenbarger told him plainly: unless he signed, he would "lose the entire business." (ECF No. 41 at 40:14–25; 43:5–9.) Plaintiff's Associate Counsel, Kerry Green, issued the same threat in equally clear terms. (*Id*. at 44:19–24.) That threat is confirmed by Plaintiff's own written correspondence, in which Green declared that unless Levy accepted the "settlement package" and executed the documents in person in Dublin, Ohio, he would face not only the termination of his franchise rights but also litigation. (Plaintiff's Exhibit 4.) This ultimatum was not the act of a rogue employee, but a deliberate strategy directed by Plaintiff's senior leadership. The consequence conveyed to Levy was unmistakable: sign or suffer total ruin. (*Id*. at 45:8–14.)

Levy sought redress through other avenues. He contacted Plaintiff's CEO, Todd Penegor, about the duress and his unwillingness to sign. But Penegor offered no reprieve. (ECF No. 41 at 55:23–25.) The choice Levy faced was not a genuine negotiation but an existential threat, what he

5

described in visceral terms: "Die with a shot to the head or a slow bleed to the heart." (ECF No. 41 at 55:17–25; 56:1–6.)

This is the very sort of pressure that renders legal counsel ineffectual. The presence of an attorney does not dissolve duress when overwhelming coercion forecloses the client's options. *Young*, 455 N.E.2d at 1362. Green's statement, the explicit threats, tying the Brazilian note to Levy's U.S. operations—all support the conclusion that Plaintiff was not offering a business proposition to Levy, but pushing a coercive demand that left him no room to maneuver.

The Court need not now determine whether Levy will ultimately prevail on his duress defense. At this stage, the inquiry is more narrow: whether Levy has alleged and supported with evidence a defense sufficient to support the motion to vacate at this juncture. He has. The record shows that his acceptance of Plaintiff's terms was not voluntary; that he had no reasonable alternative; and that the pressure brought to bear on him came from the highest levels of Plaintiff's leadership, wielding the power of economic ruin as a cudgel.

Under Ohio law, those facts are enough. The duress defense has been plausibly and credibly raised, supported not by speculation but by testimony, exhibits, and sworn declarations. Levy has met his burden.

## CONCLUSION

For these reasons, the Court should grant the motion to vacate and grant any other relief that the Court deems just and proper.

Dated: May 5, 2025

Respectfully submitted,

*/s/ Jon Polenberg*
Jon Polenberg, Florida Bar No. 653306
*(Admitted Pro Hac Vice)*
BECKER & POLIAKOFF, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
Telephone: (954) 987-7550
Facsimile: (954) 985-4176
jpolenberg@beckerlawyers.com
*Attorneys for Defendant*
*Andrew Levy*

## CERTIFICATE OF SERVICE

I certify that on May 5, 2025, the foregoing document was electronically filed with the Clerk of the Court which will electronically serve a copy of same on all counsel of record for all parties.

*/s/ Jon Polenberg*
Jon Polenberg

7