UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Wendy's Netherlands B.V.,

    Plaintiff,

    v.

Andrew Levy,

    Defendant.

Case No. 2:24-cv-3077

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

This matter is before the Court on the Amended Motion to Vacate Cognovit Judgment, ECF No. 11, filed by Andrew Levy ("Defendant"). The Court held an evidentiary hearing in April 2025, and the parties filed post-hearing briefs, ECF Nos. 42, 43. Upon full consideration of the testimony and evidence, and for the reasons explained below, Defendant's motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Wendy's Netherlands B.V. ("Wendy's") is an international fast-food restaurant with its American headquarters located in Dublin, Ohio. Compl. ¶¶ 1, 4, ECF No. 5. Defendant and his company, Starboard International Holdings, B.V. ("Starboard"), are owners / investors in several Wendy's franchises. *Id.* ¶ 5; ECF No. 11-3 at PAGEID ## 950–52, 55.

The Court summarized the factual background and procedural history of this matter in its prior Opinion and Order, ECF No. 23. For ease of reference and

for purposes of completion, the relevant portions of that summary are reproduced here as follows:

> On or about October 20, 2015, and August 2, 2017, Wendy's entered into two separate Credit Agreements with WBR Franquais 3 Participacoies LTDA ("Borrower") related to Wendy's franchises in Brazil. Compl. ¶¶ 6–7, ECF No. 5. Pursuant to [the] Credit Agreements, Wendy's agreed to lend money to the Borrower to support the development and operation of Wendy's restaurants in Brazil through a joint venture involving Starboard. Id. ¶¶ 6–8.
>
> In tandem with the Credit Agreements, Wendy's entered into a Guarantee Agreement ("Guarantee") with Defendant and Starboard, which was subsequently amended twice. Compl. ¶ 8, ECF No. 5; Guarantee at PAGEID # 370, ECF No. 5. Through the Guarantee, Defendant and Starboard, jointly and severally, guaranteed the prompt and complete payment and performance by the Borrower of its obligations under the Credit Agreements. Compl. ¶ 9, ECF No. 5; Guarantee at PAGEID # 373, ECF No. 5.
>
> \* \* \*
>
> In or around December 2019, [Wendy's] Brazil restaurants were wound down. ECF No. 11-2 at PAGEID # 948. Consequently, the outstanding amounts under the Credit Agreements (and the Guarantee) became immediately due and payable. Guarantee at PAGEID # 373, ECF No. 5. From December 2019 to February 2020, [Wendy's] and Defendant negotiated terms concerning Defendant's obligations under the Guarantee and Credit Agreements. ECF No. 1 1-3.
>
> [Wendy's] and Defendant entered into a Cognovit Promissory Note ("Cognovit Note") on February 23, 2020, which reflected and secured the debt due and owed individually by Defendant to [Wendy's] pursuant to his obligations under the Guarantee and with respect to the Credit Agreements. Compl. ¶¶ 10–12, ECF No. 5; Cognovit Note at PAGEID # 362–63, ECF No. 5. Defendant agreed to pay [Wendy's] the principal sum of $5,550,360.55 plus interest at the rate of four and one-half percent (4.5%) per annum, and Defendant was to pay quarterly installments of the principal and interest beginning on March 15, 2020. Compl. ¶¶ 13–15, ECF No. 5; Cognovit Note at PAGEID # 362, 367, ECF No. 5

\* \* \*

> In both January and April 2024, Defendant failed to make his quarterly payments under the Cognovit Note. Compl. ¶¶ 18–19, ECF No. 5. Each failure constituted an event of default, such that [Wendy's] elected to declare all principal and interest to be immediately due and payable. *Id.* ¶¶ 26–27.
>
> On May 1, 2024, [Wendy's] filed a Complaint for Confession of Judgment on the Cognovit Note in the Franklin County Court of Common Pleas. *Id.*, generally. Pursuant to the warrant of attorney, the confessing attorney representing Defendant also filed an Answer on his behalf. ECF No. 6. Shortly thereafter, the state court entered a Cognovit Judgment against Defendant in the amount of $4,165,483.37, plus interest, late fees, and costs and expenses, including attorneys' fees. ECF No. 1-4 at PAGEID # 59.

*Id.* at PAGEID ## 1223–26.

