

**From:** Kaffenbarger, Kris <[Kris.Kaffenbarger@wendys.com](mailto:Kris.Kaffenbarger@wendys.com)>
**Sent:** Wednesday, January 29, 2020 7:41 AM

**To:** Andrew Levy <alevy@starboardwendys.com>; ckelleher@auspexcapital.com; Koumas, Peter <Peter.Koumas@wendys.com>
**Cc:** Green, Kerry <Kerry.Green@wendys.com>; Vidra, Kirk <Kirk.Vidra@wendys.com>; Polenberg, Jon <JPolenberg@beckerlawyers.com>
**Subject:** Re: [EXT] RE: Brazil note

[EXTERNAL EMAIL]

Good morning Andrew,

I'm growing concerned for the lack of forward progress on getting the Brazil note and related documents finalized.

As stated, it remains the expectation of Wendy's that we have everything in place and signed by the end of this week.

I respectfully request you reiterate this is a high priority on your side.

Thanks,
Kris

**From:** Andrew Levy <alevy@starboardwendys.com>
**Sent:** Friday, January 24, 2020 6:51:19 AM
**To:** Kaffenbarger, Kris <Kris.Kaffenbarger@wendys.com>; ckelleher@auspexcapital.com <ckelleher@auspexcapital.com>; Koumas, Peter <Peter.Koumas@wendys.com>
**Cc:** Green, Kerry <Kerry.Green@wendys.com>; Vidra, Kirk <Kirk.Vidra@wendys.com>; Polenberg, Jon <JPolenberg@beckerlawyers.com>
**Subject:** RE: [EXT] RE: Brazil note

Kirk and Kerry,

Please meet Jon Polenberg (copied here) who is one of our attorney's trying to help us unravel the massive complexity associated with the unwinding of Brazil. As I am sure you can appreciate there are multiple legal, tax and accounting issues that we are trying to work through diligently in order to give you an intelligent and responsible reply to your proposed new promissory note and structure. We should have some solid feedback next week. Thanks for your patience.

Andrew Levy
CEO
Starboard Group of Companies
12540 West Atlantic Blvd.
Coral Springs, FL 33071
(954) 255-2266 ext 102

**From:** Kaffenbarger, Kris <Kris.Kaffenbarger@wendys.com>
**Sent:** Thursday, January 23, 2020 7:55 AM
**To:** Andrew Levy <alevy@starboardwendys.com>; ckelleher@auspexcapital.com; Koumas, Peter <Peter.Koumas@wendys.com>
**Cc:** Green, Kerry <Kerry.Green@wendys.com>; Vidra, Kirk <Kirk.Vidra@wendys.com>
**Subject:** RE: [EXT] RE: Brazil note

Andrew,

I'll watch for updates on the JCP.

On the Brazil note, please have your counsel contact Kirk and Kerry (contact information below and cc'd here). I'm sure you have already shared the urgency here as we need to have it signed by month end.

Thanks,
Kris



**Kerry Renker Green**
Associate General Counsel – Global Franchise
The Wendy's Company
One Dave Thomas Blvd. • Dublin, OH • 43017
O : 614-764-3123 • C : 614-940-4824 • E : kerry.green@wendys.com



**Kirk A. Vidra**
Associate General Counsel – Global Development
The Wendy's Company
One Dave Thomas Blvd. • Dublin, OH • 43017
O: 614-764-6743 • F: 614-764-3243
E: Kirk.Vidra@wendys.com

**Kris Kaffenbarger, CPA, CMA**
Vice President, Global System Optimization, Franchise and Portfolio Management
The Wendy's Company ◆ 1 Dave Thomas Boulevard ◆ Dublin, Ohio 43017
O: +1.614.764.8443 · M: +1.614.946.6160
E: Kris.Kaffenbarger@wendys.com

---

**From:** Andrew Levy <alevy@starboardwendys.com>
**Sent:** Thursday, January 23, 2020 9:47 AM
**To:** Kaffenbarger, Kris <Kris.Kaffenbarger@wendys.com>; ckelleher@auspexcapital.com; Koumas, Peter <Peter.Koumas@wendys.com>
**Subject:** [EXT] RE: Brazil note

Kris,

I should have comments to Auspex today for the JCP. I think we are pretty close. In regards to the Brazil note, as you can imagine it is a very complex issue and our attorneys are trying to process everything to give intelligent feedback. Who at Wendy's should I put them in touch with? Would it be Kirk?

Andrew Levy
CEO
Starboard Group of Companies
12540 West Atlantic Blvd.
Coral Springs, FL 33071
(954) 255-2266 ext 102

---

**From:** Kaffenbarger, Kris <Kris.Kaffenbarger@wendys.com>
**Sent:** Wednesday, January 22, 2020 12:26 PM

**To:** Andrew Levy <alevy@starboardwendys.com>; ckelleher@auspexcapital.com; Koumas, Peter <Peter.Koumas@wendys.com>
**Subject:** Re: Brazil note

Good afternoon,

Checking back here as I don't recall hearing back on my note below.

I want to confirm we're on track to have this fully executed by the end of January.

Please advise.

Thanks,
Kris

---

**From:** Kaffenbarger, Kris
**Sent:** Thursday, January 16, 2020 9:39:32 AM
**To:** Andrew Levy (alevy@starboardwendys.com) <alevy@starboardwendys.com>; ckelleher@auspexcapital.com <ckelleher@auspexcapital.com>; Koumas, Peter <Peter.Koumas@wendys.com>
**Subject:** Brazil note

Hi Andrew,

Hope you're continuing to feel better each day.

As follow-up to our most recent discussion, I've attached clean and redlined versions of the promissory note, the revised amortization schedule and a suggested revised JCP that we would use as exhibit D. Please note the suggested JCP assumes that you sell Richmond and complete 100% of the remaining restaurants by 12.31.24. Please review and let's plan to discuss next week. We want to get this note fully executed by end of this January.

Look forward to speaking next week.

Thanks,
Kris


**Kris Kaffenbarger, CPA, CMA**
**Vice President, Global System Optimization, Franchise and Portfolio Management**
The Wendy's Company  ◆  1 Dave Thomas Boulevard  ◆  Dublin, Ohio  43017
O: 614.764.8443 · M: 614.946.6160
E: Kris.Kaffenbarger@wendys.com


**\*\*CAUTION: This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and known the content is safe.\*\***

**Wendy's Information Security Notice: This is an external email. Stop and think before you click links or open attachments.**

**\*\*CAUTION: This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and known the content is safe.\*\***

**CAUTION: This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and known the content is safe.**



**From:** "Green, Kerry" <Kerry.Green@wendys.com>
**Date:** February 14, 2020 at 5:19:26 PM MST
**To:** Andrew Levy <alevy@starboardwendys.com>, "Daughney, Brian" <BDaughney@beckerlawyers.com>
**Cc:** "Kaffenbarger, Kris" <Kris.Kaffenbarger@wendys.com>, "Koumas, Peter" <Peter.Koumas@wendys.com>, "Kale, Aaron" <Aaron.Kale@wendys.com>, "Niehaus, Stephanie E." <stephanie.niehaus@squirepb.com>
**Subject: Brazil - Loan Guaranty - Documentation - Feb. 14, 2020**


Offer to Compromise
Subject to CPLR 4547/Rule 408 (or equivalent)

Dear Brian and Andrew:

Further to our recent discussions, I include with this email Wendy's "settlement package," which represents our best offer to resolve the outstanding issues related to the Levy/Starboard Guarantee. I've also added a red-line to the prior version of the note that was sent in January. We believe this package is fair to both sides and fully takes into account and responds as best we are able to the concerns you have raised. As we feel we have exhausted discussion on these issues, and because this is Wendy's best offer, this does represent our final offer. For that reason, unless the offer is accepted and all documents are fully executed at Wendy's offices in Dublin, Ohio by the end of business on Wednesday, February 19, this offer will automatically expire and we will consider our discussions to be terminated.

We sincerely hope that the issues related to the Guarantee can be resolved without escalation and/or litigation. Wendy's reserves all rights and remedies.

Sincerely,

DRAFT: NOT FOR EXECUTION
SUBJECT TO CPLR 4547/RULE 408 (or equiv.)



Direct Dial No.
(614) 764-3123

Fax (614) 764-3243
kerry.green@wendys.com

**VIA HAND DELIVERY**

February ☐, 2020

10 S&M Foods, LLC
7 S & M Foods, LLC
8 S & M Foods, LLC
9 S&M Foods, LLC
Starboard Group of Alabama, LLC
Starboard Group of Berwyn, INC.
Starboard Group of Great Lakes, LLC
Starboard Group of Richmond North, L.L.C.
Starboard Group of Richmond South, L.L.C.
Starboard Group of Southeast Florida, LLC
Starboard Group of Space Coast, LLC
Starboard Group of Tampa II, LLC
Starboard Group of Tampa, LLC
Starboard with Cheese, LLC
12540 West Atlantic Blvd.
Coral Springs, FL  33071

Attn:  Mr. Andrew Levy

Re:    Franchise Agreements for Wendy's Hamburgers Restaurants identified on Exhibit A (the
       "**Restaurants**")

### NOTICE OF NONCOMPLIANCE WITH REIMAGING REQUIREMENTS AND AGREEMENT OF FOREBEARANCE OF DEFAULT

Dear Franchisees:

Reference is made to those certain Unit Franchise Agreements, as set forth on Exhibit A (the "**Franchise Agreements**") by and between the entities listed above (collectively, "**Franchisees**") and Quality Is Our Recipe, LLC, as successor-in-interest to Wendy's International, LLC ("**Wendy's**").

As you know, Wendy's has Brand Sustainability requirements, which are supported by the Franchise Agreements' requirement that you refurbish your Restaurants at your expense once every five years to conform to the building design, trade dress, color schemes, and presentation of Proprietary Marks in a manner consistent with the then-current image in effect for new restaurants under the System.  The Image Activation initiative, supported by Wendy's Brand Sustainability requirements, has been in place since 2014 and requires that you have remodeled 50% of your

DRAFT: NOT FOR EXECUTION
SUBJECT TO CPLR 4547/RULE 408 (or equiv.)

Restaurants by December 31, 2019 and 10% additional Restaurants by December 31, 2020. Notwithstanding these requirements, according to the Letter of Agreement dated December 3, 2018 between Franchisor and Franchisees, you agreed to a Reinvestment Plan whereby certain the timely completion of all required work to perform reimaging would be performed according to the Reinvestment Completion Dates agreed to therein. You were required to make "all reasonable efforts to schedule and complete the reimage of 40% of your Restaurants by the end of calendar year 2020. . . and at the rate of 10% of your existing portfolio per year" in addition to other requirements. As of December 31, 2019, you have only remodeled 19 of your Restaurants, and only have another 6 Restaurants scheduled for reimaging in 2020, resulting in a breach of the Franchise Agreements.

Notwithstanding the foregoing, Wendy's is willing to temporarily forbear default to provide you with an opportunity to complete the reimaging requirement. By **September 27, 2020** you must submit a plan for reimaging 40% of your Restaurants with a completion date of no later than December 31, 2020. You may choose to utilize Wendy's Franchise Development Program ("FDP") to contract with Wendy's as an independent contractor to perform project management services for one or more of your reimage projects, with a fee that varies depending on your project type. If you elect to participate in our FDP Program, you must also execute the appropriate documents and pay all applicable fees **by September 27, 2020**.

Additionally, on or before **September 27, 2020**, you must have executed an amended and restated reinvestment plan to address the reimage schedule for the rest of the Restaurants in your portfolio. Please work with Kris Kaffenbarger to ensure this deadline is met.

Failure to adhere to each of the above deadlines, including the failure to diligently pursue completion of the reimaging work and providing Wendy's with evidence of your progress, will result in Wendy's enforcement of default in addition to all other remedies Wendy's may exercise under the Franchise Agreements.

This notice and any other notice that may be sent to you are sent without prejudice to any other notice or action that is or is not yet pending, and Wendy's hereby reserves all of its rights in this regard.

Your signature to the below signifies your acknowledgement and understanding of these terms and conditions in this Letter Agreement. You may execute two copies and keep one for your own record-keeping purposes, please return one original to my attention.

Sincerely,

QUALITY IS OUR RECIPE, LLc

DRAFT NOT FOR EXECUTION

Kerry Green
Associate General Counsel – Global Franchise

*(Signatures continue on following page)*

DRAFT:  NOT FOR EXECUTION
SUBJECT TO CPLR 4547/RULE 408 (or equiv.)

Acknowledged and agreed on February ___, 2020,

FRANCHISEES:

By: <u>DRAFT NOT FOR EXECUTION</u> _____
    Title

DM 398328
cc:    Kris Kaffenbarger
        Cheri Roell
        Nancy Lee-Yorke
        Kirk Vidra
        Laura Stratton
        Zack Kollias
        Abigail Pringle
        Peter Koumas
        Brian Daughney

DRAFT:  NOT FOR EXECUTION
SUBJECT TO CPLR 4547/RULE 408 (or equiv.)

**EXHIBIT A**
**Restaurants**

| Effective Date | Expiration Date | Contract No. | Site No. | Restaurant Address |
|---|---|---|---|---|
| 5/29/2015 | 7/31/2034 | 8326 | 11498 | 602 HIGHWAY 80 E , DEMOPOLIS, MARENGO COUNTY, ALABAMA |
| 6/1/2012 | 6/1/2032 | 7818 | 10475 | 16056 HWY 280 , CHELSEA, SHELBYCOUNTY, ALABAMA |
| 9/3/2013 | 9/3/2033 | 7526 | 10503 | 967 GILBERTS FERRY RD , ATTALLA, ETOWAHCOUNTY, ALABAMA |
| 5/21/2014 | 6/1/2032 | 7974 | 11448 | 1600 COUNTY ROAD 437, CULLMAN, CULLMAN COUNTY, ALABAMA |
| 1/11/2019 | 6/30/2043 | 7258 | 3177 | 1920 MCFARLAND BLVD., NORTHPORT, TUSCALOOSA COUNTY, ALABAMA |
| 12/19/2012 | 12/31/2032 | 7259 | 5134 | 2045 VILLAGE DR, LEEDS, ST.CLAIR   COUNTY, ALABAMA |
| 1/31/2017 | 10/23/2035 | 7260 | 5563 | 5018 OSCAR BAXTER DR, TUSCALOOSA, TUSCALOOSA COUNTY, ALABAMA |
| 12/19/2012 | 12/31/2032 | 7261 | 7393 | 45 JIMMY HINTON DR., OXFORD , CALHOUN   COUNTY, ALABAMA |
| 12/19/2012 | 12/31/2032 | 7262 | 7961 | 75 TOWER ROAD , OXFORD , CALHOUN   COUNTY, ALABAMA |
| 2/1/2017 | 2/1/2037 | 7263 | 8453 | 5801 AL HIGHWAY 157, CULLMAN, CULLMAN   COUNTY, ALABAMA |
| 12/19/2012 | 12/31/2032 | 7264 | 8474 | 419 N. PELHAM ROAD , JACKSONVILLE, CALHOUN COUNTY, ALABAMA |
| 12/19/2012 | 12/31/2032 | 7265 | 8483 | 4422 OLD BIRMINGHAM HIGHWAY, TUSCALOOSA, TUSCALOOSA COUNTY, ALABAMA |
| 12/19/2012 | 12/31/2032 | 7266 | 8895 | 170 VAUGHAN LANE , PELL CITY, ST.CLAIR   COUNTY, ALABAMA |
| 12/19/2012 | 12/31/2032 | 7267 | 8896 | 10393 HWY 5 , BRENT, BIBB  COUNTY, ALABAMA |
| 12/19/2012 | 12/31/2032 | 7268 | 2813 | 204 15TH STREET EAST, TUSCALOOSA, TUSCALOOSA COUNTY, ALABAMA |
| 12/4/2003 | 12/4/2023 | 4403 | 9274 | 180 WEST SWEDESFORD ROAD, DEVON, CHESTER COUNTY, PENNSYLVANIA |
| 8/10/2009 | 3/31/2020 | 9079 | 11257 | 2506 WORLD GATEWAY PL/DMA/MCNAMARA, DETROIT, WAYNE COUNTY, MICHIGAN |
| 5/1/2007 | 5/1/2027 | 2547 | 474 | 4805 W BROAD STREET, RICHMOND , VIRGINIA |
| 5/1/2007 | 5/1/2027 | 2549 | 519 | 807 ENGLAND STREET , ASHLAND, HANOVER   COUNTY, VIRGINIA |
| 5/1/2007 | 5/1/2027 | 2552 | 672 | 2200 LABURNUM AVENUE, RICHMOND , HENRICO COUNTY, VIRGINIA |
| 5/26/2016 | 12/7/2035 | 2554 | 774 | 4609 WILLIAMSBURG, RICHMOND , HENRICO   COUNTY, VIRGINIA |
| 5/1/2007 | 5/1/2027 | 2556 | 1404 | 9116 W BROAD STREET, RICHMOND , HENRICO   COUNTY, VIRGINIA |

DRAFT: NOT FOR EXECUTION
SUBJECT TO CPLR 4547/RULE 408 (or equiv.)

| | | | | |
|---|---|---|---|---|
| 2/27/2009 | 2/27/2029 | 2557 | 1642 | 4231 POUNCEY TRACT ROAD , GLEN ALLEN, HENRICO COUNTY, VIRGINIA |
| 2/27/2009 | 2/27/2029 | 2558 | 1872 | 4026 GLENSIDE DRIVE, RICHMOND , HENRICO    COUNTY, VIRGINIA |
| 2/27/2009 | 2/27/2029 | 2560 | 2167 | 10177 BROOK ROAD , GLEN ALLEN, HENRICO    COUNTY, VIRGINIA |
| 2/27/2009 | 2/27/2029 | 2563 | 972 | 5212 BROOK ROAD, RICHMOND , HENRICO    COUNTY, VIRGINIA |
| 9/30/2010 | 9/30/2030 | 2564 | 1028 | 8300 BROOK ROAD, RICHMOND , HENRICO    COUNTY, VIRGINIA |
| 2/27/2009 | 2/27/2029 | 2550 | 530 | 6824 HULL STREET , RICHMOND , CHESTERFIELD    COUNTY, VIRGINIA |
| 9/30/2010 | 9/30/2030 | 2551 | 554 | 172 E BELT BLVD. , RICHMOND , VIRGINIA |
| 2/27/2009 | 2/27/2029 | 2553 | 701 | 1709 BOULEVARD, COLONIAL HTS. , VIRGINIA |
| 5/1/2007 | 5/1/2027 | 2555 | 1301 | 6451 CENTRALIA ROAD, CHESTERFIELD, CHESTERFIELD COUNTY, VIRGINIA |
| 1/12/2009 | 1/12/2029 | 2559 | 2093 | 680 SOUTHPARK BLVD , COLONIAL HTS. , VIRGINIA |
| 2/27/2009 | 2/27/2029 | 2561 | 797 | 1859 S CRATER ROAD , PETERSBURG, DINWIDDIE COUNTY, VIRGINIA |
| 5/1/2007 | 5/1/2027 | 2562 | 883 | 2510 W HUNDRED ROAD, CHESTER, CHESTERFIELD COUNTY, VIRGINIA |
| 2/27/2009 | 2/27/2029 | 2565 | 1231 | 5103 OAKLAWN BLVD, HOPEWELL , VIRGINIA |
| 5/1/2007 | 5/1/2027 | 3048 | 7799 | 1419 SOUTH MAIN STREET, BLACKSTONE, NOTTOWAY COUNTY, VIRGINIA |
| 9/30/2010 | 9/30/2030 | 3845 | 577 | 4507 JEFFERSON DAVIS HIGHWAY , RICHMOND , VIRGINIA |
| 5/1/2007 | 5/1/2027 | 4354 | 9284 | 13201 KINGSTON AVE , CHESTER, CHESTERFIELD    COUNTY, VIRGINIA |
| 5/1/2007 | 5/1/2027 | 4926 | 10804 | 1792 SOUTH CREEK ONE, POWHATAN , POWHATAN COUNTY, VIRGINIA |
| 2/22/2010 | 2/22/2030 | 5339 | 2011 | 1197 S.MILITARY TRAIL , DEERFIELD BEACH, BROWARD COUNTY, FLORIDA |
| 2/22/2010 | 2/22/2030 | 5340 | 1923 | 4950 LINTON BLVD , DELRAY BEACH, PALM BEACH COUNTY, FLORIDA |
| 10/26/1998 | 3/31/2020 | 5341 | 5499 | 6375 W SAMPLE RD , CORAL SPRINGS , BROWARD COUNTY, FLORIDA |
| 3/15/1995 | 9/30/2023 | 5342 | 1946 | 10050 W SAMPLE ROAD, CORAL SPRINGS , BROWARD COUNTY, FLORIDA |
| 7/1/2008 | 7/1/2028 | 5343 | 7391 | 9960 WEST OAKLAND PARK BLVD, SUNRISE, BROWARD COUNTY, FLORIDA |
| 9/29/1997 | 9/30/2022 | 5344 | 7512 | 4676 N UNIVERSITY DRIVE , CORAL SPRINGS , BROWARD COUNTY, FLORIDA |
| 1/26/1998 | 9/30/2020 | 5345 | 7631 | 11925 NW 27TH PL., MIAMI, DADE  COUNTY, FLORIDA |
| 8/7/1998 | 9/30/2023 | 5346 | 7861 | 831 YAMATO RD , BOCA RATON, PALM BEACH COUNTY, FLORIDA |
| 7/1/2008 | 7/1/2028 | 5347 | 7917 | 14900 SOUTHWEST 31ST STREET, MIRAMAR, BROWARD COUNTY, FLORIDA |

DRAFT:  NOT FOR EXECUTION
SUBJECT TO CPLR 4547/RULE 408 (or equiv.)

| | | | | |
|---|---|---|---|---|
| 7/10/2014 | 6/15/2033 | 5348 | 8174 | 7560 NW 186TH STREET, HIALEAH, DADE  COUNTY, FLORIDA |
| 1/4/2001 | 1/4/2023 | 5349 | 8477 | 15020 JOG ROAD, DELRAY BEACH, PALM BEACH COUNTY, FLORIDA |
| 6/21/2001 | 6/21/2023 | 5350 | 8478 | 1515 NORTHWEST 7TH STREET, MIAMI, DADE  COUNTY, FLORIDA |
| 12/18/1998 | 12/31/2020 | 8527 | 2064 | 890 US HIGHWAY 1 , VERO BEACH, INDIAN RIVER COUNTY, FLORIDA |
| 12/18/1998 | 12/18/2020 | 8528 | 2402 | 270 SW PORT ST LUCIE BLVD, PORT ST.LUCIE , ST.LUCIE COUNTY, FLORIDA |
| 12/18/1998 | 12/18/2023 | 8529 | 2404 | 6210 20TH STREET , VERO BEACH, INDIAN RIVER   COUNTY, FLORIDA |
| 12/18/1998 | 12/18/2028 | 8530 | 2562 | 10246 S FEDERAL HWY, PORT ST.LUCIE , ST.LUCIE  COUNTY, FLORIDA |
| 12/18/1998 | 12/31/2020 | 8531 | 2228 | 726 S FEDERAL HWY, STUART , MARTINCOUNTY, FLORIDA |
| 1/31/2017 | 2/8/2036 | 8532 | 2590 | 2309 S US HIGHWAY 1, FT.PIERCE, ST.LUCIE  COUNTY, FLORIDA |
| 12/29/2000 | 12/29/2022 | 8533 | 8448 | 4900 S. FEDERAL HIGHWAY , FT.PIERCE, ST.LUCIE  COUNTY, FLORIDA |
| 12/13/2001 | 12/13/2021 | 8534 | 8861 | 1841 N. 4TH STREET , FT.PIERCE, ST.LUCIE  COUNTY, FLORIDA |
| 7/15/2002 | 7/15/2022 | 8535 | 8847 | 4435 NORTHLAKE BLVD., PALM BEACH GARDENS , PALM BEACH COUNTY, FLORIDA |
| 1/31/2000 | 11/13/2025 | 8536 | 7959 | 4150 NORTH WICKHAM ROAD , MELBOURNE, BREVARD COUNTY, FLORIDA |
| 4/25/2001 | 10/31/2027 | 8537 | 8558 | 8440 ASTRONAUT BLVD, CAPE CANAVERAL, BREVARD COUNTY, FLORIDA |
| 11/16/2001 | 11/13/2025 | 8538 | 8452 | 648 BARNES BLVD. , ROCKLEDGE, BREVARD   COUNTY, FLORIDA |
| 1/31/2017 | 12/18/2035 | 8539 | 1656 | 1154 MALABAR RD S.E., PALM BAY , BREVARD    COUNTY, FLORIDA |
| 8/20/1998 | 1/1/2021 | 8540 | 1734 | 1150 BABCOCK ST. , MELBOURNE, BREVARD   COUNTY, FLORIDA |
| 8/20/1998 | 3/31/2020 | 8541 | 1735 | 395 E EAU GALLIE BLVD , INDIAN HARBOR BEACH, BREVARD COUNTY, FLORIDA |
| 8/20/1998 | 8/20/2028 | 8543 | 1737 | 10 W MERRITT ISLAND CSWY, MERRITT ISLAND, BREVARD COUNTY, FLORIDA |
| 8/20/1998 | 12/31/2020 | 8545 | 1740 | 1755 PALM BAY ROAD NE , PALM BAY , BREVARD COUNTY, FLORIDA |
| 8/20/1998 | 12/31/2025 | 8546 | 1741 | 2650 W. NEW HAVEN AVE., MELBOURNE, BREVARD COUNTY, FLORIDA |
| 8/20/1998 | 8/20/2028 | 8547 | 1743 | 3000 GARDEN ST., TITUSVILLE, BREVARD   COUNTY, FLORIDA |
| 1/31/2017 | 8/23/2028 | 8548 | 1744 | 205 S. MIRIMAR, INDIALANTIC , BREVARD    COUNTY, FLORIDA |
| 8/20/1998 | 9/30/2023 | 8549 | 1834 | 8245 NORTH WICKHAM RD , MELBOURNE, BREVARD COUNTY, FLORIDA |

DRAFT:  NOT FOR EXECUTION
SUBJECT TO CPLR 4547/RULE 408 (or equiv.)

| | | | | |
|---|---|---|---|---|
| 8/20/1998 | 8/23/2023 | 8550 | 2453 | 3323 COLUMBIA BLVD , TITUSVILLE, BREVARD   COUNTY, FLORIDA |
| 8/9/2002 | 8/9/2023 | 8551 | 2587 | 135 PALM BAY ROAD, W.MELBOURNE , BREVARD COUNTY, FLORIDA |
| 6/28/2017 | 6/28/2042 | 10449 | 11857 | 950 N WICKHAM RD , MELBOURNE, BREVARD   COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5630 | 1325 | 13712 BRUCE B. DOWNS BLVD, TAMPA, HILLSBOROUGH COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5631 | 1443 | 6024 COUNTY ROAD 579, SEFFNER, HILLSBOROUGH COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5632 | 8888 | 3601 W. HILLSBOROUGH AVENUE, TAMPA, HILLSBOROUGH COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5619 | 85 | 1507 E. FOWLER, TAMPA, HILLSBOROUGH   COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5620 | 202 | 8330 N. FLORIDA, TAMPA, HILLSBOROUGH   COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5622 | 495 | 1501 HILLSBORO AVE , TAMPA, HILLSBOROUGH   COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5623 | 677 | 5658 GALL BLVD, ZEPHYRHILLS , PASCO COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5624 | 808 | 13135 US HWY 301 , DADE CITY, PASCO COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5625 | 915 | 13119 N. DALE MABRY, TAMPA, HILLSBOROUGH   COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5626 | 1297 | 6620 E. MARTIN LUTHER KING BLVD., TAMPA, HILLSBOROUGH   COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5627 | 7705 | 1615 WEST KENNEDY BLVD. , TAMPA, HILLSBOROUGH COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5628 | 7932 | 13565 CYPRESS GLENN LANE, TAMPA, HILLSBOROUGH COUNTY, FLORIDA |
| 5/17/2004 | 5/17/2024 | 5629 | 8850 | 19430 BRUCE B. DOWNS, TAMPA, HILLSBOROUGH COUNTY, FLORIDA |
| 1/31/2017 | 1/31/2037 | 8508 | 4184 | 314 HWY 61 SOUTH , HANNIBAL , MARIONCOUNTY, MISSOURI |
| 12/17/2004 | 12/17/2024 | 8509 | 5341 | 2 CIETEN PLAZA, BARRY, PIKE  COUNTY, ILLINOIS |
| 1/31/2017 | 1/12/2022 | 8510 | 5267 | 3815 WISCONSIN AVENUE , APPLETON , OUTAGAMIE COUNTY, WISCONSIN |
| 2/1/2017 | 2/1/2037 | 8512 | 5401 | 3300 S. ONEIDA, APPLETON , OUTAGAMIE  COUNTY, WISCONSIN |
| 12/31/2016 | 12/22/2035 | 8513 | 5767 | 3530 BROADWAY , QUINCY , ADAMS COUNTY, ILLINOIS |
| 3/30/2011 | 3/30/2031 | 8514 | 8730 | 807 MARION CITY ROAD, PALMYRA, MARIONCOUNTY, MISSOURI |
| 1/21/2002 | 1/21/2025 | 8515 | 8739 | 505 SOUTH DEERFIELD, PONTIAC, LIVINGSTON COUNTY, ILLINOIS |
| 5/7/2003 | 5/7/2023 | 8516 | 8661 | 2360 WESTOWNE AVE, OSHKOSH, WINNEBAGO  COUNTY, WISCONSIN |
| 11/4/1997 | 9/30/2020 | 8517 | 7532 | 2805 SCHOFIELD AVE , SCHOFIELD, MARATHON   COUNTY, WISCONSIN |

DRAFT:  NOT FOR EXECUTION
SUBJECT TO CPLR 4547/RULE 408 (or equiv.)

| 7/26/2017 | 7/31/2035 | 8518 | 10700 | 1250 TORONTO ROAD, SPRINGFIELD , SANGAMON COUNTY, ILLINOIS |
| 6/29/2007 | 6/29/2027 | 8519 | 8114 | 1209 BROADWAY AVE E, MATTOON, COLES COUNTY, ILLINOIS |
| 3/30/2015 | 3/30/2035 | 8520 | 10523 | 412 E. WALNUT AVE, CARBONDALE, JACKSON   COUNTY, ILLINOIS |

## ~~SECURED~~COGNOVIT PROMISSORY NOTE

FRANKLIN COUNTY, OHIO

$5,550,360.55                                        ~~January~~February ____, 2020

FOR VALUE RECEIVED, the undersigned, Andrew Levy (the "**Maker**"), whose principal address is 1401 West Two Creeks Circle, Park City Utah, 84098, promises to pay to the order of WENDY'S NETHERLANDS B.V., a company organized and existing under the laws of the Netherlands (the "**Payee**"), at its registered address Prins Bernhardplein 200, 1097 JB Amsterdam, the Netherlands, or at such other place as the Payee may from time to time designate in writing, the principal sum of Five Million Five Hundred and Fifty Thousand Three Hundred and Sixty and 55/100 Dollars ($5,550,360.55), subject to reduction as described in the immediately following paragraph, plus interest at the rate of ~~five~~four and one-half percent (~~4~~.5%) per annum.

Commencing on January 15, 2020, and continuing until maturity, by acceleration or otherwise, Maker shall pay to Payee quarterly installments of principal and interest on the dates and in the combined amounts as set forth and in accordance with the Amortization Schedule attached hereto as *Exhibit A* and incorporated herein. Accrued interest on this Note shall be added monthly to the principal balance of this Note on the fifteenth day of each such month and shall thereafter accrue interest as provided herein. The entire amount due hereunder, including all unpaid principal and accrued interest, shall be due and payable in full on December 15, 2024 (it being understood that if the principal payments set forth on *Exhibit A* due prior to December 15, 2024 are made in accordance with the terms of this Note then the principal balance due on December 15, 2024 would be ~~Five~~Three Million ~~Three~~Six Hundred and ~~Nineteen~~Sixty Thousand ~~Eight~~Six Hundred and Thirty-__ Four ~~Dollars~~and ~~Thirty-Two~~Five Cents ($~~5,319,834.32). Notwithstanding~~3,660,634.05). This amount includes a reduction in the ~~foregoing, if Maker has made~~amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) provided in Payment No. 1, which is offered as a condition of compliance with the terms and conditions contained herein, including timely payment of ~~all payments of~~ principal and interest due hereunder in accordance with the immediately two preceding sentences and no other default or event of default has occurred (whether or not cured or waived) ("**Discount Conditions**")). Should Maker fail to meet these conditions, then the full value of the Note shall be reinstated in the amount of ~~principal due shall be reduced by the amount of One~~Five Million ~~Two~~Five Hundred and Fifty Thousand Three Hundred and Sixty and 55/100 Dollars ($1,200,000.00) ~~(by way of example only, if the remaining balance of this Note is $5,319,834.32 on December 15, 2024 and this discount is to be applied as provided for in this sentence then a combined balance of $4,119,834.32 would be due on December 15, 2024).~~550,360.55), less any amounts paid in satisfaction hereof.

All principal and interest shall be payable in arrears. Interest hereon shall be calculated on the basis of a 360-day year applied to the actual number of days elapsed. All payments of principal and interest hereon shall be payable at par in lawful currency of the United States. Except as otherwise described herein, all amounts received for payment of this Note shall be first applied to any expenses due Payee under this Note ~~or the Mortgage (as hereinafter defined)~~and then to accrued interest, and finally to the reduction of principal. Payee shall designate in writing from time to time to Maker an account of Payee into which such amounts are to be paid.

The principal amount of this ~~Secured~~ Cognovit Promissory Note represents an aggregate of amounts of existing indebtedness that the Maker freely admits are due and owing to Payee, and/or its subsidiaries, affiliates and related entities pursuant to and in satisfaction of the Maker's obligations under that certain Guarantee Agreement, dated as of October 20, 2015, among Starboard International Holdings B.V., as Guarantor ("**Starboard**"), Maker, as Guarantor, and Wendy's Netherlands B.V., as Beneficiary, as amended by the first amendment thereto dated August 2, 2017 and the second amendment thereto dated January 19, 2018 (such Guarantee Agreement, as so amended being -the "**Guarantee**") attached hereto as *Exhibit B* and made a part hereof pursuant to which Maker guaranteed the obligations of WBR Franquais Participacoies LTDA, as borrower ("**Borrower**") under (x) the Credit Agreement, dated as of October 20, 2015 ("**2015 Credit Agreement**"), among Payee and Borrower and (y) the Credit Agreement, dated as of August 2, 2017 (together with the 2015 Credit Agreement being the "**Credit Agreements**")), among Payee and Borrower. The principal amount hereunder represents the amount agreed upon between Maker and Payee to be payable by Maker to discharge the obligations under the Guarantee with respect to the Credit Agreements. Such amount or any payment hereunder shall not in any way reduce or constitute a forgiveness of any amount owed by Borrower to Payee under the Credit Agreements.

In the event that any payment of principal and/or interest is not actually received by the Payee on or prior to the respective due date as set forth in the Amortization Schedules attached as *Exhibit A* hereto, the Maker agrees to pay Payee a late charge equal to the greater of twelve percent (12%) per annum on such delinquent amount until paid, or such amount as is permitted by law.

Payments due hereunder shall be paid by pre-authorized wire transfer, electronic transfer via automated clearing houses, similar commonly-accepted methods of funds transfer or such other method as Payee may designate in writing from time to time. Maker shall undertake all actions necessary and shall deliver to Payee all necessary information (including financial institution of origin and relevant account numbers) pertaining to such pre-authorized transfers.

