**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WENDY'S NETHERLANDS B.V.,** | : | |
| | : | **Case No. 2:24-cv-03077** |
| **Plaintiff,** | : | |
| | : | **Judge Michael H. Watson** |
| v. | : | |
| | : | **Magistrate Judge Kimberly Jolson** |
| **ANDREW LEVY,** | : | |
| | : | |
| **Defendant.** | : | |

## MOTION OF PLAINTIFF WENDY'S NETHERLANDS B.V. TO DISMISS THE COUNTERCLAIM OF DEFENDANT ANDREW LEVY

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Wendy's Netherlands B.V. ("Wendy's") hereby moves this Court to dismiss the Counterclaim of Defendant Andrew Levy ("Defendant") for his failure to state a claim upon which relief may be granted. Defendant's fraud counterclaim is barred by the statute of limitations, his unconditional release of Wendy's and other legal impediments that prohibit him from stating a valid claim as a matter of law. The grounds supporting this Motion are set forth in the accompanying Memorandum in Support.

Respectfully submitted,

*/s/ Keith Shumate*

Keith Shumate (0056190)
Brittany Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2834
Fax: +1 614 365 2499
keith.shumate@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff Wendy's Netherlands B.V.*

---

**MEMORANDUM IN SUPPORT**

---

## I. INTRODUCTION

Defendant Andrew Levy, a sophisticated businessman and long-time franchisee of Wendy's restaurants, owes Wendy's more than $5 million arising out of contractual obligations he made with respect to business operations in Brazil. Yet Defendant repeatedly attempts to evade his obligations at every turn. Defendant first alleged duress in an attempt to invalidate a cognovit promissory note executed in 2020 that included terms favorable to him – including a $1.2 million credit of his financial obligations owed to Wendy's – and that had been heavily negotiated by Defendant and his counsel. Defendant had paid on that note for more than four years before he defaulted and alleged duress.[1] Now, in continued efforts to thwart collection of his debts, Defendant alleges fraud in a counterclaim against Wendy's with respect to statements made as early as 2017 or as late as early 2019, when the parties were entering into certain credit agreements and guarantees as part of the Brazil operations. Notably, that alleged fraud is unrelated to Levy's execution of the cognovit note currently before the Court. And yet, according to Defendant, any

---

[1] While the Court granted Defendant's motion to vacate, the Court also acknowledged Defendant's difficulty in actually proving his claim of duress. According to the Court, "Whether Defendant will *prevail* on his duress defense, however, is a different question for later in these proceedings. That said, the Court observes that Defendant has an uphill battle, considering that Defendant, with the benefit of counsel, actively negotiated the Cognovit Note's terms with Wendy's, received more favorable "concessions" from Wendy's upon request, and raises duress (as opposed to mere pressure or forceful encouragement) for the first time now despite paying on the Cognovit Note for four years. Hr'g Tr. 48:3-50:11, 50:19-51:6. As one court faced with a similar situation put it, "[t]his is hardly characteristic of a party whose will is overcome by an improper compulsion." *Morana v. Foley*, 54 N.E.3d 749, 754 (Ohio Ct. App. 2015)."

sums owed by him to Wendy's (whether under the cognovit note or the previous guarantee) should be offset by the damages he alleges he should recover on his fraud claim.[2]

Defendant's latest procedural ruse is meritless, and his Counterclaim should be dismissed as a matter of law. Defendant's attempt to assert a fraud claim for statements allegedly made, at the latest, in late 2018 or early 2019 comes too late. Under New York law, Defendant's fraud claim should have been filed within six years of the fraudulent act or two years from the date such fraudulent act was discovered. While Defendant candidly admits that the alleged fraud occurred, at the latest, in late 2018 or early 2019, Defendant's claim was not filed until August 2025, which was beyond the six-year statute of limitations. Moreover, Defendant knew or should have known of the alleged fraud at least by December 2019 when the Brazil operations ceased or February 2020 when he executed the cognovit note. Because his claim is not timely, Defendant's Counterclaim should be dismissed as a matter of law.

