IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WENDY'S NETHERLANDS B.V.,

Plaintiff,

v.

ANDREW LEVY,

Defendant.

Civil Action No. 2:24-cv-03077

RESPONSE TO MOTION OF PLAINTIFF WENDY'S NETHERLANDS B.V. TO
DISMISS THE COUNTERCLAIM OF DEFENDANT ANDREW LEVY

The defendant/counterclaim plaintiff, Andrew Levy ("Levy"), responds to the Motion to Dismiss filed by the plaintiff/counterclaim defendant, Wendy's Netherlands B.V. ("Wendy's"). In support, Levy states the following:

INTRODUCTION

Wendy's motion does not erase Levy's counterclaim. It banks on affirmative defenses, a ripeness objection, and reversing its own Ohio forum choice over New York. None carries the day. The defenses hinge on facts that require a record, the ripeness challenge ignores completed injury, and the venue gambit collides with Wendy's Ohio filing and this Court's venue ruling.

Timeliness comes first. Under New York's rule, the clock runs from the later of six years after the wrong or two years after discovery. Levy's injury crystallized with Wendy's ordering Brazil to close in December 2019, so the claim remains timely. Any dispute over accrual or discovery turns on facts, not pleadings. Ohio's choice-of-law analysis then points to Brazil. Reliance, performance, injury, and the parties' relationship center the dispute there. Brazilian law recognizes performance-stage fraud and grants a ten-year prescriptive period, which Levy meets.

The release also does not bar the claim. Wendy's relies on a document outside the pleadings

and asks the Court to resolve validity and duress without a record. Rule 12 does not permit that. Beyond reaching outside the pleadings' four corners, New York law does not allow a release to wipe out the fraud that lies beyond its text or excuse the coercion used to procure it. Brazilian law independently blocks blanket waivers and coerced consent through its good-faith mandate and determinability requirement. And Ohio's plain-text rule confirms the release speaks to Guarantee matters, not Levy's independent fraud. But the identical economic pressure that tainted the Cognovit Note also tars the release and defeats enforcement now.

Ripeness is straightforward. Levy had pleaded Wendy's finished its misconduct and his current loss creates a live controversy. The pleadings provide a workable record. Withholding review would multiply proceedings and risk inconsistent outcomes.

Venue remains in Ohio; Wendy's sued in Ohio, opposed transfer, and won the venue ruling that keeps this case here. The Court read the Guarantee's forum language as permissive and found the section 1404 factors favor Ohio. Wendy's waiver and Wendy's earlier position trigger judicial estoppel. The case belongs in this Court and should move forward to the merits.

## FACTUAL BACKGROUND

This dispute grows out of the parties' failed venture to launch Wendy's restaurants in Brazil. In April 2015, Wendy's joined with Infinity Holding e Participações and Starboard Holdings to form WBR Participações and to operate the brand in Brazil. Counterclaim ¶¶ 5, 7 [D.E. 47]. Wendy's drove a new format that blended quick service with table service. Counterclaim ¶ 9 [D.E. 47]. The format strained operations and finances, yet Wendy's pressed its partners to open more stores. Counterclaim ¶ 14 [D.E. 47].

Throughout that period, Wendy's told Levy, Starboard's president and principal, that it would continue funding the Brazilian operations or find a buyer. Counterclaim ¶ 15 [D.E. 47]. Relying on those assurances, Levy invested additional capital in WBR. Counterclaim ¶ 20 [D.E.

2

47]. After Levy committed funds, Wendy's reversed course and withheld further investment. Counterclaim ¶ 24 [D.E. 47].

On December 29, 2019, Wendy's directed WBR to shut down Brazil operations. Counterclaim ¶ 27 [D.E. 47]. With the closures underway, Wendy's pushed Levy to convert a prior personal guarantee ("Guarantee") into a cognovit instrument and warned that refusal would trigger termination of Starboard's franchise agreements. Counterclaim ¶¶ 29, 31 [D.E. 47]. Under that pressure, Levy signed the Cognovit Note on February 23, 2020. Counterclaim ¶ 33 [D.E. 47].

