IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WENDY'S NETHERLANDS B.V.,**

      **Plaintiff,**

  v.                                Civil Action 2:24-cv-3077
                                     Judge Michael H. Watson
**ANDREW LEVY,**                 Magistrate Judge Kimberly A. Jolson

      **Defendant.**

## OPINION & ORDER

Before the Court is Plaintiff's Motion to Stay Discovery on Defendant's counterclaim pending ruling on motion to dismiss. (Doc. 70). Also before the Court is Defendant's request that if the Court stay discovery on his counterclaim, that the Court should stay all discovery. (Doc. 71). For the following reasons, Plaintiff's Motion (Doc. 70) is **DENIED** and Defendant's Motion (Doc. 71) is **DENIED as moot.**

**I.    BACKGROUND**

This action involves a dispute over a cognovit judgment entered in the Franklin County Court of Common Pleas. Plaintiff is an international, quick service restaurant organized in the Netherlands with its principal place of business in Franklin County, Ohio. (Doc. 1 at 9–10). Defendant is a businessman who now lives in Florida. (Doc. 13 at 2). In 2015 and 2017, Plaintiff entered into two separate credit agreements with an entity called WBR Franquais Participacoies LTDA. (Doc. 1 at 10). In those agreements, Plaintiff agreed to loan money "to support the development and operation of restaurants in Brazil." (*Id.*). On October 20, 2015, Plaintiff entered into a Guarantee Agreement ("Guarantee Agreement" or "Agreement") with Defendant, which was amended in both 2017 and 2018. (*Id.*). The Guarantee Agreement "guaranteed the prompt and complete payment and performance" of the obligations outlined in the credit agreements. (*Id.*).

In late 2019, the ventures soured, and the parties began negotiations to close the restaurants in Brazil. (Doc. 3 at 2). To secure the debts owed by Defendant under the Guarantee Agreement, the parties entered into a Cognovit Note ("Cognovit Note" or "Note") on February 23, 2020. (Doc. 13 at 2). As the Court previously explained, the Note allowed Plaintiff to seek a judgment against Defendant "when the Cognovit Note became payable." (Doc. 13 at 3). But, in January and April of 2024, Defendant failed to make his required payments. (*Id.*). So, on May 1, 2024, Plaintiff filed a Complaint for Confession of Judgment in the Franklin County Court of Common Pleas, along with an answer on behalf of Defendant. (*See* Doc. 1 at 9–15). A month after that, on June 3, 2024, Defendant removed the case to this Court. (*See* Doc. 1).

Defendant then filed a counterclaim against Plaintiff for fraud. (Doc. 51 at ¶¶ 34–42). Defendant says the Brazil venture spoiled because Plaintiff made a series of material misrepresentations. (*Id.* at ¶¶ 27, 35). In relevant part, Defendant claims Plaintiff misrepresented that Plaintiff's Board of Directors had authorized an additional $2.5 million in funding for the Brazil restaurants, which would not be advanced until the other business partner, Infinity, subscribed their quotas. (*Id.* at ¶ 18). Relying on this representation, Defendant says he funded Infinity's quotas in advance. (*Id.* at ¶ 20). But once he advanced these funds, Plaintiff apparently refused to use them to fund the Brazil deal. (*Id.* at ¶ 24). Then, Plaintiff closed the Brazil restaurants and "coerce[d]" Defendant into signing the Cognovit Note. (*Id.* at ¶¶ 27–32). Defendant says that had he not made the advancement of funds, he could have used that money to pay his obligations under the Guarantee Agreement. (*Id.* at ¶ 21).

Next, Plaintiff filed a motion to dismiss the counterclaim, arguing that the fraud claim is barred by the statute of limitations (Doc. 54 at 7–9); that Defendant released Plaintiff from liability (*Id.* at 9–10); that Defendant's counterclaim is not ripe (*Id.* at 10–11); and that the forum selection

clause in the Guarantee requires a venue outside the Southern District of Ohio. (*Id.* at 11–12).

Meanwhile, discovery on Plaintiff's claims and Defendant's counterclaim has been underway. (Doc. 63). Plaintiff filed the instant Motion to Stay Discovery on Defendant's counterclaim until decision on the motion to dismiss. (Doc. 70). In response, Defendant represents that he does not oppose the discovery stay, so long as it applies to all discovery and not only discovery on his counterclaim. (Doc. 71). The Court ordered the parties to confer and file a joint status report on their respective positions. (Doc. 72). The parties did so, and the issues are now ripe for consideration. (Doc. 73).

