**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

WENDY'S NETHERLANDS B.V.,

        Plaintiff,

        v.

ANDREW LEVY,

        Defendant.

Civil Action No.  2:24-cv-03077

**DEFENDANT ANDREW LEVY'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS TO PLAINTIFF WENDY'S NETHERLANDS B.V.**

The defendant, Andrew Levy ("Levy"), under Rule 34 of the Federal Rules of Civil

Procedure and the Court Order issued on September 9, 2025 [D.E. 53], requests that the plaintiff,

Wendy's Netherlands B.V., produce the following documents and things to the offices of Becker,

1 East Broward Blvd., Suite 1800, Ft. Lauderdale, FL 33301, within thirty (30) days of the date of

service of these requests.

### DEFINITIONS

1.      The term **"Accounting Records"** means any and all documents, data, files, entries,

or records, whether written, electronic, or otherwise, that reflect, record, summarize, or support

financial transactions or balances, including without limitation journals, ledgers, trial balances,

financial statements, account statements, invoices, receipts, Payment Records, tax filings, or any

supporting documentation, relating to the Joint Venture, the Cognovit Note, any Debt Obligation,

Franchise Restaurants, or any Funding.

2.      The term **"Account Statement"** means any periodic or non-periodic statement,

whether written, electronic, or otherwise, reflecting the balance, credits, debits, or activity in any

27543135.v1

bank account, credit account, loan account, or other financial account maintained by or on behalf of Plaintiff, Defendant, the Joint Venture, or any of their respective parents, subsidiaries, affiliates, officers, directors, employees, agents, or representatives, including without limitation statements issued by banks, financial institutions, or Plaintiff itself as lender.

3.       The term "Adverse Action" means any act, omission, threat, penalty, sanction, withholding of benefit, termination, non-renewal, adverse change in terms, financial penalty, enforcement action, litigation, or other conduct by Plaintiff, its parents, subsidiaries, affiliates, officers, directors, employees, agents, or representatives that had, or reasonably could have had, a negative impact on Defendant, the Franchise Restaurants (as defined herein), or the Joint Venture, including without limitation any threats or actions relating to franchise rights, fees, or enforcement of the Cognovit Note.

4.       The terms **"Amount"** or **"Amounts"** mean any and all sums of money, figures, values, calculations, or quantities, whether actual, estimated, projected, or accrued, including without limitation principal, interest, fees, penalties, expenses, credits, deductions, offsets, set-offs, or any other monetary figure relating to the Cognovit Note, any Loan Agreement, Debt Obligation, Guarantee, Security Agreement, Funding Commitment, Franchise Restaurant, or the Joint Venture.

5.       The term "Analyses" or "Analysis" means any and all evaluations, examinations, assessments, studies, appraisals, models, reviews, comparisons, or similar work product, whether written, oral, electronic, draft, or final, relating to the operations, finances, funding, debt obligations, investments, or future prospects of the Joint Venture, Plaintiff, Defendant, or any of their affiliates.

2

27543135.v1

6.      The terms **"Approval,"** **"Approve"** or **"Consent"** mean any and all authorization, acceptance, agreement, ratification, endorsement, acquiescence, or other indication of agreement, whether express or implied, written or oral, formal or informal, draft or final, by Plaintiff, its parents, subsidiaries, affiliates, officers, directors, employees, agents, or representatives, relating to the Cognovit Note, any Promissory Note, Loan Agreement, Guarantee, Security Agreement, Debt Obligation, Funding Commitment, the Joint Venture, any Potential Buyer, or any related matter.

7.      The term **"Attorneys' Fees, Costs, or Expenses"** means any and all amounts claimed, charged, incurred, paid, or asserted in connection with the Cognovit Note, any Promissory Note, Loan Agreement, Guarantee, Security Agreement, Debt Obligation, or Funding Commitment, including without limitation attorneys' fees, paralegal fees, expert witness fees, court costs, filing fees, service fees, collection costs, administrative costs, travel expenses, investigation expenses, internal charges, and any other related fees, costs, or expenditures, whether billed, accrued, paid, or reimbursed.

8.      The term **"Board Minutes"** means any and all minutes, transcripts, summaries, recordings, or other records, whether written, electronic, or otherwise, of meetings of the board of directors, executive committees, advisory boards, or other governing bodies of Plaintiff, its parents, subsidiaries, or affiliates, that reflect discussions, decisions, or actions relating to the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant.

