**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WENDY'S NETHERLANDS B.V.,** | : | |
| | : | **Case No. 2:24-cv-03077** |
| **Plaintiff,** | : | |
| | : | **Judge Michael H. Watson** |
| v. | : | |
| | : | **Magistrate Judge Kimberly Jolson** |
| **ANDREW LEVY,** | : | |
| | : | |
| **Defendant.** | : | |

## JOINT STATUS REPORT

Under the Court's March 6, 2026 (ECF # 84) order ("**Order**"), Plaintiff Wendy's Netherlands B.V. ("**Wendy's**") and Defendant Andrew Levy ("**Levy**") (collectively, "**Parties**") submit this Joint Status Report regarding the status of discovery and the Parties' settlement negotiations.

<u>Wendy's Statement</u>

*A.     Levy's Inadequate Production of Financial Discovery*

Levy's response to Wendy's financial discovery has been deficient and in violation of the Court's order. Despite this Court ordering Levy to produce relevant financial documents, he has failed to do so. Following the status conference where Levy was ordered to produce relevant financial discovery,[1] the parties agreed to the time scope for the financial discovery: February 23, 2019 to December 31, 2020. (ECF #97, PAGEID #2818). Despite that agreement, Levy reserved

---

[1] Wendy's sent discovery requests to get initial information regarding Levy's financial information, but this was not meant to be the exclusive discovery on the subject. Based on the Court's ruling, Wendy's indicated at the status conference that it would clarify its requests and work with Levy to indicate the essential information it sought. Wendy's has corresponded via email with Levy and modified some of its requests, in some regards seeking more limited information than the original requests sought and in some regards providing clarifications regarding the information sought during the relevant time period.

a carveout: Levy agreed to produce financial asset discovery "subject to meet and confer on the substance of Wendy's requests." *Id*.  The parties subsequently exchanged multiple email correspondences and held conference calls, but Levy continues to refuse to produce effectively any responsive financial documents other than his tax returns[2] and two miscellaneous other documents.  Despite Wendy's request, Levy has declined to say exactly how Levy searched his files.

To date, of the documents requested, Mr. Levy has produced only four—two tax returns and two other documents. This production is plainly inadequate.

Levy boldly claims that he has no responsive documents in his possession, custody, or control related to the companies in which he had an interest.  This strains credulity, as he was involved with many businesses during that time frame.  Based on a list of entities he provided and his tax returns, he has an interest at least in: Starboard Group Spacecoast LLC, Starboard Group Tampa LLC, Starboard Group Richmond LLC, Starboard Group Alabama LLC, Starboard Group Southeast Florida LLC, Starboard Group Management Company LLC, Starboard Realty of Richmond LLC, Starboard Management Realty Company LLC, Haze Aviation LLC, Haze Holdings LLC, and Charm Aviation LLC, LX Acres LLC.  He should go to his financial advisor and accountant Berkowitz Pollack Brant Advisors + CPAs and obtain financial documents relating to these companies that are in his Berkowitz file as these documents are within his control to obtain.  *See e.g. Rivera v. Amalgamated Debt Collection Servs., Inc.,* No. 05-CV-20176, 2006 WL 8433127, at *1 (S.D. Fla. Apr. 4, 2006) ("Financial records of the defendant in the possession of defendant's accountant are documents which defendant has the legal right to obtain. Therefore, defendant should have produced the financial records of defendant's accountant upon receipt of

---

[2] His tax returns only indicate his personal income for 2019 and 2020, not information regarding income of his affiliated businesses or his assets.

31373508.v2

the request for production...").  Wendy's needs to obtain documents evidencing any income received by any company in which he had an interest to fully understand his financial state.  For example, his accountant may have certain relevant bank statements related to these companies in their file relating to him.

Moreover, Levy has identified only two documents related to certain real estate transaction but has not definitively indicated there are no further responsive documents (such as real estate appraisals and property valuations).  He has not identified all property that he owned or co-owned during the relevant period.

