**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

WENDY'S NETHERLANDS B.V.,

      Plaintiff,

vs.                                 Case No. 2:24-cv-03077

ANDREW LEVY,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION**
**TO MAGISTRATE JUDGE'S OPINION AND ORDER**

Plaintiff Wendy's Netherlands B.V. ("Wendy's") responds in opposition to Defendant Andrew Levy's ("Levy") objection to the well-reasoned order of Magistrate Judge Jolson denying Levy's attempt to extend the case management and discovery deadline.  Judge Jolson did not err, let alone clearly err, in ruling that Levy was not diligent in seeking to depose Marcos Silva, Levy's former business partner who is mentioned in Levy's own counterclaim and obviously known to Levy at all times.  (ECF No. 126).  Judge Jolson has been very active in addressing discovery disputes and unequivocally pushing the sides to complete discovery.  Given that Levy cannot show clear error, his objection should be overruled.

I.      **INTRODUCTION AND PROCEDURAL POSTURE**

The issue of Mr. Silva's deposition was twice briefed for the Court.  *See* (ECF Nos. 109, 114, 120, 124, and 125).[1]  As Wendy's previously addressed, Wendy's issued a subpoena to Mr. Silva who was Levy's longtime business partner and named by Levy in his own counterclaim (ECF No. 51 at ¶¶ 22-23).  Mr. Silva's attorney responded to the subpoena and raised

---

[1] Wendy's incorporates its prior filings herein.

confidentiality concerns to Wendy's.  Mr. Silva's attorney explained that in 2019 Silva had previously sued Levy because Levy failed to pay a promissory note for approximately $2 million, and (just like in this case) Levy claimed the debt was not valid and countersued Silva for fraud. *See* Exhibit A, Silva Complaint; and Exhibit B, Levy counterclaim.  Indeed, in 2020 Levy countersued Silva for fraud related to WBR, just as he would later do in this case in 2025.  *See* Exhibit B.  That matter involving WBR was resolved between Levy and Silva with a confidential settlement, and Silva's attorney was concerned the instant case—which also involves Levy's allegations of fraud this time directed at Wendy's—would impact his confidentiality agreement. At the same time, the parties exchanged thousands of pages of documents in discovery and completed eight depositions. Despite Levy's misleading characterizations about delays in Wendy's production of documents, Wendy's commenced its rolling production of documents the same day that Levy stated it would commence its rolling production of documents.

Given the review of documents, the completion of depositions, and the concern of additional litigation over Silva's deposition and confidentiality concerns, Wendy's decided to cancel the subpoena as such discovery was cumulative and no longer needed.  *See* Opinion at 3. It was only at this time that Levy suggested a need to depose Silva as a material witness.

In the Court's Opinion and Order denying Defendant's Motion, Judge Jolson recounted the numerous extensions the Court has granted and denied, and admonishments to each party that unless demonstrating "extraordinary circumstances" the Court would not be extending discovery deadlines or the deposition deadline (ECF No. 111).  Judge Jolson correctly noted the extensive requests to delay discovery and denied Levy's "eleventh-hour request."  Order at 2.

> Despite this, Defendant did not act diligently enough to meet Rule 16's standard. Discovery in this case began in earnest in November 2025. (Docs. 62, 63). As noted above, Defendant has played a hand in making discovery arduous. (*See, e.g.*, Doc. 111 (noting the parties' continued discovery disagreements even after the discovery

deadline)). Yet at no time in the 195 days between when the Court imposed the scheduling order and May 18, 2026, did Defendant issue a subpoena to depose Mr. Silva. Nor does it seem Defendant identified Mr. Silva as someone he intended to depose when the parties discussed witness deposition dates in January. (*See* Doc. 124-1 at 8). Even crediting Defendant's argument that the parties needed to complete document exchange before taking depositions (Doc. 124 at 3), it is not clear why Defendant did not notice Mr. Silva's deposition after he received those documents. (*See* Doc. 94 (stating the parties were nearing completion of document production; were anticipating substantially completing it by April 10; and would conduct depositions on a rolling basis beginning on April 10)). Even more, the record shows Defendant also had some part in the belabored completion of document discovery. (*See, e.g.*, Doc. 90).