Defendant subsequently removed the case to this Court under diversity jurisdiction. ECF No. 1. He asks the Court to vacate and set aside the state court's Cognovit Judgment against him. ECF No. 11. In particular, Defendant contends that he signed the Cognovit Note under duress.[1] *Id.*; *see also* ECF No. 43 at PAGEID # 1404. Wendy's disputes Defendant's duress allegations and urges the Court to deny Defendant's motion. ECF No. 42 at PAGEID # 1393.

The parties appeared for an evidentiary hearing on the duress defense on April 18, 2025, and submitted supplemental briefing shortly thereafter. ECF Nos. 42, 43. Defendant's motion is fully briefed and ripe for consideration.

---

[1] The Court found that Defendant's other asserted defense, lack of consideration, was not meritorious. ECF No. 23 at PAGEID # 1238.

## II. DISCUSSION

### A. Subject-Matter Jurisdiction

Because Defendant asks the Court to vacate a state-court judgment, the Court sought briefing from the parties on the *Rooker-Feldman* doctrine. *See generally District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923). The Court now concludes that the doctrine does not apply to this case.

Federal courts are "courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Co. of Am.*, 511 U.S. 375, 377 (1994). As such, a federal court is obliged to *sua sponte* examine jurisdictional issues, including the existence of subject-matter jurisdiction. *Capron v. Van Noorden*, 6 U.S. 126, 127 (1804); *Clark v. United States*, 764 F.3d 653, 657 (6th Cir. 2014); *see also In re DePuy Orthopaedics*, 953 F.3d. 890, 892 (6th Cir. 2020) ("[F]ederal courts must catch jurisdictional defects at all stages of a case, even when substantial resources have already been invested in it.").

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the

district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A defendant who removes a case to federal court carries the burden of establishing federal jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871–72 (6th Cir. 2000).

Relevant here, the *Rooker-Feldman* doctrine divests federal district courts of subject-matter jurisdiction to review state court judgments. In other words, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments" and over claims that are "inextricably intertwined" with state-court judgments. *Johnson v. Ohio Supreme Court*, 156 F. App'x 779, 781–82 (6th Cir. 2005). Because the *Rooker-Feldman* doctrine is jurisdictional in nature, its application cannot be waived. *Blanton v. United States*, 94 F.3d 227, 233–34 (6th Cir. 1996).

The *Rooker-Feldman* doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 284 (2005). When considering whether the *Rooker-Feldman* doctrine bars a claim, the "pertinent question" is "whether the 'source of the injury' upon which plaintiff bases his federal claim is the state-court judgment." *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) (quotation marks and citation omitted); see also *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) ("In the wake

of *Exxon*, [the Sixth Circuit] has distinguished between plaintiffs who bring an impermissible attack on a state court judgment—situations in which *Rooker-Feldman* applies—and plaintiffs who assert independent claims before the district court—situations in which *Rooker-Feldman* does not apply.").

At first glance, Defendant, in seeking vacatur of the Cognovit Judgment, seems to ask the Court to improperly second-guess a state-court decision. After all, a confessed judgment implies a final determination that a defendant was in default in the stated amount under a valid and enforceable note. Faced with parties who file federal actions seeking to set aside state-court cognovit notes or other confessions of judgment, then, some courts conclude that the *Rooker-Feldman* doctrine prohibits the exercise of jurisdiction. *See, e.g.*, *Stoss v. Singer Fin. Corp.*, No. CIV.A.08-5968, 2010 WL 678115, at *4 (E.D. Pa. Feb. 24, 2010) ("[A]llowing a plaintiff to attack the validity of a state court confession of judgment in a federal . . . proceeding would violate the *Rooker-Feldman* doctrine.").

The instant case presents a more nuanced question, though, because it was not originally filed in federal court—rather, Defendant removed the case after the state court's entry of the Cognovit Judgment. *See* ECF No. 1. Courts vary in their interpretations of whether and how the *Rooker-Feldman* doctrine operates in removed cases, particularly in the confessed judgment context. A spectrum of sorts has emerged. On one end are courts holding that *Rooker-Feldman* precludes federal jurisdiction upon removal over confessed judgments that have not been stricken or opened in state court. *See, e.g.*, *Complete Bus. Sols. Grp.*,