Prepayment of the principal of this Note shall be permitted without premium or penalty of any kind, provided, however, that if Payee, in Payee's sole discretion, elects to assign, sell or transfer this Note to another person (each an Assignee), then in the event of an early payoff, Maker shall be required to pay to an Assignee of Payee a prepayment premium equal to 3% of the Note payoff amount during the first Loan Year (as defined herein) of the Note, 2% of the Note payoff amount during the second Loan Year of the Note, and 1% of the Note payoff amount during the third Loan Year of the Note, and 0% of the Note payoff amount after the end of the third Loan Year, and in no event is Maker permitted to pay any lump sum payments, without paying the Note in full, plus the prepayment premium during the first three (3) Loan Years of the Note.

The first Loan Year shall mean the period of time commencing on the date of this Note and ending on the last day of the twelfth consecutive month commencing with the month after the month in which this Note is dated, unless this Note is dated the first day of a month, in which case the first Loan Year shall mean the twelve consecutive months commencing with the date of this Note. Each subsequent Loan Year shall mean the successive twelve consecutive month period following the preceding Loan Year.

~~Maker covenants and agrees to use his best efforts to cause this Note to be secured on or before February 15, 2020 by either: 1) a Deed of Trust (such Deed of Trust to have such terms and~~

- 2 -

~~conditions and be in form, scope and substance as is satisfactory to Payee), on Maker's personal residence located at 1401 West Two Creeks Circle Park City, UT 84098 (the "**Mortgage**"); or 2) by such other collateral as is sufficient to secure the Note as is determined by Payee in Payee's sole discretion.~~

This Note may not be changed orally, but only by an agreement in writing signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

This Note may be assigned, sold or transferred by Payee at Payee's sole discretion. If so assigned, the Assignee hereof shall have and be entitled to exercise any and all discretion, rights and powers of Payee, but Assignee shall not be chargeable with any obligations or liabilities of Payee hereunder or with respect thereof. Maker hereby agrees that Payee may, in its sole discretion, disclose pertinent financial information relative to Maker to any Assignee in order to facilitate the assignment, sale or transfer of this Note. Maker agrees that it will not assert against Assignee any claim, defense, counterclaim or offset on account of this Note in any action brought by an Assignee.

In the event of any loss, theft, destruction or mutilation of this Note, upon Maker's receipt of an affidavit of an officer of Payee as to such loss, theft, destruction or mutilation and an appropriate indemnification, Maker will execute and deliver a replacement Note in the same principal amount and otherwise of like tenor as the lost, stolen, destroyed or mutilated Note.

The holders of this Note and all successors thereof shall have all of the rights of a holder in due course as provided under the Ohio Uniform Commercial Code and other laws of the State of Ohio. Maker hereby waives demand, presentment, protest, notice of protest and/or dishonor and all other notices or requirements that might otherwise be required by law. The Maker promises to pay on demand all costs of collection, including attorney's fees and court costs, paid or incurred by Payee in enforcing this Note upon Maker's default hereunder.

The occurrence of any of the following shall constitute an "event of default" under this Note:

    (a)    The failure of Maker to make any payment when due under this Note (time is of the essence of this Note) or to observe or perform any other term, agreement or covenant in this Note;

    ~~(b)~~(b)    The failure of Maker within 10 business days' of execution of this Note, to provide sufficient evidence of his personal financial condition, in a form acceptable to Payee at Payee's sole discretion, to include without limitation a personal financial statement detailing Maker's current assets (including cash holdings) and liabilities and net worth;

    (c)    The institution of proceedings by or against Maker under any state insolvency laws, federal bankruptcy law or similar debtor relief laws then in effect;

    (~~e~~d)    Maker becoming insolvent or generally failing to pay its debts as they become due;

- 3 -

(d~~g~~) The entry of a judgment against Maker which remains unsatisfied for more than thirty (30) days;

(e~~f~~) The existence of a material misrepresentation of Maker's financial condition in any oral or written statement made to Payee;

~~(f)~~ ~~Default by Maker to comply with its obligations under the fifth immediately preceding paragraph with respect to the Mortgage (or such other sufficient security has Payee has determined is acceptable) or to comply with his obligations under such Mortgage;~~

(g) Default by the franchisee and/or termination or transfer (whether or not voluntarily or mutually agreed) of all of the Wendy's franchise agreements in the U.S. and/or the ceasing of operation of all Wendy's restaurants that are franchised to Maker and/or any entities of which Maker is a shareholder or holds other voting or member interests;

~~(h)~~ ~~The failure of Maker and/or any of the entities of which Maker is a shareholder or holds other voting or member interest to meet the reimaging timing and requirements set forth in the restaurant reimaging schedule attached as *Exhibit D* hereto; and~~

(~~i~~h) The death of Maker.

Upon the occurrence of an event of default, as defined above, Payee may, at its option and without notice, declare all principal and interest provided for under this Note to be immediately due and payable. Payee may waive any default before or after it occurs and may restore this Note in full effect without impairing the right to declare it due for a subsequent default, this right being a continuing one. Upon the occurrence of any of (a) through (h) above, Payee, in its sole discretion, may elect to issue a Notice of Default, without the necessity of first accelerating the principal or interest balance hereunder.

Maker hereby authorizes any attorney at law to appear for the Maker in any court of record in Franklin County, Ohio, with or without process, at any time after this Note becomes payable, by acceleration or otherwise, and waives the issuance and service of process and confesses judgment against Maker in favor of the holder of this Note for the amount then appearing due, together with interest, costs of suit and attorney's fees and thereupon to release all errors and waive all rights of second trial, appeal, and stay of execution.

In consideration for Payee's willingness to accept this Note from Maker and its forbearance relative to actions which it might otherwise take as of the date of this Note with regard to the obligations referenced herein, Maker hereby agrees to execute and shall cause Starboard to execute contemporaneously herewith, ~~a General~~the Mutual Release of ~~All~~ Claims Related to Guarantee in the form identical to that attached hereto and made a part hereof as *Exhibit C*. Maker represents and warrants that he, directly or indirectly, owns beneficially 100% of the equity interests of Starboard, has the control over the business direction of Starboard and has the power and authority to cause Starboard to enter into such ~~General~~Mutual Release ~~of Claims~~.

- 4 -

Maker acknowledges and agrees that Payee's willingness to provide this Note and the provisions of this Note are strictly confidential in nature and are subject to the confidentiality provisions of the Franchise Agreements.

This Note may be freely transferred by Payee.

If any provision of this Note should for any reason be invalid or unenforceable, the remaining provisions hereof shall remain in full effect.

This Note shall be governed and construed in accordance with the laws of the State of Ohio and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

This Note was executed in Franklin County, Ohio.

ATTEST:                                MAKER:

                                       _____
                                       ANDREW LEVY


                                       Acknowledged and Agreed to

                                       STARBOARD HOLDINGS
                                       INTERNATIONAL, B.V.

                                       _____
                                       By:
                                       Title:


**WARNING:  BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL.  IF YOU DO NOT PAY ON TIME, A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIM YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON ITS PART TO COMPLY WITH ANY AGREEMENT OR ANY OTHER CAUSE.**

010-8796-1655/11/AMERICAS

# EXHIBIT A
## Amortization Schedule

| | Enter Values | | | |
|---|---|---|---|---|
| Loan Amount | $ 5,550,360.55 | Loan | $ | 5,120,000.00 |
| Annual Interest Rate | 5.000% | Interest | $ | 430,360.55 |
| Loan Period in Years | 5.0 | Total | $ | 5,550,360.55 |
| Start Date of Loan | 1/15/2020 | | | |
| Optional Extra Payments | $0.00 | | | |

| | | |
|---|---|---|
| Scheduled Quarterly Payment | $ | 125,000.00 |
| Scheduled Number of Payments | | 20 |
| Actual Number of Payments | | 21 |
| Total Interest Paid | $ | 1,103,267.38 |

| No. | Payment Date | Beginning Balance | Scheduled Payment | Principal | Total Accrued Interest | Interest Paid | Interest Paid In Kind | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| 1 | 1/15/2020 | $ 5,550,360.55 | 0.00 | 0.00 | 69,379.51 | 0.00 | 69,379.51 | $ 5,619,740.05 |
| 2 | 2/15/2020 | 5,619,740.05 | | | | | | 5,619,740.05 |
| 3 | 3/15/2020 | 5,619,740.05 | | | | | | 5,619,740.05 |
| 4 | 4/15/2020 | 5,619,740.05 | 0.00 | 0.00 | 70,246.75 | 0.00 | 70,246.75 | 5,689,986.81 |
| 5 | 5/15/2020 | 5,689,986.81 | | | | | | 5,689,986.81 |
| 6 | 6/15/2020 | 5,689,986.81 | | | | | | 5,689,986.81 |
| 7 | 7/15/2020 | 5,689,986.81 | 50,000.00 | 0.00 | 71,124.84 | 50,000.00 | 21,124.84 | 5,711,111.64 |
| 8 | 8/15/2020 | 5,711,111.64 | | | | | | 5,711,111.64 |
| 9 | 9/15/2020 | 5,711,111.64 | | | | | | 5,711,111.64 |
| 10 | 10/15/2020 | 5,711,111.64 | 50,000.00 | 0.00 | 71,388.90 | 50,000.00 | 21,388.90 | 5,732,500.54 |
| 11 | 11/15/2020 | 5,732,500.54 | | | | | | 5,732,500.54 |
| 12 | 12/15/2020 | 5,732,500.54 | | | | | | 5,732,500.54 |
| 13 | 1/15/2021 | 5,732,500.54 | 50,000.00 | 0.00 | 71,656.26 | 50,000.00 | 21,656.26 | 5,754,156.79 |
| 14 | 2/15/2021 | 5,754,156.79 | | | | | | 5,754,156.79 |
| 15 | 3/15/2021 | 5,754,156.79 | | | | | | 5,754,156.79 |
| 16 | 4/15/2021 | 5,754,156.79 | 50,000.00 | 0.00 | 71,926.96 | 50,000.00 | 21,926.96 | 5,776,083.75 |
| 17 | 5/15/2021 | 5,776,083.75 | | | | | | 5,776,083.75 |
| 18 | 6/15/2021 | 5,776,083.75 | | | | | | 5,776,083.75 |
| 19 | 7/15/2021 | 5,776,083.75 | 50,000.00 | 0.00 | 72,201.05 | 50,000.00 | 22,201.05 | 5,798,284.80 |
| 20 | 8/15/2021 | 5,798,284.80 | | | | | | 5,798,284.80 |
| 21 | 9/15/2021 | 5,798,284.80 | | | | | | 5,798,284.80 |
| 22 | 10/15/2021 | 5,798,284.80 | 50,000.00 | 0.00 | 72,478.56 | 50,000.00 | 22,478.56 | 5,820,763.36 |
| 23 | 11/15/2021 | 5,820,763.36 | | | | | | 5,820,763.36 |
| 24 | 12/15/2021 | 5,820,763.36 | | | | | | 5,820,763.36 |
| 25 | 1/15/2022 | 5,820,763.36 | 50,000.00 | 0.00 | 72,759.54 | 50,000.00 | 22,759.54 | 5,843,522.90 |
| 26 | 2/15/2022 | 5,843,522.90 | | | | | | 5,843,522.90 |
| 27 | 3/15/2022 | 5,843,522.90 | | | | | | 5,843,522.90 |
| 28 | 4/15/2022 | 5,843,522.90 | 50,000.00 | 0.00 | 73,044.04 | 50,000.00 | 23,044.04 | 5,866,566.94 |
| 29 | 5/15/2022 | 5,866,566.94 | | | | | | 5,866,566.94 |
| 30 | 6/15/2022 | 5,866,566.94 | | | | | | 5,866,566.94 |
| 31 | 7/15/2022 | 5,866,566.94 | 125,000.00 | 51,667.91 | 73,332.09 | 73,332.09 | 0.00 | 5,814,899.02 |
| 32 | 8/15/2022 | 5,814,899.02 | | | | | | 5,814,899.02 |
| 33 | 9/15/2022 | 5,814,899.02 | | | | | | 5,814,899.02 |
| 34 | 10/15/2022 | 5,814,899.02 | 125,000.00 | 52,313.76 | 72,686.24 | 72,686.24 | 0.00 | 5,762,585.26 |
| 35 | 11/15/2022 | 5,762,585.26 | | | | | | 5,762,585.26 |
| 36 | 12/15/2022 | 5,762,585.26 | | | | | | 5,762,585.26 |
| 37 | 1/15/2023 | 5,762,585.26 | 125,000.00 | 52,967.68 | 72,032.32 | 72,032.32 | 0.00 | 5,709,617.58 |
| 38 | 2/15/2023 | 5,709,617.58 | | | | | | 5,709,617.58 |
| 39 | 3/15/2023 | 5,709,617.58 | | | | | | 5,709,617.58 |
| 40 | 4/15/2023 | 5,709,617.58 | 125,000.00 | 53,629.78 | 71,370.22 | 71,370.22 | 0.00 | 5,655,987.80 |
| 41 | 5/15/2023 | 5,655,987.80 | | | | | | 5,655,987.80 |
| 42 | 6/15/2023 | 5,655,987.80 | | | | | | 5,655,987.80 |
| 43 | 7/15/2023 | 5,655,987.80 | 125,000.00 | 54,300.15 | 70,699.85 | 70,699.85 | 0.00 | 5,601,687.65 |
| 44 | 8/15/2023 | 5,601,687.65 | | | | | | 5,601,687.65 |
| 45 | 9/15/2023 | 5,601,687.65 | | | | | | 5,601,687.65 |
| 46 | 10/15/2023 | 5,601,687.65 | 125,000.00 | 54,978.90 | 70,021.10 | 70,021.10 | 0.00 | 5,546,708.74 |
| 47 | 11/15/2023 | 5,546,708.74 | | | | | | 5,546,708.74 |
| 48 | 12/15/2023 | 5,546,708.74 | | | | | | 5,546,708.74 |
| 49 | 1/15/2024 | 5,546,708.74 | 125,000.00 | 55,666.14 | 69,333.86 | 69,333.86 | 0.00 | 5,491,042.60 |
| 50 | 2/15/2024 | 5,491,042.60 | | | | | | 5,491,042.60 |
| 51 | 3/15/2024 | 5,491,042.60 | | | | | | 5,491,042.60 |
| 52 | 4/15/2024 | 5,491,042.60 | 125,000.00 | 56,361.97 | 68,638.03 | 68,638.03 | 0.00 | 5,434,680.63 |
| 53 | 5/15/2024 | 5,434,680.63 | | | | | | 5,434,680.63 |
| 54 | 6/15/2024 | 5,434,680.63 | | | | | | 5,434,680.63 |
| 55 | 7/15/2024 | 5,434,680.63 | 125,000.00 | 57,066.49 | 67,933.51 | 67,933.51 | 0.00 | 5,377,614.14 |
| 56 | 8/15/2024 | 5,377,614.14 | | | | | | 5,377,614.14 |
| 57 | 9/15/2024 | 5,377,614.14 | | | | | | 5,377,614.14 |
| 58 | 10/15/2024 | 5,377,614.14 | 125,000.00 | 57,779.82 | 67,220.18 | 67,220.18 | 0.00 | 5,319,834.32 |
| 59 | 11/15/2024 | 5,319,834.32 | | | | | | 5,319,834.32 |

~~Notwithstanding the foregoing if Maker has satisfied the Discount Conditions then the final payment due on December 15, 2024 shall be reduced by $1,200,000 and only $4,119,834.32 shall then be due.~~

A-1

|  | Enter Values |  |  |
|---|---|---|---|
| Loan Amount | $ 5,550,360.55 | Loan | $ 5,120,000.00 |
| Annual Interest Rate | 4.500% | Interest | $ 430,360.55 |
| Loan Period in Years | 5.0 | Total | $ 5,550,360.55 |
| Start Date of Loan | 1/15/2020 | Incentive Amount | $ 1,200,000.00 |
| Optional Extra Payments | $0.00 | Principal Amount (Post Incentive) | $ 4,350,360.55 |

| | |
|---|---|
| Scheduled Quarterly Payment | $ 125,000.00 |
| Scheduled Number of Payments | 19 |
| Actual Number of Payments | 19 |
| Total Interest Paid | $ 861,432.55 |

| No. | Payment Date | Beginning Balance | Scheduled Payment | Principal | Total Accrued Interest | Interest Paid | Interest Paid In Kind | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| 1 | 1/15/2020 | $ 5,550,360.55 | 0.00 | (1,200,000.00) | 48,941.56 | 0.00 | 48,941.56 | $ 4,399,302.10 |
| 2 | 2/15/2020 | 4,399,302.10 | | | | | | 4,399,302.10 |
| 3 | 3/15/2020 | 4,399,302.10 | | | | | | 4,399,302.10 |
| 4 | 4/15/2020 | 4,399,302.10 | 0.00 | 0.00 | 49,492.15 | 0.00 | 49,492.15 | 4,448,794.25 |
| 5 | 5/15/2020 | 4,448,794.25 | | | | | | 4,448,794.25 |
| 6 | 6/15/2020 | 4,448,794.25 | | | | | | 4,448,794.25 |
| 7 | 7/15/2020 | 4,448,794.25 | 50,000.00 | 0.00 | 50,048.94 | 50,000.00 | 48.94 | 4,448,843.19 |
| 8 | 8/15/2020 | 4,448,843.19 | | | | | | 4,448,843.19 |
| 9 | 9/15/2020 | 4,448,843.19 | | | | | | 4,448,843.19 |
| 10 | 10/15/2020 | 4,448,843.19 | 50,000.00 | 0.00 | 50,049.49 | 50,000.00 | 49.49 | 4,448,892.67 |
| 11 | 11/15/2020 | 4,448,892.67 | | | | | | 4,448,892.67 |
| 12 | 12/15/2020 | 4,448,892.67 | | | | | | 4,448,892.67 |
| 13 | 1/15/2021 | 4,448,892.67 | 50,000.00 | 0.00 | 50,050.04 | 50,000.00 | 50.04 | 4,448,942.72 |
| 14 | 2/15/2021 | 4,448,942.72 | | | | | | 4,448,942.72 |
| 15 | 3/15/2021 | 4,448,942.72 | | | | | | 4,448,942.72 |
| 16 | 4/15/2021 | 4,448,942.72 | 50,000.00 | 0.00 | 50,050.61 | 50,000.00 | 50.61 | 4,448,993.32 |
| 17 | 5/15/2021 | 4,448,993.32 | | | | | | 4,448,993.32 |
| 18 | 6/15/2021 | 4,448,993.32 | | | | | | 4,448,993.32 |
| 19 | 7/15/2021 | 4,448,993.32 | 50,000.00 | 0.00 | 50,051.17 | 50,000.00 | 51.17 | 4,449,044.50 |
| 20 | 8/15/2021 | 4,449,044.50 | | | | | | 4,449,044.50 |
| 21 | 9/15/2021 | 4,449,044.50 | | | | | | 4,449,044.50 |
| 22 | 10/15/2021 | 4,449,044.50 | 50,000.00 | 0.00 | 50,051.75 | 50,000.00 | 51.75 | 4,449,096.25 |
| 23 | 11/15/2021 | 4,449,096.25 | | | | | | 4,449,096.25 |
| 24 | 12/15/2021 | 4,449,096.25 | | | | | | 4,449,096.25 |
| 25 | 1/15/2022 | 4,449,096.25 | 50,000.00 | 0.00 | 50,052.33 | 50,000.00 | 52.33 | 4,449,148.58 |
| 26 | 2/15/2022 | 4,449,148.58 | | | | | | 4,449,148.58 |
| 27 | 3/15/2022 | 4,449,148.58 | | | | | | 4,449,148.58 |
| 28 | 4/15/2022 | 4,449,148.58 | 50,000.00 | 0.00 | 50,052.92 | 50,000.00 | 52.92 | 4,449,201.50 |
| 29 | 5/15/2022 | 4,449,201.50 | | | | | | 4,449,201.50 |
| 30 | 6/15/2022 | 4,449,201.50 | | | | | | 4,449,201.50 |
| 31 | 7/15/2022 | 4,449,201.50 | 125,000.00 | 74,946.48 | 50,053.52 | 50,053.52 | 0.00 | 4,374,255.02 |
| 32 | 8/15/2022 | 4,374,255.02 | | | | | | 4,374,255.02 |
| 33 | 9/15/2022 | 4,374,255.02 | | | | | | 4,374,255.02 |
| 34 | 10/15/2022 | 4,374,255.02 | 125,000.00 | 75,789.63 | 49,210.37 | 49,210.37 | 0.00 | 4,298,465.39 |
| 35 | 11/15/2022 | 4,298,465.39 | | | | | | 4,298,465.39 |
| 36 | 12/15/2022 | 4,298,465.39 | | | | | | 4,298,465.39 |
| 37 | 1/15/2023 | 4,298,465.39 | 125,000.00 | 76,642.26 | 48,357.74 | 48,357.74 | 0.00 | 4,221,823.12 |
| 38 | 2/15/2023 | 4,221,823.12 | | | | | | 4,221,823.12 |
| 39 | 3/15/2023 | 4,221,823.12 | | | | | | 4,221,823.12 |
| 40 | 4/15/2023 | 4,221,823.12 | 125,000.00 | 77,504.49 | 47,495.51 | 47,495.51 | 0.00 | 4,144,318.63 |
| 41 | 5/15/2023 | 4,144,318.63 | | | | | | 4,144,318.63 |
| 42 | 6/15/2023 | 4,144,318.63 | | | | | | 4,144,318.63 |
| 43 | 7/15/2023 | 4,144,318.63 | 125,000.00 | 78,376.42 | 46,623.58 | 46,623.58 | 0.00 | 4,065,942.22 |
| 44 | 8/15/2023 | 4,065,942.22 | | | | | | 4,065,942.22 |
| 45 | 9/15/2023 | 4,065,942.22 | | | | | | 4,065,942.22 |
| 46 | 10/15/2023 | 4,065,942.22 | 125,000.00 | 79,258.15 | 45,741.85 | 45,741.85 | 0.00 | 3,986,684.07 |
| 47 | 11/15/2023 | 3,986,684.07 | | | | | | 3,986,684.07 |
| 48 | 12/15/2023 | 3,986,684.07 | | | | | | 3,986,684.07 |
| 49 | 1/15/2024 | 3,986,684.07 | 125,000.00 | 80,149.80 | 44,850.20 | 44,850.20 | 0.00 | 3,906,534.26 |
| 50 | 2/15/2024 | 3,906,534.26 | | | | | | 3,906,534.26 |
| 51 | 3/15/2024 | 3,906,534.26 | | | | | | 3,906,534.26 |
| 52 | 4/15/2024 | 3,906,534.26 | 125,000.00 | 81,051.49 | 43,948.51 | 43,948.51 | 0.00 | 3,825,482.77 |
| 53 | 5/15/2024 | 3,825,482.77 | | | | | | 3,825,482.77 |
| 54 | 6/15/2024 | 3,825,482.77 | | | | | | 3,825,482.77 |
| 55 | 7/15/2024 | 3,825,482.77 | 125,000.00 | 81,963.32 | 43,036.68 | 43,036.68 | 0.00 | 3,743,519.46 |
| 56 | 8/15/2024 | 3,743,519.46 | | | | | | 3,743,519.46 |
| 57 | 9/15/2024 | 3,743,519.46 | | | | | | 3,743,519.46 |
| 58 | 10/15/2024 | 3,743,519.46 | 125,000.00 | 82,885.41 | 42,114.59 | 42,114.59 | 0.00 | 3,660,634.05 |
| 59 | 11/15/2024 | 3,660,634.05 | | | | | | 3,660,634.05 |
| 60 | 12/15/2024 | 3,660,634.05 | 3,660,634.05 | 3,660,634.05 | | | | 0.00 |

A-1

**EXHIBIT B**

Guarantee

B-1

## EXHIBIT C

## ~~GENERAL~~MUTUAL RELEASE OF ~~ALL~~ CLAIMS RELATED TO GUARANTEE

This ~~GENERAL~~MUTUAL RELEASE OF ~~ALL~~ CLAIMS is made effective this _____ day of _____, 2019 ~~As, and is entered into as~~ a requirement of and in consideration for the willingness on the part of WENDY'S NETHERLANDS B.V. a company organized and existing under the laws of the Netherlands ("**Guarantee Beneficiary**"), to accept a promissory note made by Andrew Levy ("**Maker**") ~~to~~ be executed contemporaneously herewith in satisfaction of the Maker's ~~obligations~~ under that certain Guarantee Agreement, dated as of October 20, 2015, among Starboard International Holdings B.V., as Guarantor ("**Starboard**"), Maker, as Guarantor, and Wendy's Netherlands B.V., as Guarantee Beneficiary, as amended by the first amendment thereto dated August 2, 2017 and the second amendment thereto dated January 19, 2018 (such Guarantee Agreement, as so amended being ~~the~~ "**Guarantee**") pursuant to which Maker and Starboard guaranteed the obligations of WBR Franquais Participacoies LTDA, as borrower ("**Borrower**") under (i) the Credit Agreement, dated as of October 20, 2015 ("**2015 Credit Agreement**"), among Payee and Borrower and (ii) the Credit Agreement, dated as of August 2, 2017 (together with the 2015 Credit Agreement being the "**Credit Agreements**")), among Payee and Borrower, as follows:

Release of Guarantee Beneficiary.  As requested by the undersigned, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Maker and Starboard, individually and collectively, hereby fully, unconditionally, and without limitation RELEASE, DISCHARGE and ACQUIT Guarantee Beneficiary, its past, present and future shareholders, officers, directors, employees, successors, affiliates, assigns, agents, and subsidiaries from any and all liabilities, claims, damages, demands, costs, indebtedness, expenses, debts, indemnities, compensation, suits, controversies, actions and causes of action of any kind whatsoever, whether developed or undeveloped, known or unknown, fixed or contingent, regarding or arising out of the Guarantee, ~~any Credit Agreement or any prior, existing or future franchise agreement or any other agreement or document executed by any of the undersigned and Guarantee Beneficiary (or any subsidiary or affiliate of Guarantee Beneficiary), any Wendy's Old Fashioned Hamburgers Restaurant (whether currently or previously owned or operated or to be owned or operated by the undersigned or any of them), the franchise relationship, or any other prior, existing or future business relationship between any of the undersigned and Guarantee Beneficiary (or any subsidiary or affiliate of Guarantee Beneficiary), which the undersigned or any of them individually or collectively has asserted, may have asserted, could have asserted or could assert in the future against Guarantee Beneficiary (or any of the aforementioned related parties) at any time prior to or on the date of this GENERAL RELEASE OF ALL CLAIMS, or thereafter including specifically, without limitation, claims under the Sherman and Clayton Acts and the anti-trust Laws of the United States, and claims arising from contract, written or oral communications, alleged misstatements of fact, indebtedness of any kind or nature, and acts of negligence whether active or passive.  This GENERAL RELEASE OF ALL CLAIMS shall survive the assignment or termination of any of the franchise agreements or other documents entered into by and between Guarantee Beneficiary and any of the undersigned.  This GENERAL RELEASE OF ALL CLAIMS is not intended as a waiver of those rights of the undersigned which cannot be waived under applicable state franchise laws.~~from the beginning of time to the present.

1

Release of the Maker and Starboard.  As requested by the undersigned, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantee Beneficiary hereby fully, unconditionally, and without limitation RELEASES, DISCHARGES and ACQUITS the Maker and Starboard, individually and collectively, from any and all liabilities, claims, damages, demands, costs, indebtedness, expenses, debts, indemnities, compensation, suits, controversies, actions and causes of action of any kind whatsoever, whether developed or undeveloped, known or unknown, fixed or contingent, regarding or arising out of the Guarantee, from the beginning of time to the present.

For the sake of clarity, nothing in this MUTUAL RELEASE OF CLAIMS shall release any rights or claims arising out of this Note for enforcement thereof or otherwise, including without limitation Payee's right to obtain entry of cognovit judgment against Maker in the event of default.

This MUTUAL RELEASE OF CLAIMS is not intended as a forgiveness of any debt, or a waiver of any rights of the undersigned which cannot be waived under applicable state laws.

WITNESS:                                 **WENDY'S NETHERLANDS B.V.**

_____          By: _____
                                              Title: _____


WITNESS:                                 **STARBOARD INTERNATIONAL
                                          HOLDINGS B.V.**

_____          By: _____
                                              Title: _____


_____          _____
                                          Andrew Levy, Individually

- 2 -

EXHIBIT D
Restaurant Reimaging Schedule

**Formatted:** Justified

- 3 -

# COGNOVIT PROMISSORY NOTE

FRANKLIN COUNTY, OHIO

$5,550,360.55                                                          February ___, 2020

    FOR VALUE RECEIVED, the undersigned, Andrew Levy (the "**Maker**"), whose principal address is 1401 West Two Creeks Circle, Park City Utah, 84098, promises to pay to the order of WENDY'S NETHERLANDS B.V., a company organized and existing under the laws of the Netherlands (the "**Payee**"), at its registered address Prins Bernhardplein 200, 1097 JB Amsterdam, the Netherlands, or at such other place as the Payee may from time to time designate in writing, the principal sum of Five Million Five Hundred and Fifty Thousand Three Hundred and Sixty and 55/100 Dollars ($5,550,360.55), subject to reduction as described in the immediately following paragraph, plus interest at the rate of four and one-half percent (4.5%) per annum.

    Commencing on January 15, 2020, and continuing until maturity, by acceleration or otherwise, Maker shall pay to Payee quarterly installments of principal and interest on the dates and in the combined amounts as set forth and in accordance with the Amortization Schedule attached hereto as *Exhibit A* and incorporated herein. Accrued interest on this Note shall be added monthly to the principal balance of this Note on the fifteenth day of each such month and shall thereafter accrue interest as provided herein. The entire amount due hereunder, including all unpaid principal and accrued interest, shall be due and payable in full on December 15, 2024 (it being understood that if the principal payments set forth on *Exhibit A* due prior to December 15, 2024 are made in accordance with the terms of this Note then the principal balance due on December 15, 2024 would be Three Million Six Hundred and Sixty Thousand Six Hundred and Thirty Four and Five Cents ($3,660,634.05). This amount includes a reduction in the amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) provided in Payment No. 1, which is offered as a condition of compliance with the terms and conditions contained herein, including timely payment of all principal and interest due hereunder in accordance with the immediately two preceding sentences and no other default or event of default has occurred (whether or not cured or waived). Should Maker fail to meet these conditions, then the full value of the Note shall be reinstated in the amount of Five Million Five Hundred and Fifty Thousand Three Hundred and Sixty and 55/100 Dollars ($5,550,360.55), less any amounts paid in satisfaction hereof.

    All principal and interest shall be payable in arrears. Interest hereon shall be calculated on the basis of a 360-day year applied to the actual number of days elapsed. All payments of principal and interest hereon shall be payable at par in lawful currency of the United States. Except as otherwise described herein, all amounts received for payment of this Note shall be first applied to any expenses due Payee under this Note and then to accrued interest, and finally to the reduction of principal. Payee shall designate in writing from time to time to Maker an account of Payee into which such amounts are to be paid.

    The principal amount of this Cognovit Promissory Note represents an aggregate of amounts of existing indebtedness that the Maker freely admits are due and owing to Payee, and/or its subsidiaries, affiliates and related entities pursuant to and in satisfaction of the Maker's obligations under that certain Guarantee Agreement, dated as of October 20, 2015, among

Starboard International Holdings B.V., as Guarantor ("**Starboard**"), Maker, as Guarantor, and Wendy's Netherlands B.V., as Beneficiary, as amended by the first amendment thereto dated August 2, 2017 and the second amendment thereto dated January 19, 2018 (such Guarantee Agreement, as so amended being the "**Guarantee**") attached hereto as *Exhibit B* and made a part hereof pursuant to which Maker guaranteed the obligations of WBR Franquais Participacoies LTDA, as borrower ("**Borrower**") under (x) the Credit Agreement, dated as of October 20, 2015 ("**2015 Credit Agreement**"), among Payee and Borrower and (y) the Credit Agreement, dated as of August 2, 2017 (together with the 2015 Credit Agreement being the "**Credit Agreements**")), among Payee and Borrower. The principal amount hereunder represents the amount agreed upon between Maker and Payee to be payable by Maker to discharge the obligations under the Guarantee with respect to the Credit Agreements. Such amount or any payment hereunder shall not in any way reduce or constitute a forgiveness of any amount owed by Borrower to Payee under the Credit Agreements.

In the event that any payment of principal and/or interest is not actually received by the Payee on or prior to the respective due date as set forth in the Amortization Schedules attached as *Exhibit A* hereto, the Maker agrees to pay Payee a late charge equal to the greater of twelve percent (12%) per annum on such delinquent amount until paid, or such amount as is permitted by law.

Payments due hereunder shall be paid by pre-authorized wire transfer, electronic transfer via automated clearing houses, similar commonly-accepted methods of funds transfer or such other method as Payee may designate in writing from time to time. Maker shall undertake all actions necessary and shall deliver to Payee all necessary information (including financial institution of origin and relevant account numbers) pertaining to such pre-authorized transfers.

Prepayment of the principal of this Note shall be permitted without premium or penalty of any kind, provided, however, that if Payee, in Payee's sole discretion, elects to assign, sell or transfer this Note to another person (each an Assignee), then in the event of an early payoff, Maker shall be required to pay to an Assignee of Payee a prepayment premium equal to 3% of the Note payoff amount during the first Loan Year (as defined herein) of the Note, 2% of the Note payoff amount during the second Loan Year of the Note, and 1% of the Note payoff amount during the third Loan Year of the Note, and 0% of the Note payoff amount after the end of the third Loan Year, and in no event is Maker permitted to pay any lump sum payments, without paying the Note in full, plus the prepayment premium during the first three (3) Loan Years of the Note.

The first Loan Year shall mean the period of time commencing on the date of this Note and ending on the last day of the twelfth consecutive month commencing with the month after the month in which this Note is dated, unless this Note is dated the first day of a month, in which case the first Loan Year shall mean the twelve consecutive months commencing with the date of this Note. Each subsequent Loan Year shall mean the successive twelve consecutive month period following the preceding Loan Year.

This Note may not be changed orally, but only by an agreement in writing signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

- 2 -

This Note may be assigned, sold or transferred by Payee at Payee's sole discretion.  If so assigned, the Assignee hereof shall have and be entitled to exercise any and all discretion, rights and powers of Payee, but Assignee shall not be chargeable with any obligations or liabilities of Payee hereunder or with respect thereof.  Maker hereby agrees that Payee may, in its sole discretion, disclose pertinent financial information relative to Maker to any Assignee in order to facilitate the assignment, sale or transfer of this Note.  Maker agrees that it will not assert against Assignee any claim, defense, counterclaim or offset on account of this Note in any action brought by an Assignee.

In the event of any loss, theft, destruction or mutilation of this Note, upon Maker's receipt of an affidavit of an officer of Payee as to such loss, theft, destruction or mutilation and an appropriate indemnification, Maker will execute and deliver a replacement Note in the same principal amount and otherwise of like tenor as the lost, stolen, destroyed or mutilated Note.

The holders of this Note and all successors thereof shall have all of the rights of a holder in due course as provided under the Ohio Uniform Commercial Code and other laws of the State of Ohio.  Maker hereby waives demand, presentment, protest, notice of protest and/or dishonor and all other notices or requirements that might otherwise be required by law. The Maker promises to pay on demand all costs of collection, including attorney's fees and court costs, paid or incurred by Payee in enforcing this Note upon Maker's default hereunder.