In addition to being untimely, Defendant released all claims or potential claims against Wendy's for anything associated with the guarantee, which would include, among other things, his current Counterclaim for fraud. A valid release constitutes a complete bar to any action on the claim which is the subject of the release. Because the fraud Counterclaim is the subject of Defendant's release, Defendant's claim should be dismissed. In addition, the Court need not entertain Defendant's claim because it is not ripe for judicial review. To bring his claim, Defendant must first establish that the cognovit note and release are no longer binding, valid contracts. As such, Defendant's fraud claim is, at best, premature, and thus, subject to dismissal. Finally, the

---

[2] Interestingly, Defendant appears to concede that he owes Wendy's money. As explained in prior briefing, the cognovit note currently before the Court was an attempt by Wendy's to work with Defendant on a reasonable payment plan for his financial obligations then owed in full under the guarantee agreement. Even if successful on his claim of duress (which he should not be), Defendant has obligations under the guarantee agreement. And, even if successful on his fraud counterclaim and sought "offset" (which he should not be), Defendant still has obligations under the guarantee. Defendants' attempts to further delay and avoid paying his financial obligations should not be allowed.

Counterclaim must be dismissed due to the forum selection clause, which mandates that any suit against Wendy's be filed in New York.

## II. STATEMENT OF FACTS

On or about April 2, 2015, Defendant's company, Starboard International Holdings, B.V. ("Starboard"), entered into an agreement to form WBR Participacoes LTDA ("WBR"). (Counterclaim, Dkt. 47, ¶5; Counterclaim Ex. 1). The other partners in WBR included Infinity Holdings e Participacoes LTDA ("Infinity") and Wendy's. (Counterclaim, ¶7). After the formation of WBR, the three partners discussed developing restaurants in Brazil. (*Id.* at ¶8).

On or about October 20, 2015, Wendy's entered into a Credit Agreement with WBR, whereby Wendy's agreed to lend up to $8,000,000 to WBR. (Counterclaim, ¶10; Counterclaim Ex. 2, § 2.1). In tandem with the Credit Agreement, Wendy's also entered into the "Guarantee Agreement" ("Guarantee") with Starboard and Defendant, whereby Defendant and Starboard jointly and severally guaranteed the obligations of WBR under the Credit Agreement. (Counterclaim, ¶11; Counterclaim Ex. 3, § 2.1).

Thereafter, WBR developed and opened Wendy's restaurants in Brazil, but these restaurants were not profitable. (Counterclaim, ¶13). Despite the financial and operational issues, Wendy's allegedly pressured WBR to open more restaurants in Brazil. (*Id.* at ¶14). On August 2, 2017, Wendy's entered into a second Credit Agreement with WBR, whereby Wendy's agreed to lend up to $4,800,000 to WBR. (*Id.*). Also, in tandem with the second Credit Agreement, the Guarantee was also amended.[3] At the time of the second Credit Agreement, Wendy's allegedly represented "that it would either fund the Brazilian operations or find a buyer so that WBR partners could be made whole for any investments made." (*Id.* at ¶15).

[3] The Guarantee was amended on August 2, 2017, and again on January 19, 2018.

In April and May, 2017, Wendy's and its officers allegedly made representations to Defendant about a plan for the Brazilian restaurants, which purportedly convinced Defendant to fund an additional $1,300,000 to continue the operations in Brazil. (*Id.*) In October, 2017, Defendant allegedly told Wendy's he was prepared to exit Brazil, as a result of the representations made to him. (*Id.* at ¶17). Around that time, Defendant claims that a then member at Wendy's senior management informed Defendant that Wendy's Board had authorized $2,500,000 for WBR but that the money could not be advanced until Infinity's quotas were subscribed and that senior management had authority to spend money without board approval. (*Id.* at ¶¶18, 19). Based on these representations, Defendant allegedly advanced money to fund Infinity's quotas. (*Id.* at ¶20). According to the Counterclaim, "in the last quarter of 2018 and early 2019", Wendy's executives assured Defendant and others from Starboard that they were "confident about Wendy's plan about saving WBR and reiterated the company's support." (*Id.* at ¶22).