Wendy's then pursued the note in Ohio. It filed a complaint for confession of judgment on May 1, 2024, and obtained a cognovit judgment on May 3, 2024. Counterclaim ¶¶ 34–35 [D.E. 47]. Levy removed the action on June 3, 2024. Counterclaim ¶ 36 [D.E. 47]. That same day, he moved to change venue based on the Guarantee's forum language pointing to the Southern District of New York. See [D.E. 3]. Wendy's opposed transfer, and the Court denied the motion, keeping the case in Ohio. See [D.E. 13]; [D.E. 21]. In doing so, the Court recognized the Ohio center of gravity. [D.E. 21]. The Note's execution and notarization occurred in Franklin County. [D.E. 5, Exhibit 1]. The cognovit judgment issued there. [D.E. 51]. Wendy's headquarters sit in Ohio. [D.E.21]. The Court applied Ohio law to the forum analysis and read the Guarantee's forum clause as permissive, while the Note itself contemplated Franklin County litigation. [D.E. 21].

Levy answered, asserted defenses, and filed his counterclaim on August 28, 2025. [D.E. 51]. Wendy's moved to dismiss on September 15, 2025, and attached a signed waiver that appears nowhere in the Cognovit Complaint or in Levy's pleadings. [D.E. 54]. Levy's counterclaim alleges fraud tied to Wendy's Brazil representations and performance, not enforcement of the Guarantee. [D.E. 51]. The counterclaim's timeline tracks the December 2019 closures and the February 2020 cognovit execution, which define the injury and the coercion at the heart of this dispute. [D.E. 51].

## ANALYSIS

Wendy's asks the Court to do what the rules do not countenance at the threshold: strip jurisdiction or declare that Levy's well-pleaded counterclaim fails as a matter of law. The allegations, taken as true and with all reasonable inferences, establish the Court's authority and state a claim that fits within settled doctrine. The counterclaim clears Rule 12. Levy addresses each standard below and shows why this dispute should proceed on the merits.

## I. Rule 12 Can't Carry Wendy's Burden Here – the Case Should Proceed.

Rule 12(b)(6) guards a narrow gate. Courts accept well-pleaded facts as true, draws reasonable inferences for the pleader, and asks whether the claim states facial plausibility. *See Sherfel v. Gassman*, 748 F. Supp. 2d 776, 783–84 (S.D. Ohio 2010). Notice pleading suffices. The Court dismisses only when no consistent set of facts could yield relief.

Dismissal on an affirmative defense stands as the rare exception. Statute-of-limitations and waiver defenses are classic affirmatives that courts resolve on a developed record, not on the pleadings. *See Buck v. City of Highland Park*, 733 F. App'x 248, 252 (6th Cir. 2018); *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 697 (S.D.N.Y. 2002); *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 400 (S.D.N.Y. 2023). Unless the complaint itself conclusively establishes the defense, Rule 12 is not the vehicle. *See Johnson v. Wilkinson*, 84 Ohio App. 3d 509, 516 (1992); Doe 1, 671 F. Supp. 3d at 400. Accrual, discovery, tolling, estoppel, and choice-of-law raise fact-intensive disputes that courts do not resolve at this stage. *See In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 787 (N.D. Ohio 2020); *Kinder v. MAC Mfg. Inc.*, 318 F. Supp. 3d 1041, 1048 (N.D. Ohio 2018); *Boyer v. Clinton Cnty. Sheriff's Office*, 645 F. Supp. 3d 815, 825 (S.D. Ohio 2022); *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 510 (S.D. Ohio 2012).

### A. The Counterclaim Is Timely Under Any Clock: New York or Brazil.

Wendy's stakes its motion on limitations law. The argument fails for two independent reasons. First, New York's accrual and discovery rules render the counterclaim timely. Second, Brazil prescribes even a longer period, triggered by Ohio's choice-of-law rules, which also makes the claim timely. Either route defeats dismissal.

### 1.     New York's Dual Timers Both Favor Levy.

New York supplies the later of six years from the fraud or two years from discovery through reasonable diligence. *See St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 186 (E.D.N.Y. 2010). A fraud claim accrues only when a cognizable loss occurs. *See In re Delphi Corp.*, 2008 WL 3486615, at *26 (Bankr. S.D.N.Y. Aug. 11, 2008). Levy's loss arose no earlier than December 2019, when Wendy's shuttered its Brazilian restaurants and extinguished the value Wendy's had said ongoing funding and a sale process would preserve. On those facts, the six-year period runs to December 2025. That date has not come and so the counterclaim is timely.