**I.     STANDARD**

"A district court has the inherent power to stay proceedings based on its authority to manage its docket efficiently." *Ohio Valley Bank Co. v. MetaBank*, No. 2:19-CV-191, 2019 WL 2170681, at *2 (S.D. Ohio May 20, 2019) (quotation marks and citations omitted). And, as is the case here, parties routinely file motions to stay discovery while a motion to dismiss is pending. *See Shanks v. Honda of Am. Mfg.*, No. 2:08-CV-1059, 2009 WL 2132621, at *1 (S.D. Ohio July 10, 2009) (noting that, "[t]his Court has had many occasions, over the years, to address the question of whether a stay of discovery should be imposed during the pendency of a motion to dismiss"). "[A]s a general rule, this Court is not inclined to stay discovery while a motion to dismiss is pending[.]" *Id.*; *see also Ohio Valley Bank*, 2019 WL 2170681, at *2 (quotation marks and citation omitted) (noting that "the Court has frequently found that the fact that a party has filed a case-dispositive motion is usually deemed insufficient to support a stay of discovery.").

Still, in "special circumstances," a court may find that a discovery stay is appropriate. *Shanks v. Honda of Am. Mfg.*, No. 2:08-CV-1059, 2009 WL 2132621, at *1 (S.D. Ohio July 10, 2009). A discovery stay may serve the interests of judicial economy, for example, where "the defendant has raised a defense, such as absolute or qualified immunity, which must, as a matter of

3

law, be addressed before discovery appears" or where "it appears that the complaint will almost certainly be dismissed." *Id.*; *see also Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999) ("Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined."). In deciding whether to stay discovery, "'a court weighs the burden of proceeding with discovery upon the party from whom discovery is sought against the hardship which would be worked by a denial of discovery.'" *Id.* (quoting *Bowens v. Columbus Metro. Library Bd. of Trustees*, No. CIV.A. 2:10-CV-00219, 2010 WL 3719245, at *1 (S.D. Ohio Sept. 16, 2010)). And the Court must "tread carefully" when staying discovery because parties have "a right to a determination of its rights and liabilities without undue delay." *Ohio Valley Bank*, 2019 WL 2170681, at *2 (quotation marks and citations omitted).

## II.     DISCUSSION

Plaintiff argues a partial stay is warranted because (1) its motion to dismiss is likely to prevail, and (2) the balance of the hardships weighs in favor of a stay. (Doc. 70). On balance, the Court finds that a stay is not justified.

To begin, Plaintiff argues its pending motion to dismiss justifies staying discovery. Plaintiff asserts that because the Court has not determined if the Cognovit Note and the release are invalid, the Court does not yet have jurisdiction over the counterclaim. (Doc. 54 at 10–11; Doc. 70 at 7–9). But simply raising a jurisdictional issue generally is not enough to justify pausing discovery. In cases where a stay is granted due to jurisdictional concerns, it tends to be where it is "almost certain" that the "federal court lacks the authority to hear the case." *Ohio Bell Tel. Co., Inc. v. Global NAPs Ohio, Inc.*, No. 2:06-cv-0549, 2008 WL 641252, at *2 (S.D. Ohio Mar. 4, 2008). Here, the jurisdictional argument is "fairly debatable." *Id.*; *see also Seattle House, LLC v. City of Delaware*, No. 2:20-CV-03284, 2020 WL 7253309, at *2 (S.D. Ohio Dec. 10, 2020). Particularly, Defendant claims in his Answer that the Cognovit Note is invalid because he signed

4

it under duress. (Doc. 51 at 4–5). It appears that this issue has not been resolved and is central to the underlying dispute. Because the validity of the Note remains uncertain, so too does Plaintiff's jurisdictional argument. Consequently, the jurisdictional argument does not rise to the level of a special circumstance warranting a discovery stay. *See Shanks*, 2009 WL 2132621, at *1.