9.      The term **"Books and Records"** means any and all documents, data, and information, whether formal or informal, draft or final, paper or electronic, maintained by or on behalf of Plaintiff, its parents, subsidiaries, affiliates, officers, directors, employees, agents, or

3

27543135.v1

representatives, that relate to, reflect, evidence, or concern the Cognovit Note, any Promissory Note, Guarantee, Security Agreement, Loan Agreement, Debt Obligation, Funding, Borrowers, Lenders, Creditors, Brazilian Banks, the Joint Venture, any Potential Buyer, or Defendant's Franchise Restaurants in the United States.

10. Without limitation, "Books and Records" includes ledgers (including those reflecting payments made on the Cognovit Note), journals, payment records, account statements, balance sheets, income statements, cash flow statements, budgets, forecasts, projections, reconciliations, spreadsheets, accounting records, audits, reports, board minutes, resolutions, contracts, correspondence, memoranda, presentations, and any other materials that reflect the finances, operations, or future prospects of the Joint Venture or obligations of Defendant.

11. The term "Brazilian Banks" means any and all banks, financial institutions, lenders, or credit facilities located in Brazil with which You, WBR, or any of its affiliates, agents, representatives, or related entities had dealings in connection with WBR, including without limitation the negotiation, execution, repayment, or refinancing of any loans, credit agreements, guarantees, or other financial arrangements. This term shall also include each such bank's parent companies, subsidiaries, affiliates, officers, directors, employees, agents, and representatives.

12. The term "Cognovit Note" means the cognovit promissory note that is the subject of this action, including but not limited to all drafts, versions, amendments, riders, guaranties, collateral agreements, security agreements, modifications, related correspondence, and all documents concerning its negotiation, execution, performance, or enforcement.

13. "Communication" means any oral, written or digital utterance, notation, recording, photo, video, and audio recording or statement of any nature whatsoever, by anyone and to whomsoever made, including correspondence, conversations, notes, dialogues, discussions,

4

emails, text messages, social media posts, posts and communications on all communication platforms including, without limitation, Facebook, LinkedIn, Twitter, Instagram, Reddit, Microsoft Teams, Gchat, Slack, Salesforce Chatter, Gira, Google Hangouts, Asana and Trello, Workplace by Facebook, Stride, Hipchat, Stride, and Zoom. The term "Communication" includes "Electronically Stored Information" as defined below.

14. "Complaint" means the Complaint in the above-captioned action.

15. "Concerning" means relating to, referring to, describing, evidencing, mentioning, affecting, showing, reflecting, touching on, bearing on or constituting.

16. The terms **"Consider"** and **"Consideration"** mean any act of reviewing, analyzing, evaluating, studying, deliberating, weighing, or otherwise taking into account any fact, document, communication, proposal, representation, or circumstance, whether formally or informally, orally or in writing.

17. The term **"Consideration"** further includes the legal concept of consideration in contract law, meaning any benefit conferred, detriment incurred, promise given, or obligation undertaken by a party in exchange for another party's promise, performance, or undertaking, including but not limited to the execution of the Cognovit Note, Guarantees, or related agreements.

18. The term **"Corporate Records"** means any and all documents, data, or information, whether written, electronic, or otherwise, that reflect the formation, governance, structure, ownership, management, or business affairs of Plaintiff, its parents, subsidiaries, affiliates, predecessors, or successors, including without limitation articles of incorporation, bylaws, shareholder agreements, operating agreements, partnership agreements, board minutes, resolutions, meeting notes, Policies, Guidelines, audits, financial statements, Accounting Records,

5

Ledgers, Account Statements, Written Agreements, Loan Agreements, Security Agreements, Guarantees, and any amendments, modifications, or related correspondence.

19. The term "Credits" means any and all reductions, abatements, allowances, write-downs, payments applied, reimbursements, repayments, overpayment adjustments, or other amounts applied to decrease an obligation or balance, whether reflected in accounting records, Payment Records, Ledgers, Account Statements, or otherwise, relating to the Joint Venture, Debt Obligations, Franchise Restaurants, or the Cognovit Note.