Despite Wendy's request, Mr. Levy has refused to produce information he provided to City National Bank in December 2020, boldly and inexplicably claiming that he did not submit any financial documents to the bank to obtain a loan for tens of millions of dollars.

In response to Mr. Levy's inadequate financial discovery production, Wendy's requests this Court's intervention, including ordering Levy to produce all responsive financial documents within 10 days, including through contacting his financial advisor.

B.      *Heather Levy's Wholesale Objection to Producing Documents*

In response to a subpoena to Heather Levy regarding her financial information (because Andrew and Heather Levy often moved assets between them and their companies, Ms. Levy is intricately involved in Mr. Levy's business network),[3] Heather Levy served wholesale, and boilerplate, objections on Wendy's.  Wendy's sent a discovery deficiency letter and also conferred

---

[3] For example, specific evidence concerning Montana Haze LLC underscores the need for Mrs. Levy's financial information. Mrs. Levy and Mr. Levy were the only two members when Montana Haze LLC was established in 2019; Mr. Levy removed himself as a member in 2020, leaving Mrs. Levy as the sole member; and Mr. Levy then caused $1.55 million to be transferred from his company Starboard Group to Montana Haze through 33 transactions that identified Mr. Levy and Montana Haze as joint recipients. These facts make Mrs. Levy's records independently probative of the financial resources available to Mr. Levy and the reasonableness of his claimed fear of "financial death."

3

with Levy's counsel on May 11, 2026 at 4:30 p.m. to no avail.  Wendy's is moving to compel compliance in the district where compliance is sought: the Southern District of Florida.

     C.     *Deposition Scheduling Issue*

The parties jointly request an extension of the deposition deadline to May 27, 2026. While Wendy's noticed Mr. Levy's deposition for May 20, 2026, the Levys' counsel is unavailable. The Levys proposed May 13-14, but this date is premature given their ongoing discovery deficiencies. All parties agree that May 27, 2026 is workable and respectfully request the Court extend the deposition deadline accordingly.

     D.     *Concern Regarding Settlement*

Lastly, Wendy's has concerns about whether Mr. Levy is engaging in the court-ordered mediation process in good faith, as demonstrated by his and his counsel's refusal to participate in in-person mediation.

**Defendant's Statement**

Putting aside the pejoratives Wendy's has decided to lace throughout this status report, Levy provides his position on the discovery status and responds to the aspersions Wendy's has cast in this filing.

     A.     *Wendy's Outstanding Documents to Produce*

Levy served his request for production on December 8, 2025. As of May 11, 2026, more than 6 months later, Levy is yet to receive all the responsive documents to his requests. On April 21, 2026, Levy sent Wendy's correspondence identifying deficiencies in Wendy's document production. On May 7, 2026, Wendy's produced additional documents. Levy is currently reviewing that production, and continues to meet and confer regarding any remaining issues that may arise from the review without the Court's intervention.

4

On May 8, 2026, Levy also raised questions regarding Wendy's privilege log and requested information concerning any privilege log associated with Wendy's supplemental production. It appears that Wendys' has decided ***any*** correspondence an attorney is copied on is privilege regardless whether the correspondence contains legal advice. Levy still continues to confer in an effort to resolve any outstanding issues without Court intervention. The parties submitted a joint status report on these issues on May 8, 2026.

While Levy has agreed to move forward with the depositions of witnesses without the benefit of the full production, Levy reserves the right to recall witnesses if he determines any supplemental production will require it.

B.      *Wendy's Grievances*

Wendy's raises several issues regarding Levy's discovery responses in this Joint Status Report. Levy addresses those issues below.

*Levy's Production*

Wendy's contends that Levy's production is deficient based largely on its view that additional documents must exist. Wendy's can point to no basis for holding that belief. Levy has requested several times that Wendy's identify with specificity which documents it believes are missing and the basis for that belief so the Parties can address any concrete deficiencies through the meet-and-confer process. The response is that it is not possible that they do not exist.

If Wendy's believes there are documents not produced, it can specifically ask for them. Levy, for example, pointed do documents he had produced, showed that Wendy's search for the documents may not have been thorough enough to provide the missing documents. Wendy's has provided supplemental production.