Importantly, Defendant did not cross-notice Mr. Silva's deposition when Plaintiff issued its subpoena on April 14. Nor did he raise the issue of cross-noticing when the parties met and conferred with Mr. Silva's counsel. (Doc. 125-1 at 2). It was only after Plaintiff canceled the deposition—and Defendant presumably realized he would miss out on taking Mr. Silva's testimony before the applicable deadline—that Defendant acted. This is not reasonable diligence. This is delayed reaction.

As Judge Jolson recognized, Levy's counsel could have subpoenaed Silva at any time in this case or issued a cross-notice of deposition and he failed to do so, only claiming importance for this witness's deposition at the "eleventh hour."  Order at 3-4 (finding that, even though "[d]iscovery in this case began in earnest in November 2025," "at no time in the 195 days [since], did Defendant issue a subpoena to depose Mr. Silva"); *id*. at 5 ("rather than supporting Defendant's position, [Levy's] argument that Mr. Silva is important undermines a showing of diligence. If Mr. Silva's testimony is so crucial, there is no excuse for Defendant's delay. Long ago, he should have noticed or cross-noticed Mr. Silva's deposition to ensure it would occur before the close of discovery.").  Levy does not even try to present an excuse for his failure to subpoena Mr. Silva since mid-last year.  Instead, he just blames Wendy's.  Judge Jolson appropriately held here that Levy—who did nothing himself to ensure he maintained a right to depose Mr. Silva—could not claim diligence by relying on actions Wendy's took to depose Mr. Silva.  This holding was not a clear error or an abuse of discretion.

3

## II.     LEVY MISTAKENLY CLAIMS JUDGE JOLSON'S ORDER SHOULD BE REVIEWED *DE NOVO*.

While admitting that this is a "non-dispositive pretrial matter[,]" Levy avers that Judge Jolson made a "central legal error," in finding Levy lacked diligence under Rule 16.  Objection (ECF No. 129) at 4.  Levy goes so far to claim that this Court should exercise "plenary review" and "independent judgment" in this matter.  Objection at 4.  That would be error.  Levy fails to address *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205 (6th Cir. 2019).  In *Bisig*, the Sixth Circuit established a "sliding scale" for a District Judge's review of a Magistrate Judge Order.  *See id.* at 221-222 ("The more fact-intensive the question, the more deferential the level of review. The more law intensive the question, the less deferential the review.").  Thus, just because a question involves the mere invocation and application of a legal standard does not mean it is subject to *de novo* review.  *De novo* review is appropriate if the objector claims a Magistrate Judge used the wrong law; it is not appropriate when the objector claims the Magistrate Judge improperly made a decision when applying the facts to the correct legal standard.  *See id*. at 219-222 (District Judge erred by reviewing Magistrate Judge decision *de novo* when Magistrate Judge used the right law in its analysis, even when the Magistrate Judge failed to cite the proper case law).

The correct standard of review is clear error or abuse of discretion.  *See id*. at 222 (applying abuse of discretion standard to harmlessness determination which involved mixed questions of fact and law).  Levy himself admits that "[d]iligence is a practical, fact-specific inquiry." Objection at 8 (citing *Gatza v. DCC Litg. Facility, Inc*., 717 F. App'x 519, 521 (6th Cir. 2017)). Accordingly (at least prior to *Bisig*), in this Rule 16 context, a "district court reviews a magistrate judge's determination of good cause under a clearly erroneous standard." *Moore v. Indus. Maint. Serv. of Tennessee, Inc.*, No. 11-2938-STA-EGB, 2013 WL 1741970, at *1 (W.D. Tenn. Apr. 23, 2013), *aff'd*, 570 F. App'x 569 (6th Cir. 2014).  Indeed, application of the clear error standard is