*Inc. v. Sunrooms Am., Inc.*, 474 F. Supp. 3d 693, 696 (E.D. Pa. 2020). On the other end are courts holding that, where the deadline to file post-judgment motions has not elapsed, federal courts may exercise jurisdiction over any motions as merely the continuation of the state-court proceedings. *See, e.g., Jenkins v. MTGLQ Invs.*, 218 F. App'x 719, 724 (10th Cir. 2007). In the middle are courts requiring that any motions to set aside the state-court judgment be filed in state court prior to removal. *See, e.g., Westlake Legal Grp. v. Yelp, Inc.*, 599 F. App'x 481, 483 (4th Cir. 2015) ("Yelp has not brought a new federal case seeking to challenge a state court judgment but has removed an existing state case where a motion to set aside the judgment was pending. Such removals are not barred by the *Rooker-Feldman* doctrine.").

Courts in this Circuit generally fall on the side of exercising federal jurisdiction in removed cases involving motions to set aside state-court judgments, finding that such actions do not implicate the *Rooker-Feldman* doctrine. *See, e.g., Chaz Const., LLC v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005) ("[I]n cases involving removal, the district court is instructed to 'take [ ] up the case where the State court left it off.'" (quoting *Duncan v. Gegan*, 101 U.S. 810, 812 (1879))); *Munsey v. Testworth Lab'ys*, 227 F.2d 902, 903 (6th Cir. 1955) ("Prior to removal the state court judgment was concededly subject to being set aside in the state court. It was subject to the same hazard in the federal court after removal."); *Int'l Med. Educ. Grp., LLC v. Furst*, No. 1:19-CC-02694, 2020 WL 364225, at *1 (N.D. Ohio Jan. 22, 2020) (noting that "[w]hen all

that remains of an action is the enforcement of a judgment, removal to federal court is not authorized" but observing that "[p]laintiff's action was not yet at this stage; it was still subject to a timely filed motion to vacate or appeal." (citations omitted)); *Fifth Third Bank v. MacLaren*, No. 3:08CV2819, 2009 WL 10714901, at *2 (N.D. Ohio July 28, 2009) (retaining jurisdiction of motion to vacate cognovit judgment in removed case because "[d]efendants could have brought a motion in the state court to set aside judgment . . . The status of the judgment remains the same whether the challenge occurs there or here[.]").

In this case, the state court entered the Cognovit Judgment against Defendant in May 2024. Defendant removed the case and sought to vacate the Cognovit Judgment in June 2024—within the 30-day removal window provided in 28 U.S.C. § 1446(b)(1) and within a reasonable time after the Cognovit Judgment was entered pursuant to Rule 60(B). Because the period for reconsideration of the Cognovit Judgment had not elapsed prior to Defendant's removal to this Court, and because Defendant invoked the Court's original jurisdiction on removal to set aside the Cognovit Judgment (instead of filing a new action attacking a separate state-court judgment), the *Rooker-Feldman* doctrine permits the Court to exercise jurisdiction here.[2]

---

[2] Additionally, though Defendant is not necessarily asserting claims but rather is outlining defenses, he objects to the Cognovit Judgment on the ground that Wendy's invalidly procured the underlying Cognovit Note through duress. ECF No. 43 at PAGEID # 1404. This case thus concerns, in some sense, an independent prior injury (the duress) that the state court failed to remedy. *Cf. Meros v. Dimon*, No. 2:17-CV-103, 2017 WL 6508723, at *5 (S.D. Ohio Dec. 20, 2017) ("[C]laims that the defendants

**B.     Merits Analysis**

Having confirmed subject-matter jurisdiction, the Court looks to the merits of Defendant's motion to vacate.

**1.     Standard of Review**

"The decision to grant or deny a [Rule 60(B)] motion is left to the sound discretion of the trial court." *Sadraoui v. Hersi*, No. 10AP-849, 2011 WL 2536448, at *3 (Ohio Ct. App. June 28, 2011).[3] "To prevail on a motion brought under Civ. R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc. v. ARC Indus., Inc.*, 351 N.E.2d 113, 116 (Ohio 1976); *Mock Rd. Supermarket, Inc. v. MiraCit Dev. Corp.*, No. 10AP–913, 2011 WL 4033422, at *2 (Ohio Ct. App. Sept. 13, 2011) (quoting *GTE Automatic*). This test is "modified when a party is seeking relief from a cognovit judgment." *Nat'l. City Bank v. Rini*, 834 N.E.2d 836, 839 (Ohio Ct. App. 2005). Such a party "need only satisfy the first and third prongs of

---

procured the state court judgments through fraud or other improper means are independent claims and thus *Rooker-Feldman* does not apply."); *see also* ECF No. 10-1 (proposed answer filed by Defendant asserting counterclaim for fraud).