The occurrence of any of the following shall constitute an "event of default" under this Note:

(a) The failure of Maker to make any payment when due under this Note (time is of the essence of this Note) or to observe or perform any other term, agreement or covenant in this Note;

(b) The failure of Maker within 10 business days' of execution of this Note, to provide sufficient evidence of his personal financial condition, in a form acceptable to Payee at Payee's sole discretion, to include without limitation a personal financial statement detailing Maker's current assets (including cash holdings) and liabilities and net worth;

(c) The institution of proceedings by or against Maker under any state insolvency laws, federal bankruptcy law or similar debtor relief laws then in effect;

(d) Maker becoming insolvent or generally failing to pay its debts as they become due;

(e) The entry of a judgment against Maker which remains unsatisfied for more than thirty (30) days;

(f) The existence of a material misrepresentation of Maker's financial condition in any oral or written statement made to Payee;

(g) Default by the franchisee and/or termination or transfer (whether or not voluntarily or mutually agreed) of all of the Wendy's franchise

- 3 -

agreements in the U.S. and/or the ceasing of operation of all Wendy's restaurants that are franchised to Maker and/or any entities of which Maker is a shareholder or holds other voting or member interests;

(h)     The death of Maker.

Upon the occurrence of an event of default, as defined above, Payee may, at its option and without notice, declare all principal and interest provided for under this Note to be immediately due and payable.  Payee may waive any default before or after it occurs and may restore this Note in full effect without impairing the right to declare it due for a subsequent default, this right being a continuing one.  Upon the occurrence of any of (a) through (h) above, Payee, in its sole discretion, may elect to issue a Notice of Default, without the necessity of first accelerating the principal or interest balance hereunder.

Maker hereby authorizes any attorney at law to appear for the Maker in any court of record in Franklin County, Ohio, with or without process, at any time after this Note becomes payable, by acceleration or otherwise, and waives the issuance and service of process and confesses judgment against Maker in favor of the holder of this Note for the amount then appearing due, together with interest, costs of suit and attorney's fees and thereupon to release all errors and waive all rights of second trial, appeal, and stay of execution.

In consideration for Payee's willingness to accept this Note from Maker and its forbearance relative to actions which it might otherwise take as of the date of this Note with regard to the obligations referenced herein, Maker hereby agrees to execute and shall cause Starboard to execute contemporaneously herewith, the Mutual Release of Claims Related to Guarantee in the form identical to that attached hereto and made a part hereof as *Exhibit C*. Maker represents and warrants that he, directly or indirectly, owns beneficially 100% of the equity interests of Starboard, has the control over the business direction of Starboard and has the power and authority to cause Starboard to enter into such Mutual Release.

Maker acknowledges and agrees that Payee's willingness to provide this Note and the provisions of this Note are strictly confidential in nature and are subject to the confidentiality provisions of the Franchise Agreements.

This Note may be freely transferred by Payee.

If any provision of this Note should for any reason be invalid or unenforceable, the remaining provisions hereof shall remain in full effect.

This Note shall be governed and construed in accordance with the laws of the State of Ohio and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

- 4 -

This Note was executed in Franklin County, Ohio.

ATTEST:                                          MAKER:

                                                 _____
                                                 ANDREW LEVY


                                                 Acknowledged and Agreed to

                                                 STARBOARD HOLDINGS
                                                 INTERNATIONAL, B.V.


                                                 _____
                                                 By:
                                                 Title:


**WARNING:  BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE
AND COURT TRIAL.  IF YOU DO NOT PAY ON TIME, A COURT JUDGMENT MAY
BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE
POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS
OF ANY CLAIM YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR
RETURNED GOODS, FAULTY GOODS, FAILURE ON ITS PART TO COMPLY
WITH ANY AGREEMENT OR ANY OTHER CAUSE.**

010-8796-1655/11/AMERICAS

# EXHIBIT A
## Amortization Schedule

| | Enter Values | | | |
|---|---|---|---|---|
| Loan Amount | $ 5,550,360.55 | Loan | $ | 5,120,000.00 |
| Annual Interest Rate | 4.500% | Interest | $ | 430,360.55 |
| Loan Period in Years | 5.0 | Total | $ | 5,550,360.55 |
| Start Date of Loan | 1/15/2020 | Incentive Amount | $ | 1,200,000.00 |
| Optional Extra Payments | $0.00 | Principal Amount (Post Incentive) | $ | 4,350,360.55 |

| | | |
|---|---|---|
| Scheduled Quarterly Payment | $ | 125,000.00 |
| Scheduled Number of Payments | | 19 |
| Actual Number of Payments | | 19 |
| Total Interest Paid | $ | 861,432.55 |

| No. | Payment Date | Beginning Balance | Scheduled Payment | Principal | Total Accrued Interest | Interest Paid | Interest Paid In Kind | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| 1 | 1/15/2020 | $ 5,550,360.55 | 0.00 | (1,200,000.00) | 48,941.56 | 0.00 | 48,941.56 | $ 4,399,302.10 |
| 2 | 2/15/2020 | 4,399,302.10 | | | | | | 4,399,302.10 |
| 3 | 3/15/2020 | 4,399,302.10 | | | | | | 4,399,302.10 |
| 4 | 4/15/2020 | 4,399,302.10 | 0.00 | 0.00 | 49,492.15 | 0.00 | 49,492.15 | 4,448,794.25 |
| 5 | 5/15/2020 | 4,448,794.25 | | | | | | 4,448,794.25 |
| 6 | 6/15/2020 | 4,448,794.25 | | | | | | 4,448,794.25 |
| 7 | 7/15/2020 | 4,448,794.25 | 50,000.00 | 0.00 | 50,048.94 | 50,000.00 | 48.94 | 4,448,843.19 |
| 8 | 8/15/2020 | 4,448,843.19 | | | | | | 4,448,843.19 |
| 9 | 9/15/2020 | 4,448,843.19 | | | | | | 4,448,843.19 |
| 10 | 10/15/2020 | 4,448,843.19 | 50,000.00 | 0.00 | 50,049.49 | 50,000.00 | 49.49 | 4,448,892.67 |
| 11 | 11/15/2020 | 4,448,892.67 | | | | | | 4,448,892.67 |
| 12 | 12/15/2020 | 4,448,892.67 | | | | | | 4,448,892.67 |
| 13 | 1/15/2021 | 4,448,892.67 | 50,000.00 | 0.00 | 50,050.04 | 50,000.00 | 50.04 | 4,448,942.72 |
| 14 | 2/15/2021 | 4,448,942.72 | | | | | | 4,448,942.72 |
| 15 | 3/15/2021 | 4,448,942.72 | | | | | | 4,448,942.72 |
| 16 | 4/15/2021 | 4,448,942.72 | 50,000.00 | 0.00 | 50,050.61 | 50,000.00 | 50.61 | 4,448,993.32 |
| 17 | 5/15/2021 | 4,448,993.32 | | | | | | 4,448,993.32 |
| 18 | 6/15/2021 | 4,448,993.32 | | | | | | 4,448,993.32 |
| 19 | 7/15/2021 | 4,448,993.32 | 50,000.00 | 0.00 | 50,051.17 | 50,000.00 | 51.17 | 4,449,044.50 |
| 20 | 8/15/2021 | 4,449,044.50 | | | | | | 4,449,044.50 |
| 21 | 9/15/2021 | 4,449,044.50 | | | | | | 4,449,044.50 |
| 22 | 10/15/2021 | 4,449,044.50 | 50,000.00 | 0.00 | 50,051.75 | 50,000.00 | 51.75 | 4,449,096.25 |
| 23 | 11/15/2021 | 4,449,096.25 | | | | | | 4,449,096.25 |
| 24 | 12/15/2021 | 4,449,096.25 | | | | | | 4,449,096.25 |
| 25 | 1/15/2022 | 4,449,096.25 | 50,000.00 | 0.00 | 50,052.33 | 50,000.00 | 52.33 | 4,449,148.58 |
| 26 | 2/15/2022 | 4,449,148.58 | | | | | | 4,449,148.58 |
| 27 | 3/15/2022 | 4,449,148.58 | | | | | | 4,449,148.58 |
| 28 | 4/15/2022 | 4,449,148.58 | 50,000.00 | 0.00 | 50,052.92 | 50,000.00 | 52.92 | 4,449,201.50 |
| 29 | 5/15/2022 | 4,449,201.50 | | | | | | 4,449,201.50 |
| 30 | 6/15/2022 | 4,449,201.50 | | | | | | 4,449,201.50 |
| 31 | 7/15/2022 | 4,449,201.50 | 125,000.00 | 74,946.48 | 50,053.52 | 50,053.52 | 0.00 | 4,374,255.02 |
| 32 | 8/15/2022 | 4,374,255.02 | | | | | | 4,374,255.02 |
| 33 | 9/15/2022 | 4,374,255.02 | | | | | | 4,374,255.02 |
| 34 | 10/15/2022 | 4,374,255.02 | 125,000.00 | 75,789.63 | 49,210.37 | 49,210.37 | 0.00 | 4,298,465.39 |
| 35 | 11/15/2022 | 4,298,465.39 | | | | | | 4,298,465.39 |
| 36 | 12/15/2022 | 4,298,465.39 | | | | | | 4,298,465.39 |
| 37 | 1/15/2023 | 4,298,465.39 | 125,000.00 | 76,642.26 | 48,357.74 | 48,357.74 | 0.00 | 4,221,823.12 |
| 38 | 2/15/2023 | 4,221,823.12 | | | | | | 4,221,823.12 |
| 39 | 3/15/2023 | 4,221,823.12 | | | | | | 4,221,823.12 |
| 40 | 4/15/2023 | 4,221,823.12 | 125,000.00 | 77,504.49 | 47,495.51 | 47,495.51 | 0.00 | 4,144,318.63 |
| 41 | 5/15/2023 | 4,144,318.63 | | | | | | 4,144,318.63 |
| 42 | 6/15/2023 | 4,144,318.63 | | | | | | 4,144,318.63 |
| 43 | 7/15/2023 | 4,144,318.63 | 125,000.00 | 78,376.42 | 46,623.58 | 46,623.58 | 0.00 | 4,065,942.22 |
| 44 | 8/15/2023 | 4,065,942.22 | | | | | | 4,065,942.22 |
| 45 | 9/15/2023 | 4,065,942.22 | | | | | | 4,065,942.22 |
| 46 | 10/15/2023 | 4,065,942.22 | 125,000.00 | 79,258.15 | 45,741.85 | 45,741.85 | 0.00 | 3,986,684.07 |
| 47 | 11/15/2023 | 3,986,684.07 | | | | | | 3,986,684.07 |
| 48 | 12/15/2023 | 3,986,684.07 | | | | | | 3,986,684.07 |
| 49 | 1/15/2024 | 3,986,684.07 | 125,000.00 | 80,149.80 | 44,850.20 | 44,850.20 | 0.00 | 3,906,534.26 |
| 50 | 2/15/2024 | 3,906,534.26 | | | | | | 3,906,534.26 |
| 51 | 3/15/2024 | 3,906,534.26 | | | | | | 3,906,534.26 |
| 52 | 4/15/2024 | 3,906,534.26 | 125,000.00 | 81,051.49 | 43,948.51 | 43,948.51 | 0.00 | 3,825,482.77 |
| 53 | 5/15/2024 | 3,825,482.77 | | | | | | 3,825,482.77 |
| 54 | 6/15/2024 | 3,825,482.77 | | | | | | 3,825,482.77 |
| 55 | 7/15/2024 | 3,825,482.77 | 125,000.00 | 81,963.32 | 43,036.68 | 43,036.68 | 0.00 | 3,743,519.46 |
| 56 | 8/15/2024 | 3,743,519.46 | | | | | | 3,743,519.46 |
| 57 | 9/15/2024 | 3,743,519.46 | | | | | | 3,743,519.46 |
| 58 | 10/15/2024 | 3,743,519.46 | 125,000.00 | 82,885.41 | 42,114.59 | 42,114.59 | 0.00 | 3,660,634.05 |
| 59 | 11/15/2024 | 3,660,634.05 | | | | | | 3,660,634.05 |
| 60 | 12/15/2024 | 3,660,634.05 | 3,660,634.05 | 3,660,634.05 | | | | 0.00 |

A-1

# EXHIBIT B

Guarantee

# EXHIBIT C

## MUTUAL RELEASE OF CLAIMS RELATED TO GUARANTEE

This MUTUAL RELEASE OF CLAIMS is made effective this _____ day of _____, 2019, and is entered into as a requirement of and in consideration for the willingness on the part of WENDY'S NETHERLANDS B.V. a company organized and existing under the laws of the Netherlands ("**Guarantee Beneficiary**"), to accept a promissory note made by Andrew Levy ("**Maker**") to be executed contemporaneously herewith in satisfaction of the Maker's obligations under that certain Guarantee Agreement, dated as of October 20, 2015, among Starboard International Holdings B.V., as Guarantor ("**Starboard**"), Maker, as Guarantor, and Wendy's Netherlands B.V., as Guarantee Beneficiary, as amended by the first amendment thereto dated August 2, 2017 and the second amendment thereto dated January 19, 2018 (such Guarantee Agreement, as so amended being the "**Guarantee**") pursuant to which Maker and Starboard guaranteed the obligations of WBR Franquais Participacoies LTDA, as borrower ("**Borrower**") under (i) the Credit Agreement, dated as of October 20, 2015 ("**2015 Credit Agreement**"), among Payee and Borrower and (ii) the Credit Agreement, dated as of August 2, 2017 (together with the 2015 Credit Agreement being the "**Credit Agreements**")), among Payee and Borrower, as follows:

<u>Release of Guarantee Beneficiary</u>.  As requested by the undersigned, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Maker and Starboard, individually and collectively, hereby fully, unconditionally, and without limitation RELEASE, DISCHARGE and ACQUIT Guarantee Beneficiary, its past, present and future shareholders, officers, directors, employees, successors, affiliates, assigns, agents, and subsidiaries from any and all liabilities, claims, damages, demands, costs, indebtedness, expenses, debts, indemnities, compensation, suits, controversies, actions and causes of action of any kind whatsoever, whether developed or undeveloped, known or unknown, fixed or contingent, regarding or arising out of the Guarantee, from the beginning of time to the present.

<u>Release of the Maker and Starboard</u>.  As requested by the undersigned, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantee Beneficiary hereby fully, unconditionally, and without limitation RELEASES, DISCHARGES and ACQUITS the Maker and Starboard, individually and collectively, from any and all liabilities, claims, damages, demands, costs, indebtedness, expenses, debts, indemnities, compensation, suits, controversies, actions and causes of action of any kind whatsoever, whether developed or undeveloped, known or unknown, fixed or contingent, regarding or arising out of the Guarantee, from the beginning of time to the present.

For the sake of clarity, nothing in this MUTUAL RELEASE OF CLAIMS shall release any rights or claims arising out of this Note for enforcement thereof or otherwise, including without limitation Payee's right to obtain entry of cognovit judgment against Maker in the event of default.

<div align="center">1</div>

This MUTUAL RELEASE OF CLAIMS is not intended as a forgiveness of any debt, or a waiver of any rights of the undersigned which cannot be waived under applicable state laws.


WITNESS:                                    **WENDY'S NETHERLANDS B.V.**


_____                     By: _____
_____                          Title: _____



WITNESS:                                    **STARBOARD INTERNATIONAL HOLDINGS B.V.**


_____                     By: _____
                                                 Title: _____


_____                     _____
                                            Andrew Levy, Individually


- 2 -



**From:** Kaffenbarger, Kris <Kris.Kaffenbarger@wendys.com>
**Sent:** Tuesday, December 10, 2019 11:06 AM
**To:** Andrew Levy <alevy@starboardwendys.com>; ckelleher@auspexcapital.com
**Cc:** Koumas, Peter <Peter.Koumas@wendys.com>
**Subject:** Brazil Note, Release and Amortization schedule

Andrew & Chris,

Attached for your review is the Brazil note and related schedules.  Please review and let's discuss.  I trust you'll find them straightforward and as discussed in hopes we can mutually execute.

We can discuss today or tomorrow with a brief notice and would like to get this executed by year end.

Thanks,
Kris

**<span style="color:red">Kris Kaffenbarger, CPA, CMA</span>**
**Vice President, Global System Optimization, Franchise and Portfolio Management**
The Wendy's Company ◆ 1 Dave Thomas Boulevard ◆ Dublin, Ohio 43017
O: 614.764.8443 · M: 614.946.6160
E: Kris.Kaffenbarger@wendys.com

**\*\*CAUTION: This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and known the content is safe.\*\***

## GENERAL RELEASE OF ALL CLAIMS

This GENERAL RELEASE OF ALL CLAIMS is made effective this _____ day of
_____, 2019. As a requirement of and in consideration for the willingness on the
part of WENDY'S NETHERLANDS B.V. a company organized and existing under the laws of
the Netherlands ("**Guarantee Beneficiary**"), to accept a promissory note made by Andrew Levy
("**Maker**") to be executed contemporaneously herewith in satisfaction of the Maker's
obligations under that certain Guarantee Agreement, dated as of October 20, 2015, among
Starboard International Holdings B.V., as Guarantor ("**Starboard**"), Maker, as Guarantor, and
Wendy's Netherlands B.V., as Guarantee Beneficiary, as amended by the first amendment thereto
dated August 2, 2017 and the second amendment thereto dated January 19, 2018 (such Guarantee
Agreement, as so amended being the "**Guarantee**") pursuant to which Maker and Starboard
guaranteed the obligations of WBR Franquais Participacoies LTDA, as borrower ("**Borrower**")
under (i) the Credit Agreement, dated as of October 20, 2015 ("**2015 Credit Agreement**"),
among Payee and Borrower and (ii) the Credit Agreement, dated as of August 2, 2017 (together
with the 2015 Credit Agreement being the "**Credit Agreements**")), among Payee and Borrower,
as requested by the undersigned, and for other good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the Maker and Starboard, individually and
collectively, hereby unconditionally RELEASE, DISCHARGE and ACQUIT Guarantee
Beneficiary, its past, present and future shareholders, officers, directors, employees, successors,
affiliates, assigns, agents, and subsidiaries from any and all liabilities, claims, damages, demands,
costs, indebtedness, expenses, debts, indemnities, compensation, suits, controversies, actions and
causes of action of any kind whatsoever, whether developed or undeveloped, known or unknown,
fixed or contingent, regarding or arising out of the Guarantee, any Credit Agreement or any prior,
existing or future franchise agreement or any other agreement or document executed by any of
the undersigned and Guarantee Beneficiary (or any subsidiary or affiliate of Guarantee
Beneficiary), any Wendy's Old Fashioned Hamburgers Restaurant (whether currently or
previously owned or operated or to be owned or operated by the undersigned or any of them), the
franchise relationship, or any other prior, existing or future business relationship between any of
the undersigned and Guarantee Beneficiary (or any subsidiary or affiliate of Guarantee
Beneficiary), which the undersigned or any of them individually or collectively has asserted, may
have asserted, could have asserted or could assert in the future against Guarantee Beneficiary (or
any of the aforementioned related parties) at any time prior to or on the date of this GENERAL
RELEASE OF ALL CLAIMS, or thereafter including specifically, without limitation, claims
under the Sherman and Clayton Acts and the anti-trust Laws of the United States, and claims
arising from contract, written or oral communications, alleged misstatements of fact,
indebtedness of any kind or nature, and acts of negligence whether active or passive. This
GENERAL RELEASE OF ALL CLAIMS shall survive the assignment or termination of any of
the franchise agreements or other documents entered into by and between Guarantee Beneficiary
and any of the undersigned. This GENERAL RELEASE OF ALL CLAIMS is not intended as a
waiver of those rights of the undersigned which cannot be waived under applicable state
franchise laws.

1

WITNESS:                             **STARBOARD INTERNATIONAL**
                                            **HOLDINGS B.V.**

_____    By: _____
                                            Title: _____

_____    _____

                                            Andrew Levy, Individually

# Levy Promissory Note

| | Enter Values | | | |
|---|---|---|---|---|
| Loan Amount | $ 5,550,360.55 | Loan | $ 5,120,000.00 | 40% of $12.8M |
| Annual Interest Rate | 5.000% | Interest | $ 430,360.55 | 40% of $1.075M |
| Loan Period in Years | 5 | Total | $ 5,550,360.55 | |
| Start Date of Loan | 1/15/2020 | | | |
| Optional Extra Payments | $0.00 | | | |

| | |
|---|---|
| Scheduled Quarterly Payment | $ 125,000.00 |
| Scheduled Number of Payments | 20 |
| Actual Number of Payments | 21 |
| Total Interest | $ 1,245,036.01 |

| No. | Payment Date | Beginning Balance | Scheduled Payment | Principal | Interest | Ending Balance |
|---|---|---|---|---|---|---|
| 1 | 1/15/2020 | $ 5,550,360.55 | $ 125,000.00 | $ 55,620.49 | $ 69,379.51 | $ 5,494,740.05 |
| 2 | 2/15/2020 | 5,494,740.05 | | | | 5,494,740.05 |
| 3 | 3/15/2020 | 5,494,740.05 | | | | 5,494,740.05 |
| 4 | 4/15/2020 | 5,494,740.05 | 125,000.00 | 56,315.75 | 68,684.25 | 5,438,424.31 |
| 5 | 5/15/2020 | 5,438,424.31 | | | | 5,438,424.31 |
| 6 | 6/15/2020 | 5,438,424.31 | | | | 5,438,424.31 |
| 7 | 7/15/2020 | 5,438,424.31 | 125,000.00 | 57,019.70 | 67,980.30 | 5,381,404.61 |
| 8 | 8/15/2020 | 5,381,404.61 | | | | 5,381,404.61 |
| 9 | 9/15/2020 | 5,381,404.61 | | | | 5,381,404.61 |
| 10 | 10/15/2020 | 5,381,404.61 | 125,000.00 | 57,732.44 | 67,267.56 | 5,323,672.17 |
| 11 | 11/15/2020 | 5,323,672.17 | | | | 5,323,672.17 |
| 12 | 12/15/2020 | 5,323,672.17 | | | | 5,323,672.17 |
| 13 | 1/15/2021 | 5,323,672.17 | 125,000.00 | 58,454.10 | 66,545.90 | 5,265,218.07 |
| 14 | 2/15/2021 | 5,265,218.07 | | | | 5,265,218.07 |
| 15 | 3/15/2021 | 5,265,218.07 | | | | 5,265,218.07 |
| 16 | 4/15/2021 | 5,265,218.07 | 125,000.00 | 59,184.77 | 65,815.23 | 5,206,033.29 |
| 17 | 5/15/2021 | 5,206,033.29 | | | | 5,206,033.29 |
| 18 | 6/15/2021 | 5,206,033.29 | | | | 5,206,033.29 |
| 19 | 7/15/2021 | 5,206,033.29 | 125,000.00 | 59,924.58 | 65,075.42 | 5,146,108.71 |
| 20 | 8/15/2021 | 5,146,108.71 | | | | 5,146,108.71 |
| 21 | 9/15/2021 | 5,146,108.71 | | | | 5,146,108.71 |
| 22 | 10/15/2021 | 5,146,108.71 | 125,000.00 | 60,673.64 | 64,326.36 | 5,085,435.07 |
| 23 | 11/15/2021 | 5,085,435.07 | | | | 5,085,435.07 |
| 24 | 12/15/2021 | 5,085,435.07 | | | | 5,085,435.07 |
| 25 | 1/15/2022 | 5,085,435.07 | 125,000.00 | 61,432.06 | 63,567.94 | 5,024,003.01 |
| 26 | 2/15/2022 | 5,024,003.01 | | | | 5,024,003.01 |
| 27 | 3/15/2022 | 5,024,003.01 | | | | 5,024,003.01 |
| 28 | 4/15/2022 | 5,024,003.01 | 125,000.00 | 62,199.96 | 62,800.04 | 4,961,803.05 |
| 29 | 5/15/2022 | 4,961,803.05 | | | | 4,961,803.05 |
| 30 | 6/15/2022 | 4,961,803.05 | | | | 4,961,803.05 |
| 31 | 7/15/2022 | 4,961,803.05 | 125,000.00 | 62,977.46 | 62,022.54 | 4,898,825.58 |
| 32 | 8/15/2022 | 4,898,825.58 | | | | 4,898,825.58 |
| 33 | 9/15/2022 | 4,898,825.58 | | | | 4,898,825.58 |
| 34 | 10/15/2022 | 4,898,825.58 | 125,000.00 | 63,764.68 | 61,235.32 | 4,835,060.90 |
| 35 | 11/15/2022 | 4,835,060.90 | | | | 4,835,060.90 |
| 36 | 12/15/2022 | 4,835,060.90 | | | | 4,835,060.90 |
| 37 | 1/15/2023 | 4,835,060.90 | 125,000.00 | 64,561.74 | 60,438.26 | 4,770,499.17 |
| 38 | 2/15/2023 | 4,770,499.17 | | | | 4,770,499.17 |
| 39 | 3/15/2023 | 4,770,499.17 | | | | 4,770,499.17 |
| 40 | 4/15/2023 | 4,770,499.17 | 125,000.00 | 65,368.76 | 59,631.24 | 4,705,130.40 |
| 41 | 5/15/2023 | 4,705,130.40 | | | | 4,705,130.40 |
| 42 | 6/15/2023 | 4,705,130.40 | | | | 4,705,130.40 |
| 43 | 7/15/2023 | 4,705,130.40 | 125,000.00 | 66,185.87 | 58,814.13 | 4,638,944.53 |
| 44 | 8/15/2023 | 4,638,944.53 | | | | 4,638,944.53 |
| 45 | 9/15/2023 | 4,638,944.53 | | | | 4,638,944.53 |
| 46 | 10/15/2023 | 4,638,944.53 | 125,000.00 | 67,013.19 | 57,986.81 | 4,571,931.34 |
| 47 | 11/15/2023 | 4,571,931.34 | | | | 4,571,931.34 |
| 48 | 12/15/2023 | 4,571,931.34 | | | | 4,571,931.34 |
| 49 | 1/15/2024 | 4,571,931.34 | 125,000.00 | 67,850.86 | 57,149.14 | 4,504,080.48 |
| 50 | 2/15/2024 | 4,504,080.48 | | | | 4,504,080.48 |
| 51 | 3/15/2024 | 4,504,080.48 | | | | 4,504,080.48 |

Case: 2:24-cv-03077-MHW-KAJ Doc #: 4-1-3 Filed: 06/04/24 Page: 39 of 145 PAGEID #: 987

| No. | Payment Date | Beginning Balance | Scheduled Payment | Principal | Interest | Ending Balance |
|---|---|---|---|---|---|---|
| 52 | 4/15/2024 | 4,504,080.48 | 125,000.00 | 68,698.99 | 56,301.01 | 4,435,381.49 |
| 53 | 5/15/2024 | 4,435,381.49 | | | | 4,435,381.49 |
| 54 | 6/15/2024 | 4,435,381.49 | | | | 4,435,381.49 |
| 55 | 7/15/2024 | 4,435,381.49 | 125,000.00 | 69,557.73 | 55,442.27 | 4,365,823.76 |
| 56 | 8/15/2024 | 4,365,823.76 | | | | 4,365,823.76 |
| 57 | 9/15/2024 | 4,365,823.76 | | | | 4,365,823.76 |
| 58 | 10/15/2024 | 4,365,823.76 | 125,000.00 | 70,427.20 | 54,572.80 | 4,295,396.55 |
| 59 | 11/15/2024 | 4,295,396.55 | | | | 4,295,396.55 |
| 60 | 12/15/2024 | 4,295,396.55 | 3,095,396.55 | 3,095,396.55 | 0.00 | 1,200,000.00 |

Case: 2:24-cv-03077-MHW-KAJ Doc #: 1-13 Filed: 06/04/24 Page: 40 of 145 PAGEID #: 280

| | |
|---|---|
| Final Payment (Pre-Incentive) | $ 4,295,396.55 |
| Contingent Incentive Amount | $ 1,200,000.00 |
| Final Payment (Post-Incentive) | $ 3,095,396.55 |

Case: 2:24-cv-03077-MHW-KAJ Doc #: 1-13 Filed: 06/04/24 Page: 41 of 145 PAGEID #: 989

# SECURED PROMISSORY NOTE

FRANKLIN COUNTY, OHIO

$5,550,360.55                                                        December ___, 2019

FOR VALUE RECEIVED, the undersigned, Andrew Levy (the "**Maker**"), whose principal address is 1401 West Two Creeks Circle, Park City Utah, 84098, promises to pay to the order of WENDY'S NETHERLANDS B.V., a company organized and existing under the laws of the Netherlands (the "**Payee**"), at its registered address Prins Bernhardplein 200, 1097 JB Amsterdam, the Netherlands, or at such other place as the Payee may from time to time designate in writing, the principal sum of Five Million Five Hundred and Fifty Thousand Three Hundred and Sixty and 55/100 Dollars ($5,550,360.55), subject to reduction as described in the immediately following paragraph, plus interest at the annual rate of five percent (5%) per annum.

Commencing on January 15, 2020, and continuing until maturity, by acceleration or otherwise, Maker shall pay to Payee quarterly installments of principal and interest on the dates and in the combined amounts as set forth and in accordance with the Amortization Schedule attached hereto as *Exhibit A* and incorporated herein. Accrued interest on this Note shall be added monthly to the principal balance of this Note on the fifteenth day of each such month and shall thereafter accrue interest as provided herein. The entire amount due hereunder, including all unpaid principal and accrued interest, shall be due and payable in full on December 15, 2024 (it being understood that if the principal payments set forth on *Exhibit A* due prior to December 15, 2024 are made in accordance with the terms of this Note then the principal balance due on December 15, 2024 would be Four Million Two Hundred and Ninety-Five Thousand Three Hundred and Ninety-Six Dollars and Fifty-Six Cents ($4,295,396.55). Notwithstanding the foregoing, if Maker has made all payments of principal and interest due hereunder in accordance with the immediately two preceding sentences and no other default or event of default has occurred (whether or not cured or waived) ("**Discount Conditions**") then the amount of principal due shall be reduced by the amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) (by way of example only, if the remaining balance of this Note is $4,295,396.55 on December 15, 2024 and this discount is to be applied as provided for in this sentence then a combined balance of $3,095,396.55 would be due on December 15, 2024).

All principal and interest shall be payable in arrears. Interest hereon shall be calculated on the basis of a 360-day year applied to the actual number of days elapsed. All payments of principal and interest hereon shall be payable at par in lawful currency of the United States. Except as otherwise described herein, all amounts received for payment of this Note shall be first applied to any expenses due Payee under this Note or the Mortgage (as hereinafter defined) then to accrued interest, and finally to the reduction of principal. Payee shall designate in writing from time to time to Maker an account of Payee into which such amounts are to be paid.

The principal amount of this Secured Promissory Note represents an aggregate of amounts of existing indebtedness that the Maker freely admits are due and owing to Payee, and/or its subsidiaries, affiliates and related entities pursuant to and in satisfaction of the Maker's obligations under that certain Guarantee Agreement, dated as of October 20, 2015, among Starboard International Holdings B.V., as Guarantor ("**Starboard**"), Maker, as Guarantor, and

Wendy's Netherlands B.V., as Beneficiary, as amended by the first amendment thereto dated August 2, 2017 and the second amendment thereto dated January 19, 2018 (such Guarantee Agreement, as so amended being the "**Guarantee**") attached hereto as *Exhibit B* and made a part hereof pursuant to which Maker guaranteed the obligations of WBR Franquais Participacoies LTDA, as borrower ("**Borrower**") under (x) the Credit Agreement, dated as of October 20, 2015 ("**2015 Credit Agreement**"), among Payee and Borrower and (y) the Credit Agreement, dated as of August 2, 2017 (together with the 2015 Credit Agreement being the "**Credit Agreements**")), among Payee and Borrower. The principal amount hereunder represents the amount agreed upon between Maker and Payee to be payable by Maker to discharge the obligations under the Guarantee with respect to the Credit Agreements. Such amount or any payment hereunder shall not in any way reduce or constitute a forgiveness of any amount owed by Borrower to Payee under the Credit Agreements.

In the event that any payment of principal and/or interest is not actually received by the Payee on or prior to the respective due date as set forth in the Amortization Schedules attached as *Exhibit A* hereto, the Maker agrees to pay Payee a late charge equal to the greater of twelve percent (12%) per annum on such delinquent amount until paid, or such amount as is permitted by law.

Payments due hereunder shall be paid by pre-authorized wire transfer, electronic transfer via automated clearing houses, similar commonly-accepted methods of funds transfer or such other method as Payee may designate in writing from time to time. Maker shall undertake all actions necessary and shall deliver to Payee all necessary information (including financial institution of origin and relevant account numbers) pertaining to such pre-authorized transfers.

Prepayment of the principal of this Note shall be permitted without premium or penalty of any kind, provided, however, that if Payee, in Payee's sole discretion, elects to assign, sell or transfer this Note to another person (each an Assignee), then in the event of an early payoff, Maker shall be required to pay to an Assignee of Payee a prepayment premium equal to 3% of the Note payoff amount during the first Loan Year (as defined herein) of the Note, 2% of the Note payoff amount during the second Loan Year of the Note, and 1% of the Note payoff amount during the third Loan Year of the Note, and 0% of the Note payoff amount after the end of the third Loan Year, and in no event is Maker permitted to pay any lump sum payments, without paying the Note in full, plus the prepayment premium during the first three (3) Loan Years of the Note.

The first Loan Year shall mean the period of time commencing on the date of this Note and ending on the last day of the twelfth consecutive month commencing with the month after the month in which this Note is dated, unless this Note is dated the first day of a month, in which case the first Loan Year shall mean the twelve consecutive months commencing with the date of this Note. Each subsequent Loan Year shall mean the successive twelve consecutive month period following the preceding Loan Year.

Maker covenants and agrees to use his best efforts to cause this Note to be secured by a Deed of Trust (such Deed of Trust to have such terms and conditions and be in form, scope and substance as is satisfactory to Payee) on or before December 31, 2019 on Maker's personal residence located at 1401 West Two Creeks Circle Park City, UT 84098 (the "**Mortgage**").

This Note may not be changed orally, but only by an agreement in writing signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

This Note may be assigned, sold or transferred by Payee at Payee's sole discretion. If so assigned, the Assignee hereof shall have and be entitled to exercise any and all discretion, rights and powers of Payee, but Assignee shall not be chargeable with any obligations or liabilities of Payee hereunder or with respect thereof. Maker hereby agrees that Payee may, in its sole discretion, disclose pertinent financial information relative to Maker to any Assignee in order to facilitate the assignment, sale or transfer of this Note. Maker agrees that it will not assert against Assignee any claim, defense, counterclaim or offset on account of this Note in any action brought by an Assignee.

In the event of any loss, theft, destruction or mutilation of this Note, upon Maker's receipt of an affidavit of an officer of Payee as to such loss, theft, destruction or mutilation and an appropriate indemnification, Maker will execute and deliver a replacement Note in the same principal amount and otherwise of like tenor as the lost, stolen, destroyed or mutilated Note.

The holders of this Note and all successors thereof shall have all of the rights of a holder in due course as provided under the Ohio Uniform Commercial Code and other laws of the State of Ohio. Maker hereby waives demand, presentment, protest, notice of protest and/or dishonor and all other notices or requirements that might otherwise be required by law. The Maker promises to pay on demand all costs of collection, including attorney's fees and court costs, paid or incurred by Payee in enforcing this Note upon Maker's default hereunder.

The occurrence of any of the following shall constitute an "event of default" under this Note:

(a)     The failure of Maker to make any payment when due under this Note (time is of the essence of this Note) or to observe or perform any other term, agreement or covenant in this Note;

(b)     The institution of proceedings by or against Maker under any state insolvency laws, federal bankruptcy law or similar debtor relief laws then in effect;

(c)     Maker becoming insolvent or generally failing to pay its debts as they become due;

(d)     The entry of a judgment against Maker which remains unsatisfied for more than thirty (30) days;

(e)     The existence of a material misrepresentation of Maker's financial condition in any oral or written statement made to Payee;

(f)     Default by Maker to comply with its obligations under the fifth immediately preceding paragraph with respect to the Mortgage or to comply with his obligations under such Mortgage;

(g)     Default by the franchisee and/or termination or transfer (whether or not voluntarily or mutually agreed) of all of the Wendy's franchise agreements in the U.S. and/or the ceasing of operation of all Wendy's restaurants that are franchised to Maker and/or any entities of which Maker is a shareholder or holds other voting or member interests; and

(h)     The death of Maker.