On or about December 29, 2019, the decision was made to close the Wendy's restaurants in Brazil. (*Id.* at ¶27). With the closure of the restaurants, Wendy's negotiated with Defendant to sign a cognovit note to pay his financial obligations owed under the Guarantee. (*Id.* at ¶29). On February 23, 2020, Defendant ultimately executed the "Cognovit Promissory Note" ("Cognovit Note"), which replaced his financial obligations under the Guarantee.[4] (*Id.* at ¶33). In addition, as referenced within the Guarantee, Defendant also executed the "Mutual Release of Claims Related to Guarantee" (the "Release"). (*See* Release, attached as Exhibit A). Under the Release, Defendant "fully, unconditionally, and without limitation" released Wendy's from any and all claims and liabilities associated with the Guarantee:

[4] The Cognovit Note provides, in relevant part, that "The principal amount hereunder represents the amount agreed upon between Maker [Starboard and Defendant] and Payee [Wendy's] to be payable by Maker to discharge the obligations under the Guarantee with respect to the Credit Agreements." (Counterclaim Ex. 6, p. 2). It also included a $1.2 million credit for Defendant's financial obligations immediately due under the Guarantee.

> Release of Guarantee Beneficiary. As requested by the undersigned, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Maker [Defendant] and Starboard, individually and collectively, hereby fully, unconditionally, and without limitation RELEASE, DISCHARGE and ACQUIT Guarantee Beneficiary [Wendy's], its past, present and future shareholders, officers, directors, employees, successors, affiliates, assigns, agents, and subsidiaries **from any and all liabilities, claims, damages, demands, costs, indebtedness, expenses, debts, indemnities, compensation, suits, controversies, actions and causes of action of any kind whatsoever, whether developed or undeveloped, known or unknown, fixed or contingent, regarding or arising out of the Guarantee, from the beginning of time to the present.**

(Release, p. 1) (emphasis added).

## II. LAW AND ARGUMENT

Defendant's allegations against Wendy's fail under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] motion for dismissal pursuant to Rule 12(b)(6) will be granted if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *Riverview Health Institute LLC v. Medical Mutual of Ohio,* 601 F.3d 505, 512 (6th Cir. 2010). Courts will regularly grant a motion to dismiss upon showing that a claim is barred by a release of claims and statute of limitations. *See id; see also Delaware Cnty. v. Leatherstocking Healthcare, LLC*, 110 A.D.3d 1211, 1214, 973 N.Y.S.2d 817, 820 (N.Y. Ct. App. 2013).

Further, Rule 12(b)(1) permits the court to dismiss a case for lack of subject matter jurisdiction, and "[t]he doctrine of ripeness is a jurisdictional limitation on federal courts." *Paugstat v. Pepperidge Farm, Inc.,* No. 1:20-CV-00508, 2022 WL 195078, at *2 (S.D. Ohio Jan.

21, 2022). A facial attack under Rule 12(b)(1) tests the sufficiency of the pleadings, and so the court applies the Rule 12(b)(6) standard. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007); *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016).

**A. The Statute of Limitations Bars Defendant's Counterclaim for Fraud**.

Defendant has alleged that Wendy's committed fraud by making certain representations, "[o]n or about the end of 2018 and the beginning of 2019," that Wendy's knew were false or should have known were false. (Counterclaim, ¶35).[5] Even taking Defendant's allegations as true, Defendant's fraud claim is subject to dismissal as being untimely.