At minimum, accrual and discovery present factual disputes. Timing of injury, Levy's knowledge, and what a diligent investor would have uncovered require evidence, not pleadings. *See In re Kingdom of Belgium Fed. Pub. Serv. Fin. Pension Plan Litig.*, 680 F. Supp. 3d 460, 480 (S.D.N.Y. 2023). Rule 12(b)(6) is not the proper vehicle for that contest.

### 2.     Choice-of-Law Points to Brazil, and Brazil Gives Levy Ten Years.

This diversity case invokes Ohio's choice-of-law rules, which adopt the Restatement (Second) of Conflict of Laws and ask which jurisdiction bears the most significant relationship to the events and the parties. *See Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009); *Abington Emerson Capital, LLC v. Adkins*, 2021 WL 611998, at *24–27 (S.D. Ohio Jan. 22, 2021). At the pleading stage, with contested contacts and a thin record, courts exercise prudence and often defer a definitive choice-of-law ruling. *See Deli v. State Auto Prop. & Cas. Ins. Co.*, 2022 WL 4537980,

at \*4 (S.D. Ohio Sept. 28, 2022); *Lunkenheimer Co. v. Pentair Flow Control Pac. PTY Ltd.*, 2014 WL 4450034, at \*4 (S.D. Ohio Sept. 10, 2014). That prudence alone defeats dismissal on a limitations argument. The Court cannot declare a claim time-barred before deciding which clock governs.

Even so, the Restatement's contacts point to Brazil. Section 148(2)'s fraud factors lead the way. Levy relied in Brazil, the joint venture's headquarters and operational center, and he received Wendy's representations there during governance and financing decisions. *See* Counterclaim ¶¶ 5, 20, 27 (D.E. 47). Wendy's global footprint leaves the statements' point of origin presently neutral. The parties' commercial anchor remains unmistakable: WBR, a Brazilian sociedade anônima, incorporated and headquartered in Brazil, sits at the controversy's core. *See id.* ¶¶ 5, 7, 9. The transaction involved no tangible chattel, so the "location-of-thing" factor adds little. And the induced performance, Levy funding and operating the venture, occurred in Brazil. Four contacts favor Brazil; two remain neutral. Section 148 thus tilts toward Brazilian law.

Section 145(2)'s general tort factors also align. Levy sustained injury in Brazil, where he implemented funding decisions and lost value. The locus of injurious conduct remains neutral on this record. The parties' business ties, viewed through the enterprise at the heart of the dispute, point to Brazil. So does the relationship's center: the parties formed, organized, and performed the joint venture in Brazil. Three of four factors favor Brazil.

Section 6's policy considerations confirm that result. Interstate and international comity, and the rule of predictability, favor the law with the densest contacts, Brazil. Ohio's anti-fraud policy aligns with Brazil's objective duty of good faith in contractual relations. Civil Code Article 422 imposes probity, honesty, and loyalty during formation and performance; fraudulent performance triggers liability, and Article 205 provides a ten-year prescriptive period. Brazilian

Civil Code (Cód. Civ.), Law 10.406, of Jan. 10, 2002, art. 205 and 422 (Braz.), available at https://www.planalto.gov.br/ccivil_03/LEIS/2002/L10406compilada.htm. *See also* Exhibit B to Exhibit 5- Gabrielle Sliwka Affidavit  Certifying Translation of Article 205 of the Brazilian Civil Code and Exhibit B to Exhibit 6- Gabrielle Sliwka Affidavit  Certifying Translation of Article 422 of the Brazilian Civil Code. These substantive commitments mirror American commercial norms, truthful dealings and accountability, and federal courts routinely apply foreign rules in diversity cases.

The substantive consequences follow. Brazilian law recognizes Levy's theory, fraudulent breach of the duty of good faith during performance, and grants ten years to sue. *See* Cód. Civ.arts. 422, 205. *See also* Exhibit B to Exhibits 5 and 6. The counterclaim sits well within that period. And because a definitive choice-of-law ruling would require facts about the statements' origination, the parties' course of dealing, and the injury's locus, the Court should defer that decision. Either way, limitations cannot justify dismissal: New York renders the claim timely, and Brazil does so emphatically.