In a similar vein, Plaintiff argues that Defendant's counterclaim is untimely. (Doc. 70 at 5). But, like jurisdictional arguments, a timeliness argument generally is insufficient to justify a discovery stay unless the analysis is straightforward. *Wilson v. ThyssenKrupp Elevator Corp.*, No. 2:20-CV-2138, 2022 WL 1618447 (S.D. Ohio Feb. 8, 2022); *Fisher v. City of Columbus*, No. 2:24-CV-150, 2024 WL 4134849, at *4 (S.D. Ohio Sept. 10, 2024) (declining to stay discovery where the statute of limitations issue is "fairly debatable" and not straightforward). The analysis is not so simple here. Most glaringly, Plaintiff argues the Court must apply New York law to determine the statute of limitations issue. (Doc. 70 at 6 (noting the statute of limitations is six years "[u]nder New York law, which governs this action."); Doc. 54 at 7). But Defendant suggests that Brazilian statute of limitations applies. (Doc. 57 at 1). Before ever reaching the statute of limitations argument, the Court may first need to conduct a choice-of-law analysis to determine whether New York law or Brazilian law controls. Such an analysis is hardly straightforward. And even accepting that New York law applies, it is "fairly debatable"—and the parties have debated—when the clock on the statute of limitations started to run. (Doc. 54 at 7; Doc. 57 at 1); *Fisher*, 2024 WL 4134849, at *4. Whatever the angle of approach, the analysis of Plaintiff's timeliness argument is not as straightforward as Plaintiff suggests, and it does not present "special circumstances" necessitating a stay. *See Shanks*, 2009 WL 2132621, at *1.

Next, Plaintiff argues that the balance of the hardships favors a stay because continuing discovery on the counterclaim is unduly burdensome. (Doc. 70 at 9). In particular, it says

5

Defendant's discovery requests related to the counterclaim are "quite broad in scope" and will likely result in "a great number of responsive documents." (*Id.*). But Plaintiff does not say more on this. A "general statement that discovery is overly broad and unduly burdensome . . . by itself is insufficient to deny discovery." *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 311 (W.D. Tenn. 2008). Because Plaintiff does not elaborate, its argument is unavailing.

The Court is similarly unconvinced that Plaintiff will be burdened by document requests that "go back nine years in time and are related to dealings in Brazil." (Doc. 70 at 10). Rather, Plaintiff's Complaint touches on similar issues during a similar time period. (*See, e.g.*, Doc. 5 at ¶¶ 6–7 (noting an underlying business loan happened in 2015 and 2017, and that the loan was given to support the Brazilian venture)). It is entirely possible that Defendant seeks to use documents to both assert his counterclaim and also to defend against Plaintiff's claim. (*See, e.g.*, Doc. 51 at 4–5 (asserting duress as an affirmative defense to Plaintiff's claim because Plaintiff pressured Defendant to sign the Note), ¶¶ 29–32 (arguing in the counterclaim that Plaintiff coerced Defendant into signing the cognovit note)). The Court will not find that producing such documents is burdensome only as applied to the counterclaim. Nor will the Court issue a discovery stay even where Defendant's requests are only relevant to the counterclaim. To the extent Plaintiff is inconvenienced by document production related to the counterclaim, it faces the same burden that nearly every counter-defendant in this Court faces. Plaintiff ultimately overstates the weight of the relevant hardships against it should discovery continue.

On the other side of the equation, there is the prejudice Defendant might face if discovery is stayed. "As reflected in the Federal Rules," plaintiffs (including counter-plaintiffs) deserve their case to be heard "in a timely and efficient manner." *See Young v. Mesa Underwriters Specialty Ins. Co.*, No. 2:19-CV-3820, 2020 WL 7407735, at *3 (S.D. Ohio Oct. 19, 2020). Delaying

6

discovery at this stage risks harming Defendant's ability to litigate his counterclaim. As Plaintiff itself noted, the events happened "so long ago," and many employees that facilitated the dealings are no longer employed by Plaintiff. (Doc. 70 at 10). Staying discovery on the counterclaim would only exacerbate this issue. As time passes, memories fade and witnesses might become unavailable, and this case has been pending for well over a year. *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, No. 1:19-CV-133, 2023 WL 3004148, at *4 (S.D. Ohio Apr. 18, 2023) ("Further delay could substantially harm Plaintiffs in that witnesses move, parties die, and memories fade.").

All told, a discovery stay is not warranted, and discovery shall proceed as scheduled. Plaintiff's Motion to Stay Discovery on the counterclaim (Doc. 70) is therefore **DENIED.** Plaintiff's request to expedite briefing on that Motion (*id.* at 11) is **DENIED as moot.** Finally, because Defendant moved to stay all discovery only in the event the Court stays discovery on the counterclaim, Defendant's Motion to Stay (Doc. 71) is also **DENIED as moot.**

### III. CONCLUSION

For the forgoing reasons, Plaintiff's Motion to Stay Discovery on the counterclaim (Doc. 70) is **DENIED.** Plaintiff's request to expedite briefing on that Motion (*id.* at 11) is **DENIED as moot.** Defendant's Motion to Stay (Doc. 71) is **DENIED as moot.**

IT IS SO ORDERED.

Date: January 6, 2026                                 /s/ Kimberly A. Jolson
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE

7