20. The term "Debt" means any liability, obligation, or indebtedness of any kind, whether direct or indirect, absolute or contingent, secured or unsecured, liquidated or unliquidated, accrued or unaccrued, due or to become due, joint or several, including without limitation any Cognovit Note, Promissory Note, Guarantee, Security Agreement, Loan Agreement, Debt Obligation, credit facility, line of credit, reimbursement obligation, interest, fees, costs, expenses, offsets, deductions, or any other financial responsibility owed by Defendant, the Joint Venture, or any Borrower to Plaintiff, its parents, subsidiaries, affiliates, or to any Lender, Creditor, or Brazilian Bank.

21. The term "Decision" means any determination, choice, judgment, conclusion, approval, disapproval, selection, rejection, authorization, or course of action, whether formal or informal, written or oral, draft or final, made by or on behalf of Plaintiff, its parents, subsidiaries, affiliates, officers, directors, employees, agents, representatives, or boards, relating to the Cognovit Note, any Promissory Note, Loan Agreement, Guarantee, Security Agreement, Debt Obligation, Funding Commitment, the Joint Venture, or any related matter.

22. The term "Deductions" means any and all withholdings, subtractions, reductions, or other downward adjustments made or applied by Plaintiff, its parents, subsidiaries, affiliates,

27543135.v1

officers, directors, employees, agents, or representatives against sums otherwise due or claimed to be due from or to Defendant, the Joint Venture, or any related entity, including but not limited to franchise fees, royalties, reimbursements, or obligations relating to the Cognovit Note.

23. The terms **"Discussion," "Discussions,"** or "Discuss" mean any communication, conversation, meeting, negotiation, exchange of information, consultation, or deliberation, whether formal or informal, oral or written, in person, by telephone, video conference, text message, email, correspondence, or otherwise, between or among any representatives, agents, officers, directors, employees, or affiliates of Plaintiff, its parents, subsidiaries, related entities, or any other persons acting on their behalf.

24. "Document" is used in the broadest sense permitted under the Rules of Civil Procedure and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any writing, sworn statement, deposition transcript, affidavit, recording, photograph, video, audio recording, computer data, emails, text messages, social media posts, items on all communications platforms including, without limitation, Facebook, LinkedIn, Twitter, Instagram, Reddit, Microsoft Teams, Gchat, Slack, Salesforce Chatter, Gira, Google Hangouts, Asana and Trello, Workplace by Facebook, Stride, Hipchat, Stride, Zoom or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location, and regardless of the form maintained. The term "Document" includes "Electronically Stored Information" as defined below.

25. The terms "Document" and "Communication" further mean any Document or Communication in the possession, custody, or control of the entities and individuals to whom this discovery is directed together with their employees, agents and attorneys. Without limitation, an entity or individual is deemed to be in "control" as used in the preceding sentence of a Document

27543135.v1

or Communication if that entity or individual has the right to secure it or a copy of it from another entity or individual having actual possession thereof.

26.     "Electronically Stored Information" refers to all computer, tablet, phone or electronically stored or generated data and information, and includes all attachments to and enclosures with any requested item, and all drafts thereof.  Electronically Stored Information includes information stored in any format and on any storage media whether fixed, portable, removable or in the cloud.  Electronically Stored Information includes, without limitation, title or name, file name, author, date and time of creation, date and time of all edits, identity of author, identity of owner, identities of editors, identities of recipients, history of changes, email header information, history of who viewed an item and when viewed, audit trails, logs and email routing information.

27.     The term "Execution" or "Execute" means the act of signing, delivering, acknowledging, or otherwise formally adopting any written instrument, including without limitation the Cognovit Note, the Guarantee, any Loan Agreement, or any related agreement, whether such execution was voluntary, compelled, or obtained through duress, misrepresentation, or inducement.

28.     The term "Financial Analysis" means any and all studies, reviews, evaluations, assessments, models, calculations, or examinations, whether written, electronic, draft, or final, performed for the purpose of assessing or reflecting the financial condition, performance, obligations, profitability, risks, or viability of the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant.

29.     The term "Financial Condition" means any and all information, documents, data, or communications, whether written, oral, electronic, draft, or final, that reflect or relate to the

8

27543135.v1

monetary or economic position of the Joint Venture, Plaintiff, Defendant, or any of their parents, subsidiaries, affiliates, predecessors, or successors, including without limitation assets, liabilities, revenues, expenses, profits, losses, equity, debt, cash flow, creditworthiness, solvency, capital structure, liquidity, or ability to meet debt obligations or provide funding.