5

Wendy's instead engages in conjecture. Take the request about the profit and loss statements for the entities Levy used to own. The scope for the financial discovery is from February 2019 through December 2020. That is over six years ago. The entities and Levy had an accountant at the time. They lost the relationship with the accountant a few years ago. Further, most of the entities filed for bankruptcy in November 2023. Wendy's is asking for the profit and loss statements for defunct entities dating back to 2019. Wendy's then is surprised that Levy does not have them within his possession, custody, and control. The same applies for the financial information Levy submitted to City National Bank of Florida in December 2020.

Wendy's did not ask for Levy's tax returns. But he produced them. The entities that Wendy's is asking about would have reported profit and losses in those returns because they are disregarded entities. The parties have resolved most dispute with the Court's guidance and meaningful conferences. If Wendy's believes any information is missing, it may specify as such and Levy will look for the missing information.

*Discovery to Heather Levy, AndrewLevy's Wife*

First, this Court is not the proper venue to address any dispute Plaintiff wishes to raise about Mrs. Levy's objections to producing her personal financial information. Mrs. Levy is not a borrower or guarantor, and her personal financial information is protected under Florida law.

Second, Wendy's has served a subpoena seeking discovery from Mrs. Levy asking for extensive personal financial information. Wendy's further suggests, including in a footnote, that Mrs. Levy's records are warranted based on alleged financial "intermingling." Levy disputes that characterization and notes that, as discussed during the May 11, 2026 meet-and-confer, Mrs. Levy owns Montana Haze, LLC. And the alleged transfers are from an entity called Starboard Group of Space Coast, LLC, one of the debtors in the bankruptcy case. The transfers they have asked about

6

31373508.v2

constituted part of Andrew Levy's pre-petition, monthly compensation that ended on the bankruptcy petition date. Wendy's may certainly ask Andrew Levy about those transfers when it takes his deposition.

Andrew Levy has also already testified about the transfers during a 2004 examination in the bankruptcy case conducted by the Trustee. It appears Wendy's has learned about these transfers from documents it received in bankruptcy case; most likely from the analysis prepared by the debtors' financial advisor and shared with Wendy's.

Mrs. Levy will respond to any motion to compel filed in the Southern District of Florida.

*Mediation*

Although current counsel for Wendy's may not have been present, the Parties previously participated in an in-person mediation on October 17, 2025 in Ohio. Levy is willing to participate in a second mediation, but has asked that it proceeds remotely to reduce the cost and burden of travel. Given that remote mediations are common, Levy respectfully submits that this request is reasonable. But since Plaintiff does not intend to proceed remotely, Levy will move the Court for leave to dispense with mediation.

*Scheduling Depositions*:

Levy joins in and agrees with Wendy's to request an additional week to complete the depositions.

7

31373508.v2

Dated: May 11, 2026

Respectfully submitted,

| | |
|---|---|
| */s/ Jon Polenberg* | */s/  Cary Aronovitz* |
| Jon Polenberg, Florida Bar No. 653306 | Shalyn Watkins (0096026) |
| (Admitted Pro Hac Vice) | Elin Park (*Pro Hac Vice* pending) |
| BECKER & POLIAKOFF, P.A. | Cary Aronovitz (*Pro Hac Vice* pending) |
| 1 East Broward Blvd., Suite 1800 | HOLLAND & KNIGHT LLP |
| Ft. Lauderdale, FL 33301 | 4675 MacArthur Court, Suite 900 |
| Telephone: (954) 987-7550 | Newport Beach, California 92660 |
| Facsimile: (954) 985-4176 | Telephone: (213) 896-2559 |
| jpolenberg@beckerlawyers.com | Facsimile: (949) 833-8540 |
| | Shalyn.Watkins@hklaw.com |
| *Attorney for Defendant Andrew Levy* | *Attorneys for Plaintiff Wendy's Netherlands B.V.* |

## CERTIFICATE OF SERVICE

On May 11, 2026, this document was filed electronically with the Clerk of the United States Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties.

*/s/      Cary Aronovitz*

8