4

commonplace for review of discovery orders.  *See e.g. Doe v. Kenyon Coll.,* No. 2:20-CV-4972, 2021 WL 4848202, at *2 (S.D. Ohio Sept. 29, 2021) (Watson, J.) (applying clear error standard to Magistrate Judge's decision whether certain information was relevant for discovery).  Whether the appropriate standard for whether diligence is satisfied under Rule 16, post-*Bisig*, is clear error or abuse of discretion, "mere disagreement with the Magistrate Judge" is insufficient to set the Magistrate Judge's order aside.  *HLFIP Holding, Inc. v. Rutherford Cnty., Tennessee,* No. 3:19-CV-00714, 2021 WL 6498858, at *3, *16 (M.D. Tenn. Nov. 15, 2021) (holding that Magistrate Judge did not clearly err because Magistrate Judge "did not ignore" facts, but instead made a reasonable judgment call on whether the facts met the diligence standard; and "while acknowledging that the Magistrate Judge perhaps could have come out the other way on the Rule 16 issue, he did not err clearly or act contrary to law in ruling as he did.").

### III.    JUDGE JOLSON REASONABLY CONCLUDED THAT LEVY WAS NOT DILIGENT IN SEEKING TO DEPOSE MR. SILVA.

Judge Jolson did not clearly err or abuse her discretion.  From the start, Levy's Objection sets out a high standard for himself.  He says that Judge Jolson improperly "measure[d] diligence from the scheduling order rather than [Wendy's] cancellation" of Wendy's own deposition of Mr. Silva.  Objection at 1. In other words, Levy claims Judge Jolson erred by "measuring diligence from the scheduling order rather than the event that made relief necessary."  Objection at 8.  Levy has no case to support this proposition.  *See Midwest Motor Supply Co. v. Nietsch,* No. 2:22-CV-4049, 2024 WL 4988338, at *2 (S.D. Ohio July 2, 2024) (Watson, J.) (noting that, "in concluding the Order is neither clearly erroneous nor contrary to law, the Court notes that Objectors failed to cite to any on-point case law, instead vaguely relying on the discovery standard. This, in and of itself, is telling.").

5

Levy next alleges Judge Jolson created a "per se" legal rule regarding diligence.  Objection at 8.  However, Judge Jolson did not create some "per se" rule that relying on another party's notice of deposition can *never* possibly meet the diligence standard.  *Id*.  She held that, based on the distinct facts here, *Levy's* "inaction is particularly inexcusable because Mr. Silva was evidently known to Defendant as possibly having information relevant to this case. Indeed, Defendant alleged counterclaims against Mr. Silva in a 2020 Florida action that also involved Wendy's restaurants." Order at 4; *see also* ECF #125, Exhibit 1 (email exchange where *Silva's counsel* says to Levy's counsel: "[c]andidly, and with respect, we are uncertain as to why your office waited until this late juncture to raise the issue of cross-notice").

To support her holding, Judge Jolson relied on two on-point (albeit non-binding) cases, which also was not somehow error.  Order at 4 (c.f. citations to *Burket v. Hyman Lippitt, P.C.*, No. CIV.A. 05-72110, 2008 WL 718180, at *1 n.3 (E.D. Mich. Mar. 14, 2008) (finding no good cause to allow a deposition to be noticed and taken after the close of discovery and noting the fact that a telephone deposition for the same person was previously noticed and canceled had "no effect on this motion"); *Bradley v. Wells Fargo Bank, N.A.*, No. 12-CV-127-PB, 2015 WL 12851707, at *2, 2 n.2 (D.N.H. Sept. 18, 2015) (concluding even if the plaintiff asked for an amendment to the case schedule, he was not diligent in serving a deposition subpoena after the discovery deadline where he was likely on notice of the third-party's location)).  Even though these cases may not have involved exactly the same facts (a third-party who was subpoenaed, a deposition that was "coordinated, and scheduled," and then "canceled"), the essential facts of the cited cases are similar, and their legal reasoning is informative.  Objection at 7.  A party cannot rely on another party's timely discovery actions as its own diligence to extend the schedule.  *See Burket*, 2008 WL 718180, at *1 n.3 (timely issued notice of deposition by other party for a