[3] As the Court explained in its prior Opinion and Order, ECF No. 23, Ohio law controls in this case.

[*GTE Automatic*]: (1) the party has a meritorious defense or claim to present if the court grants relief, and (2) the party made the motion within a reasonable time." *Mock Rd. Supermarket*, 2011 WL 4033422, at *2.

### 2. Analysis

The Court already found that Plaintiff timely moved for relief from judgment. ECF No. 23 at PAGEID # 1232. The only issue, then, is whether Defendant has asserted a meritorious defense to the Cognovit Judgment.

Under Ohio law, a defense to a cognovit judgment is meritorious if it "goes to the integrity and validity of the creation of the debt or note, the state of the underlying debt at the time of confession of judgment, or the procedure utilized in the confession of judgment on the note." *Export-Import Bank of the United States v. Advanced Polymer Sciences, Inc.*, 604 F.3d 242, 246 (6th Cir. 2010) (internal quotation omitted); *25400 Euclid Ave., L.L.C. v. Universal Rest. Holdings, L.L.C.*, No. 92905, 2009 WL 4695458, at *3 (Ohio Ct. App. Dec. 10, 2009). Some defenses that courts have found meritorious include payment or non-default on the cognovit note, "improper conduct in obtaining the debtor's signature on the note[,] deviation from proper procedures in confessing judgment on the note[,] and miscalculation of the amount remaining due on the note at the time of confession of judgment." *First Nat. Bank of Pandora v. Freed*, No. 5–03–36, 2004 WL 1489074, at *2 (July 6, 2004). A meritorious defense exists "if it is not a sham and when, if true, it states a defense in part, or in whole, to the claims for relief set forth in the complaint." *Simmons Cap. Advisors, Ltd. v. Kendall*

*Grp., Ltd.*, No. 05AP-1087, 2006 WL 1230673, at *5 (Ohio Ct. App. May 9, 2006) (citation omitted).

"A party seeking to vacate a cognovit judgment need not prove that he will prevail on a meritorious defense." *Rose Chevrolet, Inc. v. Adams*, 520 N.E.2d 564, 566 (Ohio 1988). Instead, the party must only "allege facts with enough specificity to allow the court to decide whether a meritorious defense exists" and "provide operative facts in support." *SZD Whiteboard, LLC v. Omnicity Corp.*, No. 2:11-CV-532, 2012 WL 13026825, at *2 (S.D. Ohio Sept. 6, 2012) (citing *Lykins Oil Co. v. Pritchard*, 862 N.E.2d 192, 194 (Ohio Ct. App. 2006)); *see also Fifth Third Bank v. MacLaren*, No. 3:08-CV-02819, 2009 WL 3271364, at *4 (N.D. Ohio Oct. 9, 2009) ("The movant must demonstrate each element by operative facts presented in materials accompanying the motion for relief from judgment." (citing *Adomeit v. Baltimore*, 316 N.E.2d 469, 474 (Ohio Ct. App. 1974))). These asserted facts "must be more than mere allegations." *MacLaren*, 2009 WL 3271364, at *4. Rather, to present a meritorious defense, a party must "introduce credible evidence from which reasonable minds might reach different conclusions upon the issue involved." *Marcinko v. Lyon*, No. 16866, 1995 WL 217037, at *2 (Ohio Ct. App. Apr. 12, 1995).

Here, Defendant raises the defense of duress. Economic duress may be a defense to a contractual obligation when the party seeking to avoid the obligation faced improper threats depriving them of any reasonable alternative besides assenting to the threatening party's terms. *Blodgett v. Blodgett*, 551 N.E.2d

1249, 1251 (Ohio 1990). To avoid an obligation based on economic duress, a party must show that (1) one side involuntarily accepted the terms of another; (2) the circumstances permitted no other alternative; and (3) said circumstances resulted from coercive acts of the opposite party. *Id.* (citation omitted). "Merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion." *Praetorium Secured Fund I, L.P. v. Keehan Tenn. Invs., L.L.C.*, No. 15CA010757, 2016 WL 7600300, at *5 (Ohio Ct. App. Dec. 27, 2016) (citation omitted); *see also Blodgett*, 551 N.E.2d at 1251 ("The assertion of duress must be proven to have been the result of the defendant's conduct and not by the plaintiff's necessities." (citation omitted)).