Upon the occurrence of an event of default, as defined above, Payee may, at its option and without notice, declare all principal and interest provided for under this Note to be immediately due and payable. Payee may waive any default before or after it occurs and may restore this Note in full effect without impairing the right to declare it due for a subsequent default, this right being a continuing one. Upon the occurrence of any of (a) through (h) above, Payee, in its sole discretion, may elect to issue a Notice of Default, without the necessity of first accelerating the principal or interest balance hereunder.

Maker hereby authorizes any attorney at law to appear for the Maker in any court of record in Franklin County, Ohio, with or without process, at any time after this Note becomes payable, by acceleration or otherwise, and waives the issuance and service of process and confesses judgment against Maker in favor of the holder of this Note for the amount then appearing due, together with interest, costs of suit and attorney's fees and thereupon to release all errors and waive all rights of second trial, appeal, and stay of execution.

In consideration for Payee's willingness to accept this Note from Maker and its forbearance relative to actions which it might otherwise take as of the date of this Note with regard to the obligations referenced herein, Maker hereby agrees to execute and shall cause Starboard to execute contemporaneously herewith, a General Release of All Claims in the form identical to that attached hereto and made a part hereof as *Exhibit C*. Maker represents and warrants that he, directly or indirectly, owns beneficially 100% of the equity interests of Starboard, has the control over the business direction of Starboard and has the power and authority to cause Starboard to enter into such General Release of Claims.

Maker acknowledges and agrees that Payee's willingness to provide this Note and the provisions of this Note are strictly confidential in nature and are subject to the confidentiality provisions of the Franchise Agreements.

This Note may be freely transferred by Payee.

If any provision of this Note should for any reason be invalid or unenforceable, the remaining provisions hereof shall remain in full effect.

This Note shall be governed and construed in accordance with the laws of the State of Ohio and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

This Note was executed in Franklin County, Ohio.

ATTEST:                                      MAKER:

                                             _____
                                             ANDREW LEVY

                                             Acknowledged and Agreed to

                                             STARBOARD HOLDINGS
                                             INTERNATIONAL, B.V.

                                             _____
                                             By:
                                             Title:


**WARNING: BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME, A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIM YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON ITS PART TO COMPLY WITH ANY AGREEMENT OR ANY OTHER CAUSE.**

010-8796-1655/11/AMERICAS

# EXHIBIT A

Amortization Schedule

| Date | Combined Principal and Interest Payment | Principal | Interest |
|------|------------------------------------------|-----------|----------|
| January 15, 2020 | $125,000 | $55,620.49 | $  69,379.51 |
| April 15, 2020 | $125,000 | 56,315.75 | 68,684.25 |
| July 15,2020 | $125,000 | 57,019.70 | 67,980.30 |
| October 15, 2020 | $125,000 | 57,732.44 | 67,267.56 |
| January 15, 2021 | $125,000 | 58,454.10 | 66,545.90 |
| April 15, 2021 | $125,000 | 59,184.77 | 65,815.23 |
| July 15, 2021 | $125,000 | 59,924.58 | 65,075.42 |
| October 15, 2021 | $125,000 | 60,673.64 | 64,326.36 |
| January 15, 2022 | $125,000 | 61,432.06 | 63,567.94 |
| April l5, 2022 | $125,000 | 62,199.96 | 62,800.04 |
| July 15, 2022 | $125,000 | 62,977.46 | 62,022.54 |
| October 15, 2022 | $125,000 | 63,764.68 | 61,235.32 |
| January 15, 2023 | $125,000 | 64,561.74 | 60,438.26 |
| April 15, 2023 | $125,000 | 65,368.76 | 59,631.24 |
| July 15, 2023 | $125,000 | 66,185.87 | 58,814.13 |
| October 15, 2023 | $125,000 | 67,013.19 | 57,986.81 |
| January 15, 2024 | $125,000 | 67,850.86 | 57,149.14 |
| April 15, 2024 | $125,000 | 68,698.99 | 56,301.01 |
| July 15, 2024 | $125,000 | 69,557.73 | 55,442.27 |
| October 15, 2024 | $125,000 | 70,427.20 | 54,572.80 |
| December 15, 2024 | $4,295,396.55 | | |

Notwithstanding the foregoing if Maker has satisfied the Discount Conditions then the final payment due on December 15, 2024 shall be reduced by $1,200,000 and only $3,095,396.55 shall then be due.

A-1

# EXHIBIT B

Guarantee

# GUARANTEE AGREEMENT

among

## STARBOARD INTERNATIONAL HOLDINGS B.V.,
as Guarantor

## ANDREW LEVY,
as Guarantor

and

## WENDY'S NETHERLANDS B.V.,
as Beneficiary

Dated as of October 20, 2015



*Execution Version*

## GUARANTEE AGREEMENT

This GUARANTEE AGREEMENT, dated as of October 20, 2015 (as amended, amended and restated, supplemented, or otherwise modified from time to time, this "Agreement"), is made by STARBOARD INTERNATIONAL HOLDINGS B.V., a company organized and existing under the laws of the Netherlands ("Starboard"), and ANDREW LEVY ("Levy", each of Starboard and Levy, a "Guarantor", and collectively, the "Guarantors"), in favor of WENDY'S NETHERLANDS B.V., a company organized and existing under the laws of the Netherlands, as beneficiary (together with any successor(s) and assign(s) thereto, in such capacity, the "Beneficiary"; and together with the Guarantors, the "Parties").

## W I T N E S S E T H :

WHEREAS, WBR PARTICIPAÇÕES LTDA., as borrower (the "Borrower"), has entered into that certain Credit Agreement, dated as of the date hereof (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), with the Beneficiary, pursuant to which, among other things, the Beneficiary has agreed to make up to eight million US Dollars (US$8,000,000) available to the Borrower;

WHEREAS, Levy is an Affiliate of Starboard and Starboard owns forty percent (40%) of the quotas of the Borrower, which on the date hereof has entered into a certain quota pledge agreement (the "Pledge Agreement") granting a security interest in favor of the Beneficiary in the quotas now owned and that may be acquired by it or its Affiliates in the future to secure a percentage of all amounts and obligations due to the Beneficiary under the Credit Agreement, including obligations to pay principal and interest, penalties, fines, fees and expenses, and other amounts due or that may become due pursuant to the terms of the Credit Agreement (such total amounts and obligations due under the Credit Agreement are collectively referred to herein as the "Obligations"), that correspond to the percentage of the quotas of the Borrower owned directly or indirectly by the Guarantors and their Affiliates (which is currently forty percent (40%)), as well as any costs (including attorneys' fees) incurred in enforcing the Pledge Agreement and the other Loan Documents against Starboard (such amounts and obligations that correspond to the percentage of the quotas of the Borrower owned directly or indirectly by the Guarantors and their Affiliates are collectively referred to herein as the "Guaranteed Obligations");

WHEREAS, Infinity Holding e Participações Ltda. ("Infinity") owns forty percent (40%) of the quotas of the Borrower and on the date hereof has together with its Affiliates, Marcel Ghomieh, Diego Pagliusi Gomes de Oliveira Sala, Bruno Laporta, RKF Participações Ltda., Fernando Fakri de Assis, IFE – Inteligência Financeira Empreendimentos EIRELI and Ricardo Giacomo Maluf entered into that certain Guarantee Agreement (the "Infinity Guarantee"), and on the date hereof has, by itself, entered into the Pledge Agreement granting a security interest in favor of the Beneficiary in the quotas now owned and that may be acquired by it and its Affiliates in the future to secure a percentage of all Obligations owed to Beneficiary under the Credit Agreement that corresponds to the percentage of the quotas of the Borrower owned directly or indirectly by Infinity and its Affiliates (which is currently forty percent (40%)), as

well as any costs incurred in enforcing the Pledge Agreement and the other Loan Documents against Infinity;

WHEREAS, Wendy's Netherlands Holdings B.V. ("Wendy's Netherlands") owns twenty percent (20%) of the quotas of the Borrower and on the date hereof it has entered into that certain Guarantee Agreement (the "Wendy's Guarantee"), and on the date hereof Wendy's Netherlands has, by itself, entered into the Pledge Agreement granting a security interest in favor of the Beneficiary in the quotas now owned and that may be acquired by it and its Affiliates in the future to secure a percentage of all amounts owed to Beneficiary under the Credit Agreement that corresponds to the percentage of the quotas of the Borrower owned directly or indirectly by Wendy's Netherlands and its Affiliates (which is currently twenty percent (20%)), as well as any costs incurred in enforcing the Pledge Agreement and the other Loan Documents against Wendy's Netherlands;

WHEREAS, it is a condition precedent to the effectiveness of the Credit Agreement and the other Loan Documents, and the obligations of the Beneficiary to make the Loan as contemplated thereby, that the Guarantors shall have executed and delivered this Agreement;

WHEREAS, the Guarantors will obtain benefits from the Credit Agreement and, accordingly, desire to execute this Agreement to satisfy the conditions described in the preceding paragraph and to induce the Beneficiary to extend credit to the Borrower pursuant to the Credit Agreement and the other Loan Documents; and

WHEREAS, an Affiliate of the Beneficiary, Quality Is Our Recipe, LLC (authorized assignee Wendy's Global Restaurants, LLC) ("Quality Is Our Recipe") has entered into a Master Franchise Agreement (the "Master Franchise Agreement") with the Borrower on April 2, 2015, as amended, and another Affiliate of the Beneficiary, Wendy's Netherlands has certain rights with respect to the operations of the Borrower pursuant to the Sociedade Limitada Agreement (the "Limitada Agreement") entered into with Infinity and Starboard on April 2, 2015, as amended, and the rights of the Beneficiary under this Agreement and the other Loan Documents shall not in any manner be affected by such Affiliates' exercise of their rights under the Master Franchise Agreement or the Limitada Agreement.

NOW, THEREFORE, in consideration of the promises contained herein, and to induce the Beneficiary to enter into the Credit Agreement and to make the Loans as contemplated thereby, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, each Guarantor hereby agrees, for the benefit of the Beneficiary as follows:

## ARTICLE I
## DEFINITIONS

SECTION 1.1. Certain Terms. The following terms (whether or not underscored) when used in this Agreement, including its preamble and recitals, shall have the following meanings (such definitions to be equally applicable to the singular and plural forms thereof):

"Agreement" shall have the meaning assigned to such term in the preamble to this Agreement.

2

"Bankruptcy Code" means Title 11 of the United States Code entitled "Bankruptcy," as now and hereafter in effect, or any successor statute.

"Beneficiary" shall have the meaning assigned to such term in the recitals to this Agreement.

"Borrower" shall have the meaning assigned to such term in the recitals to this Agreement.

"Credit Agreement" shall have the meaning assigned to such term in the recitals to this Agreement.

"Guarantee" means the guarantee made pursuant to Article II of this Agreement.

"Guarantor" shall have the meaning assigned to such term in the preamble to this Agreement.

"Limitada Agreement" shall have the meaning assigned to such term in the preamble to this Agreement.

"Loan Documents" means this Agreement, together with the Credit Agreement and related promissory notes, Pledge Agreement, Infinity Guarantee and Wendy's Guarantee.

"Master Franchise Agreement" shall have the meaning assigned to such term in the preamble to this Agreement.

"Obligations" shall have the meaning assigned to such term in the preamble to this Agreement.

"Securities Collateral" means all interest in Borrower now owned or hereafter acquired by the Guarantors and its or his other Affiliates, including the quotas in the Borrower; all rights and interests of the Guarantors and its or his Affiliates under any and all registrations, certificates, articles, by-laws, limited liability company agreements or constitutive agreements governing or representing any such interests; all options and other rights, contractual or otherwise established, at any time existing with respect to such interests, as such interests are amended, modified, or supplemented from time to time, and together with any interests taken in extension or renewal thereof or substitution therefor.

SECTION 1.2. Credit Agreement Definitions. Unless otherwise defined herein or the context otherwise requires, capitalized terms used in this Agreement, including its preamble and recitals, have the meanings provided in the Credit Agreement. The rules of interpretation and construction set forth in Section 1.2 of the Credit Agreement shall apply to this Agreement, mutatis mutandis, as if set forth fully herein.

ARTICLE II

SECTION 2.1. Guarantee.

(a)     Each Guarantor hereby, jointly and severally, unconditionally and irrevocably, guarantees to the Beneficiary the prompt and complete payment and performance by the Borrower when due (whether at the stated maturity, or earlier by acceleration or otherwise) of the Guaranteed Obligations.   The Guarantee granted by the Guarantors pursuant to this Agreement has the purpose of guaranteeing the full and prompt payment and performance when due (whether at the due dates set forth in the Credit Agreement, or earlier, in case of acceleration or for any other reason as set forth in the Credit Agreement) of the Obligations.  For the avoidance of doubt, if the equity interest that the Guarantors own or control directly or indirectly (including through subsidiaries, sister companies or other Affiliates) in the Borrower increases or decreases for any reason or in any manner, the percentage of the obligations of the Borrower under the Credit Agreement that comprises the Guaranteed Obligations shall increase or decrease to reflect the equity interest that the Guarantors own or control directly or indirectly in the Borrower.

(b)     Anything herein or in any other Loan Document to the contrary notwithstanding, the maximum liability of each Guarantor hereunder and under the other Loan Documents shall in no event exceed the amount which can be guaranteed by such Guarantor under applicable federal and state laws relating to the insolvency of debtors (after giving effect to the right of contribution established in Section 2.2 and according to the percentage of Quotas held by Starboard in the capital of the Borrower).

(c)     Each Guarantor agrees that the Obligations may at any time and from time to time exceed the amount of the liability of such Guarantor hereunder without impairing or increasing the value of (as long as the value of the Obligations themselves does not increase) the Guarantee or affecting the rights and remedies of the Beneficiary hereunder.

(d)     The Guarantee shall remain in full force and effect until all the Guaranteed Obligations have been satisfied by indefeasible payment in full in cash (other than contingent indemnification and contingent expense obligations that survive the termination of the Loan Documents), notwithstanding that from time to time during the term of the Credit Agreement the Borrower may be free from any Obligations.

(e)     No payment, made by the Borrower, any Guarantor, any other guarantor or any other Person, or received or collected by the Beneficiary from the Borrower, any Guarantor, any other guarantor or any other Person, by virtue of any action or proceeding or any set-off or appropriation or application at any time or from time to time in reduction of, or in payment of, the Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of any Guarantor hereunder for any portion of the Obligations which have not been paid which shall, notwithstanding any such payment (other than any payment made by any Guarantor in respect of the Obligations or any payment received or collected from any Guarantor in respect of the Obligations), remain liable for the portion of the Obligations which have not been paid up to the maximum liability of a Guarantor hereunder until the Obligations (other than contingent indemnification and contingent expense obligations that survive the termination of the Loan Documents), are paid in full.

Notwithstanding anything herein to the contrary, the Beneficiary agrees that prior to enforcing the Guarantee against any Guarantor, (i) Borrower will be allowed up to ninety (90)

days to sell its assets in accordance with the Limitada Agreement in order to satisfy Obligations, and then (ii) the Beneficiary will exercise its rights under the Pledge Agreement.

SECTION 2.2. <u>No Subrogation</u>. Notwithstanding any payment made by any Guarantor hereunder or any set-off or application of funds of any Guarantor by the Beneficiary, each Guarantor shall not be entitled to be subrogated to any of the rights of the Beneficiary against the Borrower or any other guarantor or any collateral security or guarantee or right of offset held by the Beneficiary for the payment of the Obligations, nor shall any Guarantor seek or be entitled to seek any contribution or reimbursement from the Borrower or any other guarantor in respect of payments made by any Guarantor hereunder, until all amounts owing to the Beneficiary (other than contingent indemnification and contingent expense obligations that survive the termination of the Loan Documents) are paid in full. If any amount shall be paid to any Guarantor on account of such subrogation rights at any time when all of the Obligations (other than contingent indemnification and contingent expense obligations that survive the termination of the Loan Documents) shall not have been paid in full, such amount shall be held by such Guarantor in trust for the Beneficiary, segregated from other funds of such Guarantor, and shall, forthwith upon receipt by such Guarantor, be turned over to the Beneficiary in the exact form received by such Guarantor (duly indorsed by such Guarantor to the Beneficiary, if required), to be applied against the Obligations, whether matured or unmatured, in such order as the Beneficiary may reasonably determine.

SECTION 2.3. <u>Amendments, etc. with respect to the Obligations</u>. Each Guarantor shall remain obligated hereunder notwithstanding that, without any reservation of rights against such Guarantor and without notice to or further assent by such Guarantor, any demand for payment of any of the Obligations made by the Beneficiary may be rescinded by the Beneficiary and any of the Obligations continued, and the Obligations, or the liability of any other Person upon or for any part thereof, or any collateral security or guarantee or right of offset with respect thereto, may, from time to time, in whole or in part, be renewed, extended, amended, modified, accelerated, compromised, waived, surrendered or released by the Parties, and the Credit Agreement and the other Loan Documents and any other documents executed and delivered in connection therewith may be amended, modified, supplemented or terminated, in whole or in part by the Parties and any collateral security, guarantee or right of offset at any time held by the Beneficiary for the payment of the Obligations may be sold, exchanged, waived, surrendered or released. The Beneficiary shall not have any obligation to protect, secure, perfect or insure any Lien at any time held by it as security for the Obligations or for the Guarantee or any property subject thereto. The failure of the Beneficiary to enforce the Guaranty against any one or all the Guarantors or against any other guaranty or security pertaining to the Credit Agreement shall not result, under any circumstance, in the loss of any right or remedy of Beneficiary provided under this Agreement. Provided that the last paragraph of Section 2.1 above is observed, the Beneficiary shall be entitled to enforce (or not enforce) any of such guarantees in any sequence or order and without any kind of limitation or restriction in choosing among the Guarantors and any other guarantors

SECTION 2.4. <u>Guarantee Absolute and Unconditional</u>. Each Guarantor waives any and all notice of the creation, renewal, extension or accrual of any of the Obligations and notice of or proof of reliance by the Beneficiary upon the Guarantee or acceptance of the Guarantee; the Obligations, and any of them, shall conclusively be deemed to have been created, contracted or

incurred, or renewed, extended, amended or waived, in reliance upon the Guarantee; and all dealings between the Borrower and any Guarantor, on the one hand, and the Beneficiary, on the other hand, likewise shall be conclusively presumed to have been had or consummated in reliance upon the Guarantee. Each Guarantor waives diligence, presentment, protest, demand for payment and notice of default or nonpayment to or upon the Borrower or such Guarantor with respect to the Obligations (it being understood that such waiver does not affect any notice required to be given before an Event of Default (or similar event) can occur, as provided in the Credit Agreement or Quota Pledge Agreement). Each Guarantor understands and agrees that the Guarantee shall be construed as a continuing, absolute and unconditional guarantee of payment without regard to (a) the validity or enforceability of the Credit Agreement or any other Loan Document, any of the Obligations or any other collateral security therefor or guarantee or right of offset with respect thereto at any time or from time to time held by the Beneficiary, (b) any defense, set-off or counterclaim (other than a defense of payment or performance) which may at any time be available to or be asserted by the Borrower or any other Person against the Beneficiary, or (c) any other circumstance whatsoever (with or without notice to or knowledge of the Borrower or such Guarantor) which constitutes, or might be construed to constitute, an equitable or legal discharge of the Borrower for the Obligations, or of such Guarantor under the Guarantee, in bankruptcy or in any other instance. When making any demand hereunder or otherwise pursuing its rights and remedies hereunder against any Guarantor, the Beneficiary may, but shall be under no obligation to, make a similar demand on or otherwise pursue such rights and remedies as it may have against the Borrower, any other guarantor or any other Person or against any collateral security or guarantee for the Obligations or any right of offset with respect thereto, and any failure by the Beneficiary to make any such demand, to pursue such other rights or remedies or to collect any payments from the Borrower, any other guarantor or any other Person or to realize upon any such collateral security or guarantee or to exercise any such right of offset, or any release of the Borrower, any other guarantor or any other Person or any such collateral security, guarantee or right of offset, shall not relieve any Guarantor of any obligation or liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of Beneficiary against any Guarantor. For the purposes hereof "demand" shall include the commencement and continuance of any legal proceedings.

SECTION 2.5. <u>Reinstatement</u>. The Guarantee shall continue to be effective, or be reinstated, as the case may be, if at any time payment, or any part thereof, of any of the Obligations is rescinded or must otherwise be restored or returned by the Beneficiary or any Beneficiary upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of the Borrower, any Guarantor or any other guarantor, or upon or as a result of the appointment of a receiver, intervener or conservator of, or trustee or similar officer for, the Borrower, any Guarantor or any other guarantor or any substantial part of its property, all as though such payments had not been made.

SECTION 2.6. <u>Payments</u>. The Guarantors hereby guarantee that payments hereunder will be paid to the Beneficiary without set-off or counterclaim in Dollars at the office of the Beneficiary.

6



*Execution Version*

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

In order to induce the Beneficiary to enter into the Credit Agreement and make credit extensions thereunder, the Guarantors jointly and severally represent and warrant to the Beneficiary as follows:

SECTION 3.1. Duly Organized. Starboard is a company duly organized and validly existing under the laws of the Netherlands and has the corporate power and authority, and has taken all necessary action required to be taken or obtained, to execute, deliver and perform its obligations under this Agreement, and Levy has the capacity to execute, deliver and perform his obligations under this Agreement;

SECTION 3.2. No Conflicts. The execution, delivery, performance of and compliance with the terms of this Agreement by each Guarantor, and the consummation of the transactions contemplated hereby or by this Agreement and the Loan Documents, does not and will not (i) contravene the organizational documents of Starboard or, in any material respect, any requirements of law applicable to or binding upon any Guarantor or any of its or his properties, (ii) contravene or result in any breach of or constitute a default under, or result in or require the creation of any lien upon any of its or his property under, any agreement or instrument to which it or he is a party or by which it or he or any of its or his properties may be bound or affected in any material respect, (iii) violate or result in a default under any indenture, credit agreement, loan, lease or other agreement or instrument binding upon any Guarantor or its or his properties in any material respect or (iv) require any authorization, approval, consent or order of, or registration or filing with or notice to any person or to any court or other governmental body having jurisdiction over any Guarantor;

SECTION 3.3. Valid, Binding and Enforceable. This Agreement constitutes the legal, valid and binding agreement and obligation of each Guarantor enforceable against each Guarantor in accordance with its terms, except as the enforceability of this Agreement may be limited by the effect of any applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and by general principles of equity; and

SECTION 3.4. No Action or Proceeding. There are no actions, proceedings, claims, suits, investigations, inquiries or similar actions pending or threatened before any court or governmental authority or arbitral tribunal which might: (i) affect the ability of the Guarantors to perform their respective obligations under this Agreement; (ii) restrain or jeopardize, or have the effect of restraining or jeopardizing the performance or observance of the terms and conditions of this Agreement; or (iii) in any other manner question the validity, binding effect or enforceability of this Agreement.

## ARTICLE IV
## COVENANTS

Each Guarantor covenants and agrees that, until the Obligations have been paid in full, it will perform, comply with and be bound by each of the obligations set forth below.

SECTION 4.1. As to Securities Collateral.

7

       (a)   <u>Interest in the Borrower</u>.  The Guarantors shall not, and shall not allow or permit any of their Affiliates to, acquire any direct or indirect interest in the Borrower without granting a perfected security interest in such interest to the Beneficiary on terms substantially similar to the Pledge Agreement.

       (b)   <u>Continuous Pledge</u>.  With respect to all direct or indirect interest in the Borrower, the Guarantors will, and cause their Affiliates (subject to the terms of the Credit Agreement) to, maintain, in favor of the Beneficiary the Securities Collateral and at all times keep pledged in favor of the Beneficiary pursuant to the Pledge Agreement, on a first priority, perfected basis all Securities Collateral.

    SECTION 4.2.  <u>Limitation on Dispositions and Maintenance of Net Worth.</u>  The Guarantors shall not take and shall refrain from taking any action that may affect the Guaranty, the Guaranteed Obligations or enforcement of this Agreement in any material respect. Accordingly, each Guarantor agrees that during the term of this Agreement there shall not occur a material adverse effect to the net worth of such Guarantor that results or could reasonably be expected to result in the inability of such Guarantor to have sufficient assets to satisfy the Obligations.

## ARTICLE V
## MISCELLANEOUS PROVISIONS

    SECTION 5.1.  <u>Amendments, etc.</u> No amendment, modification, termination or waiver of any provision of this Agreement shall in any event be effective without the written agreement of the Party affected thereby; provided, however, that in the case of a modification to the Credit Agreement or any other Loan Document that results in a modification to this Agreement, the written agreement of the Guarantors shall not be required to effect such modification.

       (a)   Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

       (b)   No notice to or demand on any Guarantor in any case shall entitle such Guarantor to any other or further notice or demand in similar or other circumstances.

    SECTION 5.2.  <u>Notices</u>. Unless specifically provided otherwise herein, all notices, consents, directions, approvals, instructions, requests and other communications required or permitted by the terms of this Agreement to be given to a Party shall be in writing and delivered (i) personally, (ii) by an internationally recognized courier service (with proof of delivery), or (iii) by electronic mail followed up with an internationally recognized courier service (with proof of delivery), in each case directed to the address of the Party as indicated below, or to such other address as may be hereafter notified by any Party:

       (i)   To the Beneficiary:

       **WENDY'S NETHERLANDS B.V.**
       c/o One Dave Thomas Blvd.
       Dublin, OH 43017

8



2371655v1

*Execution Version*

At.: Legal Department

(ii)     To the Guarantor:

c/o **STARBOARD INTERNATIONAL HOLDINGS B.V.**
c/o 12540 W. Atlantic Blvd.
Coral Springs, FL 33071
At.: Andrew Levy

All notices and other communications made pursuant to the preceding section shall be deemed to have been given (i) if electronically mailed, upon receipt by the receiver of the electronic email, (ii) if delivered personally, upon delivery, and (iii) if mailed by internationally recognized courier service, on the second business day after delivery (with confirmation of such delivery received by the sender). From time to time, any Party may designate a new address for the purposes of notice hereunder by written notice to each of the other Parties in accordance with this Section 5.2.

SECTION 5.3. <u>Severability</u>. The invalidity, illegality or unenforceability of any provision in or obligation under this Agreement shall not affect or impair the validity, legality or enforceability of the remaining provisions or obligations under this Agreement. If any provision of this Agreement is held invalid, illegal or unenforceable, the Parties shall use their best efforts to replace such provision with a valid, legal and enforceable provision to provide the Parties to the extent possible the same rights and benefits as provided by the provision held to be invalid, illegal or unenforceable.

SECTION 5.4. <u>No Impact from Exercise of Rights Under Other Agreements</u>. The exercise by Quality Is Our Recipe, an Affiliate and entity of the economic group of the Beneficiary, of its rights under the Master Franchise Agreement between the Borrower and Quality Is Our Recipe and/or by Wendy's Netherlands under the Limitada Agreement shall not in any way impair or otherwise affect the rights of the Beneficiary under this Agreement.

SECTION 5.5. <u>Successors</u>. This Agreement shall inure to the benefit of the Beneficiary and its successors and permitted transferees, and shall be binding upon the Guarantor and its respective successors and permitted transferees.

SECTION 5.6. <u>Right of Beneficiary to Assign</u>. The Beneficiary may, from time to time, assign and transfer any and all rights arising from this Agreement, without the need of any prior authorization or notice to the Guarantor.

SECTION 5.7.     <u>No Assignment by Guarantor</u>. Each Guarantor is not allowed to assign and/or transfer any rights or obligations set forth in this Agreement.

SECTION 5.8. <u>Governing Law.</u> **THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.**

9



*Execution Version*

SECTION 5.9. Jurisdiction.

(a)     Any legal action or proceeding against Beneficiary with respect to or arising out of this Agreement shall be brought exclusively in or removed to the courts of the State of New York, in and for the County of New York, or of the United States of America for the Southern District of New York (in each case sitting in the Borough of Manhattan). The Guarantors hereby expressly consent that any legal action with respect to, or arising out of this Agreement, may be brought by Beneficiary in or removed to the courts of (i) the State of New York, in and for the County of New York, or of the United States of America for the Southern District of New York (in each case sitting in the Borough of Manhattan), (ii) the City of São Paulo, State of São Paulo, Brazil or (iii) the corporate domicile of any Guarantor. By execution and delivery of this Agreement, Guarantor hereby expressly (i) accepts and submits, for itself and in respect of its property, generally and unconditionally, the jurisdiction of the abovementioned courts (and courts of appeals therefrom) for legal proceedings arising out of or in connection with this Agreement; and (ii) waives the right to bring an action in any other jurisdiction that could apply by virtue of its present or future domicile or for any other reason and waives any right to which it may be entitled, on account of place of residence or domicile or otherwise.

(b)     Nothing herein shall in any way be deemed to limit the ability of Beneficiary to serve any process or summons in any manner permitted by Requirements of Law, or limit any right that Beneficiary may have to bring proceedings against the Guarantor in the courts of any jurisdiction or to enforce in any lawful manner a judgment obtained in one jurisdiction in any other jurisdiction.

(c)     The Beneficiary will also be entitled to recover from the Guarantors jointly and severally any and all costs and expenses (including attorneys' fees) incurred or suffered in enforcing this Agreement against any of the Guarantors.

SECTION 5.10. Waiver of Jury Trial

EACH OF THE PARTIES KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ITS RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON, ARISING OUT OF OR RELATED TO THIS AGREEMENT, IN ANY ACTION, LITIGATION OR OTHER PROCEEDING OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY OR ANY OTHER PERSON, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS OR OTHERWISE. EACH OF THE PARTIES AGREES THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED IN A COURT TRIAL WITHOUT A JURY. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING THAT SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR ANY PROVISION HEREOF. THE AGREEMENT OF EACH PARTY HERETO TO THIS PROVISION IS A MATERIAL INDUCEMENT FOR EACH OF THE OTHER PARTIES TO ENTER INTO THIS AGREEMENT.

2371655v1



*Execution Version*

SECTION 5.11. <u>No Waiver; Cumulative Remedies</u>.

(a)     No failure or delay on the part of the Beneficiary in the exercise of any power, right or privilege under this Agreement shall impair such power, right or privilege or be construed to be an amendment to the terms of this Agreement, waiver of any default or acquiescence therein, nor shall any single or partial exercise of any such power, right or privilege preclude any other or further exercise thereof or of any other right, power or privilege. All rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies provided by law or otherwise available.

(b)     In the event that the Beneficiary shall have instituted any proceeding to enforce any right, power, privilege or remedy under this Agreement, or any other Loan Document by foreclosure, sale, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Beneficiary, then and in every such case, the Guarantor and the Beneficiary shall be restored to their respective former positions and rights hereunder with respect to the Securities Collateral, and all rights, remedies, privileges and powers of the Beneficiary shall continue as if no such proceeding had been instituted.

SECTION 5.12. <u>Counterparts</u>. This Agreement and any amendments, waivers, consents or supplements hereto or in connection herewith may be executed by the Parties in several counterparts, each of which shall be deemed to be an original and all of which shall constitute together but one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement.

**[SIGNATURES BEGIN ON FOLLOWING PAGE]**

2371655v1



*Execution Version*

IN WITNESS WHEREOF, each of the Parties has caused this Agreement to be duly executed and delivered by its authorized officer as of the date first above written.

**GUARANTORS:**

**STARBOARD INTERNATIONAL HOLDINGS B.V.**

By: _____

Name: Lucas Hernandez do Vale Martins
Title: Attorney-in-fact

**ANDREW LEVY**

By: _____

Name: Lucas Hernandez do Vale Martins
Title: Attorney-in-fact

**BENEFICIARY:**

**WENDY'S NETHERLANDS B.V.**

By: _____

Name: Roberto Toshiyuki Ioshioca
Title: Attorney-in-fact

**WITNESSES:**

1. _____
Name: Agnes Ilona Keresztes Bigatto
        RG. 6.111.023
ID:      CPF 008.308.628-00

2. _____
Name:     Susana Kotaki Botelho
ID:       RG: 15.559.793-0 SSP-SP
          CPF: 051.179.556-03

2371655v1

## FIRST AMENDMENT TO THE GUARANTEE AGREEMENT

This private instrument amendment is entered by the following parties ("**Parties**" and, individually, "**Party**"), in the City of São Paulo, on August 2, 2017:

**(1)    WENDY'S NETHERLANDS B.V.**, a company organized and existing pursuant to the laws of the Netherlands, with headquarters at Naritaweg 165, 1043 BW Amsterdam, the Netherlands, represented herein by its attorney-in-fact, Mr. **Roberto Toshiyuki Ioshioca**, Brazilian, married, business manager, bearer of Identity Card RG No. 25.787.544-X SSP/SP, enrolled with the National Individual Taxpayers Register ("**CPF/MF**") under No. 266.852.128-96, resident and domiciled at Rua Nicolau Zarvos, 428, Parque Jabaquara, City of São Paulo, State of São Paulo, Zip Code 04356-080 ("**Beneficiary**");

**(2)    STARBOARD INTERNATIONAL HOLDINGS B.V.**, a company organized and existing under the laws of the Netherlands, with headquarters at Strawinskylaan 411, WTC, Tower A, 4th floor, 1077XX, Amsterdam, the Netherlands, enrolled with the CNPJ/MF under No. 21.501.394/0001-31, represented herein by its attorney-in-fact, Mr. **Lucas Hernandez do Vale Martins**, Brazilian, single, lawyer, enrolled in the Brazilian Bar Association, São Paulo Section, under No. 250.073 and with the CPF/MF under No. 316.921.318-00, resident and domiciled in the City of São Paulo, State of São Paulo, with address on Rua Joaquim Floriano, 888 - Cj. 101, Itaim Bibi, Zip Code 04534-003 ("**Starboard**"); and

**(3)    Andrew Levy**, American, married, executive, bearer of passport number 509107079, issued by the United States of America, resident and domiciled at 1401 West Two Creeks Circle, Park City, Utah, 84098, United States of America, represented herein by its attorney-in-fact, Mr. **Lucas Hernandez do Vale Martins**, above qualified ("**Andrew**" and, each of Starboard and Andrew, a "**Guarantor**" and, collectively, the "**Guarantors**").

**WHEREAS**

(A)    On October 20, 2015, **WBR FRANQUIAS E PARTICIPAÇÕES LTDA.**, a Brazilian limited liability company (*sociedade limitada*) with headquarters at Rua Iaiá, 150, 13rd floor, Room 01, Itaim Bibi, City of São Paulo, State of São Paulo, Zip Code 04542-060, enrolled with CNPJ/MF under No. 21.824.541/0001-04 (the "**Borrower**"), in the capacity of borrower, entered into a credit agreement with the Beneficiary pursuant to which the Borrower could borrow up to US$8,000,000 (eight million US Dollars) from Beneficiary ("**Credit Agreement 2015**");

(B)    Pursuant to the terms of the Guarantee Agreement entered into by and between the Parties on October 20, 2015 ("**Guarantee Agreement**"), each Guarantor, jointly and severally, unconditionally and irrevocably, guaranteed to the Beneficiary the prompt and complete payment and performance by the Borrower of the Guaranteed Obligations;

(C)    On the date hereof, the Borrower, in the capacity of borrower, entered into a new credit agreement pursuant to which the Borrower can borrow up to US$4,800,000 (four million and eight hundred thousand US Dollars) from the Beneficiary ("**Credit Agreement 2017**" and, together with the Credit Agreement 2015, "**Credit Agreements**");



(D)   The Guarantors are fully aware of the terms and conditions of the Credit Agreements and agree to guarantee the full and prompt performance of the obligations of the Borrower due under the Credit Agreement 2017 by including such obligations in the definition of Guaranteed Obligations of the Guarantee Agreement; and

(E)   The Parties have agreed to include the Credit Agreement 2017 as part of the definition of Guaranteed Obligations.