Both parties agree that New York law should be applied. (*Id.* at ¶12; *see also* Counterclaim Ex. 3).[6] Under New York law, "[t]he Statute of Limitations for a discovery proceeding in which fraud is alleged is six years from the commission of the wrong or two years from the discovery of the fraud or the date on which it could reasonably have been discovered, whichever is later." *Matter of Est. of Kraus*, 208 A.D.2d 728, 729, 617 N.Y.S.2d 817, 819 (1994); *see also Delaware Cnty.*, 110 A.D.3d at 1214 (N.Y. Ct. App. 2013) (citing *McCormick v. Favreau*, 82 A.D. 1537, 1539 (N.Y. Ct. App. 2011).

In this case, it is clear that these alleged misrepresentations occurred more than six years before Defendant filed his Counterclaim for fraud. By Defendant's own admission, the alleged misrepresentations were made, at the latest, "on or about the end of 2018 and the beginning of 2019." (Counterclaim, ¶35). Indeed, as outlined in Defendant's facts, some of the alleged

---

[5] The alleged false statements were: a) Wendy's saw the Brazilian deal as salvageable and was prepared to go forward investing; b) Wendy's would either fund the Brazilian operations or find a buyer so that WBR partners could be made whole for their investments; c) Wendy's would partner "shoulder to shoulder" with Levy to fund the operations of the Brazilian stores; d) Wendy's Board of Directors had authorized an additional $2,500,000.00 in funding; e) Wendy's had authority to spend funds without Board of Directors' approval; f) Levy should focus on his U.S. restaurants and Wendy's would manage and control the issues in Brazil; and g) Wendy's had a plan to address the difficulties with the Brazilian restaurants.

[6] *See* Guarantee (Counterclaim Ex. 3), § 5.8 ("Governing Law. This agreement and the rights and obligations of the parties shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York.").

misrepresentations were made even earlier. (*See id.* at ¶¶ 16–21). Nevertheless, even if all of the alleged misrepresentations were made in the beginning of 2019, Defendant did not file his Counterclaim until August 25, 2025—well after the six-year mark. *See Delaware Cnty.*, 110 A.D.3d at 1214 (finding fraud claim to be time-barred by the six-year statute of limitations); *Matter of Est. of Kraus*, 208 A.D.2d at 729 (time-barring fraud claim as it was filed more than six years after the execution of the contract at issue).

In addition, the two-year discovery rule does not save Defendant's Counterclaim. "The two-year period does not commence from the date that plaintiff has positive knowledge of the fraud, but from the date that plaintiff becomes aware of enough operative facts so that, with reasonable diligence, [they] could have discovered the fraud." *Blizniak v. Fences by Precision, LLC*, 229 A.D.3d 1140, 1141–42, 214 N.Y.S.3d 855, 857 (N.Y. Ct. App. 2024) (citing *Stride Rite Children's Group, Inc. v. Siegel*, 269 A.D.2d 875, 876, 703 N.Y.S.2d 642 (N.Y. Ct. App. 2000)). Here, there were enough facts to give Defendant notice of his alleged fraud claim. As Defendant alleged in his Counterclaim, "Wendy's did not make good on its promises to fund WBR or find a buyer, and on or about December 29, 2019, Wendy's ordered WBR to cease operating Wendy's restaurants." (*See* Counterclaim, ¶27). Defendant surely had sufficient operative facts at the point of the close of the Brazil restaurants that Wendy's statements regarding the financial and operational status of the Brazilian deal were, according to Defendant, "false". At the very least, Defendant was well aware that the statements were allegedly false, by the end of February 2020, when Defendant signed the Cognovit Note. (*See id.* at ¶33). Under the two-year discovery rule, Defendant was required to file his fraud claim, at latest, by February 2022. *See Blizniak*, 229 A.D.3d at 1142 (dismissing a fraud claim as "[t]he record established that plaintiff had knowledge

of facts from which the fraud could reasonably be inferred" as early as February 2020 and Plaintiff's did not file until nearly three months after the two-year limitation had ran).