### B.        Wendy's May Not Use a Coerced, Overbroad Release as a Safe Harbor.

The release defense fails on five fronts: (i) it depends on material outside the pleadings, (ii) Wendy's extracted it through economic duress, (iii) New York law does not enforce the release, (iii) Brazilian law also will not enforce an overbroad, indeterminate waiver, and (iv) Ohio law does not extend this release to Levy's independent fraud claims.

#### 1.        Beyond the Four Corners: Wendy's Release Is Out of Bounds.

Wendy's moves on a "mutual release" that neither pleading attaches nor references. *See* Plaintiff's Complaint; Levy's Amended Answer, Affirmative Defenses, and Counterclaim. A Ruling under 12(b)(6) reaches only the complaint, its exhibits, and documents integral to and

7

expressly referenced in the pleadings. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). If a movant asks the Court to consider matters outside the pleadings, Rule 12(d) requires conversion to summary judgment. *Hall v. Smith*, 2022 WL 969557, at *2 (S.D. Ohio Mar. 31, 2022).

Wendy's relies on a document outside the four corners. The motion therefore invites conversion, which does not fit here because material disputes surround validity, enforceability, and duress. Those issues demand discovery and testimony, not a pleadings ruling. The Court should decline to consider the exhibit and deny dismissal.

### 2.     The Release Does Not Reach Levy's Fraud Counterclaim or Purge the Taint Caused by Wendy's Economic Duress.

A court enforces a release as written, not as rewritten. *See Webster v. Forest Green Apt. Corp.*, 174 A.D.3d 668, 669 (N.Y. App. Div. 2019); *Schmidt v. Magnetic Head Corp.*, 97 A.D.2d 151, 157 (2d Dep't 1983). Releases bind only when signed knowingly and voluntarily, free of fraud, duress, or undue influence. *See Jose v. Stoler of Westbury*, No. 19-CV-7197, 2021 WL 174026, at *3 (E.D.N.Y. Jan. 19, 2021).

Wendy's proffers a sweeping text:

> individually and collectively, hereby fully, unconditionally, and without limitations RELEASES, DISCHARGES and ACQUITS Guarantee Beneficiary, its past, present and future shareholders, officers, directors, employees, successors, affiliates, assigns, agents, and subsidiaries from any and all liabilities, claims, damages, demands, costs, indebtedness, expenses, debts, indemnities, compensation, suits, controversies, actions, and causes of action of any kind whatsoever, whether developed or undeveloped, known or unknown, fixed or contingent, regarding or arising out of the Guarantee, from the beginning of time to the present.

*See* Motion Ex. A. The Mutual Release reaches only claims arising from the Guarantee, so it does not reach Levy's counterclaim. The counterclaim raises Wendy's deceit: fraudulent inducements and performance that prompted new investment in the Brazilian venture. Counterclaim ¶ 20 [D.E. 47]. These allegations do not "regard" or "arise out of" the Guarantee. Instead, they stem from

independent fraudulent acts that stand apart from it. Read by its plain terms, the release does not reach the counterclaim.

Levy has also alleged economic duress. Wendy's threatened to terminate all franchise agreements unless he executed the release in tandem with the Cognovit Note. Counterclaim at ¶¶ 29, 31, 33 [D.E. 47]. Section I.B.5 below details the coercion and its consequences.

Text and process both matter here. The Mutual Release neither reaches the counterclaim nor reflects a voluntary assent. It therefore cannot support the motion to dismiss.

### 3. Brazil's Good-Faith Mandate and Determinability Rule Defeat Wendy's Release.

Brazil's Civil Code imposes strict validity requirements for waivers and settlements. *See See* Cód. Civ.arts. 104, 138-155, 166, 171, and 422. *See also* Exhibit B to Exhibit 1- Gabrielle Sliwka Affidavit Certifying Translation of Article 104 of the Brazilian Civil Code; Exhibit B to Exhibit 2- Gabrielle Sliwka Affidavit Certifying Translation of Articles 138 through 155 of the Brazilian Civil Code; Exhibit B to Exhibit 3- Gabrielle Sliwka Affidavit Certifying Translation of Article 166 of the Brazilian Civil Code; Exhibit B to Exhibit 4- Gabrielle Sliwka Affidavit Certifying Translation of Article 171 of the Brazilian Civil Code and Exhibit B to Exhibit 6- Gabrielle Sliwka Affidavit Certifying Translation of Article 422 of the Brazilian Civil Code.