30.     The term **"Forecast"** means any and all forward-looking statements, estimates, budgets, models, schedules, or plans, whether draft or final, prepared by or on behalf of Plaintiff, its affiliates, or any other person or entity, that project or estimate revenues, expenses, cash flow, profits, losses, capital requirements, or other financial results relating to the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant.

31.     The term **"Foreclosure"** means any action, communication, or process, whether formal or informal, actual or threatened, by which Plaintiff sought or indicated an intent to seize, repossess, take control of, or otherwise enforce rights against Defendant's property, collateral, assets, or Franchise Restaurants, including but not limited to foreclosure under a mortgage, security agreement, guarantee, or other debt instrument.

32.     The term "Franchise Restaurants" means any and all restaurants, food service establishments, or other businesses located within the United States that were operated by Defendant, directly or indirectly, under a franchise, license, or other agreement with Plaintiff or any of its parents, subsidiaries, or affiliates, whether individually owned, jointly owned, or operated through any entity in which Defendant held an interest. This term expressly excludes any restaurants or operations located in Brazil owned and operated by WBR.

33.     The terms **"Funding"** and **"Fund"** mean any act, promise, assurance, commitment, obligation, representation, or transaction involving the provision, advancement, extension, allocation, transfer, commitment, or availability of money, capital, credit, loans, guarantees, debt,

9

27543135.v1

equity, or other financial resources, whether directly or indirectly, by Plaintiff, its parents, subsidiaries, affiliates, officers, directors, employees, agents, representatives, lenders, or third parties, to or for the benefit of Defendant, the Joint Venture, or any related entity, including without limitation the making of loans, guarantees, capital contributions, debt obligations, or payments to third parties (such as Brazilian Banks) in lieu of directly satisfying obligations.

34. The term **"Guarantees"** means any and all contracts, agreements, commitments, undertakings, assurances, or promises, whether written, oral, electronic, draft, or final, pursuant to which any person or entity agreed to answer for, assume responsibility for, or otherwise ensure the payment or performance of any Promissory Note, Loan Agreement, Debt Obligation, Funding, or obligation of the Joint Venture, including without limitation the guaranty allegedly executed by Defendant in connection with the Cognovit Note.

35. The term **"Health Condition"** means any and all medical conditions, illnesses, diagnoses, treatments, or related circumstances concerning Defendant, including without limitation cancer treatment, of which Plaintiff, its parents, subsidiaries, affiliates, officers, directors, employees, agents, or representatives had knowledge.

36. "Including" shall mean including but not by way of limitation. The term **"Interest"** means any and all amounts claimed, charged, accrued, calculated, or asserted as interest in connection with the Cognovit Note, any Promissory Note, Loan Agreement, Guarantee, Security Agreement, Debt Obligation, or Funding Commitment, including without limitation contractual interest, stated interest, default interest, penalty interest, compounded interest, accrued but unpaid interest, interest on advances, and any modifications, waivers, or adjustments thereto.

37. The term **"Internal"** means any communication, document, memorandum, note, report, analysis, draft, or record prepared, generated, circulated, considered, or maintained within

27543135.v1

or among Plaintiff, its parents, subsidiaries, affiliates, officers, directors, employees, agents, representatives, or any other persons acting on their behalf, whether or not shared with persons outside such entities.

38.     The term "Investors" means any and all persons or entities that contributed, committed, promised, or agreed to contribute or commit capital, equity, loans, guarantees, or other financial resources to or for the benefit of the Joint Venture, or any related entity, including without limitation shareholders, partners, members, venture capital firms, private equity firms, financial institutions, individual investors, or affiliates of Plaintiff or Defendant.

39.     The term "Ledgers" means any general ledger, subsidiary ledger, trial balance, journal, or other accounting record, whether written, electronic, or otherwise, maintained by Plaintiff, Defendant, the Joint Venture, or any of their respective parents, subsidiaries, affiliates, officers, directors, employees, agents, or representatives, that records or summarizes financial transactions, including without limitation entries relating to Funding, Debt Obligations, payments on behalf of the Joint Venture, or payments made on the Cognovit Note.