6

deposition which "never occurred" could not be relied upon for a deposition to occur after the close of discovery); *Bradley,* 2015 WL 12851707, *2 n.2 (after Bradley "was served with a copy of" a timely-issued subpoena, Brandley was on notice of his own need to act to preserve his discovery rights, which he failed to do during the discovery period).  Even more, other cases with similar facts are in accord with Judge Jolson's decision; a party cannot rely on proper actions taken within the discovery period to absolve its own lack of diligence for relief sought after the close of discovery.  *See SHS ACK, LLC v. Silberberg*, No. 21-CV-12121-AK, 2023 WL 4186289, at *3 (D. Mass. June 26, 2023) (after a subpoena was served on a non-party prior to the close of discovery, with the deposition subsequently "canceled," and with another subpoena served after the discovery period, the Court explained: "the fact that [the non-party] was once served an identical subpoena duces tecum before the close of discovery is not an exception that would allow [the party] to enforce the [untimely] subpoena, which was served after fact discovery closed.").  Thus, Judge Jolson did not err, let alone clearly err or abuse her discretion.[2]

Levy also complains that "[t]he Order reasoned that Silva's trial availability was not relevant to diligence." Objection at 11.  But Judge Jolson explained in her ruling that Levy has not "provided case law supporting that the Court should consider Mr. Silva's trial availability when evaluating a Rule 16(b)(4) motion." Order at 5.  Despite Judge Jolson's explicit invitation, Levy *still* fails to provide any such authority.  *See Midwest Motor Supply Co.*, 2024 WL 4988338,

---

[2] Levy also invokes Brian Daughney's May 18, 2026 deposition, saying that "Wendy's appeared and examined Daughney at length." Objection at 6.  But Wendy's asked questions to Daughney within the scope of Levy's direct examination of Daughney, and Levy failed to object to Wendy's questioning of Daughney, the deposition of whom occurred *prior to* the expiration of the May 27, 2026 deposition deadline.  Wendy's merely asked questions of Daughney related to his direct examination after the deposition had gone forward.

at *2 ("the Court notes that [party] failed to cite to any on-point case law...This, in and of itself, is telling.").[3]

For the aforementioned reasons, the Court should overrule Levy's Objection to Judge Jolson's well-reasoned Order.

Respectfully submitted,

   /s/  Elin Park
Shalyn Watkins (0096026)
Elin Park (Admitted *Pro Hac Vice*)
Cary Aronovitz (Admitted *Pro Hac Vice*)
**HOLLAND & KNIGHT LLP**
701 Brickell Ave, Suite 3300
Miami, FL 33131
Ph:  305.374.8500
Service emails:  shalyn.watkins@hklaw.com,
elin.park@hklaw.com, cary.aronovitz@hklaw.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 7, 2026, the foregoing was filed with the Clerk of Court via the Court's CM/ECF system, which will serve, via email, all counsel of record.

   /s/ Elin Park
Attorney

---

[3] Levy's claim of prejudice is also overstated.  Mr. Silva left Starboard in 2018 and thus is not a witness to the Cognovit Note, which was only signed in February 2020.  *See* Silva Complaint at ¶ 6.  Further, his deposition is not the only means to preserve his testimony for trial.  Mr. Silva can appear voluntarily, especially if Levy paid for his travel or if the Court accommodated him through trial testimony by video under Rule 43(a).  Levy simply guesses that he will be prejudiced in a trial (if one even occurs).  Moreover, many of Mr. Silva's emails may be presented at trial as communications of a party opponent.  *See* FRE 801(d)(2).  Furthermore, Levy has already taken six depositions regarding the issues in the case.  He is not prejudiced by the failure to depose Mr. Silva. Wendy's, on the other hand, is prejudiced by the need to prepare for a ninth deposition, which Levy now belatedly claims he would like to preserve as trial testimony and after a dispositive motion has already been filed under the Court's scheduling deadline.

8