Defendant contends that Wendy's "pressured" him to "quickly" execute the Cognovit Note and "issued an ultimatum" that it would terminate the parties' remaining North America franchisee agreements if Defendant failed to sign. ECF No. 11 at PAGEID # 904–05; *see also* ECF No. 20 at PAGEID # 1191; Hr'g Tr. 40:7–41:1 ("Q. What did Mr. Kaffenbarger say? A. He said that we needed to get the Brazil note modified, promissory note signed, or we would have to lose the other franchises . . . [t]erminate our U.S. franchise."), 44:19–22 ("[W]e didn't have a lot of room for negotiation. [Wendy's] told me that it would be damaging, that we would be terminated if we didn't sign it."), 45:8–10 ("Q. What was Ms. Green's position? A. It was very clear that the withdraw meant we were

being terminated in the domestic.").[4]  Defendant alleges that he involuntarily accepted Wendy's terms to avoid "financial death to [him] and his business," which would occur if Wendy's followed through on its "ultimatum." ECF No. 20 at PAGEID # 1190–91; *see also* Hr'g Tr. 43:5–9 ("It was very clear, I was told directly that I would lose the entire business, which was my entire livelihood, if I did not cooperate.").[5]

The Court finds that Defendant has established the existence of a meritorious duress defense.  Defendant testified under oath that he involuntarily accepted and executed the Cognovit Note because he had no other choice in the face of Wendy's ultimatum threatening the termination of his 100+ domestic franchises.  These operative facts, taken as true, constitute a defense to the validity of the Cognovit Note underlying the Cognovit Judgment.  Thus, Defendant is entitled to relief under Rule 60(B) in the form of vacatur of the Cognovit Judgment.[6]  *See Nat'l City Bank*, 834 N.E.2d at 839 ("[I]n light of a

---

[4] All citations to "Hr'g Tr." are to the "rough" transcript prepared for the Court's use in rendering this Opinion and Order.

[5] For its part, Wendy's denies issuing such an ultimatum. ECF No. 16 at PAGEID # 1154; Hr'g Tr. 36:24–37:5.  That the issue is disputed, however, goes to the merits of the duress defense and does not impact whether Defendant has shown merely the existence of the defense. *See, e.g., Furst*, 2020 WL 5250439, at *3. Additionally, Wendy's argues that even if it conveyed an ultimatum during its negotiations with Defendant, it did not create duress because "[a] threat to do what one is legally entitled to do does not constitute duress." ECF No. 16 at PAGEID # 1154 (citation omitted). Wendy's has not demonstrated, though, that it had the right to terminate *all* of Defendant's U.S. franchise agreements, as Defendant testified it threatened to do.

[6] Whether Defendant will *prevail* on his duress defense, however, is a different question for later in these proceedings.  That said, the Court observes that Defendant has an

proper allegation of a meritorious defense, any doubt should be resolved in favor of setting aside the judgment so that the case may be decided on the merits.").

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to vacate, ECF No. 11, is **GRANTED**, and the Cognovit Judgment is **VACATED**. The parties are **ORDERED** to file a joint status report in which they (1) propose next steps for this case, and (2) consider whether mediation would be appropriate at this juncture. The parties **SHALL** file the joint status report **WITHIN FOURTEEN DAYS** of this Opinion and Order.

The Clerk shall terminate ECF No. 11 as a pending motion.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT

---

uphill battle, considering that Defendant, with the benefit of counsel, actively negotiated the Cognovit Note's terms with Wendy's, received more favorable "concessions" from Wendy's upon request, and raises duress (as opposed to mere pressure or forceful encouragement) for the first time now despite paying on the Cognovit Note for four years. Hr'g Tr. 48:3–50:11, 50:19–51:6. As one court faced with a similar situation put it, "[t]his is hardly characteristic of a party whose will is overcome by an improper compulsion." *Morana v. Foley*, 54 N.E.3d 749, 754 (Ohio Ct. App. 2015).