NOW THEREFORE, in consideration of the premises and mutual promises contained herein, the Parties agree to enter into this First Amendment to the Guarantee Agreement (hereinafter the "**Amendment**"), which shall be governed by the following terms and conditions:

1.   **DEFINITIONS**

   1.1.   Unless as otherwise defined herein, capitalized terms used in this Amendment shall have the meanings ascribed to them in the Guarantee Agreement.

2.   **AMENDMENT**

   2.1.   As a consequence of the execution of the Credit Agreement 2017, the Parties agree to amend and complement the definition of "Obligations" and "Guaranteed Obligations" provided in the Guarantee Agreement. As of the date hereof, for all purposes of the Guarantee Agreement: (i) "**Obligations**" shall mean all amounts and obligations due to the Beneficiary under the Credit Agreement 2015 and the Credit Agreement 2017, including relevant obligations to pay principal and interest, penalties, fines, fees and expenses, and other amounts due or that may become due pursuant to the terms of the Credit Agreement 2015 and the Credit Agreement 2017; and (ii) "**Guaranteed Obligations**" shall mean the percentage of the Obligations corresponding to the percentage of the quotas of the Borrower owned directly or indirectly by the Guarantors and their Affiliates, pursuant to the terms and conditions of the Guarantee Agreement.

   2.2.   The Guarantors hereby ratify the guarantee granted to the Beneficiary under the Guarantee Agreement and all obligations undertaken thereunder.

   2.3.   The Guarantors, as primary obligor and not merely as a surety, and being joint and severally liable with Borrower in respect to the Obligations and Guaranteed Obligations, notwithstanding occasional Borrower's declaration of bankruptcy or request for preventive judicial or extrajudicial rehabilitation ("*recuperação judicial ou extrajudicial*"), hereby agree that they shall not be exempted from the responsibility to pay the principal and accessory debts accrued with interest and further charges under the Credits Agreements and under the Agreement, accrued *pro rata die*, as from the due date of the debt until the date of its actual payment.

      2.3.1.   The Guarantors hereby expressly acknowledge and agree that the Beneficiary will be entitled to enforce the payment of the Guaranteed Obligations against any of the Guarantors severally or all of them jointly, without any priority order or limitation of any nature, provided that any Guarantor, individually considered, may be subject to the payment of the total amount due under the Guaranteed Obligations.



2

**2.4.**    The Guarantors shall also be liable for payment of judicial or extrajudicial expenses, including attorneys' fees, in case Beneficiary is compelled to file a lawsuit claiming the enforcement of the performance of any obligation undertaken by Borrower.

**2.5.**    In case of (i) insolvency, loss of financial capacity or liquidity of any of the Guarantors; (ii) sale or encumbrances of all real estates or main assets of any of the Guarantors; (iii) loss of market value of business and assets of any of the Guarantors; or (iv) modification of any of the Guarantors' seat without a prior written notice to Beneficiary, Borrower undertakes to present a new guarantor, with sufficient assets and financial capacity and liquidity to act as a guarantor of the Credit Agreements and of the Guarantee Agreement, within thirty (30) days counted as from the notice from Beneficiary requiring presentation of new guarantor.

**2.6.**    Each of the Guarantors represents and warrants to have sufficient assets, in the aggregate, free of any encumbrances of any nature, to fully comply with the Guaranteed Obligations.

**2.7.**    Each of the Guarantors acknowledges and agrees that the Beneficiary, at its sole discretion, will be entitled to elect the enforcement of the Guarantee regardless of any other guarantee instruments or remedies available to the Beneficiary against any of the Guarantors or third parties, without any priority order or limitation of any nature, pursuant to the terms of this Amendment, the Guarantee Agreement, the Quota Pledge Agreement, the Credit Agreements and/or any other Loan Documents. Therefore, each of the Guarantors further acknowledges and agrees that, as from the date hereof, the last paragraph of Section 2.1 of the Guarantee Agreement shall no longer be valid for any purpose whatsoever, including for purposes of the Credit Agreement 2015.

    **2.7.1.**    In view of the above, Sections 2.1 and 2.3 of the Guarantee Agreement shall become in force as follows:

    "***SECTION 2.1.    Guarantee***.

    *(a)      Each Guarantor hereby, jointly and severally, unconditionally and irrevocably, guarantees to the Beneficiary the prompt and complete payment and performance by the Borrower when due (whether at the stated maturity, or earlier by acceleration or otherwise) of the Guaranteed Obligations.  The Guarantee granted by the Guarantors pursuant to this Agreement has the purpose of guaranteeing the full and prompt payment and performance when due (whether at the due dates set forth in the Credit Agreement, or earlier, in case of acceleration or for any other reason as set forth in the Credit Agreement) of the Obligations. For the avoidance of doubt, if the equity interest that the Guarantors own or control directly or indirectly (including through subsidiaries, sister companies or other Affiliates) in the Borrower increases or decreases for any reason or in any manner, the percentage of the obligations of the Borrower under the Credit Agreement that comprises the Guaranteed Obligations shall increase or decrease to reflect the equity interest that the Guarantors own or control directly or indirectly in the Borrower.*

    *(b)      Anything herein or in any other Loan Document to the contrary notwithstanding, the maximum liability of each Guarantor hereunder and under the*

3



*other Loan Documents shall in no event exceed the amount which can be guaranteed by such Guarantor under applicable federal and state laws relating to the insolvency of debtors (after giving effect to the right of contribution established in Section 2.2 and according to the percentage of Quotas held by Starboard in the capital of the Borrower).*

*(c)     Each Guarantor agrees that the Obligations may at any time and from time to time exceed the amount of the liability of such Guarantor hereunder without impairing or increasing the value of (as long as the value of the Obligations themselves does not increase) the Guarantee or affecting the rights and remedies of the Beneficiary hereunder.*

*(d)     The Guarantee shall remain in full force and effect until all the Guaranteed Obligations have been satisfied by indefeasible payment in full in cash (other than contingent indemnification and contingent expense obligations that survive the termination of the Loan Documents), notwithstanding that from time to time during the term of the Credit Agreement the Borrower may be free from any Obligations.*

*(e)     No payment, made by the Borrower, any Guarantor, any other guarantor or any other Person, or received or collected by the Beneficiary from the Borrower, any Guarantor, any other guarantor or any other Person, by virtue of any action or proceeding or any set-off or appropriation or application at any time or from time to time in reduction of, or in payment of, the Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of any Guarantor hereunder for any portion of the Obligations which have not been paid which shall, notwithstanding any such payment (other than any payment made by any Guarantor in respect of the Obligations or any payment received or collected from any Guarantor in respect of the Obligations), remain liable for the portion of the Obligations which have not been paid up to the maximum liability of a Guarantor hereunder until the Obligations (other than contingent indemnification and contingent expense obligations that survive the termination of the Loan Documents), are paid in full."*

*"**SECTION 2.3.     <u>Amendments, etc. with respect to the Obligations</u>**. Each Guarantor shall remain obligated hereunder notwithstanding that, without any reservation of rights against such Guarantor and without notice to or further assent by such Guarantor, any demand for payment of any of the Obligations made by the Beneficiary may be rescinded by the Beneficiary and any of the Obligations continued, and the Obligations, or the liability of any other Person upon or for any part thereof, or any collateral security or guarantee therefor or right of offset with respect thereto, may, from time to time, in whole or in part, be renewed, extended, amended, modified, accelerated, compromised, waived, surrendered or released by the Parties, and the Credit Agreement and the other Loan Documents and any other documents executed and delivered in connection therewith may be amended, modified, supplemented or terminated, in whole or in part by the Parties and any collateral security, guarantee or right of offset at any time held by the Beneficiary for the payment of the Obligations may be sold, exchanged, waived, surrendered or released.  The Beneficiary shall not have any obligation to protect, secure, perfect*

4



*or insure any Lien at any time held by it as security for the Obligations or for the Guarantee or any property subject thereto. The failure of the Beneficiary to enforce the Guaranty against any one or all the Guarantors or against any other guaranty or security pertaining to the Credit Agreement shall not result, under any circumstance, in the loss of any right or remedy of Beneficiary provided under this Agreement. The Beneficiary will be entitled, at its sole discretion, to enforce (or not enforce) any of such guarantees in any sequence or order and without any kind of limitation or restriction in choosing among the Guarantors and any other guarantors."*

## 3. REGISTRATIONS

**3.1.** The Guarantors shall provide for the translation of the Guarantee Agreement and this Amendment into Portuguese by a sworn translator and register the Guarantee Agreement and this Amendment accompanied the relevant sworn translation with the competent Registry of Deeds and Documents (*Registro de Títulos e Documentos*) in the City of São Paulo, State of São Paulo, within twenty (20) calendar days as from the date hereof.

**3.2.** The Guarantors shall present to the Beneficiary evidence that the respective registration was duly completed within three (3) calendar days as from the date the relevant registration is completed.

## 4. REPRESENTATIONS, WARRANTIES, COVENANTS AND UNDERTAKINGS

**4.1.** The Guarantors and the Borrower hereby make the same representations and warranties made by each of them, as the case may be, pursuant to terms of the Guarantee Agreement as if the same were made on the date hereof.

## 5. GOVERNING LAW

**5.1.** This Amendment is governed by, and shall be interpreted in accordance with, the laws of the State of New York.

## 6. JURISDICTION

**6.1.** Any legal action or proceeding against Beneficiary with respect to or arising out of this Amendment shall be brought exclusively in or removed to the courts of the State of New York, in and for the County of New York, or of the United States of America for the Southern District of New York (in each case sitting in the Borough of Manhattan). The Guarantors hereby expressly consent that any legal action with respect to, or arising out of this Amendment, may be brought by Beneficiary in or removed to the courts of (i) the State of New York, in and for the County of New York, or of the United States of America for the Southern District of New York (in each case sitting in the Borough of Manhattan), (ii) the City of São Paulo, State of São Paulo, Brazil or (iii) the corporate domicile of any Guarantor. By execution and delivery of this Amendment, each Guarantor hereby expressly (i) accepts and submits, for itself and in respect of its property, generally and unconditionally, the jurisdiction of the abovementioned courts (and courts of appeals therefore) for legal proceedings arising out of or in connection with this Amendment; and (ii) waives the right to bring an action in any other jurisdiction that could apply by virtue of its present or future domicile or for any other reason and waives any right to which it may be entitled, on account of place of residence or domicile or otherwise.

5



## 7.    GENERAL PROVISION

**7.1.**    Except as expressly provided by this Amendment, the provisions of the Guarantee Agreement shall continue to be in full force and effect and are hereby ratified by the Parties hereto.

In witness whereof, the Parties signed this Amendment in three (3) counterparts of the same form and contents, to one sole effect, in the presence of the two (2) witnesses signed below on the date first written above.

*[Signature pages to follow.]*



[*Signature page of the First Amendment to the Guarantee Agreement entered into by and among Wendy's Netherlands B.V., Starboard International Holdings B.V. and Andrew Levy, on August 2, 2017*]

**WENDY'S NETHERLANDS B.V.**

_____
Roberto Toshiyuki Ioshioca

**STARBOARD INTERNATIONAL HOLDINGS B.V.**

_____
Lucas Hernandez do Vale Martins

**ANDREW LEVY**

_____
Lucas Hernandez do Vale Martins

Witnesses:

1.  _____
    Name:   Beatriz Ferreira da Silva
    ID:       RG 36.116.721-0
               CPF 426.344.488-48

2.  _____
    Name: Leonardo A. da Silva
    ID: 45.915.114-9

DOCS - 3211531v3

7



Tradução nº I-43253
Livro nº 323
Folha 49

1972785

*Eu, Maria Cláudia Santos Ribeiro Ratto, tradutora pública, certifico e dou fé que me foi apresentado um documento, em idioma inglês, que passo a traduzir para o vernáculo no seguinte teor:*

## SEGUNDO ADITAMENTO AO CONTRATO DE GARANTIA

Este instrumento particular de aditamento é celebrado pelas seguintes partes (**"Partes"**, e individualmente, **"Parte"**), na Cidade de São Paulo, em 19 de janeiro de 2018:

**(1) WENDY'S NETHERLANDS B.V.**, sociedade devidamente constituída e existente segundo as leis dos Países Baixos, com sede em Naritaweg 165, 1043 BW Amsterdã, Países Baixos, representada neste ato por seu procurador, Sr. Roberto Toshiyuki Ioshioca, brasileiro, casado, administrador de empresas, portador da Cédula de Identidade RG nº 25.787.544-X SSP/SP, inscrito no CPF/MF sob o nº 266.852.128-96, residente e domiciliado na Rua Nicolau Zarvos, 428, Parque Jabaquara, Cidade de São Paulo, Estado de São Paulo, CEP 04356-080 (**"Beneficiária"**);

**(2) STARBOARD INTERNATIONAL HOLDINGS B.V.**, sociedade devidamente constituída e existente segundo as leis dos Países Baixos, com sede em Strawinskylaan 411, WTC, Torre A, 4 andar, 1077XX, Amsterdã, Países Baixos, inscrita no CNPJ/MF sob o nº 21.501.394/0001-31, representada neste ato por seu procurador, Sr. **Lucas Hernandez do Vale Martins**, brasileiro, solteiro, advogado, inscrito na Ordem dos Advogados do Brasil, Seção de São Paulo, sob o nº 250.073 e no CPF/MF sob o nº 316.921.318-00, residente e domiciliado na Cidade de São Paulo, Estado de São Paulo, com endereço na Rua Joaquim Floriano, 888 – Cj. 101, Itaim Bibi, CEP 04534-003 (**"Starboard"**); e

**(3)** Andrew **Levy**, americano, casado, executivo, portador do passaporte nº 509107079, emitido pelos Estados Unidos da **América**, residente e domiciliado em 1401 West Two Creeks Circle, Park City, Utah, 84098, Estados Unidos da América, representado neste ato por seu procurador, Sr. **Lucas Hernandez do Vale Martins**, acima qualificado (**"Andrew"**, sendo a Starboard e Andrew designados cada qual um **"Garantidor"** e, em conjunto, **"Garantidores"**).

## CONSIDERANDO QUE:

(A) Em 20 de outubro de 2015, a **WBR FRANQUIAS E PARTICIPAÇÕES LTDA.**, sociedade brasileira empresária limitada com sede na Rua Iaiá, 150, 13º andar, Sala 01, Itaim Bibi, na Cidade de São Paulo, Estado de São Paulo, CEP 04542-060, inscrita no CNPJ/MF sob o nº 21.824.541/0001-04 (**"Devedora"**), na qualidade de devedora, celebrou um contrato de empréstimo com a Beneficiária mediante o qual a Devedora tomou emprestado da Beneficiária o montante de US$8.000.000 (oito milhões de Dólares Norte-Americanos) (**"Contrato de Empréstimo de 2015"**);

(B) Nos termos do Contrato de Garantia celebrado pelas Partes em 20 de outubro de 2015 (**"Contrato de Garantia Original"**), cada um dos Garantidores garantiu, individual e solidariamente, incondicional e irrevogavelmente, à Beneficiária o pontual e completo pagamento e cumprimento, pela Devedora, das Obrigações Garantidas;

(C) Em 2 de agosto de 2017, a Devedora celebrou um novo contrato de empréstimo com a Beneficiária mediante o qual a Devedora tomou emprestado da Beneficiária o montante de US$4.800.000 (quatro milhões e oitocentos mil Dólares Norte-Americanos) (**"Contrato de Empréstimo de 2017"** e, em conjunto com o Contrato de Empréstimo de 2015, **"Contratos de Empréstimo"**);

(D) Em 2 de agosto de 2017, as Partes celebraram o Primeiro Aditamento ao Contrato de Garantia (**"Primeiro Aditamento ao Contrato de Garantia"** e, conjuntamente com o Contrato de Garantia Original, o **"Contrato de Garantia"**), de maneira a incluir o Contrato de Empréstimo de 2017 como parte da definição de Obrigações Garantidas; e

(E) As Partes concordaram em alterar a definição de "Obrigações Garantidas" contida no Contrato de Garantia.

ISSO POSTO, em consideração às premissas e mútuos compromissos aqui assumidos, as Partes

Tradução nº I-43253
Livro nº 323
Folha 50



concordam em celebrar este Segundo Aditamento do Contrato de Garantia (doravante o "**Aditamento**"), o qual será regido pelos termos e condições a seguir:

## 1. DEFINIÇÕES

**1.1.** Salvo se definidos em contrário neste instrumento, os termos com iniciais maiúsculas utilizados neste Aditamento deverão ter os significados a eles atribuídos no Contrato de Garantia.

## 2. ADITAMENTO

**2.1.** As Partes concordam em alterar as definições de "Obrigações Garantidas" previstas no Contrato de Garantia. A partir desta data, para todos os fins do Contrato de Garantia, "**Obrigações Garantidas**" significa 40% (quarenta por cento) das Obrigações, segundo os termos e condições do Contrato de Garantia.

**2.2.** Tendo em vista o disposto acima, a partir da data deste instrumento, a Cláusula 2.1 do Contrato de Garantia passará a vigorar conforme segue:

*"CLÁUSULA 2.1. Garantia.*

*(a) Os Garantidores garantem, neste ato, incondicional e irrevogavelmente, à Beneficiária, o pontual e completo pagamento e cumprimento, pela Devedora, das Obrigações Garantidas, quando devidas (seja na data de vencimento ou antes, em razão de vencimento antecipado ou por outro motivo). A Garantia prestada pelos Garantidores, nos termos deste Contrato, tem por objetivo garantir o completo e pontual pagamento e cumprimento das Obrigações, quando devidas (seja nas datas de vencimento previstas nos Contratos de Empréstimo ou antes, em caso de vencimento antecipado ou por qualquer outra razão, conforme previsto nos Contratos de Empréstimo) das Obrigações.*

*(b) Não obstante qualquer disposição em contrário neste instrumento ou em qualquer outro Documento do Empréstimo, a responsabilidade máxima dos Garantidores no âmbito deste instrumento e dos demais Documentos do Empréstimo não excederá, em nenhuma hipótese, o valor que possa ser garantido pelos Garantidores nos termos das leis federais e estaduais aplicáveis sobre insolvência de devedores (depois de dar efeito ao direito de contribuição previsto na Cláusula 2.2).*

*(c) Os Garantidores concordam que as Obrigações poderão, a qualquer tempo e de tempos em tempos, exceder o valor da sua responsabilidade aqui prevista sem impactar ou aumentar o valor da Garantia (desde que o valor das Obrigações não aumente) ou afetar os direitos e recursos da Beneficiária aqui previstos.*

*(d) A Garantia deverá permanecer em pleno vigor e eficaz, até que as Obrigações Garantidas tenham sido cumpridas, mediante pagamento integral e incontestável, em espécie (exceto por obrigações de eventual indenização e despesas eventuais que sobreviverão ao término dos Documentos do Empréstimo) e a Beneficiária tenha expressamente liberado os Garantidores da Garantia, não obstante a Devedora poder, de tempos em tempos, durante o prazo dos Contratos de Empréstimo, estar desobrigada de quaisquer Obrigações.*

*(e) Nenhum pagamento feito pela Devedora, os Garantidores, ou outro garantidor ou outra Pessoa, ou recebido ou cobrado pela Beneficiária da Devedora, dos Garantidores, ou outro garantidor ou outra Pessoa por meio de qualquer processo ou procedimento, compensação, apropriação ou aplicação, a qualquer tempo ou de tempos em tempos, em redução a ou em pagamento das Obrigações deverá ser considerado com o fim de alterar, reduzir, liberar ou de outra forma afetar a responsabilidade dos Garantidores aqui prevista, ou qualquer das Obrigações que não tenha sido paga, devendo os Garantidores, não obstante qualquer referido pagamento (que não o pagamento feito pelos Garantidores em relação às Obrigações, ou qualquer pagamento recebido ou cobrado dos Garantidores em relação às Obrigações), permanecer responsável pela parte das Obrigações que não tenha sido paga, até a máxima responsabilidade dos Garantidores ora estabelecida, até que as Obrigações (que não as obrigações de indenização e despesas eventuais que sobrevivem ao término dos Documentos do Empréstimo) sejam integralmente satisfeitas."*

**2.3.** Os Garantidores neste ato ratificam a garantia concedida à Beneficiária de acordo com o Contrato de Garantia, conforme alterado pelo presente Aditamento, bem como suas obrigações pertinentes assumidas nos termos do referido instrumento.

## 3. REGISTROS

7º Oficial de Reg. de Títulos e **Documentos**
e Civil de Pessoa Jurídica da Capital

0 5 FEV. 2018

Dra. Sylene M. Michahat - Oficial **Designado**
R. XV de Novembro, 184 – 5º And. – F: 3377-7227

MARIA CLÁUDIA SANTOS RIBEIRO RATTO - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1287 - CPF 935.223.988-15 - RG 5.302.029
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Tel. 55-11-3155-7383 - Fax. 55-11-3155-7366 - e-mail: just@just.trd.br - www.just.trd.br



Tradução nº I-43253
Livro nº 323
Folha 51

**3.1.** Os Garantidores deverão providenciar a tradução deste Aditamento para o português por tradutor juramentado e registrar este Aditamento, acompanhado da respectiva tradução juramentada, no Registro de Títulos e Documentos competente da Cidade de São Paulo, Estado de São Paulo, no prazo de 20 (vinte) dias corridos a partir da data deste instrumento.

**3.2.** Os Garantidores deverão apresentar à Beneficiária um comprovante de que o registro deste Aditamento foi devidamente concluído, no prazo de 3 (três) dias corridos a partir da data da conclusão do registro.

## 4. DECLARAÇÕES, GARANTIAS, AVENÇAS E COMPROMISSOS

**4.1.** Os Garantidores e a Devedora neste ato fazem as mesmas declarações e garantias feitas por cada um deles, conforme o caso, segundo os termos do Contrato de Garantia, inclusive as feitas de acordo com o Primeiro Aditamento ao Contrato de Garantia, como se fossem feitas nesta data.

## 5. LEI APLICÁVEL

**5.1.** Este Aditamento deverá ser regido e interpretado de acordo com as leis do Estado de Nova York.

## 6. FORO

**6.1.** Qualquer ação ou processo judicial contra a Beneficiária referente ou decorrente deste Aditamento deverá ser ajuizada exclusivamente perante ou transferida para os tribunais do Estado de Nova York no e para o Condado de Nova York ou dos Estados Unidos da América para o Distrito Sul de Nova York (situados, em cada caso, no Distrito de Manhattan). Os Garantidores consentem expressamente, neste ato, que qualquer ação judicial referente ou decorrente deste Aditamento poderá ser ajuizada pela Beneficiária perante ou transferida para os tribunais: (i) do Estado de Nova York no e para o Condado de Nova York ou dos Estados Unidos da América para o Distrito Sul de Nova York (situados, em cada caso, no Distrito de Manhattan); (ii) da Cidade de São Paulo, Estado de São Paulo, Brasil; ou (iii) do domicílio empresarial de qualquer dos Garantidores. Ao assinar e entregar este Aditamento, cada um dos Garantidores: (i) aceita e se submete expressamente, neste ato, por si e em relação a seus bens, em caráter geral e incondicional, à competência dos tribunais supramencionados (e dos respectivos tribunais de recursos) para processos judiciais decorrentes ou relacionados a este Aditamento; e (ii) renuncia expressamente, neste ato, ao direito de ajuizar ação em qualquer outra jurisdição que eventualmente se aplique em virtude de seu domicílio atual ou futuro ou de qualquer outro motivo e renuncia expressamente, neste ato, a qualquer direito que possa ter em virtude de seu local de residência ou domicílio ou a outro título.

## 7. DISPOSIÇÃO GERAL

**7.1.** Exceto conforme expressamente disposto neste Aditamento, as disposições do Contrato de Garantia deverão permanecer em pleno vigor e efeito e são ratificadas, neste ato, pelas Partes deste instrumento.

E por estarem assim justas e contratadas, as Partes assinam este Aditamento em 3 (três) vias de igual forma e conteúdo, para um só efeito, na presença das 2 (duas) testemunhas abaixo assinadas, no local e data indicados acima.

*[Seguem páginas de assinaturas.]*

*[Página de assinaturas do Segundo Aditamento ao Contrato de Garantia celebrado entre Wendy's Netherlands B.V., Starboard International Holdings B.V. e Andrew Levy em 19 de janeiro de 2018]*

**WENDY'S NETHERLANDS B.V.**

(ass)

Roberto Toshiyuki Ioshioca

**STARBOARD INTERNATIONAL HOLDINGS B.V.**

7º Oficial de Reg. de Títulos e Documentos
e Civil de Pessoa Jurídica da Capital

0 5 FEV. 2018

Dra. Sylene M. Michalcal - *Oficial Designada*
R. XV de Novembro, 184 – 6º And. – F: 3377-7677

Tradução nº I-43253
Livro nº 323
Folha 52



(ass)

Lucas Hernandez do Vale Martins

**ANDREW LEVY**

(ass)

Lucas Hernandez do Vale Martins

Testemunhas:

1. (ass)

Nome: Beatriz Ferreira da Silva

RG: RG 36.116.721-0

CPF 426.344.488-48

2. (ass)

Nome: Leonardo Antonio da Silva

RG: 45.915.114-9

CPF: 380.077.218-35

Todas as páginas estão rubricadas.
*NADA MAIS. LI, conferi, achei conforme e dou fé desta tradução.*

*São Paulo, 01 de fevereiro de 2018*

|  |  |
|---|---|
| Emol. | 7º Oficial de Registro de Títulos e Documentos e |
| Estado | Civil de Pessoa Jurídica da Capital - CNPJ: 53.452.256/0001-04 |
| Ipesp | Sylene Maria Michaluat - Oficial Designada |
| R. Civil | R$ 80,07 Protocolado e prenotado sob o n. **1.972.785** em |
| T. Justiça | R$ 22,73 **05/02/2018** e registrado, hoje, em microfilme |
| M. Público | R$ 15,61 sob o n. **1.972.785** , em títulos e documentos. |
| Iss | R$ 4,20 Averbado à margem do registro n. **1963440** |

Emol. R$ 80,07
Estado R$ 22,73
Ipesp R$ 15,61
R. Civil R$ 4,20
T. Justiça R$ 5,49
M. Público R$ 3,86
Iss R$ 1,67

7º Oficial de Registro de Títulos e Documentos e
Civil de Pessoa Jurídica da Capital - CNPJ: 53.452.256/0001-04
Sylene Maria Michaluat - Oficial Designada
Protocolado e prenotado sob o n. **1.972.785** em
**05/02/2018** e registrado, hoje, em microfilme
sob o n. **1.972.785** , em títulos e documentos.
Averbado à margem do registro n. **1963440**
**São Paulo, 05 de fevereiro de 2018**

Total R$ 133,63
Selos e taxas
Recolhidos aVerba

Sylene Maria Michaluat - Oficial Designada

fel/pas/172440.doc

MICROFILMAGEM
1972785

## SECOND AMENDMENT TO THE GUARANTEE AGREEMENT

This private instrument amendment is entered by the following parties ("**Parties**" and, individually, "**Party**"), in the City of São Paulo, on January 19, 2018:

**(1)** **WENDY'S NETHERLANDS B.V.**, a company organized and existing pursuant to the laws of the Netherlands, with headquarters at Naritaweg 165, 1043 BW Amsterdam, the Netherlands, represented herein by its attorney-in-fact, Mr. **Roberto Toshiyuki Ioshioca**, Brazilian, married, business manager, bearer of Identity Card RG No. 25.787.544-X SSP/SP, enrolled with the National Individual Taxpayers Register ("**CPF/MF**") under No. 266.852.128-96, resident and domiciled at Rua Nicolau Zarvos, 428, Parque Jabaquara, City of São Paulo, State of São Paulo, Zip Code 04356-080 ("**Beneficiary**");

**(2)** **STARBOARD INTERNATIONAL HOLDINGS B.V.**, a company organized and existing under the laws of the Netherlands, with headquarters at Strawinskylaan 411, WTC, Tower A, 4th floor, 1077XX, Amsterdam, the Netherlands, enrolled with the CNPJ/MF under No. 21.501.394/0001-31, represented herein by its attorney-in-fact, Mr. **Lucas Hernandez do Vale Martins**, Brazilian, single, lawyer, enrolled in the Brazilian Bar Association, São Paulo Section, under No. 250.073 and with the CPF/MF under No. 316.921.318-00, resident and domiciled in the City of São Paulo, State of São Paulo, with address on Rua Joaquim Floriano, 888 - Cj. 101, Itaim Bibi, Zip Code 04534-003 ("**Starboard**"); and

**(3)** **Andrew Levy**, American, married, executive, bearer of passport number 509107079, issued by the United States of America, resident and domiciled at 1401 West Two Creeks Circle, Park City, Utah, 84098, United States of America, represented herein by its attorney-in-fact, Mr. **Lucas Hernandez do Vale Martins**, above qualified ("**Andrew**" and, each of Starboard and Andrew, a "**Guarantor**" and, collectively, the "**Guarantors**").

**WHEREAS**

(A)    On October 20, 2015, **WBR FRANQUIAS E PARTICIPAÇÕES LTDA.**, a Brazilian limited liability company (*sociedade limitada*) with headquarters at Rua Iaiá, 150, 13th floor, Room 01, Itaim Bibi, City of São Paulo, State of São Paulo, Zip Code 04542-060, enrolled with CNPJ/MF under No. 21.824.541/0001-04 (the "**Borrower**"), in the capacity of borrower, entered into a credit agreement with the Beneficiary pursuant to which the Borrower borrowed US$8,000,000 (eight million US Dollars) from the Beneficiary ("**Credit Agreement 2015**");

(B)    Pursuant to the terms of the Guarantee Agreement entered into by and between the Parties on October 20, 2015 ("**Original Guarantee Agreement**"), each Guarantor, jointly and severally, unconditionally and irrevocably, guaranteed to the Beneficiary the prompt and complete payment and performance by the Borrower of the Guaranteed Obligations;

(C)    On August 2, 2017, the Borrower, in the capacity of borrower, entered into a new credit agreement pursuant to which the Borrower borrowed US$4,800,000 (four million and eight hundred thousand US Dollars) from the Beneficiary ("**Credit Agreement 2017**" and, together with the Credit Agreement 2015, "**Credit Agreements**");

MARIA CLÁUDIA SANTOS RIBEIRO RATTO
Tradutora Pública
Intérprete Comercial
São Paulo



(D)    On August 2, 2017, the Parties entered into the First Amendment to the Guarantee Agreement ("**First Amendment to the Guarantee Agreement**" and, together with the Original Guarantee Agreement, "**Guarantee Agreement**") to include the Credit Agreement 2017 as part of the definition of Guaranteed Obligations; and

(E)    The Parties have agreed to amend the definition of "Guaranteed Obligations" contained in the Guarantee Agreement.

NOW THEREFORE, in consideration of the premises and mutual promises contained herein, the Parties agree to enter into this Second Amendment to the Guarantee Agreement (hereinafter the "**Amendment**"), which shall be governed by the following terms and conditions:

**1.    DEFINITIONS**

    **1.1.**    Unless as otherwise defined herein, capitalized terms used in this Amendment shall have the meanings ascribed to them in the Guarantee Agreement.

**2.    AMENDMENT**

    **2.1.**    The Parties agree to amend the definition of "Guaranteed Obligations" provided in the Guarantee Agreement. As of the date hereof, for all purposes of the Guarantee Agreement, "**Guaranteed Obligations**" shall mean forty percent (40%) of the Obligations, pursuant to the terms and conditions of the Guarantee Agreement.

    **2.2.**    In view of the above, as from the date hereof, Section 2.1 of the Guarantee Agreement shall become in force as follows:

        ***SECTION 2.1.    Guarantee.***

        *(a)    The Guarantors hereby, unconditionally and irrevocably, guarantee to the Beneficiary the prompt and complete payment and performance by the Borrower when due (whether at the stated maturity, or earlier by acceleration or otherwise) of the Guaranteed Obligations.  The Guarantee granted by the Guarantors pursuant to this Agreement has the purpose of guaranteeing the full and prompt payment and performance when due (whether at the due dates set forth in the Credit Agreements, or earlier, in case of acceleration or for any other reason as set forth in the Credit Agreements) of the Obligations.*

        *(b)    Anything herein or in any other Loan Document to the contrary notwithstanding, the maximum liability of the Guarantors hereunder and under the other Loan Documents shall in no event exceed the amount which can be guaranteed by the Guarantors under applicable federal and state laws relating to the insolvency of debtors (after giving effect to the right of contribution established in Section 2.2).*

        *(c)    The Guarantors agree that the Obligations may at any time and from time to time exceed the amount of their liability hereunder without impairing or increasing the value of (as long as the value of the Obligations themselves does not increase) the Guarantee or affecting the rights and remedies of the Beneficiary hereunder.*

        *(d)    The Guarantee shall remain in full force and effect until all the Guaranteed Obligations have been satisfied by indefeasible payment in full in cash (other than contingent indemnification and contingent expense obligations that survive the*

DOCS - 36942562 2

MARIA CLÁUDIA SANTOS RIBEIRO RATTO
Tradutora Pública
Intérprete Comercial
São Paulo

2



termination of the Loan Documents) and the Beneficiary has expressly released the Guarantors from the Guarantee, notwithstanding that from time to time during the term of the Credit Agreements the Borrower may be free from any Obligations.

(e)    No payment, made by the Borrower, the Guarantors, any other guarantor or any other Person, or received or collected by the Beneficiary from the Borrower, the Guarantors, any other guarantor or any other Person, by virtue of any action or proceeding or any set-off or appropriation or application at any time or from time to time in reduction of, or in payment of, the Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of the Guarantors hereunder for any portion of the Obligations which have not been paid which shall, notwithstanding any such payment (other than any payment made by the Guarantors in respect of the Obligations or any payment received or collected from the Guarantors in respect of the Obligations), remain liable for the portion of the Obligations which have not been paid up to the maximum liability of the Guarantors hereunder until the Obligations (other than contingent indemnification and contingent expense obligations that survive the termination of the Loan Documents), are paid in full.

**2.3.**    The Guarantors hereby ratify the guarantee granted to the Beneficiary under the Guarantee Agreement, as amended by this Amendment, and all their relevant obligations undertaken thereunder.

## 3.    REGISTRATIONS

**3.1.**    The Guarantors shall provide for the translation of this Amendment into Portuguese by a sworn translator and register this Amendment accompanied by the relevant sworn translation with the competent Registry of Deeds and Documents (*Registro de Títulos e Documentos*) in the City of São Paulo, State of São Paulo, within twenty (20) calendar days as from the date hereof.

**3.2.**    The Guarantors shall present to the Beneficiary evidence that the registration of this Amendment was duly completed within three (3) calendar days as from the date the registration is completed.

## 4.    REPRESENTATIONS, WARRANTIES, COVENANTS AND UNDERTAKINGS

**4.1.**    The Guarantors and the Borrower hereby make the same representations and warranties made by each of them, as the case may be, pursuant to terms of the Guarantee Agreement, including those made pursuant to the First Amendment to the Guarantee Agreement, as if the same were made on the date hereof.

## 5.    GOVERNING LAW

**5.1.**    This Amendment is governed by, and shall be interpreted in accordance with, the laws of the State of New York.