**B. The Fraud Claim is Barred by Defendant's Release of Wendy's.**

The courts in New York and Ohio consistently have ruled that a valid release constitutes a complete bar to a claim that is the subject of the release. *See JM UC Grp., LLC v. Precious Care Mgmt., LLC*, 221 A.D.3d 877, 878, 201 N.Y.S.3d 98, 100 (2023) (quoting *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.,* 17 N.Y.3d 269, 276, 929 N.Y.S.2d 3, 952 N.E.2d 995 (2011)); *see also Oro BRC4, LLC v. Silvertree Apartments, Inc.,* No. 2:19-CV-04907, 2021 WL 184686, at *5 (S.D. Ohio Jan. 19, 2021). A release may encompass, and thus bar from any future recovery, many claims, including claims of fraud. *See JM UC Grp., LLC*, 221 A.D.3d at 878; s*ee also Oro BRC4, LLC*, 2021 WL 184686, at *5 (dismissing claim for fraud as it was barred by a release); *Superior Care Pharmacy Inc. v. Med. Shoppe Int'l, Inc.*, No. 2:10-CV-207, 2011 WL 597065, at *12–14 (S.D. Ohio Feb. 10, 2011) ("Where the complaint adequately states a claim, but also contains matters of avoidance that effectively vitiate the pleader's ability to recover on the claim, 'the complaint is said to have a built-in defense and is essentially self-defeating.'").

As noted above, Defendant executed the Release, on or about February 23, 2020. In the Release, Defendant "fully, unconditionally, and without limitation RELEASE[D], DISCHARGE[D] AND AQUIT[TED] Guarantee Beneficiary [Wendy's]" from any and all liabilities arising out of the Guarantee, from the beginning of time to present. (*See* Release, p. 1). The broad language of the Release would include the claim for fraud that Defendant is seeking to pursue in this litigation. *See JM UC Grp., LLC*, 221 A.D.3d at 878. The Counterclaim is directly related to Defendant's alleged financial liabilities under the Guarantee, as amended twice, that were purportedly caused by the alleged misrepresentations by Wendy's. (*See* Counterclaim, ¶¶35–39). Defendant's Counterclaim for fraud goes to the precise subject of the Release – "any and all

liabilities arising out of the Guarantee" – and thus is completely barred. *See Bd. of Managers of 325 Fifth Ave. Condo. v. Cont'l Residential Holdings LLC*, 149 A.D.3d 472, 474, 52 N.Y.S.3d 44, 46 (2017) (dismissing fraud claim due to a release); *Sodhi v. IAC/InterActive Corp*., 201 A.D.3d 451, 156 N.Y.S.3d 738 (2022) (same).

**C. Defendant's Fraud Claim is Not Ripe for Judicial Review**.

"'[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Cooley v. Granholm,* 291 F.3d 880, 883–84 (6th Cir.2002) (quoting *Texas v. United States,* 523 U.S. 296, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998)). Where an action depends upon events that have yet to occur, it lacks the requisite immediacy to invoke federal jurisdiction. *Toledo Newspaper Unions - Blade Pension Tr. Fund v. Fed. Ins. Co.*, No. 3:07 CV 2590, 2008 WL 11433474, at *3 (N.D. Ohio Feb. 28, 2008), *aff'd sub nom. Toledo Newspaper Unions-Blade Pension Tr. Fund v. Fed. Ins. Co.,* 318 F. App'x 347 (6th Cir. 2009). In circumstances where the Court lacks jurisdiction, the Court must dismiss the claim. *See id.*

In this case, Defendant's Counterclaim for fraud directly relates to the Guarantee. Pursuant to the language in the Cognovit Note, the Note replaced the Guarantee regarding Defendant's obligation to pay the amounts owed to Wendy's. (*See* Counterclaim Ex. 6, p. 2). Moreover, the Release discharged all claims under the Guarantee, including Defendant's fraud claim. (*See* Release, p. 1). To bring Defendant's fraud claim, he must first establish that both the Cognovit Note and Release are no longer binding, valid contracts. This Court has yet to determine that the Cognovit Note is invalid (and there is no reason for the Court to do so). Nor has Defendant asserted, much less proven, any claims of invalidity regarding the Release.