Article 104 demands a lawful, possible, and determinate object; Article 166 nullifies transactions that miss those marks. *See* Exhibit B to Exhibits 1 and 3. General waivers must identify their subject with determinability; Brazilian courts refuse blanket renunciations that purport to extinguish unknown or non-existent claims. Articles 138–155 and 171 further render legal acts voidable for fraud, error, or coercion; Article 151 defines coercion as consent extracted under unjust fear that overbears free will. *See* Exhibit B to Exhibits 2 and 4. Article 422 codifies the objective duty of good faith, probity, honesty, loyalty across formation and performance. *See*

9

Exhibit B to Exhibit 6.

That text quoted in Section I.B.2, *supra*, fails Article 104's determinability requirement and collides with public order by purporting to immunize unlawful conduct wholesale. Brazilian law does not countenance a limitless shield that sweeps in unknown or non-existent claims.

Levy has also alleged coercion at the Cognovit Note's signing: Wendy's ultimatum, "execute the settlement package, including the Note and the waiver, or lose all franchise restaurants." That threat overbore his will and left no meaningful alternative. Those allegations, if proven, vitiate consent and render the waiver voidable under Articles 138–155 and 171. *See* Exhibits 2 and 4. On either ground, indeterminability or coercion, Brazilian law blocks enforcement.

> **4.     Ohio's Plain-Text Rule Shows The Release Doesn't Reach Levy's Independent Fraud.**

Ohio treats a release as a contract that bars only the claims its text reaches. *Williams v. Wellston City Sch. Dist.*, 2010 WL 2165159, at *4 (S.D. Ohio May 25, 2010); *Vetor v. Cliffs Nat. Res., Inc.*, 2016-Ohio-5846, ¶ 13 (8th Dist.). Courts enforce clear language as written and refuse to rewrite terms.

The proffered text releases claims "regarding or arising out of the Guarantee." *See* Motion Ex. A. Levy's counterclaim targets Wendy's separate fraudulent inducements and performance-stage misrepresentations that drove new investments in the Brazilian venture. Those claims neither "regard" nor "arise out of" the Guarantee; they arise from Wendy's fraud separate from the Guarantee. The release's language does not reach them.

> **5.     Cognovit Note Threats Tar the Release with the Same Taint.**

Economic duress defeats enforcement where a party involuntarily accepts terms, lacks a reasonable alternative, and faces the other party's coercive acts. *Wendy's Netherlands B.V. v. Levy*,

2025 WL 1836326, at *8 (S.D. Ohio Jan. 8, 2025). Levy pleads that Wendy's tied the release to the same "settlement package" as the Cognovit Note, conditioned both on the existential threat to his restaurants, and offered no separate negotiation or consideration. Counterclaim at ¶¶ 29, 31, 33 [D.E. 47]. Those allegations plausibly allege a unified coercive course that taints both instruments.

Because these duress issues turn on voluntariness, alternatives, consideration, and credibility, they require discovery and factfinding, not a Rule 12 disposition. The Court should deny dismissal and permit a record that tests Wendy's threats and Levy's consent.

## II.     Levy's Fraud Claim Is Ripe Now.

Wendy's asks for dismissal under the ripeness doctrine. Mot. 10–11. Rule 12(b)(1) authorizes dismissal only when the Court lacks subject-matter jurisdiction. *See In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 784 (N.D. Ohio 2020). Either route makes ripeness the gatekeeper.

Ripeness safeguards Article III's limits and practical judging. It steers courts away from abstractions and toward concrete disputes. A claim ripens when it is fit for decision and when delay would impose hardship. *Dayton Area Chamber of Commerce v. Becerra*, 696 F. Supp. 3d 440, 453 (S.D. Ohio 2023); *Taglieri v. Monasky*, 2015 WL 13794437, at *6 (N.D. Ohio Nov. 13, 2015). Sixth Circuit guideposts frame the inquiry: (1) the alleged harm's likelihood, (2) the record's adequacy, and (3) the hardship from withholding review. *Dayton Area Chamber*, 696 F. Supp. 3d at 453. A dispute ripens when actual events—not contingencies—drive the controversy. *New Hts. Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455, 460 (6th Cir. 2024).