40.     The term "Lender" means Plaintiff, as well as any other person or entity, including without limitation any bank, financial institution, parent, subsidiary, affiliate, predecessor, successor, division, operating unit, or related entity, and any of their respective officers, directors, employees, agents, representatives, or attorneys, that extended, advanced, guaranteed, refinanced, restructured, or promised to extend or advance any loan, credit, Funding, or other financial accommodation to any Borrower in connection with the Joint Venture, the Cognovit Note, any Debt Obligation, or any Franchise Restaurant.

41.     "Levy" or "Defendant" shall refer to Defendant Andrew Levy, and includes any agents, servants and other persons acting or purporting to act on Levy's behalf.

11

42.     The term **"Loan Agreements"** means any and all contracts, agreements, promissory notes, credit agreements, loan documents, guarantees, security agreements, instruments, amendments, modifications, commitments, or understandings, whether written, electronic, oral, or otherwise, pursuant to which funds, credit, or other financial accommodations were extended or promised to be extended by Plaintiff, the Brazilian Banks, or any other Lender, in connection with the Joint Venture, the Cognovit Note, or any related Debt Obligations.

43.     The term **"Meeting Notes"** means any and all written, typed, or electronic notations, summaries, annotations, jottings, or records, whether draft or final, prepared by any participant or observer in connection with any meeting, discussion, or conference (including board meetings, management meetings, or negotiations) relating to the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant.

44.     The term **"Memoranda"** means any written or electronic note, memorandum, record, report, summary, or similar document, whether formal or informal, including without limitation interoffice memoranda, meeting notes, internal reports, policy statements, briefing papers, handwritten notes, electronic notes, or other writings prepared by, for, or circulated among Plaintiff, Defendant, the Joint Venture, or any of their respective parents, subsidiaries, affiliates, officers, directors, employees, agents, or representatives, relating to any matter at issue in this action.

45.     The term **"Memoranda of Understanding"** means any and all writings, whether labeled "memorandum of understanding," "MOU," "letter of intent," "heads of terms," "agreement in principle," or otherwise, reflecting preliminary, partial, or non-binding understandings, negotiations, or commitments between any parties concerning the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant.

12

46. The terms "Negotiation" or "Negotiations" mean any and all communications, discussions, meetings, conversations, correspondence, or exchanges, whether formal or informal, written, oral, or electronic, relating to the Cognovit Note, any Promissory Note, Loan Agreement, Guarantee, Security Agreement, Debt Obligation, Funding Commitment, the Joint Venture, or any related agreement, including without limitation the making of representations, promises, inducements, modifications, or terms under consideration.

47. The term "Notes" means any and all written, typed, or electronic notations, records, jottings, annotations, minutes, or memoranda, whether formal or informal, draft or final, made by any person, including without limitation Plaintiff, Defendant, the Joint Venture, or any of their respective officers, directors, employees, agents, or representatives, relating to the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant.

48. The terms "Officer," "Officers," "Director," "Directors," "Agent," or "Agents" mean any current or former officer, director, manager, member, partner, employee, contractor, consultant, attorney, accountant, representative, or other person or entity acting, or purporting to act, on behalf of Plaintiff, its parents, subsidiaries, affiliates, or related entities, whether formally appointed, informally designated, or otherwise vested with actual or apparent authority.

49. The term "Offsets" means any and all credits, deductions, set-offs, counterclaims, recoupments, or other reductions of an amount owed, whether asserted, recorded, or applied formally or informally, by Plaintiff or on its behalf, against Defendant, the Joint Venture, or any related entity, including without limitation any such adjustments relating to the Cognovit Note, Debt Obligations, or Franchise Restaurants.

50. The term "Operations" means any and all business activities, functions, management practices, strategies, or day-to-day actions undertaken by or on behalf of the Joint

Venture, Plaintiff, Defendant, or any of their affiliates, relating to the conduct, performance, or management of the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant.

51. "Person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, or other business enterprise, governmental body, group of natural persons or other entity.

52. The term "Potential Buyer" or "Potential Buyers" means any person or entity that expressed interest in, offered to purchase, negotiated for, or was considered by Plaintiff, Levy, or WBR as a possible purchaser, investor, acquirer, or participant in a sale, transfer, or restructuring of WBR or its assets, including without limitation the buyer whose approval was sought from Plaintiff and refused, as well as any of such buyer's parents, subsidiaries, affiliates, officers, directors, employees, agents, representatives, brokers, or advisors.