## 6.    JURISDICTION

**6.1.**    Any legal action or proceeding against Beneficiary with respect to or arising out of this Amendment shall be brought exclusively in or removed to the courts of the State of New York, in and for the County of New York, or of the United States of America for the Southern District of New York (in each case sitting in the Borough of Manhattan). The

MARIA CLAUDIA SANTOS RIBEIRO RATTO
Tradutora Pública
Intérprete Comercial
São Paulo

3



Guarantors hereby expressly consent that any legal action with respect to, or arising out of this Amendment, may be brought by Beneficiary in or removed to the courts of (i) the State of New York, in and for the County of New York, or of the United States of America for the Southern District of New York (in each case sitting in the Borough of Manhattan), (ii) the City of São Paulo, State of São Paulo, Brazil or (iii) the corporate domicile of any Guarantor. By execution and delivery of this Amendment, each Guarantor hereby expressly (i) accepts and submits, for itself and in respect of its property, generally and unconditionally, the jurisdiction of the abovementioned courts (and courts of appeals therefore) for legal proceedings arising out of or in connection with this Amendment; and (ii) waives the right to bring an action in any other jurisdiction that could apply by virtue of its present or future domicile or for any other reason and waives any right to which it may be entitled, on account of place of residence or domicile or otherwise.

## 7. GENERAL PROVISION

**7.1.** Except as expressly provided by this Amendment, the provisions of the Guarantee Agreement shall continue to be in full force and effect and are hereby ratified by the Parties hereto.

In witness whereof, the Parties signed this Amendment in three (3) counterparts of the same form and contents, to one sole effect, in the presence of the two (2) witnesses signed below on the date first written above.

[*Signature pages to follow.*]

DOCS - 34842993v2



MARIA CLAUDIA SANTOS RIBEIRO RATTO
Tradutora Pública
Intérprete Comercial
São Paulo

4

[*Signature page of the Second Amendment to the Guarantee Agreement entered into by and among Wendy's Netherlands B.V., Starboard International Holdings B.V. and Andrew Levy, on January 19, 2018*]

**WENDY'S NETHERLANDS B.V.**

Roberto Toshiyuki Ioshioca

7° Oficial de Reg. de Titulos e Documentos
e Civil de Pessoa Juridica da Capital

0 5 FEV. 2018

Dra. Sylvear M. Michaluet - Oficial Designada
R. XV de Novembro, 184 – 6ª And. – F: 3377-7072

**STARBOARD INTERNATIONAL HOLDINGS B.V.**

Lucas Hernandez do Vale Martins

**ANDREW LEVY**

Lucas Hernandez do Vale Martins

Witnesses:

1.  Beatriz Ferreira da Silva
    Name:  Beatriz Ferreira da Silva
    ID:       RG 36.116.721-0
               CPF 426.344.488-48

2.  Leonardo A da S Lyo
    Name:  Leonardo Antonio da Silva
    ID:       RG: 45.915.114-9
               CPF: 380.077.218-35

0 1 FEV 2018  |  - 4 3 2 5 3

MARIA CLAUDIA SANTOS RIBEIRO RATTO
Tradutora Pública
Intérprete Comercial
São Paulo

5

DOC8 - 3484296v2

# EXHIBIT C

## GENERAL RELEASE OF ALL CLAIMS

This GENERAL RELEASE OF ALL CLAIMS is made effective this _____ day of _____, 2019.  As a requirement of and in consideration for the willingness on the part of WENDY'S NETHERLANDS B.V. a company organized and existing under the laws of the Netherlands ("**Guarantee Beneficiary**"), to accept a promissory note made by Andrew Levy ("**Maker**")  to be executed contemporaneously herewith in satisfaction of the Maker's obligations under that certain Guarantee Agreement, dated as of October 20, 2015, among Starboard International Holdings B.V., as Guarantor ("**Starboard**"), Maker, as Guarantor, and Wendy's Netherlands B.V., as Guarantee Beneficiary, as amended by the first amendment thereto dated August 2, 2017 and the second amendment thereto dated January 19, 2018 (such Guarantee Agreement, as so amended being  the "**Guarantee**") pursuant to which Maker and Starboard guaranteed the obligations of WBR Franquais Participacoies LTDA, as borrower ("**Borrower**") under (i) the Credit Agreement, dated as of October 20, 2015 ("**2015 Credit Agreement**"), among Payee and Borrower and (ii) the Credit Agreement, dated as of August 2, 2017 (together with the 2015 Credit Agreement being the "**Credit Agreements**")), among Payee and Borrower, as requested by the undersigned, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Maker and Starboard, individually and collectively, hereby unconditionally RELEASE, DISCHARGE and ACQUIT Guarantee Beneficiary, its past, present and future shareholders, officers, directors, employees, successors, affiliates, assigns, agents, and subsidiaries from any and all liabilities, claims, damages, demands, costs, indebtedness, expenses, debts, indemnities, compensation, suits, controversies, actions and causes of action of any kind whatsoever, whether developed or undeveloped, known or unknown, fixed or contingent, regarding or arising out of the Guarantee, any Credit Agreement or any prior, existing or future franchise agreement or any other agreement or document executed by any of the undersigned and Guarantee Beneficiary (or any subsidiary or affiliate of Guarantee Beneficiary), any Wendy's Old Fashioned Hamburgers Restaurant (whether currently or previously owned or operated or to be owned or operated by the undersigned or any of them), the franchise relationship, or any other prior, existing or future business relationship between any of the undersigned and Guarantee Beneficiary (or any subsidiary or affiliate of Guarantee Beneficiary), which the undersigned or any of them individually or collectively has asserted, may have asserted, could have asserted or could assert in the future against Guarantee Beneficiary (or any of the aforementioned related parties) at any time prior to or on the date of this GENERAL RELEASE OF ALL CLAIMS, or thereafter including specifically, without limitation, claims under the Sherman and Clayton Acts and the anti-trust Laws of the United States, and claims arising from contract, written or oral communications, alleged misstatements of fact, indebtedness of any kind or nature, and acts of negligence whether active or passive.  This GENERAL RELEASE OF ALL CLAIMS shall survive the assignment or termination of any of the franchise agreements or other documents entered into by and between Guarantee Beneficiary and any of the undersigned.  This GENERAL RELEASE OF ALL CLAIMS is not intended as a waiver of those rights of the undersigned which cannot be waived under applicable state franchise laws.

1

WITNESS:

**STARBOARD INTERNATIONAL
HOLDINGS B.V.**

By: _____

    Title: _____

_____

_____

Andrew Levy, Individually

- 2 -



**From:** Kaffenbarger, Kris <Kris.Kaffenbarger@wendys.com>
**Sent:** Thursday, January 16, 2020 7:40 AM
**To:** Andrew Levy <alevy@starboardwendys.com>; ckelleher@auspexcapital.com; Koumas, Peter <Peter.Koumas@wendys.com>
**Subject:** Brazil note

Hi Andrew,

Hope you're continuing to feel better each day.

As follow-up to our most recent discussion, I've attached clean and redlined versions of the promissory note, the revised amortization schedule and a suggested revised JCP that we would use as exhibit D.  Please note the suggested JCP assumes that you sell Richmond and complete 100% of the remaining restaurants by 12.31.24.  Please review and let's plan to discuss next week.  We want to get this note fully executed by end of this January.

Look forward to speaking next week.

Thanks,
Kris


**Kris Kaffenbarger, CPA, CMA**
Vice President, Global System Optimization, Franchise and Portfolio Management
The Wendy's Company  ◆  1 Dave Thomas Boulevard  ◆  Dublin, Ohio  43017
O: 614.764.8443 · M: 614.946.6160
E: Kris.Kaffenbarger@wendys.com

**CAUTION: This message was sent from outside the company. Please do not click links or open attachments unless you recognize the source of this email and known the content is safe.**

# Levy Promissory Note

| | Enter Values | | | |
|---|---|---|---|---|
| Loan Amount | $ 5,550,360.55 | Loan | $ | 5,120,000.00 |
| Annual Interest Rate | 5.000% | Interest | $ | 430,360.55 |
| Loan Period in Years | 5.0 | Total | $ | 5,550,360.55 |
| Start Date of Loan | 1/15/2020 | | | |
| Optional Extra Payments | $0.00 | | | |

| | |
|---|---|
| Scheduled Quarterly Payment | $ 125,000.00 |
| Scheduled Number of Payments | 20 |
| Actual Number of Payments | 21 |
| Total Interest Paid | $ 1,103,267.38 |

| No. | Payment Date | Beginning Balance | Scheduled Payment | Principal | Total Accrued Interest | Interest Paid | Interest Paid In Kind | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| 1 | 1/15/2020 | $ 5,550,360.55 | 0.00 | 0.00 | 69,379.51 | 0.00 | 69,379.51 | $ 5,619,740.05 |
| 2 | 2/15/2020 | 5,619,740.05 | | | | | | 5,619,740.05 |
| 3 | 3/15/2020 | 5,619,740.05 | | | | | | 5,619,740.05 |
| 4 | 4/15/2020 | 5,619,740.05 | 0.00 | 0.00 | 70,246.75 | 0.00 | 70,246.75 | 5,689,986.81 |
| 5 | 5/15/2020 | 5,689,986.81 | | | | | | 5,689,986.81 |
| 6 | 6/15/2020 | 5,689,986.81 | | | | | | 5,689,986.81 |
| 7 | 7/15/2020 | 5,689,986.81 | 50,000.00 | 0.00 | 71,124.84 | 50,000.00 | 21,124.84 | 5,711,111.64 |
| 8 | 8/15/2020 | 5,711,111.64 | | | | | | 5,711,111.64 |
| 9 | 9/15/2020 | 5,711,111.64 | | | | | | 5,711,111.64 |
| 10 | 10/15/2020 | 5,711,111.64 | 50,000.00 | 0.00 | 71,388.90 | 50,000.00 | 21,388.90 | 5,732,500.54 |
| 11 | 11/15/2020 | 5,732,500.54 | | | | | | 5,732,500.54 |
| 12 | 12/15/2020 | 5,732,500.54 | | | | | | 5,732,500.54 |
| 13 | 1/15/2021 | 5,732,500.54 | 50,000.00 | 0.00 | 71,656.26 | 50,000.00 | 21,656.26 | 5,754,156.79 |
| 14 | 2/15/2021 | 5,754,156.79 | | | | | | 5,754,156.79 |
| 15 | 3/15/2021 | 5,754,156.79 | | | | | | 5,754,156.79 |
| 16 | 4/15/2021 | 5,754,156.79 | 50,000.00 | 0.00 | 71,926.96 | 50,000.00 | 21,926.96 | 5,776,083.75 |
| 17 | 5/15/2021 | 5,776,083.75 | | | | | | 5,776,083.75 |
| 18 | 6/15/2021 | 5,776,083.75 | | | | | | 5,776,083.75 |
| 19 | 7/15/2021 | 5,776,083.75 | 50,000.00 | 0.00 | 72,201.05 | 50,000.00 | 22,201.05 | 5,798,284.80 |
| 20 | 8/15/2021 | 5,798,284.80 | | | | | | 5,798,284.80 |
| 21 | 9/15/2021 | 5,798,284.80 | | | | | | 5,798,284.80 |
| 22 | 10/15/2021 | 5,798,284.80 | 50,000.00 | 0.00 | 72,478.56 | 50,000.00 | 22,478.56 | 5,820,763.36 |
| 23 | 11/15/2021 | 5,820,763.36 | | | | | | 5,820,763.36 |
| 24 | 12/15/2021 | 5,820,763.36 | | | | | | 5,820,763.36 |
| 25 | 1/15/2022 | 5,820,763.36 | 50,000.00 | 0.00 | 72,759.54 | 50,000.00 | 22,759.54 | 5,843,522.90 |
| 26 | 2/15/2022 | 5,843,522.90 | | | | | | 5,843,522.90 |
| 27 | 3/15/2022 | 5,843,522.90 | | | | | | 5,843,522.90 |
| 28 | 4/15/2022 | 5,843,522.90 | 50,000.00 | 0.00 | 73,044.04 | 50,000.00 | 23,044.04 | 5,866,566.94 |
| 29 | 5/15/2022 | 5,866,566.94 | | | | | | 5,866,566.94 |
| 30 | 6/15/2022 | 5,866,566.94 | | | | | | 5,866,566.94 |
| 31 | 7/15/2022 | 5,866,566.94 | 125,000.00 | 51,667.91 | 73,332.09 | 73,332.09 | 0.00 | 5,814,899.02 |
| 32 | 8/15/2022 | 5,814,899.02 | | | | | | 5,814,899.02 |
| 33 | 9/15/2022 | 5,814,899.02 | | | | | | 5,814,899.02 |
| 34 | 10/15/2022 | 5,814,899.02 | 125,000.00 | 52,313.76 | 72,686.24 | 72,686.24 | 0.00 | 5,762,585.26 |
| 35 | 11/15/2022 | 5,762,585.26 | | | | | | 5,762,585.26 |
| 36 | 12/15/2022 | 5,762,585.26 | | | | | | 5,762,585.26 |
| 37 | 1/15/2023 | 5,762,585.26 | 125,000.00 | 52,967.68 | 72,032.32 | 72,032.32 | 0.00 | 5,709,617.58 |
| 38 | 2/15/2023 | 5,709,617.58 | | | | | | 5,709,617.58 |
| 39 | 3/15/2023 | 5,709,617.58 | | | | | | 5,709,617.58 |
| 40 | 4/15/2023 | 5,709,617.58 | 125,000.00 | 53,629.78 | 71,370.22 | 71,370.22 | 0.00 | 5,655,987.80 |
| 41 | 5/15/2023 | 5,655,987.80 | | | | | | 5,655,987.80 |
| 42 | 6/15/2023 | 5,655,987.80 | | | | | | 5,655,987.80 |
| 43 | 7/15/2023 | 5,655,987.80 | 125,000.00 | 54,300.15 | 70,699.85 | 70,699.85 | 0.00 | 5,601,687.65 |
| 44 | 8/15/2023 | 5,601,687.65 | | | | | | 5,601,687.65 |
| 45 | 9/15/2023 | 5,601,687.65 | | | | | | 5,601,687.65 |
| 46 | 10/15/2023 | 5,601,687.65 | 125,000.00 | 54,978.90 | 70,021.10 | 70,021.10 | 0.00 | 5,546,708.74 |
| 47 | 11/15/2023 | 5,546,708.74 | | | | | | 5,546,708.74 |
| 48 | 12/15/2023 | 5,546,708.74 | | | | | | 5,546,708.74 |
| 49 | 1/15/2024 | 5,546,708.74 | 125,000.00 | 55,666.14 | 69,333.86 | 69,333.86 | 0.00 | 5,491,042.60 |

Case: 2:24-cv-03077-MHW-KAJ Doc #: 11-3 Filed: 06/04/24 Page: 83 of 145 PAGEID #: 1021

| No. | Payment Date | Beginning Balance | Scheduled Payment | Principal | Total Accrued Interest | Interest Paid | Interest Paid In Kind | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| 50 | 2/15/2024 | 5,491,042.60 | | | | | | 5,491,042.60 |
| 51 | 3/15/2024 | 5,491,042.60 | | | | | | 5,491,042.60 |
| 52 | 4/15/2024 | 5,491,042.60 | 125,000.00 | 56,361.97 | 68,638.03 | 68,638.03 | 0.00 | 5,434,680.63 |
| 53 | 5/15/2024 | 5,434,680.63 | | | | | | 5,434,680.63 |
| 54 | 6/15/2024 | 5,434,680.63 | | | | | | 5,434,680.63 |
| 55 | 7/15/2024 | 5,434,680.63 | 125,000.00 | 57,066.49 | 67,933.51 | 67,933.51 | 0.00 | 5,377,614.14 |
| 56 | 8/15/2024 | 5,377,614.14 | | | | | | 5,377,614.14 |
| 57 | 9/15/2024 | 5,377,614.14 | | | | | | 5,377,614.14 |
| 58 | 10/15/2024 | 5,377,614.14 | 125,000.00 | 57,779.82 | 67,220.18 | 67,220.18 | 0.00 | 5,319,834.32 |
| 59 | 11/15/2024 | 5,319,834.32 | | | | | | 5,319,834.32 |
| 60 | 12/15/2024 | 5,319,834.32 | 4,119,834.32 | 4,119,834.32 | | | | 1,200,000.00 |

40% of $12.8M
40% of $1.075M

| | |
|---|---|
| Final Payment (Pre-Incentive) | $ 5,319,834.32 |
| Contingent Incentive Amount | $ 1,200,000.00 |
| Final Payment (Post-Incentive) | $ 4,119,834.32 |

Case: 2:24-cv-03077-MHW-KAJ Doc #: 11-3 Filed: 06/04/24 Page: 85 of 145 PAGEID #: 1033

# FRANCHISEE:  Andrew Lev

**REINVESTMENT PLAN**

**AS OF JANUARY 14, 2020**
**78 OPERATING RESTAURANTS**

| Andrew Levy SITE # | Andrew Levy SITE NAME | WENDY'S SITE # |
|---|---|---|
| | | 8174 |
| | | 11498 |
| | | 5563 |
| | | 8453 |
| | | 1744 |
| | | 1656 |
| | | 5767 |
| | | 5401 |
| | | 4184 |
| | | 5267 |
| | | 2590 |
| | | 10523 |
| | | 10700 |
| | | 11257 |
| | | 11857 |
| | | 7393 |
| | | 3177 |
| | | 1735 |
| | | 8847 |
| | | 8661 |
| | | 11448 |
| | | 5499 |
| | | 7631 |
| | | 7917 |
| | | 2453 |
| | | 1297 |
| | | 10475 |
| | | 1734 |
| | | 1740 |

| |
|---|
| 9274 |
| 8850 |
| 2228 |
| 1325 |
| 7532 |
| 2402 |
| 2064 |
| 8474 |
| 2011 |
| 7391 |
| 8558 |
| 1443 |
| 8448 |
| 8861 |
| 8888 |
| 7961 |
| 7512 |
| 7959 |
| 8452 |
| 8114 |
| 202 |
| 915 |
| 8477 |
| 8896 |
| 10503 |
| 8478 |
| 1737 |
| 2587 |
| 8730 |
| 495 |
| 808 |
| 2562 |
| 7861 |
| 2813 |
| 8483 |
| 1743 |
| 1834 |
| 5341 |
| 85 |
| 7705 |
| 7932 |
| 1923 |
| 2404 |
| 5134 |

| |
|---|
| 8895 |
| 1946 |
| 1741 |
| 8739 |
| 677 |
| y |

| NEW RESTAU |
|---|
| SITE # |
| N/A |
| |

y

| ADDRESS |
| --- |
| 7560 NW 186TH STREET, HIALEAH, FL |
| 602 HIGHWAY 80 E, DEMOPOLIS, AL |
| 5018 OSCAR BAXTER DR, TUSCALOOSA, AL |
| 5801 AL HIGHWAY 157, CULLMAN, AL |
| 205 S. MIRIMAR, INDIALANTIC, FL |
| 1154 MALABAR RD S.E., PALM BAY, FL |
| 3530 BROADWAY, QUINCY, IL |
| 3300 S. ONEIDA, APPLETON, WI |
| 314 HWY 61 SOUTH, HANNIBAL, MO |
| 3815 WISCONSIN AVENUE, APPLETON, WI |
| 2309 S US HIGHWAY 1, FT.PIERCE, FL |
| 412 E. WALNUT AVE, CARBONDALE, IL |
| 1250 TORONTO ROAD, SPRINGFIELD, IL |
| 2506 WORLD GATEWAY PL/DMA/MCNAMARA, DETROIT, MI |
| 950 N WICKHAM RD, MELBOURNE, FL |
| 45 JIMMY HINTON DR., OXFORD, AL |
| 1920 MCFARLAND BLVD., NORTHPORT, AL |
| 395 E EAU GALLIE BLVD, INDIAN HARBOR BEACH, FL |
| 4435 NORTHLAKE BLVD., PALM BEACH GARDENS, FL |
| 2360 WESTOWNE AVE, OSHKOSH, WI |
| 1600 COUNTY ROAD 437, CULLMAN, AL |
| 6375 W SAMPLE RD, CORAL SPRINGS, FL |
| 11925 NW 27TH PL., MIAMI, FL |
| 14900 SOUTHWEST 31ST STREET, MIRAMAR, FL |
| 3323 COLUMBIA BLVD, TITUSVILLE, FL |
| 6620 E. MARTIN LUTHER KING BLVD., TAMPA, FL |
| 16056 HWY 280, CHELSEA, AL |
| 1150 BABCOCK ST., MELBOURNE, FL |
| 1755 PALM BAY ROAD NE, PALM BAY, FL |

| |
|---|
| 180 WEST SWEDESFORD ROAD, DEVON, PA |
| 19430 BRUCE B. DOWNS, TAMPA, FL |
| 726 S FEDERAL HWY, STUART, FL |
| 13712 BRUCE B. DOWNS BLVD, TAMPA, FL |
| 2805 SCHOFIELD AVE, SCHOFIELD, WI |
| 270 SW PORT ST LUCIE BLVD, PORT ST.LUCIE, FL |
| 890 US HIGHWAY 1, VERO BEACH, FL |
| 419 N. PELHAM ROAD, JACKSONVILLE, AL |
| 1197 S.MILITARY TRAIL, DEERFIELD BEACH, FL |
| 9960 WEST OAKLAND PARK BLVD, SUNRISE, FL |
| 8440 ASTRONAUT BLVD, CAPE CANAVERAL, FL |
| 6024 COUNTY ROAD 579, SEFFNER, FL |
| 4900 S. FEDERAL HIGHWAY, FT.PIERCE, FL |
| 1841 N. 4TH STREET, FT.PIERCE, FL |
| 3601 W. HILLSBOROUGH AVENUE, TAMPA, FL |
| 75 TOWER ROAD, OXFORD, AL |
| 4676 N UNIVERSITY DRIVE, CORAL SPRINGS, FL |
| 4150 NORTH WICKHAM ROAD, MELBOURNE, FL |
| 648 BARNES BLVD., ROCKLEDGE, FL |
| 1209 BROADWAY AVE E, MATTOON, IL |
| 8330 N. FLORIDA, TAMPA, FL |
| 13119 N. DALE MABRY, TAMPA, FL |
| 15020 JOG ROAD, DELRAY BEACH, FL |
| 10393 HWY 5, BRENT, AL |
| 967 GILBERTS FERRY RD, ATTALLA, AL |
| 1515 NORTHWEST 7TH STREET, MIAMI, FL |
| 10 W MERRITT ISLAND CSWY, MERRITT ISLAND, FL |
| 135 PALM BAY ROAD, W.MELBOURNE, FL |
| 807 MARION CITY ROAD, PALMYRA, MO |
| 1501 HILLSBORO AVE, TAMPA, FL |
| 13135 US HWY 301, DADE CITY, FL |
| 10246 S FEDERAL HWY, PORT ST.LUCIE, FL |
| 831 YAMATO RD, BOCA RATON, FL |
| 204 15TH STREET EAST, TUSCALOOSA, AL |
| 4422 OLD BIRMINGHAM HIGHWAY, TUSCALOOSA, AL |
| 3000 GARDEN ST., TITUSVILLE, FL |
| 8245 NORTH WICKHAM RD, MELBOURNE, FL |
| 2 CIETEN PLAZA, BARRY, IL |
| 1507 E. FOWLER, TAMPA, FL |
| 1615 WEST KENNEDY BLVD., TAMPA, FL |
| 13565 CYPRESS GLENN LANE, TAMPA, FL |
| 4950 LINTON BLVD, DELRAY BEACH, FL |
| 6210 20TH STREET, VERO BEACH, FL |
| 2045 VILLAGE DR, LEEDS, AL |

| |
|---|
| 170 VAUGHAN LANE, PELL CITY, AL |
| 10050 W SAMPLE ROAD, CORAL SPRINGS, FL |
| 2650 W. NEW HAVEN AVE., MELBOURNE, FL |
| 505 SOUTH DEERFIELD, PONTIAC, IL |
| 5658 GALL BLVD, ZEPHYRHILLS, FL |
| 78 OPERATING RESTAURANTS |

**RANT DEVELOPMENT PIPELINE**

| ADDRESS |
|---|
| N/A |
| |

|  | ACTUAL | |
|---|---|---|
|  | THROUGH 2019 | 2020 |
| AT CURRENT IMAGE* | 18 | 18 |
| REGISTERED/PLANNED* | 0 | 0 |
| TOTAL REIMAGE PROJECTS | 18 | 18 |
| TOTAL REQUIRED | 23 | 31 |
| B/(W) | -5 | -13 |

* INCLUDES NEW BUILDS

| DMA | OPEN DATE | CURRENT AGREEMENT EXPIRY |
|---|---|---|
| MIAMI-FT. LAUDERDALE | 09/29/00 | 06/15/33 |
| MONTGOMERY | 12/26/14 | 07/31/34 |
| BIRMINGHAM | 07/17/96 | 10/23/35 |
| BIRMINGHAM | 09/01/00 | 02/01/37 |
| ORLANDO-DAYTONA BEACH | 11/19/85 | 08/23/28 |
| ORLANDO-DAYTONA BEACH | 09/24/92 | 12/18/35 |
| QUINCY HANNIBAL | 12/30/96 | 12/22/35 |
| GREEN BAY | 07/25/95 | 02/01/37 |
| QUINCY HANNIBAL | 10/15/84 | 01/31/37 |
| GREEN BAY | 10/04/94 | 01/12/22 |
| WEST PALM BEACH | 12/28/98 | 02/08/36 |
| PADUCAH-CAPE GIRARDEAU-HARRISB | 02/09/13 | 03/30/35 |
| SPRINGFIELD-DECATUR-CHAMPAIGN | 03/22/06 | 07/31/35 |
| DETROIT | 08/25/09 | 08/10/19 |
| ORLANDO-DAYTONA BEACH | 09/01/17 | 06/28/42 |
| BIRMINGHAM | 05/29/97 | 12/31/32 |
| BIRMINGHAM | 12/19/77 | 06/30/43 |
| ORLANDO-DAYTONA BEACH | 02/08/77 | 09/30/19 |
| WEST PALM BEACH | 07/11/02 | 07/15/22 |
| GREEN BAY | 12/16/02 | 05/07/23 |
| BIRMINGHAM | 06/26/14 | 06/01/32 |
| MIAMI-FT. LAUDERDALE | 02/06/96 | 10/26/19 |
| MIAMI-FT. LAUDERDALE | 02/20/98 | 09/30/20 |
| MIAMI-FT. LAUDERDALE | 03/22/99 | 07/01/28 |
| ORLANDO-DAYTONA BEACH | 09/10/96 | 08/23/23 |
| TAMPA | 07/02/87 | 05/17/24 |
| BIRMINGHAM | 11/24/12 | 06/01/32 |
| ORLANDO-DAYTONA BEACH | 05/04/76 | 01/01/21 |
| ORLANDO-DAYTONA BEACH | 03/16/82 | 12/31/20 |

| PHILADELPHIA | 12/24/03 | 12/04/23 |
|---|---|---|
| TAMPA | 08/04/01 | 05/17/24 |
| WEST PALM BEACH | 10/30/95 | 12/31/20 |
| TAMPA | 08/13/86 | 05/17/24 |
| WAUSAU-RHINELANDER | 10/08/97 | 09/30/20 |
| WEST PALM BEACH | 07/28/97 | 12/18/20 |
| WEST PALM BEACH | 07/26/95 | 12/31/20 |
| BIRMINGHAM | 11/17/00 | 12/31/32 |
| MIAMI-FT. LAUDERDALE | 06/08/94 | 02/22/30 |
| MIAMI-FT. LAUDERDALE | 05/25/97 | 07/01/28 |
| ORLANDO-DAYTONA BEACH | 08/15/01 | 10/31/27 |
| TAMPA | 03/09/89 | 05/17/24 |
| WEST PALM BEACH | 12/22/00 | 12/29/22 |
| WEST PALM BEACH | 12/12/01 | 12/13/21 |
| TAMPA | 10/02/02 | 05/17/24 |
| BIRMINGHAM | 11/19/99 | 12/31/32 |
| MIAMI-FT. LAUDERDALE | 09/06/97 | 09/30/22 |
| ORLANDO-DAYTONA BEACH | 07/28/00 | 11/13/25 |
| ORLANDO-DAYTONA BEACH | 03/06/02 | 11/13/25 |
| SPRINGFIELD-DECATUR-CHAMPAIGN | 07/01/07 | 06/29/27 |
| TAMPA | 07/06/77 | 05/17/24 |
| TAMPA | 10/03/84 | 05/17/24 |
| WEST PALM BEACH | 03/09/01 | 01/04/23 |
| BIRMINGHAM | 08/09/02 | 12/31/32 |
| BIRMINGHAM | 09/03/13 | 09/03/33 |
| MIAMI-FT. LAUDERDALE | 08/09/01 | 06/21/23 |
| ORLANDO-DAYTONA BEACH | 09/21/90 | 08/20/28 |
| ORLANDO-DAYTONA BEACH | 08/20/02 | 08/09/23 |
| QUINCY HANNIBAL | 12/06/01 | 03/30/31 |
| TAMPA | 12/15/80 | 05/17/24 |
| TAMPA | 12/21/82 | 05/17/24 |
| WEST PALM BEACH | 12/08/97 | 12/18/28 |
| WEST PALM BEACH | 12/18/98 | 09/30/23 |
| BIRMINGHAM | 04/21/76 | 12/31/32 |
| BIRMINGHAM | 08/04/01 | 12/31/32 |
| ORLANDO-DAYTONA BEACH | 10/30/84 | 08/20/28 |
| ORLANDO-DAYTONA BEACH | 01/11/93 | 09/30/23 |
| QUINCY HANNIBAL | 03/20/95 | 12/17/24 |
| TAMPA | 04/24/75 | 05/17/24 |
| TAMPA | 06/09/98 | 05/17/24 |
| TAMPA | 06/04/99 | 05/17/24 |
| WEST PALM BEACH | 04/19/93 | 02/22/30 |
| WEST PALM BEACH | 10/31/96 | 12/18/23 |
| BIRMINGHAM | 10/28/93 | 12/31/32 |

| | | |
|---|---|---|
| BIRMINGHAM | 06/01/02 | 12/31/32 |
| MIAMI-FT. LAUDERDALE | 02/18/93 | 09/30/23 |
| ORLANDO-DAYTONA BEACH | 09/14/82 | 12/31/25 |
| PEORIA | 12/30/01 | 01/21/25 |
| TAMPA | 09/21/81 | 05/17/24 |

| DMA | STATUS | PROJECTED OPEN DATE |
|---|---|---|
| N/A | N/A | |

| PLANNED | | | |
|---|---|---|---|
| **2021** | **2022** | **2023** | **2024** |
| 18 | 18 | 18 | 18 |
| 0 | 0 | 0 | 12 |
| **18** | **18** | **18** | **30** |
| 43 | 55 | 66 | 78 |
| **-25** | **-37** | **-48** | **-48** |

| SALES (TTM) | REINVESTMENT TYPE | REIMAGE COMPLETION | MIDTERM REINVESTMENT |
|---|---|---|---|
| 1,978,188 | Remodel | 12/18/13 | 12/18/23 |
| 955,280 | New Build | 12/26/14 | 12/26/26 |
| 2,044,663 | Remodel | 10/23/15 | 10/23/25 |
| 1,374,856 | Remodel | 11/21/15 | 11/21/25 |
| 1,112,012 | Refresh | 11/23/15 | 11/23/25 |
| 1,858,949 | Refresh | 12/18/15 | 12/18/25 |
| 1,539,956 | Remodel | 12/22/15 | 12/22/25 |
| 1,578,914 | Refresh | 12/23/15 | 12/23/25 |
| 1,133,125 | Remodel | 01/06/16 | 01/06/26 |
| 1,522,227 | Refresh | 01/12/16 | 01/12/26 |
| 1,857,795 | Refresh | 02/08/16 | 02/08/26 |
| 1,323,247 | Transition | 08/29/16 | 08/29/26 |
| 1,435,999 | Remodel | 11/09/16 | 11/09/26 |
| 1,921,279 | Remodel | 12/08/16 | 12/08/26 |
| 1,636,766 | New Build | 09/01/17 | 09/01/29 |
| 1,546,864 | Scrape/Rebuild | 11/15/17 | 11/15/27 |
| 1,653,967 | Scrape/Rebuild | 01/05/18 | 01/05/28 |
| 1,063,249 | Refresh | 05/17/19 | 05/17/29 |
| 1,802,003 | Refresh Lite | 02/20/20 | 02/20/30 |
| 1,147,579 | Refresh Lite | 05/04/20 | 05/04/30 |
| 1,784,861 | Remodel | 12/31/20 | 12/31/30 |
| 2,116,928 | Refresh | 12/31/20 | 12/31/30 |
| 1,590,581 | Refresh | 12/31/20 | 12/31/30 |
| 1,526,024 | REFRESH | 12/31/20 | 12/31/30 |
| 1,733,756 | Refresh | 12/31/20 | 12/31/30 |
| 1,503,471 | Refresh | 12/31/20 | 12/31/30 |
| 975,616 | REQUEST TO CLOSE | 12/31/20 | |
| 1,010,298 | REQUEST TO CLOSE | 12/31/20 | |
| 1,082,671 | REQUEST TO CLOSE | 12/31/20 | |

| | | | |
|---|---|---|---|
| 1,063,396 | REQUEST TO CLOSE | 12/31/20 | |
| 1,297,641 | REQUEST TO CLOSE | 12/31/20 | |
| 900,867 | REQUEST TO CLOSE | 01/31/21 | |
| 1,412,648 | Refresh | 12/31/21 | 12/31/31 |
| 914,824 | Refresh | 12/31/21 | 12/31/31 |
| 1,886,231 | Remodel | 12/31/21 | 12/31/31 |
| 1,307,741 | Refresh | 12/31/21 | 12/31/31 |
| 957,409 | REFRESH | 12/31/21 | 12/31/31 |
| 1,543,336 | REFRESH | 12/31/21 | 12/31/31 |
| 1,481,869 | REFRESH | 12/31/21 | 12/31/31 |
| 1,295,107 | REFRESH | 12/31/21 | 12/31/31 |
| 1,631,526 | REFRESH | 12/31/21 | 12/31/31 |
| 1,171,436 | Refresh Lite | 12/31/21 | 12/31/31 |
| 1,455,849 | REFRESH | 12/31/21 | 12/31/31 |
| 1,796,697 | REFRESH | 12/31/22 | 12/31/32 |
| 1,303,234 | REFRESH | 12/31/22 | 12/31/32 |
| 1,482,856 | REFRESH | 12/31/22 | 12/31/32 |
| 1,259,154 | REFRESH LITE | 12/31/22 | 12/31/32 |
| 1,189,489 | REFRESH LITE | 12/31/22 | 12/31/32 |
| 1,120,914 | REFRESH | 12/31/22 | 12/31/32 |
| 1,527,045 | REFRESH | 12/31/22 | 12/31/32 |
| 1,275,540 | REFRESH | 12/31/22 | 12/31/32 |
| 1,403,596 | REFRESH | 12/31/22 | 12/31/32 |
| 1,254,060 | REFRESH | 12/31/22 | 12/31/32 |
| 991,016 | REFRESH LITE | 12/31/22 | 12/31/32 |
| 1,493,596 | REFRESH | 12/31/22 | 12/31/32 |
| 1,474,725 | REFRESH | 12/31/23 | 12/31/33 |
| 1,451,344 | REFRESH | 12/31/23 | 12/31/33 |
| 1,052,011 | REFRESH LITE | 12/31/23 | 12/31/33 |
| 1,251,534 | REFRESH | 12/31/23 | 12/31/33 |
| 1,049,129 | REFRESH LITE | 12/31/23 | 12/31/33 |
| 1,523,177 | REFRESH | 12/31/23 | 12/31/33 |
| 1,436,266 | REFRESH LITE | 12/31/23 | 12/31/33 |
| 1,269,752 | REMODEL | 12/31/23 | 12/31/33 |
| 1,379,523 | REFRESH LITE | 12/31/23 | 12/31/33 |
| 1,438,458 | REFRESH LITE | 12/31/23 | 12/31/33 |
| 1,191,648 | REFRESH LITE | 12/31/23 | 12/31/33 |
| 1,098,005 | REFRESH LITE | 12/31/24 | 12/31/34 |
| 1,231,481 | REFRESH LITE | 12/31/24 | 12/31/34 |
| 1,729,655 | REFRESH | 12/31/24 | 12/31/34 |
| 1,589,620 | REFRESH | 12/31/24 | 12/31/34 |
| 1,397,693 | REFRESH | 12/31/24 | 12/31/34 |
| 1,471,372 | REFRESH LITE | 12/31/24 | 12/31/34 |
| 1,045,054 | REFRESH | 12/31/24 | 12/31/34 |

| | | | |
|---|---|---|---|
| 1,344,918 | REMODEL | 12/31/24 | 12/31/34 |
| 1,189,755 | REFRESH LITE | 12/31/24 | 12/31/34 |
| 1,081,810 | REFRESH LITE | 12/31/24 | 12/31/34 |
| 1,002,847 | REFRESH LITE | 12/31/24 | 12/31/34 |
| 1,608,196 | REFRESH | 12/31/24 | 12/31/34 |

TERMS AND CONDITIONS:  This Reinvestment Plan

Franchisee understands and acknowledges that Fra

Agreements is to assist Franchisee with prioritizing

representation or assessment by Franchisor as to th

your own independent assessment of the Restaura

costs projections or other information presented o

been provided for informational and illustrative pu

intended to be, and should not be construed as, an

representation by Franchisor that you or any franch

Restaurants.   There is no assurance or guarantee a

representation of any kind in that regard.