Absent a finding that the Cognovit Note and Release are invalid, Defendant's Counterclaim for fraud is not ripe for adjudication by this Court—the events have not yet occurred to invoke this Court's jurisdiction. *See Walgreen Co. v. Hummer*, No. 1:10CV2902, 2012 WL 1658680, at *3–5 (N.D. Ohio May 11, 2012) ("In reaching this conclusion, the Court relies on the fact that Hummer acknowledges he released the claims he now seeks to assert against Plaintiff when he entered into the Release Agreement."); *see also Paugstat,* 2022 WL 195078, at *2 (finding that the "counterclaim is contingent on a future event, *i.e.*, Paugstat claims. Paugstat has not yet prevailed, and he might not do so."). Thus, it is far from certain, and no more than speculative, that Defendant will succeed on his claim for duress in relation to the Cognovit Note. Defendant therefore cannot pile on a claim for fraud in relation to an entirely different agreement not before the Court. Defendant's Counterclaim should be dismissed given the lack of ripeness.

**D. Defendant's Counterclaim Should be Dismissed due to the Forum Selection Clause in the Guarantee.**

As set forth in Defendant's Counterclaim, "[t]he Guarantee and its Amendments include clauses electing New York as the governing law." (Counterclaim, ¶12). Moreover, the forum selection clause in the Guarantee provides that "any legal action or proceeding against Beneficiary [Wendy's]…shall be exclusively brought in or removed to…the Southern District of New York." (Counterclaim Ex. 3, § 5.9). Given Defendant's Counterclaim arises out of the Guarantee (and not the Cognovit Note properly before this Court), Defendant may only bring that claim against Wendy's in the Southern District of New York. *See W.G. Tomko, Inc. v. Franklin Cnty. Bd. of Comm'rs*, No. 2:13-CV-0055, 2014 WL 347037, at *5 (S.D. Ohio Jan. 30, 2014) ("Accordingly, finding that the forum selection clause contained in the construction Contract…is valid and that Defendant did not waive the defense, this action must be dismissed").

The Sixth Circuit has implicitly endorsed Rule 12(b)(6) as a proper vehicle upon which to dismiss a case where a defendant seeks to enforce a forum selection clause. *See Langley v. Prudential Mortg. Capital Co., LLC,* 546 F.3d 365, 369 (6th Cir. 2008). This Court consistently has dismissed claims where a forum selection clause requires a venue outside of the Southern District of Ohio. *See Leibowitz v. Drake*, No. C-1-07-731, 2008 WL 3874641, at *1 (S.D. Ohio Aug. 13, 2008); *see also C. Thorrez Indus., Inc. v. LuK Transmissions Sys.,* LLC, No. 5:09-CV-01986, 2010 WL 1434326, at *3 (N.D. Ohio Apr. 8, 2010); *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 14 (1972) ("Thus, in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside."). This Court is not the proper venue, and the Counterclaim should be dismissed.

## III. CONCLUSION

For the reasons set forth above, Wendy's respectfully requests that this Court dismiss Defendant's Counterclaim against Wendy's.

Dated: September 15, 2025

Respectfully submitted,

*/s/ Keith Shumate*________

Keith Shumate (0056190)
Brittany Silverman (0102263)
SQUIRE PATTON (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2834
Fax: +1 614 365 2499

keith.shumate@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff Wendy's Netherlands B.V.*

**CERTIFICATE OF SERVICE**

On September 15, 2025, this document was filed electronically with the Clerk of the United States Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties.

*/s/ Keith Shumate*
Keith Shumate

*An Attorney for Plaintiff Wendy's Netherlands B.V.*