Each guide favors jurisdiction. First, Levy pleads completed injury. He relied on Wendy's funding representations about WBR and, because of that fraud, invested more capital in the Brazilian venture. That reliance and that loss have already occurred. No future ruling or event

conditions liability. Second, Levy's pleadings supply concrete representations, reliance, and loss. Those allegations frame discovery and permit a plausibility test now. Third, withholding review would splinter proceedings, swell costs, and risk inconsistent outcomes as different courts slice the same course of conduct.

Wendy's ripeness theory hinges on a false premise that Levy's fraud claim turns on the Cognovit Complaint or falls under the Guarantee or a mutual release. It does not. As Section I.B.4 shows, Levy's fraud counterclaim stands on its own with distinct misrepresentations, separate injury, and present damages. Article III permits adjudication now. The Court should reject Wendy's ripeness challenge.

## III.    Hold Wendy's to Its Ohio Forum Choice.

Levy stands on the forum this Court already chose. [D.E. 21]. Wendy's sued here, and the Court's venue order fixes Ohio as the proper forum. [D.E. 21]. The Court already decided that Ohio law governs the forum analysis. [D.E. 21]. The record shows the note was signed and the cognovit judgment entered in Franklin County, Ohio. [D.E. 21]. Wendy's headquarters sit here. [D.E. 21]. The Guarantee's forum language operates permissively and the note requires Ohio. [D.E. 21]. On that record, Section 1404 convenience and justice factors favored Ohio. [D.E. 21]. Levy's counterclaim now proceeds in the forum Wendy's selected and defended.

Two doctrines bar Wendy's pivot. Waiver applies when a party knows a forum clause and litigates elsewhere. *See Bldg. Servs. Inst. v. Kirk Williams Servs. Co.*, 2008-Ohio-1284, ¶¶10–12. Wendy's Ohio filing, Ohio opposition to transfer, and Ohio victory satisfy that rule. Judicial estoppel also applies. A litigant cannot win with one forum position and then assert the opposite after the court adopts the first. *See Javidan-Nejad v. Navadeh*, 2013-Ohio-931, ¶11. Wendy's told

12

this Court that Ohio was proper and secured an order keeping the case here despite the motion to transfer the case. Wendy's cannot now invoke New York to eject Levy's claim.

The counterclaim proceeds as a permissive under Rule 13(b). The Note suit and Levy's fraud allegations arise from the same business relationship and overlapping facts. *See Cleveland Tr. Co. v. Firestone.*, 1980 WL 354378, *12 (8th Dist. Jan. 31, 1980); and *CSX Trans., Inc. v. Columbus Downtown Dev. Corp.*, 307 F.Supp.3d 719, 734 (S.D.Ohio 2018). Trying them together promotes efficiency and consistency. *Id*. The Guarantee's clause governs actions Levy brings on the Guarantee. Levy's counterclaim targets Wendy's own misrepresentations tied to the Brazilian venture. Those allegations do not arise from enforcing the Guarantee.

The Court's venue findings and Wendy's waiver and estoppel foreclose using the clause as a trapdoor. Hold Wendy's to its forum choice and deny the forum clause motion. The Court should deny the motion to dismiss.

**CONCLUSION**

For these reasons, the defendant, Andrew Levy, respectfully requests that this Court deny the motion to dismiss. Levy's well-pleaded fraud claim warrants adjudication on the merits. Wendy's threshold defenses and forum maneuvering turn on fact questions and settled law that do not justify dismissal. The case should now proceed.

Dated: October 6, 2025                    Respectfully submitted,

                                          */s/ Jon Polenberg*
                                          Jon Polenberg, Florida Bar No. 653306
                                          *(Admitted Pro Hac Vice)*
                                          BECKER & POLIAKOFF, P.A.
                                          1 East Broward Blvd., Suite 1800
                                          Ft. Lauderdale, FL 33301
                                          Telephone: (954) 987-7550
                                          Facsimile: (954) 985-4176
                                          jpolenberg@beckerlawyers.com
                                          *Attorneys for Defendant Andrew Levy*

13

## CERTIFICATE OF SERVICE

I certify that on October 6, 2025, the foregoing document was electronically filed with the

Clerk of the Court which will electronically serve a copy of same on all counsel of record for all

parties.

*/s/ Jon Polenberg*
Jon Polenberg