53. The term "Presentations" means any and all slide decks, PowerPoint files, Keynote files, Google Slides, charts, graphs, summaries, talking points, speeches, scripts, or other written, electronic, or visual materials, whether draft or final, used or prepared for the purpose of presenting information to Defendant, the Joint Venture, investors, lenders, or other third parties, relating to the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant.

54. The term "Projections" means any and all estimates, assumptions, scenarios, models, or plans, whether written, oral, electronic, draft, or final, that predict, estimate, or contemplate future financial or operational results, conditions, or outcomes for the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant,

14

27543135.v1

including without limitation cash flow projections, earnings projections, or debt service projections.

55.     The term **"Promissory Notes"** means any and all written instruments, notes, cognovit notes, or other agreements, whether draft or final, executed or unexecuted, pursuant to which any person or entity promised or agreed to pay money to another, including without limitation the Cognovit Note at issue in this action, and any related amendments, modifications, renewals, extensions, or replacements.

56.     The term **"Promotional Materials"** means any and all documents, brochures, flyers, advertisements, marketing materials, handouts, prospectuses, investor packets, sales sheets, websites, social media content, videos, or other writings or media, whether written, electronic, audio, or visual, created, used, or distributed by or on behalf of Plaintiff or its affiliates, relating to the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant.

57.     The term **"Proposal"** or **"Proposals"** means any offer, term sheet, draft agreement, suggested terms, recommendation, communication, or presentation — whether oral, written, or electronic — made by Plaintiff, Defendant, the Joint Venture, a Potential Buyer, a lender (including the Brazilian Banks), or any of their respective parents, subsidiaries, affiliates, officers, directors, employees, agents, or representatives, concerning the Joint Venture, its funding, financing, sale, restructuring, debt obligations, Franchise Restaurants, or the Cognovit Note.

58.     The terms **"Reason"** or **"Reasons"** mean any ground, basis, justification, rationale, explanation, motivation, cause, or factor, whether express or implied, written or oral, formal or informal, true or purported, direct or indirect, for any action, decision, omission, refusal, approval,

27543135.v1

or representation by Plaintiff, its parents, subsidiaries, affiliates, officers, directors, employees, agents, or representatives.

59.     The term **"Reconciliations"** means any and all comparisons, analyses, summaries, or reviews, whether written, electronic, or otherwise, prepared for the purpose of verifying, reconciling, or aligning balances, transactions, or entries across any Accounting Records, Spreadsheets, Payment Records, Ledgers, or Account Statements, including without limitation bank reconciliations, loan reconciliations, and intercompany reconciliations relating to the Joint Venture, the Cognovit Note, any Debt Obligation, Franchise Restaurants, or any Funding.

60.     The term **"Reflect"** or "Reflecting" means to constitute, comprise, show, record, describe, support, evidence, relate to, refer to, embody, contain, discuss, or otherwise make reference to, in whole or in part, whether directly or indirectly.

61.     The terms **"Refuse"** or **"Refused"** mean any denial, rejection, declination, withholding, delay, omission, or failure to approve, fund, authorize, consent, or perform, whether express or implied, written or oral, formal or informal, in whole or in part.

62.     The term **"Resolutions"** means any and all formal or informal resolutions, consents, approvals, authorizations, or votes, whether written, electronic, oral, draft, or final, adopted or considered by the board of directors, executive committees, shareholders, or other governing bodies of Plaintiff, its parents, subsidiaries, or affiliates, relating to the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant.

63.     The term **"Security Agreements"** means any and all contracts, agreements, pledges, mortgages, deeds of trust, collateral agreements, UCC filings, or other documents, whether draft or final, executed or unexecuted, pursuant to which any asset, property, or interest was pledged,

16

27543135.v1

encumbered, or otherwise provided as security for the repayment of any Promissory Note, Loan Agreement, Debt Obligation, Funding, or Guarantee.