Acknowledged & Agreed by Franchisee:

Signature:_____

Name:_____

Title:_____

Date: _____

| | CREDIT YEARS |
|---|---|
| | CURRENT TOTAL |
| | APPLIED IN 2018 |
| | APPLIED IN 2019 |
| | APPLIED IN 2020 |
| | REMAINING |

| AVAILABLE CREDIT YEARS | 2020 CREDIT YEAR APPLICATION | 2018 CREDIT YEAR APPLICATION | ADJUSTED EXPIRATION DATE | CURRENT LEASE TERM END DATE |
|---|---|---|---|---|
| 15 | | | | 10/22/34 |
| 0 | | | | 12/31/34 |
| 17 | | | | 12/31/38 |
| 17 | | | | 12/31/37 |
| 3 | | | | 12/31/17 |
| 3 | | | | 12/31/22 |
| 1 | | | | 03/27/34 |
| 0 | | | | 09/23/35 |
| 5 | | | | 03/27/39 |
| 7 | | | | 07/31/35 |
| 3 | | | | 12/31/18 |
| 1 | | | | 07/31/35 |
| 9 | | | | 07/31/35 |
| CHECK | | | | 08/24/19 |
| 0 | | | | 12/31/36 |
| 0 | | | | 12/31/33 |
| 0 | | | | 06/30/53 |
| CHECK | | 1 | | 08/31/18 |
| 0 | | | | 12/31/22 |
| 0 | | | | 07/31/35 |
| 0 | | | | 06/25/54 |
| 0 | | 1 | | 10/22/34 |
| 0 | | 2 | | 10/22/34 |
| 0 | | | | 10/22/34 |
| 0 | | | | 08/23/18 |
| 0 | | | | 12/31/32 |
| 0 | | | | 12/31/32 |
| 0 | | | | 01/03/21 |
| 0 | | | | 12/31/26 |

| | | |
|---|---|---|
| 0 | | 12/31/18 |
| 0 | | 11/13/25 |
| 0 | | 12/18/23 |
| 0 | | 12/31/16 |
| 0 | 2 | 09/23/35 |
| 0 | 2 | 12/18/18 |
| 0 | | 12/18/18 |
| 0 | | 12/31/32 |
| 0 | | 10/22/34 |
| 0 | | 10/22/34 |
| 0 | | 10/31/27 |
| 0 | | 03/31/34 |
| 0 | 2 | 12/29/20 |
| 0 | | 12/31/21 |
| 0 | | 09/30/32 |
| 0 | | 12/31/32 |
| 0 | 4 | 06/30/18 |
| 0 | | 11/14/25 |
| 0 | | 11/14/25 |
| 0 | | 11/18/35 |
| 0 | | 07/31/22 |
| 0 | | 12/28/38 |
| 0 | 2 | 10/22/34 |
| 0 | | 12/31/32 |
| 0 | | 10/01/33 |
| 0 | 2 | 10/22/34 |
| 0 | | 08/23/18 |
| 0 | 1 | 11/13/25 |
| 0 | | 09/18/26 |
| 0 | | 12/31/32 |
| 0 | | 12/29/26 |
| 0 | | 12/18/28 |
| 0 | | 10/22/34 |
| 0 | | 12/31/33 |
| 0 | | 12/31/32 |
| 0 | | 08/23/18 |
| 0 | | 03/31/22 |
| | | 08/31/24 |
| | | 03/31/35 |
| | | 11/13/25 |
| | | 11/13/25 |
| | | 10/22/34 |
| | | 12/18/18 |
| | | 12/31/52 |

| | | | |
|---|---|---|---|
| | | | 12/31/32 |
| | | | 10/22/34 |
| | | | 12/31/26 |
| | | | 11/18/35 |
| | | | 12/29/26 |
| 81 | 0 | 19 | |

is subject to the Letter of Agreement franchisee executed in connection
nchisor's willingness to provide Franchisee with the ability to sequence
the capital investments needed to reimage the Restaurants, and it is no
he financial or economic viability of any of the Restaurants.  Franchisee
nts in electing to proceed with the Reinvestment Plan in accordance wit
" provided to Franchisee in connection with this Agreement or the reima
rposes only, and not in connection with the offer or sale of a franchise.
earnings or profitability measure or claim of any kind, and should not b
hisee can expect to attain any specific level or range of sales, costs, inco
s to the profitability or success with respect to reimaging a restaurant, a

Acknowledged & Agreed by Franchis

Signature:_____

Name:_____

Title:_____

Date: _____

_____

_____

_____

_____

|  |  |
|---|---|
| 81 | |
| 19 | |
| 0 | |
| 0 | |
| 62 | |

| LAST OPTION EXPIRY | RENT $ |
|---|---|
| 10/22/54 | $164,354 |
| 12/31/54 | - |
| 12/31/55 | $91,418 |
| 12/31/52 | $48,000 |
| 08/23/28 | $51,000 |
| 12/31/27 | $144,145 |
| 03/27/55 | $141,050 |
| 09/23/55 | $117,895 |
| 03/27/54 | $119,000 |
| 07/31/55 | $110,095 |
| 12/31/33 | $47,916 |
| 07/31/55 | $166,676 |
| 07/31/56 | $122,706 |
| | $435,505 |
| 12/31/56 | $75,000 |
| 12/31/52 | $181,411 |
| 06/30/53 | $14,400 |
| 08/31/28 | $83,249 |
| 12/31/37 | $73,205 |
| 07/31/55 | $77,293 |
| 06/25/54 | - |
| 10/22/54 | $191,404 |
| 10/22/54 | $164,354 |
| 10/22/54 | $139,618 |
| 08/23/28 | $69,996 |
| 12/31/52 | $161,712 |
| 09/30/53 | - |
| 01/03/31 | $89,433 |
| 12/31/36 | $96,513 |

| | |
|---|---|
| 12/31/33 | $90,750 |
| 11/13/45 | $184,353 |
| 12/18/48 | $119,840 |
| 12/31/26 | $115,900 |
| 09/23/55 | $82,598 |
| 12/18/38 | $130,000 |
| 12/18/38 | $99,711 |
| 12/31/52 | $108,404 |
| 10/22/54 | $138,121 |
| 10/22/54 | $136,596 |
| 10/31/47 | $88,000 |
| 03/31/49 | $      - |
| 12/29/40 | $121,734 |
| 12/31/41 | $114,006 |
| 09/30/52 | $146,124 |
| 12/31/52 | $99,555 |
| 06/30/38 | $136,814 |
| 11/14/45 | $79,812 |
| 11/14/45 | $8,900 |
| 11/18/55 | $103,275 |
| 07/31/27 | $103,040 |
| 12/28/58 | $132,731 |
| 10/22/54 | $147,740 |
| 12/31/52 | - |
| 09/30/53 | - |
| 10/22/54 | $141,723 |
| 08/23/28 | $71,004 |
| 11/14/44 | $180,000 |
| 09/18/26 | - |
| 12/31/52 | $112,376 |
| 12/29/26 | $96,800 |
| 12/18/48 | $117,868 |
| 10/22/54 | $129,677 |
| 12/31/52 | $185,836 |
| 12/31/52 | $176,987 |
| 08/23/28 | $69,996 |
| 03/31/37 | $60,000 |
| 08/31/33 | $0 |
| 03/31/55 | $102,182 |
| 11/13/45 | $153,536 |
| 11/13/45 | $149,152 |
| 10/22/54 | $131,107 |
| 12/18/38 | $120,320 |
| 12/31/52 | $78,000 |

| | |
|---|---|
| 12/31/52 | $132,740 |
| 10/22/54 | $98,152 |
| 12/31/36 | $94,899 |
| 11/18/55 | $109,565 |
| 12/29/26 | $108,900 |
| | |

with its Joint Capital Plan.
the expiration of the Franchise
t reflective of any
confirm that you have made
h this Agreement.   Any sales or
aging of the Restaurants have
Such information is not
e relied upon or construed as a
me or profit from reimaging the
and Franchisor makes no

or:

_____

_____

_____

_____

| COMMENT |
| --- |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| Relocation for site 3092 |
| |
| Airport site - will let us know in 2019 if they want a renewal if they win the bid |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |

0

Marginal restaurant - 5 years added to FA

Marginal restaurant - 5 years added to FA

Marginal restaurant - 5 years added to FA

Marginal restaurant - 5 years added to FA

Marginal restaurant - 5 years added to FA

Marginal restaurant - 3 years added to FA

| PRE-REIMAGE EXPIRATION DATE | ACQUISITION COMMENT |
|---|---|
| 07/01/28 | |
| | |
| 12/31/32 | Acquired from Rubenstein, Stan effective 12/19/12 |
| 12/31/32 | Acquired from Rubenstein, Stan effective 12/19/12 |
| 08/20/18 | Acquired from REED, MARK effective 03/16/15 |
| 08/20/18 | Acquired from REED, MARK effective 03/16/15 |
| 08/01/16 | Acquired from QUAGLIANO, MICHAEL D. effective 03/27/15 |
| 12/31/15 | Acquired from QUAGLIANO, MICHAEL D. effective 03/27/15 |
| 03/01/21 | Acquired from QUAGLIANO, MICHAEL D. effective 03/27/15 |
| 12/09/22 | Acquired from QUAGLIANO, MICHAEL D. effective 03/27/15 |
| 12/18/18 | Acquired from REED, MARK effective 03/16/15 |
| 11/14/17 | Acquired from QUAGLIANO, MICHAEL D. effective 03/27/15 |
| 03/17/26 | Acquired from QUAGLIANO, MICHAEL D. effective 03/27/15 |
| 08/10/19 | Acquired from BEHM/STANTON effective 07/20/15 |
| | |
| 12/31/32 | Acquired from Rubenstein, Stan effective 12/19/12 |
| 01/01/18 | Acquired from Rubenstein, Stan effective 12/19/12 |
| 08/20/18 | Acquired from REED, MARK effective 03/16/15 |
| | Acquired from REED, MARK effective 03/16/15 |
| | Acquired from QUAGLIANO, MICHAEL D. effective 03/27/15 |
| | |
| | |
| | |
| | Acquired from REED, MARK effective 03/16/15 |
| | |
| | |
| | Acquired from REED, MARK effective 03/16/15 |
| | Acquired from REED, MARK effective 03/16/15 |

Acquired from REED, MARK effective 03/16/15

Acquired from QUAGLIANO, MICHAEL D. effective 03/27/15
Acquired from REED, MARK effective 03/16/15
Acquired from REED, MARK effective 03/16/15
Acquired from Rubenstein, Stan effective 12/19/12

Acquired from REED, MARK effective 03/16/15

Acquired from REED, MARK effective 03/16/15
Acquired from REED, MARK effective 03/16/15

Acquired from Rubenstein, Stan effective 12/19/12

Acquired from REED, MARK effective 03/16/15
Acquired from REED, MARK effective 03/16/15
Acquired from QUAGLIANO, MICHAEL D. effective 03/27/15

Acquired from Rubenstein, Stan effective 12/19/12

Acquired from REED, MARK effective 03/16/15
Acquired from REED, MARK effective 03/16/15
Acquired from QUAGLIANO, MICHAEL D. effective 03/27/15

Acquired from REED, MARK effective 03/16/15

Acquired from Rubenstein, Stan effective 12/19/12
Acquired from REED, MARK effective 03/16/15
Acquired from REED, MARK effective 03/16/15
Acquired from QUAGLIANO, MICHAEL D. effective 03/27/15

Acquired from REED, MARK effective 03/16/15
Acquired from Rubenstein, Stan effective 12/19/12

Acquired from Rubenstein, Stan effective 12/19/12

Acquired from REED, MARK effective 03/16/15
Acquired from QUAGLIANO, MICHAEL D. effective 03/27/15



Case: 2:24-cv-03077-MHW-KAJ Doc #: 47-5 Filed: 08/25/25 Page: 110 of 145 PAGEID #: 1688

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 616 | Demopolis | 11498 | 602 HIGHWAY 80 E, DEMOPOLIS, AL | MONTGOMERY | 12/26/14 | 07/31/34 | 996,390 | New Build | 12/26/14 | 12/26/26 | 0 | 12/31/34 | 12/31/54 | - | ####### |

Acknowledged & Agreed by Franchisee:

Signature:______________________________

Name:______________________________

Title:______________________________

Acknowledged & Agreed by Franchisor:

Signature:______________________________

Name:______________________________

Title:______________________________

| WENDY'S SITE # | ADDRESS | CURRENT AGREEMENT EXPIRY | REINVESTMENT TYPE | REIMAGE COMPLETION | AVAILABLE CREDIT YEARS |
|---|---|---|---|---|---|

| 2019 CREDIT YEAR APPLICATION | ADJUSTED EXPIRATION DATE | CURRENT LEASE TERM END DATE | LAST OPTION EXPIRY | RENT $ | COMMENT |
|---|---|---|---|---|---|

# FRANCHISEE:

**REINVESTMENT PLAN**
**AS OF JANUARY 14, 2020**

| SITE # | ADDRESS | REIMAGE COMPLETION | PRE-REIMAGE EXPIRY | AVAILABLE CREDIT YEARS |
|---|---|---|---|---|
| 8174 | 7560 NW 186TH STREET, HIALEAH, FL | 12/18/2013 | 12/18/2023 | 15 |
| 11498 | 602 HIGHWAY 80 E, DEMOPOLIS, AL | 12/26/2014 | 12/26/2026 | 0 |
| 5563 | 5018 OSCAR BAXTER DR, TUSCALOOSA, AL | 10/23/2015 | 10/23/2025 | 17 |
| 8453 | 5801 AL HIGHWAY 157, CULLMAN, AL | 11/21/2015 | 11/21/2025 | 17 |
| 1744 | 205 S. MIRIMAR, INDIALANTIC, FL | 11/23/2015 | 11/23/2025 | 3 |
| 1656 | 1154 MALABAR RD S.E., PALM BAY, FL | 12/18/2015 | 12/18/2025 | 3 |
| 5767 | 3530 BROADWAY, QUINCY, IL | 12/22/2015 | 12/22/2025 | 1 |
| 5401 | 3300 S. ONEIDA, APPLETON, WI | 12/23/2015 | 12/23/2025 | 0 |
| 4184 | 314 HWY 61 SOUTH, HANNIBAL, MO | 1/6/2016 | 1/6/2026 | 5 |
| 5267 | 3815 WISCONSIN AVENUE, APPLETON, WI | 1/12/2016 | 1/12/2026 | 7 |
| 2590 | 2309 S US HIGHWAY 1, FT.PIERCE, FL | 2/8/2016 | 2/8/2026 | 3 |
| 10523 | 412 E. WALNUT AVE, CARBONDALE, IL | 8/29/2016 | 8/29/2026 | 1 |
| 10700 | 1250 TORONTO ROAD, SPRINGFIELD, IL | 11/9/2016 | 11/9/2026 | 9 |
| 11257 | 2506 WORLD GATEWAY PL/DMA/MCNAMARA, DETROIT, MI | 12/8/2016 | 12/8/2026 | CHECK |
| 11857 | 950 N WICKHAM RD, MELBOURNE, FL | 9/1/2017 | 9/1/2029 | 0 |
| 7393 | 45 JIMMY HINTON DR., OXFORD, AL | 11/15/2017 | 11/15/2027 | 0 |
| 3177 | 1920 MCFARLAND BLVD., NORTHPORT, AL | 1/5/2018 | 1/5/2028 | 0 |
| 1735 | 395 E EAU GALLIE BLVD, INDIAN HARBOR BEACH, FL | 5/17/2019 | 5/17/2029 | CHECK |
| 8847 | 4435 NORTHLAKE BLVD., PALM BEACH GARDENS, FL | 2/20/2020 | 2/20/2030 | 0 |
| 8661 | 2360 WESTOWNE AVE, OSHKOSH, WI | 5/4/2020 | 5/4/2030 | 0 |
| 11448 | 1600 COUNTY ROUTE 437, CULLMAN, AL | 12/31/2020 | 12/31/2030 | 0 |
| 5499 | 6375 W SAMPLE RD, CORAL SPRINGS, FL | 12/31/2020 | 12/31/2030 | 0 |
| 7631 | 11925 NW 27TH PL., MIAMI, FL | 12/31/2020 | 12/31/2030 | 0 |
| 7917 | 14900 SOUTHWEST 31ST STREET, MIRAMAR, FL | 12/31/2020 | 12/31/2030 | 0 |
| 2453 | 3323 COLUMBIA BLVD, TITUSVILLE, FL | 12/31/2020 | 12/31/2030 | 0 |
| 1297 | 6620 E. MARTIN LUTHER KING BLVD., TAMPA, FL | 12/31/2020 | 12/31/2030 | 0 |
| 10475 | 16056 HWY 280, CHELSEA, AL | 12/31/2020 | | 0 |
| 1734 | 1150 BABCOCK ST., MELBOURNE, FL | 12/31/2020 | | 0 |
| 1740 | 1755 PALM BAY ROAD NE, PALM BAY, FL | 12/31/2020 | | 0 |
| 9274 | 180 WEST SWEDESFORD ROAD, DEVON, PA | 12/31/2020 | | 0 |
| 8850 | 19430 BRUCE B. DOWNS, TAMPA, FL | 12/31/2020 | | 0 |
| 2228 | 726 S FEDERAL HWY, STUART, FL | 1/31/2021 | | 0 |
| 1325 | 13712 BRUCE B. DOWNS BLVD, TAMPA, FL | 12/31/2021 | 12/31/2031 | 0 |
| 7532 | 2805 SCHOFIELD AVE, SCHOFIELD, WI | 12/31/2021 | 12/31/2031 | 0 |
| 2402 | 270 SW PORT ST LUCIE BLVD, PORT ST.LUCIE, FL | 12/31/2021 | 12/31/2031 | 0 |
| 2064 | 890 US HIGHWAY 1, VERO BEACH, FL | 12/31/2021 | 12/31/2031 | 0 |
| 8474 | 419 N. PELHAM ROAD, JACKSONVILLE, AL | 12/31/2021 | 12/31/2031 | 0 |

81

| COMMENT |
|---|
| New Build |
| |
| |
| |
| |
| Not Renewed |
| |
| |
| |
| |
| |
| New Build |
| Not Renewed |
| Not Renewed |
| |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |
| Not Renewed |

**Reimage Status by DMA**

| DMA | # of Restaurants | # of Completed Reimages | # of Completed New Builds | DMA % Complete |
|---|---|---|---|---|
| (blank) | | 229 | 0 | #DIV/0! |
| **Grand Total** | | **229** | **0** | **#DIV/0!** |

Case: 2:24-cv-03077-MHW-KAJ Doc #: 11-3 Filed: 06/04/24 Page: 118 of 145  PAGEID #: 1066



# Agreements Expired or Expiring Soon

| WENDY'S SITE # | CURRENT AGREEMENT EXPIRY | ADJUSTED EXPIRATION D | REIMAGE COMPLETION |
|---|---|---|---|
| (blank) | (blank) | | 12:00:00 AM |
| **Grand Total** | | | |

## Financial Questions to Franchisee:

1. How are your reimages / new builds performing?
2. How did you do relative to 2017 budget? How is your 2018 outlook?
3. Are there any local business challenges / opportunities to increase profitability? (e.g. minimum wage, acces
4. What banks are you currently working with? Has access to capital been an issue?

Project info previously entered (in WenTrack but deleted from JCP tab):

| WENDY'S SITE # | ADDRESS | DMA | OPEN DATE |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

ss to labor, etc.)

| CURRENT AGREEMENT EXPIRY | SALES (TTM) | REINVESTMENT TYPE | REIMAGE COMPLETION |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| Site # | Seller Name | Buyer Name | Effective Date | Address |
|--------|-------------|------------|----------------|---------|

| City | State | Country | Deal Type | Market |
|------|-------|---------|-----------|--------|

SECURED PROMISSORY NOTE

FRANKLIN COUNTY, OHIO

$5,550,360.55                                                  January~~December~~ ____, 20~~19~~20

FOR VALUE RECEIVED, the undersigned, Andrew Levy (the "**Maker**"), whose principal address is 1401 West Two Creeks Circle, Park City Utah, 84098, promises to pay to the order of WENDY'S NETHERLANDS B.V., a company organized and existing under the laws of the Netherlands (the "**Payee**"), at its registered address Prins Bernhardplein 200, 1097 JB Amsterdam, the Netherlands, or at such other place as the Payee may from time to time designate in writing, the principal sum of Five Million Five Hundred and Fifty Thousand Three Hundred and Sixty and 55/100 Dollars ($5,550,360.55), subject to reduction as described in the immediately following paragraph, plus interest at the ~~annual~~ rate of five percent (5%) per annum.

Commencing on January 15, 2020, and continuing until maturity, by acceleration or otherwise, Maker shall pay to Payee quarterly installments of principal and interest on the dates and in the combined amounts as set forth and in accordance with the Amortization Schedule attached hereto as *Exhibit A* and incorporated herein. Accrued interest on this Note shall be added monthly to the principal balance of this Note on the fifteenth day of each such month and shall thereafter accrue interest as provided herein. The entire amount due hereunder, including all unpaid principal and accrued interest, shall be due and payable in full on December 15, 2024 (it being understood that if the principal payments set forth on *Exhibit A* due prior to December 15, 2024 are made in accordance with the terms of this Note then the principal balance due on December 15, 2024 would be Five ~~Four~~ Million Three ~~Two~~ Hundred and Nineteen ~~Ninety-Five~~ Thousand Eight~~Three~~ Hundred and Thirty-Four~~Ninety-Six~~ Dollars and Thirty-Two~~Fifty-Five~~ Cents ($5,319,834.32~~4,295,396.55~~). Notwithstanding the foregoing, if Maker has made all payments of principal and interest due hereunder in accordance with the immediately two preceding sentences and no other default or event of default has occurred (whether or not cured or waived) ("**Discount Conditions**") then the amount of principal due shall be reduced by the amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) (by way of example only, if the remaining balance of this Note is $5,319,834.32~~4,295,396.55~~ on December 15, 2024 and this discount is to be applied as provided for in this sentence then a combined balance of $4,119,834.32~~3,095,396.55~~ would be due on December 15, 2024).

All principal and interest shall be payable in arrears. Interest hereon shall be calculated on the basis of a 360-day year applied to the actual number of days elapsed. All payments of principal and interest hereon shall be payable at par in lawful currency of the United States. Except as otherwise described herein, all amounts received for payment of this Note shall be first applied to any expenses due Payee under this Note or the Mortgage (as hereinafter defined) then to accrued interest, and finally to the reduction of principal. Payee shall designate in writing from time to time to Maker an account of Payee into which such amounts are to be paid.

The principal amount of this Secured Promissory Note represents an aggregate of amounts of existing indebtedness that the Maker freely admits are due and owing to Payee, and/or its subsidiaries, affiliates and related entities pursuant to and in satisfaction of the Maker's obligations under that certain Guarantee Agreement, dated as of October 20, 2015, among Starboard International Holdings B.V., as Guarantor ("**Starboard**"), Maker, as Guarantor, and

Wendy's Netherlands B.V., as Beneficiary, as amended by the first amendment thereto dated August 2, 2017 and the second amendment thereto dated January 19, 2018 (such Guarantee Agreement, as so amended being the "**Guarantee**") attached hereto as *Exhibit B* and made a part hereof pursuant to which Maker guaranteed the obligations of WBR Franquais Participacoies LTDA, as borrower ("**Borrower**") under (x) the Credit Agreement, dated as of October 20, 2015 ("**2015 Credit Agreement**"), among Payee and Borrower and (y) the Credit Agreement, dated as of August 2, 2017 (together with the 2015 Credit Agreement being the "**Credit Agreements**")), among Payee and Borrower. The principal amount hereunder represents the amount agreed upon between Maker and Payee to be payable by Maker to discharge the obligations under the Guarantee with respect to the Credit Agreements. Such amount or any payment hereunder shall not in any way reduce or constitute a forgiveness of any amount owed by Borrower to Payee under the Credit Agreements.

In the event that any payment of principal and/or interest is not actually received by the Payee on or prior to the respective due date as set forth in the Amortization Schedules attached as *Exhibit A* hereto, the Maker agrees to pay Payee a late charge equal to the greater of twelve percent (12%) per annum on such delinquent amount until paid, or such amount as is permitted by law.

Payments due hereunder shall be paid by pre-authorized wire transfer, electronic transfer via automated clearing houses, similar commonly-accepted methods of funds transfer or such other method as Payee may designate in writing from time to time. Maker shall undertake all actions necessary and shall deliver to Payee all necessary information (including financial institution of origin and relevant account numbers) pertaining to such pre-authorized transfers.

Prepayment of the principal of this Note shall be permitted without premium or penalty of any kind, provided, however, that if Payee, in Payee's sole discretion, elects to assign, sell or transfer this Note to another person (each an Assignee), then in the event of an early payoff, Maker shall be required to pay to an Assignee of Payee a prepayment premium equal to 3% of the Note payoff amount during the first Loan Year (as defined herein) of the Note, 2% of the Note payoff amount during the second Loan Year of the Note, and 1% of the Note payoff amount during the third Loan Year of the Note, and 0% of the Note payoff amount after the end of the third Loan Year, and in no event is Maker permitted to pay any lump sum payments, without paying the Note in full, plus the prepayment premium during the first three (3) Loan Years of the Note.

The first Loan Year shall mean the period of time commencing on the date of this Note and ending on the last day of the twelfth consecutive month commencing with the month after the month in which this Note is dated, unless this Note is dated the first day of a month, in which case the first Loan Year shall mean the twelve consecutive months commencing with the date of this Note. Each subsequent Loan Year shall mean the successive twelve consecutive month period following the preceding Loan Year.

Maker covenants and agrees to use his best efforts to cause this Note to be secured on or before February 15, 2020 by either: 1) aa Deed of Trust (such Deed of Trust to have such terms and conditions and be in form, scope and substance as is satisfactory to Payee), on or before December 31, 2019 on Maker's personal residence located at 1401 West Two Creeks Circle Park

- 2 -

010-8796-1655/11/AMERICAS

City, UT 84098 (the "**Mortgage**"); or 2) by such other collateral as is sufficient to secure the Note as is determined by Payee in Payee's sole discretion.

This Note may not be changed orally, but only by an agreement in writing signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

This Note may be assigned, sold or transferred by Payee at Payee's sole discretion.  If so assigned, the Assignee hereof shall have and be entitled to exercise any and all discretion, rights and powers of Payee, but Assignee shall not be chargeable with any obligations or liabilities of Payee hereunder or with respect thereof.  Maker hereby agrees that Payee may, in its sole discretion, disclose pertinent financial information relative to Maker to any Assignee in order to facilitate the assignment, sale or transfer of this Note.  Maker agrees that it will not assert against Assignee any claim, defense, counterclaim or offset on account of this Note in any action brought by an Assignee.

In the event of any loss, theft, destruction or mutilation of this Note, upon Maker's receipt of an affidavit of an officer of Payee as to such loss, theft, destruction or mutilation and an appropriate indemnification, Maker will execute and deliver a replacement Note in the same principal amount and otherwise of like tenor as the lost, stolen, destroyed or mutilated Note.

The holders of this Note and all successors thereof shall have all of the rights of a holder in due course as provided under the Ohio Uniform Commercial Code and other laws of the State of Ohio.  Maker hereby waives demand, presentment, protest, notice of protest and/or dishonor and all other notices or requirements that might otherwise be required by law. The Maker promises to pay on demand all costs of collection, including attorney's fees and court costs, paid or incurred by Payee in enforcing this Note upon Maker's default hereunder.

The occurrence of any of the following shall constitute an "event of default" under this Note:

(a)  The failure of Maker to make any payment when due under this Note (time is of the essence of this Note) or to observe or perform any other term, agreement or covenant in this Note;

(b)  The institution of proceedings by or against Maker under any state insolvency laws, federal bankruptcy law or similar debtor relief laws then in effect;

(c)  Maker becoming insolvent or generally failing to pay its debts as they become due;

(d)  The entry of a judgment against Maker which remains unsatisfied for more than thirty (30) days;

(e)  The existence of a material misrepresentation of Maker's financial condition in any oral or written statement made to Payee;

(f)  Default by Maker to comply with its obligations under the fifth immediately preceding paragraph with respect to the Mortgage (or such

- 3 -

other sufficient security has Payee has determined is acceptable) or to comply with his obligations under such Mortgage;

(g)      Default by the franchisee and/or termination or transfer (whether or not voluntarly or mutually agreed) of all of the Wendy's franchise agreements in the U.S. and/or the ceasing of operation of all Wendy's restaurants that are franchised to Maker and/or any entities of which Maker is a shareholder or holds other voting or member interests;

(h)      The failure of Maker and/or any of the entities of which Maker is a shareholder or holds other voting or member interest to meet the reimaging timing and requirements set forth in the restaurant reimaging schedule attached as *Exhibit D* hereto; and

**Formatted:** Font: Italic

(i)      The death of Maker.

Upon the occurrence of an event of default, as defined above, Payee may, at its option and without notice, declare all principal and interest provided for under this Note to be immediately due and payable.  Payee may waive any default before or after it occurs and may restore this Note in full effect without impairing the right to declare it due for a subsequent default, this right being a continuing one.  Upon the occurrence of any of (a) through (h) above, Payee, in its sole discretion, may elect to issue a Notice of Default, without the necessity of first accelerating the principal or interest balance hereunder.

Maker hereby authorizes any attorney at law to appear for the Maker in any court of record in Franklin County, Ohio, with or without process, at any time after this Note becomes payable, by acceleration or otherwise, and waives the issuance and service of process and confesses judgment against Maker in favor of the holder of this Note for the amount then appearing due, together with interest, costs of suit and attorney's fees and thereupon to release all errors and waive all rights of second trial, appeal, and stay of execution.

In consideration for Payee's willingness to accept this Note from Maker and its forbearance relative to actions which it might otherwise take as of the date of this Note with regard to the obligations referenced herein, Maker hereby agrees to execute and shall cause Starboard to execute contemporaneously herewith, a General Release of All Claims in the form identical to that attached hereto and made a part hereof as *Exhibit C*.  Maker represents and warrants that he, directly or indirectly, owns beneficially 100% of the equity interests of Starboard, has the control over the business direction of Starboard and has the power and authority to cause Starboard to enter into such General Release of Claims.

Maker acknowledges and agrees that Payee's willingness to provide this Note and the provisions of this Note are strictly confidential in nature and are subject to the confidentiality provisions of the Franchise Agreements.

This Note may be freely transferred by Payee.

If any provision of this Note should for any reason be invalid or unenforceable, the remaining provisions hereof shall remain in full effect.

- 4 -

010-8796-1655/11/AMERICAS

This Note shall be governed and construed in accordance with the laws of the State of Ohio and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

This Note was executed in Franklin County, Ohio.

ATTEST:                                          MAKER:

_____
ANDREW LEVY


Acknowledged and Agreed to

STARBOARD HOLDINGS
INTERNATIONAL, B.V.