64.     The term **"Spreadsheets"** means any and all electronically or manually created tables, charts, lists, or compilations of data, including without limitation Microsoft Excel files, Google Sheets, or comparable formats, whether draft or final, that track, reflect, or summarize financial information, projections, budgets, payments, obligations, or allocations relating to the Joint Venture, the Cognovit Note, any Debt Obligation, Franchise Restaurants, or any Funding.

65.     The term **"Term"** means any and all provisions, periods, durations, dates, conditions, maturity schedules, renewal rights, extension rights, deadlines, limitations, or other temporal or contractual requirements, whether written, oral, electronic, draft, or final, relating to the Cognovit Note, any Loan Agreement, Guarantee, Security Agreement, Debt Obligation, Funding Commitment, or any related agreement.

66.     The term **"Term Sheets"** means any and all written summaries, outlines, or descriptions of proposed contractual or financial terms, whether draft or final, relating to the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant, regardless of whether such terms were later incorporated into a Written Agreement.

67.     The term **"Termination"** means any actual or threatened cancellation, nonrenewal, revocation, suspension, or ending of any agreement, contract, franchise, business relationship, or right, whether permanent or temporary, in whole or in part, by Plaintiff or any person acting on its behalf.

68.

69.     The terms **"Threat"** or **"Threatened"** mean any statement, act, conduct, omission, or communication, whether express or implied, written or oral, formal or informal, by which

17

27543135.v1

Plaintiff, its parents, subsidiaries, affiliates, officers, directors, employees, agents, or representatives conveyed, directly or indirectly, the possibility of adverse action, harm, penalty, sanction, loss, foreclosure, termination, or other negative consequence.

70.     The term "WBR" or "Joint Venture" means WBR Participacoes LTDA., the joint venture between You, Starboard International Holdings B.V. and Infinity Holding e Participacoes Ltda., that is  the subject of this action, including without limitation any partnership, limited liability company, corporation, or other entity formed to carry out the venture; all subsidiaries, affiliates, divisions, or related entities of such venture; and all agreements, negotiations, funding arrangements, communications, and activities undertaken in furtherance of or relating to the joint venture.

71.     "Wendy's" or "Plaintiff" refers to Plaintiff Wendy's Netherlands B.V., and includes any entity owned or controlled by Wendy's, directly or indirectly, or any of its or their parents, subsidiary and affiliated companies, partnerships, predecessors in interest and all members, officers, directors, employees, agents, servants and other persons acting or purporting to act on Wendy's behalf.

72.     The term "Written Agreement" means any and all contracts, agreements, undertakings, commitments, instruments, guarantees, amendments, modifications, supplements, or other writings, whether executed or unexecuted, draft or final, formal or informal, relating to the Joint Venture, the Cognovit Note, any Loan Agreement, Debt Obligation, Funding, or Franchise Restaurant.

73.     "You" and "your" shall mean the named Plaintiff in this action, and all of its past and present officers, directors, partners, members, employees, agents, representatives, attorneys,

27543135.v1

subsidiaries, parent companies, affiliates, predecessors, successors, and anyone acting or purporting to act on its behalf.

74.     All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Complaint.

75.     All words in the present tense include the past, and all words in the past tense include the present tense.

76.     As used herein, the singular shall include the plural, the plural shall include the singular, and masculine, feminine, and neuter shall include each of the other genders.

## INSTRUCTIONS

77.     Each Request should be responded to separately indicating that you will produce the Documents or items requested.  If any of the requested Documents cannot be produced in full, produce to the extent possible, specifying the reasons for the inability to produce the remainder.

78.     In producing these Documents, you are required to furnish all Documents known or available to you regardless of whether the Documents are possessed: directly by you, or by your agents, employees, representatives, or investigators; or by your present or former attorneys or its agents, employees, representatives, or investigators; or by your affiliates, predecessors, corporations, partnerships or other legal entities controlled by or in any manner affiliated with you.

79.     **Electronically Stored Information – Form of Production:**  Unless the parties agree otherwise, all Electronically Stored Information must be produced in its native form.  By way of example, and without limitation, this means Documents originally created as Microsoft Word files, Excel spreadsheets, and PowerPoint presentations must be produced as .doc, .xls, and .ppt (or successor file types) electronic files, respectively, without redaction of metadata. Similarly, emails must be produced in .msg, .pst, .eml or .nsf file formats.  Emails must be produced so that the full header is accessible and readable.  For avoidance of doubt, no

19

27543135.v1

Electronically Stored Information shall be produced in paper, .tif, .pdf, and/or other similar non-native format without prior written consent from undersigned counsel.