_____
By:
Title:


**WARNING:  BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL.  IF YOU DO NOT PAY ON TIME, A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIM YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON ITS PART TO COMPLY WITH ANY AGREEMENT OR ANY OTHER CAUSE.**

010-8796-1655/11/AMERICAS

**EXHIBIT A**

Amortization Schedule

| ~~Date~~ | ~~Combined Principal and Interest Payment~~ | ~~Principal~~ | ~~Interest~~ |
|---|---|---|---|
| ~~January 15, 2020~~ | ~~$125,000~~ | ~~$55,620.49~~ | ~~$   69,379.51~~ |
| ~~April 15, 2020~~ | ~~$125,000~~ | ~~56,315.75~~ | ~~68,684.25~~ |
| ~~July 15,2020~~ | ~~$125,000~~ | ~~57,019.70~~ | ~~67,980.30~~ |
| ~~October 15, 2020~~ | ~~$125,000~~ | ~~57,732.44~~ | ~~67,267.56~~ |
| ~~January 15, 2021~~ | ~~$125,000~~ | ~~58,454.10~~ | ~~66,545.90~~ |
| ~~April 15, 2021~~ | ~~$125,000~~ | ~~59,184.77~~ | ~~65,815.23~~ |
| ~~July 15, 2021~~ | ~~$125,000~~ | ~~59,924.58~~ | ~~65,075.42~~ |
| ~~October 15, 2021~~ | ~~$125,000~~ | ~~60,673.64~~ | ~~64,326.36~~ |
| ~~January 15, 2022~~ | ~~$125,000~~ | ~~61,432.06~~ | ~~63,567.94~~ |
| ~~April l5, 2022~~ | ~~$125,000~~ | ~~62,199.96~~ | ~~62,800.04~~ |
| ~~July 15, 2022~~ | ~~$125,000~~ | ~~62,977.46~~ | ~~62,022.54~~ |
| ~~October 15, 2022~~ | ~~$125,000~~ | ~~63,764.68~~ | ~~61,235.32~~ |
| ~~January 15, 2023~~ | ~~$125,000~~ | ~~64,561.74~~ | ~~60,438.26~~ |
| ~~April 15, 2023~~ | ~~$125,000~~ | ~~65,368.76~~ | ~~59,631.24~~ |
| ~~July 15, 2023~~ | ~~$125,000~~ | ~~66,185.87~~ | ~~58,814.13~~ |
| ~~October 15, 2023~~ | ~~$125,000~~ | ~~67,013.19~~ | ~~57,986.81~~ |
| ~~January 15, 2024~~ | ~~$125,000~~ | ~~67,850.86~~ | ~~57,149.14~~ |
| ~~April 15, 2024~~ | ~~$125,000~~ | ~~68,698.99~~ | ~~56,301.01~~ |
| ~~July 15, 2024~~ | ~~$125,000~~ | ~~69,557.73~~ | ~~55,442.27~~ |
| ~~October 15, 2024~~ | ~~$125,000~~ | ~~70,427.20~~ | ~~54,572.80~~ |
| ~~December 15, 2024~~ | ~~$4,295,396.55~~ | | |

A-1

|  | Enter Values |  |  |
|---|---|---|---|
| Loan Amount | $ 5,550,360.55 | Loan | $ 5,120,000.00 |
| Annual Interest Rate | 5.000% | Interest | $ 430,360.55 |
| Loan Period in Years | 5.0 | Total | $ 5,550,360.55 |
| Start Date of Loan | 1/15/2020 |  |  |
| Optional Extra Payments | $0.00 |  |  |

| | |
|---|---|
| Scheduled Quarterly Payment | $ 125,000.00 |
| Scheduled Number of Payments | 20 |
| Actual Number of Payments | 21 |
| Total Interest Paid | $ 1,103,267.38 |

| No. | Payment Date | Beginning Balance | Scheduled Payment | Principal | Total Accrued Interest | Interest Paid | Interest Paid In Kind | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| 1 | 1/15/2020 | $ 5,550,360.55 | 0.00 | 0.00 | 69,379.51 | 0.00 | 69,379.51 | $ 5,619,740.05 |
| 2 | 2/15/2020 | 5,619,740.05 |  |  |  |  |  | 5,619,740.05 |
| 3 | 3/15/2020 | 5,619,740.05 |  |  |  |  |  | 5,619,740.05 |
| 4 | 4/15/2020 | 5,619,740.05 | 0.00 | 0.00 | 70,246.75 | 0.00 | 70,246.75 | 5,689,986.81 |
| 5 | 5/15/2020 | 5,689,986.81 |  |  |  |  |  | 5,689,986.81 |
| 6 | 6/15/2020 | 5,689,986.81 |  |  |  |  |  | 5,689,986.81 |
| 7 | 7/15/2020 | 5,689,986.81 | 50,000.00 | 0.00 | 71,124.84 | 50,000.00 | 21,124.84 | 5,711,111.64 |
| 8 | 8/15/2020 | 5,711,111.64 |  |  |  |  |  | 5,711,111.64 |
| 9 | 9/15/2020 | 5,711,111.64 |  |  |  |  |  | 5,711,111.64 |
| 10 | 10/15/2020 | 5,711,111.64 | 50,000.00 | 0.00 | 71,388.90 | 50,000.00 | 21,388.90 | 5,732,500.54 |
| 11 | 11/15/2020 | 5,732,500.54 |  |  |  |  |  | 5,732,500.54 |
| 12 | 12/15/2020 | 5,732,500.54 |  |  |  |  |  | 5,732,500.54 |
| 13 | 1/15/2021 | 5,732,500.54 | 50,000.00 | 0.00 | 71,656.26 | 50,000.00 | 21,656.26 | 5,754,156.79 |
| 14 | 2/15/2021 | 5,754,156.79 |  |  |  |  |  | 5,754,156.79 |
| 15 | 3/15/2021 | 5,754,156.79 |  |  |  |  |  | 5,754,156.79 |
| 16 | 4/15/2021 | 5,754,156.79 | 50,000.00 | 0.00 | 71,926.96 | 50,000.00 | 21,926.96 | 5,776,083.75 |
| 17 | 5/15/2021 | 5,776,083.75 |  |  |  |  |  | 5,776,083.75 |
| 18 | 6/15/2021 | 5,776,083.75 |  |  |  |  |  | 5,776,083.75 |
| 19 | 7/15/2021 | 5,776,083.75 | 50,000.00 | 0.00 | 72,201.05 | 50,000.00 | 22,201.05 | 5,798,284.80 |
| 20 | 8/15/2021 | 5,798,284.80 |  |  |  |  |  | 5,798,284.80 |
| 21 | 9/15/2021 | 5,798,284.80 |  |  |  |  |  | 5,798,284.80 |
| 22 | 10/15/2021 | 5,798,284.80 | 50,000.00 | 0.00 | 72,478.56 | 50,000.00 | 22,478.56 | 5,820,763.36 |
| 23 | 11/15/2021 | 5,820,763.36 |  |  |  |  |  | 5,820,763.36 |
| 24 | 12/15/2021 | 5,820,763.36 |  |  |  |  |  | 5,820,763.36 |
| 25 | 1/15/2022 | 5,820,763.36 | 50,000.00 | 0.00 | 72,759.54 | 50,000.00 | 22,759.54 | 5,843,522.90 |
| 26 | 2/15/2022 | 5,843,522.90 |  |  |  |  |  | 5,843,522.90 |
| 27 | 3/15/2022 | 5,843,522.90 |  |  |  |  |  | 5,843,522.90 |
| 28 | 4/15/2022 | 5,843,522.90 | 50,000.00 | 0.00 | 73,044.04 | 50,000.00 | 23,044.04 | 5,866,566.94 |
| 29 | 5/15/2022 | 5,866,566.94 |  |  |  |  |  | 5,866,566.94 |
| 30 | 6/15/2022 | 5,866,566.94 |  |  |  |  |  | 5,866,566.94 |
| 31 | 7/15/2022 | 5,866,566.94 | 125,000.00 | 51,667.91 | 73,332.09 | 73,332.09 | 0.00 | 5,814,899.02 |
| 32 | 8/15/2022 | 5,814,899.02 |  |  |  |  |  | 5,814,899.02 |
| 33 | 9/15/2022 | 5,814,899.02 |  |  |  |  |  | 5,814,899.02 |
| 34 | 10/15/2022 | 5,814,899.02 | 125,000.00 | 52,313.76 | 72,686.24 | 72,686.24 | 0.00 | 5,762,585.26 |
| 35 | 11/15/2022 | 5,762,585.26 |  |  |  |  |  | 5,762,585.26 |
| 36 | 12/15/2022 | 5,762,585.26 |  |  |  |  |  | 5,762,585.26 |
| 37 | 1/15/2023 | 5,762,585.26 | 125,000.00 | 52,967.68 | 72,032.32 | 72,032.32 | 0.00 | 5,709,617.58 |
| 38 | 2/15/2023 | 5,709,617.58 |  |  |  |  |  | 5,709,617.58 |
| 39 | 3/15/2023 | 5,709,617.58 |  |  |  |  |  | 5,709,617.58 |
| 40 | 4/15/2023 | 5,709,617.58 | 125,000.00 | 53,629.78 | 71,370.22 | 71,370.22 | 0.00 | 5,655,987.80 |
| 41 | 5/15/2023 | 5,655,987.80 |  |  |  |  |  | 5,655,987.80 |
| 42 | 6/15/2023 | 5,655,987.80 |  |  |  |  |  | 5,655,987.80 |
| 43 | 7/15/2023 | 5,655,987.80 | 125,000.00 | 54,300.15 | 70,699.85 | 70,699.85 | 0.00 | 5,601,687.65 |
| 44 | 8/15/2023 | 5,601,687.65 |  |  |  |  |  | 5,601,687.65 |
| 45 | 9/15/2023 | 5,601,687.65 |  |  |  |  |  | 5,601,687.65 |
| 46 | 10/15/2023 | 5,601,687.65 | 125,000.00 | 54,978.90 | 70,021.10 | 70,021.10 | 0.00 | 5,546,708.74 |
| 47 | 11/15/2023 | 5,546,708.74 |  |  |  |  |  | 5,546,708.74 |
| 48 | 12/15/2023 | 5,546,708.74 |  |  |  |  |  | 5,546,708.74 |
| 49 | 1/15/2024 | 5,546,708.74 | 125,000.00 | 55,666.14 | 69,333.86 | 69,333.86 | 0.00 | 5,491,042.60 |
| 50 | 2/15/2024 | 5,491,042.60 |  |  |  |  |  | 5,491,042.60 |
| 51 | 3/15/2024 | 5,491,042.60 |  |  |  |  |  | 5,491,042.60 |
| 52 | 4/15/2024 | 5,491,042.60 | 125,000.00 | 56,361.97 | 68,638.03 | 68,638.03 | 0.00 | 5,434,680.63 |
| 53 | 5/15/2024 | 5,434,680.63 |  |  |  |  |  | 5,434,680.63 |
| 54 | 6/15/2024 | 5,434,680.63 |  |  |  |  |  | 5,434,680.63 |
| 55 | 7/15/2024 | 5,434,680.63 | 125,000.00 | 57,066.49 | 67,933.51 | 67,933.51 | 0.00 | 5,377,614.14 |
| 56 | 8/15/2024 | 5,377,614.14 |  |  |  |  |  | 5,377,614.14 |
| 57 | 9/15/2024 | 5,377,614.14 |  |  |  |  |  | 5,377,614.14 |
| 58 | 10/15/2024 | 5,377,614.14 | 125,000.00 | 57,779.82 | 67,220.18 | 67,220.18 | 0.00 | 5,319,834.32 |
| 59 | 11/15/2024 | 5,319,834.32 |  |  |  |  |  | 5,319,834.32 |

A-2

Notwithstanding the foregoing if Maker has satisfied the Discount Conditions then the final payment due on December 15, 2024 shall be reduced by $1,200,000 and only $4,119,834.32~~3,095,396.55~~ shall then be due.

A-3

**EXHIBIT B**

Guarantee

B-1

# EXHIBIT C

### GENERAL RELEASE OF ALL CLAIMS

This GENERAL RELEASE OF ALL CLAIMS is made effective this _____ day of _____, 2019. As a requirement of and in consideration for the willingness on the part of WENDY'S NETHERLANDS B.V. a company organized and existing under the laws of the Netherlands ("**Guarantee Beneficiary**"), to accept a promissory note made by Andrew Levy ("**Maker**") to be executed contemporaneously herewith in satisfaction of the Maker's obligations under that certain Guarantee Agreement, dated as of October 20, 2015, among Starboard International Holdings B.V., as Guarantor ("**Starboard**"), Maker, as Guarantor, and Wendy's Netherlands B.V., as Guarantee Beneficiary, as amended by the first amendment thereto dated August 2, 2017 and the second amendment thereto dated January 19, 2018 (such Guarantee Agreement, as so amended being the "**Guarantee**") pursuant to which Maker and Starboard guaranteed the obligations of WBR Franquais Participacoies LTDA, as borrower ("**Borrower**") under (i) the Credit Agreement, dated as of October 20, 2015 ("**2015 Credit Agreement**"), among Payee and Borrower and (ii) the Credit Agreement, dated as of August 2, 2017 (together with the 2015 Credit Agreement being the "**Credit Agreements**")), among Payee and Borrower, as requested by the undersigned, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Maker and Starboard, individually and collectively, hereby unconditionally RELEASE, DISCHARGE and ACQUIT Guarantee Beneficiary, its past, present and future shareholders, officers, directors, employees, successors, affiliates, assigns, agents, and subsidiaries from any and all liabilities, claims, damages, demands, costs, indebtedness, expenses, debts, indemnities, compensation, suits, controversies, actions and causes of action of any kind whatsoever, whether developed or undeveloped, known or unknown, fixed or contingent, regarding or arising out of the Guarantee, any Credit Agreement or any prior, existing or future franchise agreement or any other agreement or document executed by any of the undersigned and Guarantee Beneficiary (or any subsidiary or affiliate of Guarantee Beneficiary), any Wendy's Old Fashioned Hamburgers Restaurant (whether currently or previously owned or operated or to be owned or operated by the undersigned or any of them), the franchise relationship, or any other prior, existing or future business relationship between any of the undersigned and Guarantee Beneficiary (or any subsidiary or affiliate of Guarantee Beneficiary), which the undersigned or any of them individually or collectively has asserted, may have asserted, could have asserted or could assert in the future against Guarantee Beneficiary (or any of the aforementioned related parties) at any time prior to or on the date of this GENERAL RELEASE OF ALL CLAIMS, or thereafter including specifically, without limitation, claims under the Sherman and Clayton Acts and the anti-trust Laws of the United States, and claims arising from contract, written or oral communications, alleged misstatements of fact, indebtedness of any kind or nature, and acts of negligence whether active or passive. This GENERAL RELEASE OF ALL CLAIMS shall survive the assignment or termination of any of the franchise agreements or other documents entered into by and between Guarantee Beneficiary and any of the undersigned. This GENERAL RELEASE OF ALL CLAIMS is not intended as a waiver of those rights of the undersigned which cannot be waived under applicable state franchise laws.

1

WITNESS:                              **STARBOARD INTERNATIONAL**
                                      **HOLDINGS B.V.**

_____              By:_____
                                          Title:_____

_____              _____
                                      Andrew Levy, Individually

- 2 -

EXHIBIT D
Restaurant Reimaging Schedule

**Formatted:** Left

- 3 -

010-8796-1655/11/AMERICAS

## SECURED PROMISSORY NOTE

FRANKLIN COUNTY, OHIO

$5,550,360.55                                                     January ___, 2020

FOR VALUE RECEIVED, the undersigned, Andrew Levy (the "**Maker**"), whose principal address is 1401 West Two Creeks Circle, Park City Utah, 84098, promises to pay to the order of WENDY'S NETHERLANDS B.V., a company organized and existing under the laws of the Netherlands (the "**Payee**"), at its registered address Prins Bernhardplein 200, 1097 JB Amsterdam, the Netherlands, or at such other place as the Payee may from time to time designate in writing, the principal sum of Five Million Five Hundred and Fifty Thousand Three Hundred and Sixty and 55/100 Dollars ($5,550,360.55), subject to reduction as described in the immediately following paragraph, plus interest at the rate of five percent (5%) per annum.

Commencing on January 15, 2020, and continuing until maturity, by acceleration or otherwise, Maker shall pay to Payee quarterly installments of principal and interest on the dates and in the combined amounts as set forth and in accordance with the Amortization Schedule attached hereto as *Exhibit A* and incorporated herein. Accrued interest on this Note shall be added monthly to the principal balance of this Note on the fifteenth day of each such month and shall thereafter accrue interest as provided herein. The entire amount due hereunder, including all unpaid principal and accrued interest, shall be due and payable in full on December 15, 2024 (it being understood that if the principal payments set forth on *Exhibit A* due prior to December 15, 2024 are made in accordance with the terms of this Note then the principal balance due on December 15, 2024 would be Five Million Three Hundred and Nineteen Thousand Eight Hundred and Thirty-Four Dollars and Thirty-Two Cents ($5,319,834.32). Notwithstanding the foregoing, if Maker has made all payments of principal and interest due hereunder in accordance with the immediately two preceding sentences and no other default or event of default has occurred (whether or not cured or waived) ("**Discount Conditions**") then the amount of principal due shall be reduced by the amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) (by way of example only, if the remaining balance of this Note is $5,319,834.32 on December 15, 2024 and this discount is to be applied as provided for in this sentence then a combined balance of $4,119,834.32 would be due on December 15, 2024).

All principal and interest shall be payable in arrears. Interest hereon shall be calculated on the basis of a 360-day year applied to the actual number of days elapsed. All payments of principal and interest hereon shall be payable at par in lawful currency of the United States. Except as otherwise described herein, all amounts received for payment of this Note shall be first applied to any expenses due Payee under this Note or the Mortgage (as hereinafter defined) then to accrued interest, and finally to the reduction of principal. Payee shall designate in writing from time to time to Maker an account of Payee into which such amounts are to be paid.

The principal amount of this Secured Promissory Note represents an aggregate of amounts of existing indebtedness that the Maker freely admits are due and owing to Payee, and/or its subsidiaries, affiliates and related entities pursuant to and in satisfaction of the Maker's obligations under that certain Guarantee Agreement, dated as of October 20, 2015, among Starboard International Holdings B.V., as Guarantor ("**Starboard**"), Maker, as Guarantor, and Wendy's Netherlands B.V., as Beneficiary, as amended by the first amendment thereto dated

August 2, 2017 and the second amendment thereto dated January 19, 2018 (such Guarantee Agreement, as so amended being  the "**Guarantee**") attached hereto as *Exhibit B* and made a part hereof pursuant to which Maker guaranteed the obligations of WBR Franquais Participacoies LTDA, as borrower ("**Borrower**") under (x) the Credit Agreement, dated as of October 20, 2015 ("**2015 Credit Agreement**"), among Payee and Borrower and (y) the Credit Agreement, dated as of August 2, 2017 (together with the 2015 Credit Agreement being the "**Credit Agreements**")), among Payee and Borrower.  The principal amount hereunder represents the amount agreed upon between Maker and Payee to be payable by Maker to discharge the obligations under the Guarantee with respect to the Credit Agreements. Such amount or any payment hereunder shall not in any way reduce or constitute a forgiveness of any amount owed by Borrower to Payee under the Credit Agreements.

In the event that any payment of principal and/or interest is not actually received by the Payee on or prior to the respective due date as set forth in the Amortization Schedules attached as *Exhibit A* hereto, the Maker agrees to pay Payee a late charge equal to the greater of twelve percent (12%) per annum on such delinquent amount until paid, or such amount as is permitted by law.

Payments due hereunder shall be paid by pre-authorized wire transfer, electronic transfer via automated clearing houses, similar commonly-accepted methods of funds transfer or such other method as Payee may designate in writing from time to time.  Maker shall undertake all actions necessary and shall deliver to Payee all necessary information (including financial institution of origin and relevant account numbers) pertaining to such pre-authorized transfers.

Prepayment of the principal of this Note shall be permitted without premium or penalty of any kind, provided, however, that if Payee, in Payee's sole discretion, elects to assign, sell or transfer this Note to another person (each an Assignee), then in the event of an early payoff, Maker shall be required to pay to an Assignee of Payee a prepayment premium equal to 3% of the Note payoff amount during the first Loan Year (as defined herein) of the Note, 2% of the Note payoff amount during the second Loan Year of the Note, and 1% of the Note payoff amount during the third Loan Year of the Note, and 0% of the Note payoff amount after the end of the third Loan Year, and in no event is Maker permitted to pay any lump sum payments, without paying the Note in full, plus the prepayment premium during the first three (3) Loan Years of the Note.

The first Loan Year shall mean the period of time commencing on the date of this Note and ending on the last day of the twelfth consecutive month commencing with the month after the month in which this Note is dated, unless this Note is dated the first day of a month, in which case the first Loan Year shall mean the twelve consecutive months commencing with the date of this Note.  Each subsequent Loan Year shall mean the successive twelve consecutive month period following the preceding Loan Year.

Maker covenants and agrees to use his best efforts to cause this Note to be secured on or before February 15, 2020 by either: 1) a Deed of Trust (such Deed of Trust to have such terms and conditions and be in form, scope and substance as is satisfactory to Payee), on Maker's personal residence located at 1401 West Two Creeks Circle Park City, UT 84098 (the "**Mortgage**"); or 2) by such other collateral as is sufficient to secure the Note as is determined by Payee in Payee's sole discretion.

- 2 -

This Note may not be changed orally, but only by an agreement in writing signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

This Note may be assigned, sold or transferred by Payee at Payee's sole discretion.  If so assigned, the Assignee hereof shall have and be entitled to exercise any and all discretion, rights and powers of Payee, but Assignee shall not be chargeable with any obligations or liabilities of Payee hereunder or with respect thereof.  Maker hereby agrees that Payee may, in its sole discretion, disclose pertinent financial information relative to Maker to any Assignee in order to facilitate the assignment, sale or transfer of this Note.  Maker agrees that it will not assert against Assignee any claim, defense, counterclaim or offset on account of this Note in any action brought by an Assignee.

In the event of any loss, theft, destruction or mutilation of this Note, upon Maker's receipt of an affidavit of an officer of Payee as to such loss, theft, destruction or mutilation and an appropriate indemnification, Maker will execute and deliver a replacement Note in the same principal amount and otherwise of like tenor as the lost, stolen, destroyed or mutilated Note.

The holders of this Note and all successors thereof shall have all of the rights of a holder in due course as provided under the Ohio Uniform Commercial Code and other laws of the State of Ohio.  Maker hereby waives demand, presentment, protest, notice of protest and/or dishonor and all other notices or requirements that might otherwise be required by law. The Maker promises to pay on demand all costs of collection, including attorney's fees and court costs, paid or incurred by Payee in enforcing this Note upon Maker's default hereunder.

The occurrence of any of the following shall constitute an "event of default" under this Note:

(a)     The failure of Maker to make any payment when due under this Note (time is of the essence of this Note) or to observe or perform any other term, agreement or covenant in this Note;

(b)     The institution of proceedings by or against Maker under any state insolvency laws, federal bankruptcy law or similar debtor relief laws then in effect;

(c)     Maker becoming insolvent or generally failing to pay its debts as they become due;

(d)     The entry of a judgment against Maker which remains unsatisfied for more than thirty (30) days;

(e)     The existence of a material misrepresentation of Maker's financial condition in any oral or written statement made to Payee;

(f)     Default by Maker to comply with its obligations under the fifth immediately preceding paragraph with respect to the Mortgage (or such other sufficient security has Payee has determined is acceptable) or to comply with his obligations under such Mortgage;

- 3 -

(g)      Default by the franchisee and/or termination or transfer (whether or not voluntarily or mutually agreed) of all of the Wendy's franchise agreements in the U.S. and/or the ceasing of operation of all Wendy's restaurants that are franchised to Maker and/or any entities of which Maker is a shareholder or holds other voting or member interests;

(h)      The failure of Maker and/or any of the entities of which Maker is a shareholder or holds other voting or member interest to meet the reimaging timing and requirements set forth in the restaurant reimaging schedule attached as *Exhibit D* hereto; and

(i)      The death of Maker.

Upon the occurrence of an event of default, as defined above, Payee may, at its option and without notice, declare all principal and interest provided for under this Note to be immediately due and payable. Payee may waive any default before or after it occurs and may restore this Note in full effect without impairing the right to declare it due for a subsequent default, this right being a continuing one. Upon the occurrence of any of (a) through (h) above, Payee, in its sole discretion, may elect to issue a Notice of Default, without the necessity of first accelerating the principal or interest balance hereunder.

Maker hereby authorizes any attorney at law to appear for the Maker in any court of record in Franklin County, Ohio, with or without process, at any time after this Note becomes payable, by acceleration or otherwise, and waives the issuance and service of process and confesses judgment against Maker in favor of the holder of this Note for the amount then appearing due, together with interest, costs of suit and attorney's fees and thereupon to release all errors and waive all rights of second trial, appeal, and stay of execution.

In consideration for Payee's willingness to accept this Note from Maker and its forbearance relative to actions which it might otherwise take as of the date of this Note with regard to the obligations referenced herein, Maker hereby agrees to execute and shall cause Starboard to execute contemporaneously herewith, a General Release of All Claims in the form identical to that attached hereto and made a part hereof as *Exhibit C*. Maker represents and warrants that he, directly or indirectly, owns beneficially 100% of the equity interests of Starboard, has the control over the business direction of Starboard and has the power and authority to cause Starboard to enter into such General Release of Claims.

Maker acknowledges and agrees that Payee's willingness to provide this Note and the provisions of this Note are strictly confidential in nature and are subject to the confidentiality provisions of the Franchise Agreements.

This Note may be freely transferred by Payee.

If any provision of this Note should for any reason be invalid or unenforceable, the remaining provisions hereof shall remain in full effect.

This Note shall be governed and construed in accordance with the laws of the State of Ohio and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

- 4 -

This Note was executed in Franklin County, Ohio.

ATTEST:                                          MAKER:

                                                 _____
                                                 ANDREW LEVY


                                                 Acknowledged and Agreed to

                                                 STARBOARD HOLDINGS
                                                 INTERNATIONAL, B.V.

                                                 _____
                                                 By:
                                                 Title:


**WARNING: BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME, A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIM YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON ITS PART TO COMPLY WITH ANY AGREEMENT OR ANY OTHER CAUSE.**

# EXHIBIT A
## Amortization Schedule

|  | Enter Values |  |  |
|---|---|---|---|
| Loan Amount | $ 5,550,360.55 | Loan | $ 5,120,000.00 |
| Annual Interest Rate | 5.000% | Interest | $ 430,360.55 |
| Loan Period in Years | 5.0 | Total | $ 5,550,360.55 |
| Start Date of Loan | 1/15/2020 |  |  |
| Optional Extra Payments | $0.00 |  |  |

| Scheduled Quarterly Payment | $ 125,000.00 |
|---|---|
| Scheduled Number of Payments | 20 |
| Actual Number of Payments | 21 |
| Total Interest Paid | $ 1,103,267.38 |

| No. | Payment Date | Beginning Balance | Scheduled Payment | Principal | Total Accrued Interest | Interest Paid | Interest Paid In Kind | Ending Balance |
|---|---|---|---|---|---|---|---|---|
| 1 | 1/15/2020 | $ 5,550,360.55 | 0.00 | 0.00 | 69,379.51 | 0.00 | 69,379.51 | $ 5,619,740.05 |
| 2 | 2/15/2020 | 5,619,740.05 |  |  |  |  |  | 5,619,740.05 |
| 3 | 3/15/2020 | 5,619,740.05 |  |  |  |  |  | 5,619,740.05 |
| 4 | 4/15/2020 | 5,619,740.05 | 0.00 | 0.00 | 70,246.75 | 0.00 | 70,246.75 | 5,689,986.81 |
| 5 | 5/15/2020 | 5,689,986.81 |  |  |  |  |  | 5,689,986.81 |
| 6 | 6/15/2020 | 5,689,986.81 |  |  |  |  |  | 5,689,986.81 |
| 7 | 7/15/2020 | 5,689,986.81 | 50,000.00 | 0.00 | 71,124.84 | 50,000.00 | 21,124.84 | 5,711,111.64 |
| 8 | 8/15/2020 | 5,711,111.64 |  |  |  |  |  | 5,711,111.64 |
| 9 | 9/15/2020 | 5,711,111.64 |  |  |  |  |  | 5,711,111.64 |
| 10 | 10/15/2020 | 5,711,111.64 | 50,000.00 | 0.00 | 71,388.90 | 50,000.00 | 21,388.90 | 5,732,500.54 |
| 11 | 11/15/2020 | 5,732,500.54 |  |  |  |  |  | 5,732,500.54 |
| 12 | 12/15/2020 | 5,732,500.54 |  |  |  |  |  | 5,732,500.54 |
| 13 | 1/15/2021 | 5,732,500.54 | 50,000.00 | 0.00 | 71,656.26 | 50,000.00 | 21,656.26 | 5,754,156.79 |
| 14 | 2/15/2021 | 5,754,156.79 |  |  |  |  |  | 5,754,156.79 |
| 15 | 3/15/2021 | 5,754,156.79 |  |  |  |  |  | 5,754,156.79 |
| 16 | 4/15/2021 | 5,754,156.79 | 50,000.00 | 0.00 | 71,926.96 | 50,000.00 | 21,926.96 | 5,776,083.75 |
| 17 | 5/15/2021 | 5,776,083.75 |  |  |  |  |  | 5,776,083.75 |
| 18 | 6/15/2021 | 5,776,083.75 |  |  |  |  |  | 5,776,083.75 |
| 19 | 7/15/2021 | 5,776,083.75 | 50,000.00 | 0.00 | 72,201.05 | 50,000.00 | 22,201.05 | 5,798,284.80 |
| 20 | 8/15/2021 | 5,798,284.80 |  |  |  |  |  | 5,798,284.80 |
| 21 | 9/15/2021 | 5,798,284.80 |  |  |  |  |  | 5,798,284.80 |
| 22 | 10/15/2021 | 5,798,284.80 | 50,000.00 | 0.00 | 72,478.56 | 50,000.00 | 22,478.56 | 5,820,763.36 |
| 23 | 11/15/2021 | 5,820,763.36 |  |  |  |  |  | 5,820,763.36 |
| 24 | 12/15/2021 | 5,820,763.36 |  |  |  |  |  | 5,820,763.36 |
| 25 | 1/15/2022 | 5,820,763.36 | 50,000.00 | 0.00 | 72,759.54 | 50,000.00 | 22,759.54 | 5,843,522.90 |
| 26 | 2/15/2022 | 5,843,522.90 |  |  |  |  |  | 5,843,522.90 |
| 27 | 3/15/2022 | 5,843,522.90 |  |  |  |  |  | 5,843,522.90 |
| 28 | 4/15/2022 | 5,843,522.90 | 50,000.00 | 0.00 | 73,044.04 | 50,000.00 | 23,044.04 | 5,866,566.94 |
| 29 | 5/15/2022 | 5,866,566.94 |  |  |  |  |  | 5,866,566.94 |
| 30 | 6/15/2022 | 5,866,566.94 |  |  |  |  |  | 5,866,566.94 |
| 31 | 7/15/2022 | 5,866,566.94 | 125,000.00 | 51,667.91 | 73,332.09 | 73,332.09 | 0.00 | 5,814,899.02 |
| 32 | 8/15/2022 | 5,814,899.02 |  |  |  |  |  | 5,814,899.02 |
| 33 | 9/15/2022 | 5,814,899.02 |  |  |  |  |  | 5,814,899.02 |
| 34 | 10/15/2022 | 5,814,899.02 | 125,000.00 | 52,313.76 | 72,686.24 | 72,686.24 | 0.00 | 5,762,585.26 |
| 35 | 11/15/2022 | 5,762,585.26 |  |  |  |  |  | 5,762,585.26 |
| 36 | 12/15/2022 | 5,762,585.26 |  |  |  |  |  | 5,762,585.26 |
| 37 | 1/15/2023 | 5,762,585.26 | 125,000.00 | 52,967.68 | 72,032.32 | 72,032.32 | 0.00 | 5,709,617.58 |
| 38 | 2/15/2023 | 5,709,617.58 |  |  |  |  |  | 5,709,617.58 |
| 39 | 3/15/2023 | 5,709,617.58 |  |  |  |  |  | 5,709,617.58 |
| 40 | 4/15/2023 | 5,709,617.58 | 125,000.00 | 53,629.78 | 71,370.22 | 71,370.22 | 0.00 | 5,655,987.80 |
| 41 | 5/15/2023 | 5,655,987.80 |  |  |  |  |  | 5,655,987.80 |
| 42 | 6/15/2023 | 5,655,987.80 |  |  |  |  |  | 5,655,987.80 |
| 43 | 7/15/2023 | 5,655,987.80 | 125,000.00 | 54,300.15 | 70,699.85 | 70,699.85 | 0.00 | 5,601,687.65 |
| 44 | 8/15/2023 | 5,601,687.65 |  |  |  |  |  | 5,601,687.65 |
| 45 | 9/15/2023 | 5,601,687.65 |  |  |  |  |  | 5,601,687.65 |
| 46 | 10/15/2023 | 5,601,687.65 | 125,000.00 | 54,978.90 | 70,021.10 | 70,021.10 | 0.00 | 5,546,708.74 |
| 47 | 11/15/2023 | 5,546,708.74 |  |  |  |  |  | 5,546,708.74 |
| 48 | 12/15/2023 | 5,546,708.74 |  |  |  |  |  | 5,546,708.74 |
| 49 | 1/15/2024 | 5,546,708.74 | 125,000.00 | 55,666.14 | 69,333.86 | 69,333.86 | 0.00 | 5,491,042.60 |
| 50 | 2/15/2024 | 5,491,042.60 |  |  |  |  |  | 5,491,042.60 |
| 51 | 3/15/2024 | 5,491,042.60 |  |  |  |  |  | 5,491,042.60 |
| 52 | 4/15/2024 | 5,491,042.60 | 125,000.00 | 56,361.97 | 68,638.03 | 68,638.03 | 0.00 | 5,434,680.63 |
| 53 | 5/15/2024 | 5,434,680.63 |  |  |  |  |  | 5,434,680.63 |
| 54 | 6/15/2024 | 5,434,680.63 |  |  |  |  |  | 5,434,680.63 |
| 55 | 7/15/2024 | 5,434,680.63 | 125,000.00 | 57,066.49 | 67,933.51 | 67,933.51 | 0.00 | 5,377,614.14 |
| 56 | 8/15/2024 | 5,377,614.14 |  |  |  |  |  | 5,377,614.14 |
| 57 | 9/15/2024 | 5,377,614.14 |  |  |  |  |  | 5,377,614.14 |
| 58 | 10/15/2024 | 5,377,614.14 | 125,000.00 | 57,779.82 | 67,220.18 | 67,220.18 | 0.00 | 5,319,834.32 |
| 59 | 11/15/2024 | 5,319,834.32 |  |  |  |  |  | 5,319,834.32 |

Notwithstanding the foregoing if Maker has satisfied the Discount Conditions then the final payment due on December 15, 2024 shall be reduced by $1,200,000 and only $4,119,834.32 shall then be due.

A-1

# EXHIBIT B

Guarantee

010-8796-1655/11/AMERICAS

# EXHIBIT C

## GENERAL RELEASE OF ALL CLAIMS

This GENERAL RELEASE OF ALL CLAIMS is made effective this _____ day of _____, 2019.  As a requirement of and in consideration for the willingness on the part of WENDY'S NETHERLANDS B.V. a company organized and existing under the laws of the Netherlands ("**Guarantee Beneficiary**"), to accept a promissory note made by Andrew Levy ("**Maker**")  to be executed contemporaneously herewith in satisfaction of the Maker's obligations under that certain Guarantee Agreement, dated as of October 20, 2015, among Starboard International Holdings B.V., as Guarantor ("**Starboard**"), Maker, as Guarantor, and Wendy's Netherlands B.V., as Guarantee Beneficiary, as amended by the first amendment thereto dated August 2, 2017 and the second amendment thereto dated January 19, 2018 (such Guarantee Agreement, as so amended being  the "**Guarantee**") pursuant to which Maker and Starboard guaranteed the obligations of WBR Franquais Participacoies LTDA, as borrower ("**Borrower**") under (i) the Credit Agreement, dated as of October 20, 2015 ("**2015 Credit Agreement**"), among Payee and Borrower and (ii) the Credit Agreement, dated as of August 2, 2017 (together with the 2015 Credit Agreement being the "**Credit Agreements**")), among Payee and Borrower, as requested by the undersigned, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Maker and Starboard, individually and collectively, hereby unconditionally RELEASE, DISCHARGE and ACQUIT Guarantee Beneficiary, its past, present and future shareholders, officers, directors, employees, successors, affiliates, assigns, agents, and subsidiaries from any and all liabilities, claims, damages, demands, costs, indebtedness, expenses, debts, indemnities, compensation, suits, controversies, actions and causes of action of any kind whatsoever, whether developed or undeveloped, known or unknown, fixed or contingent, regarding or arising out of the Guarantee, any Credit Agreement or any prior, existing or future franchise agreement or any other agreement or document executed by any of the undersigned and Guarantee Beneficiary (or any subsidiary or affiliate of Guarantee Beneficiary), any Wendy's Old Fashioned Hamburgers Restaurant (whether currently or previously owned or operated or to be owned or operated by the undersigned or any of them), the franchise relationship, or any other prior, existing or future business relationship between any of the undersigned and Guarantee Beneficiary (or any subsidiary or affiliate of Guarantee Beneficiary), which the undersigned or any of them individually or collectively has asserted, may have asserted, could have asserted or could assert in the future against Guarantee Beneficiary (or any of the aforementioned related parties) at any time prior to or on the date of this GENERAL RELEASE OF ALL CLAIMS, or thereafter including specifically, without limitation, claims under the Sherman and Clayton Acts and the anti-trust Laws of the United States, and claims arising from contract, written or oral communications, alleged misstatements of fact, indebtedness of any kind or nature, and acts of negligence whether active or passive.  This GENERAL RELEASE OF ALL CLAIMS shall survive the assignment or termination of any of the franchise agreements or other documents entered into by and between Guarantee Beneficiary and any of the undersigned.  This GENERAL RELEASE OF ALL CLAIMS is not intended as a waiver of those rights of the undersigned which cannot be waived under applicable state franchise laws.

1

WITNESS:

**STARBOARD INTERNATIONAL
HOLDINGS B.V.**

_____

By: _____

    Title: _____

_____

_____

Andrew Levy, Individually

- 2 -

EXHIBIT D
Restaurant Reimaging Schedule

010-8796-1655/11/AMERICAS