80.    If Electronically Stored Information is not reasonably useable in its native form, then all software, instructions, or tools necessary to make the information reasonably useable must also be provided or identified.  To the extent that identical information is available in multiple forms of Electronically Stored Information, you need only produce the Electronically Stored Information in one native form.

81.    Unless otherwise stated in an individual request, the relevant time period for these Requests is January 1, 2017 through February 29, 2020.

## REQUESTS

1.    All documents relating to the Cognovit Note, including without limitation, any drafts, revisions, or unsigned versions.

2.    All documents relating to the Execution of the Cognovit Note, including correspondence, emails, or Memoranda.

3.    All documents relating to interest calculations, including amortization schedules or Ledgers.

4.    All documents relating to attorneys' fees, costs, or expenses claimed under the note.

5.    All documents relating to the Cognovit Note's balance in Plaintiff's Books and Records.

6.    All internal documents relating to the Negotiation, Execution, or circumstances surrounding the Cognovit Note.

7.    All documents relating to Credits, Deductions, or Offsets applied (or not applied) to Levy's account.

27543135.v1

8. All Documents, including without limitations, internal Accounting Records, Spreadsheets, or Reconciliations, relating to how Wendy's calculated the Amount allegedly due under the Cognovit Note, including any set-off Considerations.

9. All Documents relating to Wendy's Funding of WBR.

10. All documents, including without limitations, any Written Agreements, Term Sheets, Memoranda of Understanding, or Notes, relating to Wendy's Funding WBR.

11. All documents, including without limitations, Promotional Materials, Presentations, or Proposals, Wendy's provided to Levy relating to WBR funding.

12. All Documents relating to Wendy's intent or decision regarding whether to Fund WBR.

13. All documents, including without limitations, Board Minutes, Resolutions, or Meeting Notes, relating to the approval or denial of WBR funding.

14. All Communications between Wendy's and any Investors relating to WBR.

15. All documents, including without limitations, internal Financial Analysis, Forecasts, or Projections, prepared by Wendy's relating to the Joint Venture.

16. All documents and communications relating to the Potential Buyer.

17. All documents, including without limitations, internal emails, Memoranda, or Notes, relating to the Potential Buyer.

18. All documents, including without limitations, Board Minutes, Resolutions, or Meeting Notes, relating to the approval or rejection of the Potential Buyer.

19. All documents, including without limitations, Loan Agreements, Promissory Notes, Security Agreements, Guarantees, relating to the Debt incurred with the Brazilian Banks on behalf of WBR.

27543135.v1

20. All documents, including without limitations, Internal Memoranda, emails, or Notes, relating to the Negotiation, Approval, or authorization of the Brazilian Banks' loans.

21. All documents, including without limitations, Board Minutes, Resolutions, or other Corporate Records, Approving or authorizing the Brazilian Banks loans.

22. All documents relating to Brazilian Banks financing of WBR.

23. All documents, including without limitations, Analyses, Forecast, or Projections, related to the impact of the Brazilian Banks loans on WBR's Financial Condition or Operations.

24. All documents and communications in which Wendy's discussed including Levy's Franchise Restaurants in the Cognovit Note.

25. All documents relating to the Franchise Restaurants' inclusion in the Execution of Cognovit Note.

26. All documents relating to Levy's health condition including his cancer diagnosis or treatment.

27. All documents relating to any Threatened Foreclosure, Termination, or other Adverse Action against the Franchise Restaurants.

28. All documents relating to the decision to pay the Debt with the Brazilian Banks.

Dated: September 12, 2025

Respectfully submitted,

/s/ Jon Polenberg
Jon Polenberg, Florida Bar No. 653306
(Admitted Pro Hac Vice)
BECKER & POLIAKOFF, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
Telephone: (954) 987-7550
Facsimile: (954) 985-4176
jpolenberg@beckerlawyers.com
Attorneys for Defendant
Andrew Levy

22

27543135.v1

23

## CERTIFICATE OF SERVICE

I certify that on September 12, 2025, the foregoing document was served via email on all counsel of record for all parties.

/s/ Jon Polenberg
Jon Polenberg

27543135.v1